**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**1:18-CV-24227-CMA-Altonaga**

| | |
|---|---|
| JASON MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GIZMODO MEDIA GROUP, LLC, | ) |
| a Delaware Corporation, KATHERINE | ) |
| KRUEGER, individually, and WILL | ) |
| MENAKER, individually, | ) |
| | ) |
| Defendants. | ) |

<u>**DEFENDANTS GIZMODO MEDIA GROUP, LLC'S AND KATHERINE KRUEGER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS**</u>

Defendants Gizmodo Media Group, LLC and Katherine Krueger (collectively, "Defendants" or "Gizmodo") respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint.[1]

## INTRODUCTION

This is a simple case: Defendants accurately reported on a document that was publicly filed in open court and has never been sealed. Plaintiff's Complaint fails to state a legally cognizable claim for relief because he does not dispute those key facts, which readily dispose of his claims. Plaintiff concedes that no court has ever sealed the Supplement and that Defendants' Article was nothing more than a fair and accurate report on the Supplement's public filing in the context of a highly newsworthy litigation. Indeed, he does not dispute that the very allegations challenged in this action were discussed in open court and that Plaintiff himself placed the transcript on the public docket. These concessions dictate an early dismissal of this frivolous lawsuit.

Nonetheless, Plaintiff clings to the erroneous argument that he unilaterally and permanently "sealed" the Supplement simply by filing a motion, and demands $100 million because he claims the Supplement was restricted from public view for a few days (from September 17 to September 24, 2018), despite the fact that it was available to the public both before and after this seven-day period. But Plaintiff's theory of the case runs head first into the strong presumption of openness in Florida courts and the plain terms of the Florida Rules of Judicial Administration.

Not surprisingly, in the face of these dispositive facts, Plaintiff seeks to confuse the issues. He contends that the Article is not protected or privileged because it reports on court filings concerning private litigants rather than the conduct of public officials (despite acknowledging that he himself "is a public figure" (Opp. 2)). This argument – which Plaintiff invents out of whole cloth – finds no support in the law. Neither the fair report privilege nor the absolute constitutional privilege established by *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), turn on any such restriction. Nor does Plaintiff advance his case by arguing that Defendants' publication of the Article is a nefarious "conspiracy to abuse the protections of the First Amendment" (Opp. 19), because such an argument concedes (as it must) that Defendants

---

[1] Capitalized terms not otherwise defined have the meaning ascribed to them in Defendants' opening memorandum of law in support of their motion to dismiss ("Mem.") (ECF No. 44.)

are entitled to the constitutional and statutory privileges that dispose of this case.

The Article is a fair and accurate report on a publicly filed document that was never sealed, was discussed in open court, and was repeatedly made available to the public both before *and* after publication of the Article. Defendants' reporting is therefore protected by the absolute constitutional privilege set forth in *Cox Broadcasting* and by the fair report privilege as a matter of law. Further, as explained in our opening memorandum of law, these protections would apply with equal force even if the Supplement were in fact sealed – which Plaintiff has not plausibly alleged. For the reasons set forth below and in Defendants' opening memorandum of law, Plaintiff's claims fail as a matter of law and must be dismissed.

## ARGUMENT

### I. PLAINTIFF DOES NOT DISPUTE THAT THE SUPPLEMENT WAS NEVER SEALED

Plaintiff's opposition fails to address, much less dispute, any of the key facts that dispose of his claims.

***First***, Plaintiff effectively admits the critical fact that the Supplement is not, and has never been, sealed. Florida has a "well-established public policy of government in the sunshine," which mandates that "the public's constitutional right of access to court records must remain inviolate." *In re Amendments to Florida Rule of Judicial Admin. 2.420-Sealing of Court Records and Dockets*, 954 So. 2d 16, 17, 35 Media L. Rep. 2197 (Fla. 2007). Accordingly, the Florida Supreme Court has adopted specific procedures for sealing court records, "in the same spirit of openness and transparency that has informed the Court's case law and rules of procedure throughout its modern history." *Id.* at 18 (adopting the requirements of Fla. R. Judicial Admin. 2.420(e), previously numbered 2.420(d)). These procedures dictate that court records may not be sealed absent a hearing, a court order making a litany of specified findings, and notice to the public. Fla. R. Judicial Admin. 2.420(e)(2)-(4). Plaintiff correctly states that the courts have the power to seal documents, but does not contend – because he cannot – that any court exercised that power in this case. As a matter of uncontested public record, the Family Court made no determination of confidentiality, and issued no order sealing the Supplement. The Supplement was not sealed at the time of publication. By Plaintiff's own admission this should end the case.

Instead, he argues that the Supplement has been "locked" or "restricted from public view" since he filed his Motion to Seal on September 17, 2018. (Opp. 3, 3 n.6.) Plaintiff thus ignores the distinction between the interim obligation of the clerk to treat records as confidential

pending a ruling on a motion to seal, *see* Fla. R. Judicial Admin. 2.420(e)(1), and a court order actually determining whether to deem those records confidential and to go to the unusual step of sealing them, *id.* 2.420(e)(3).  Indeed, Plaintiff recognized this critical distinction in his own Motion to Seal, when he asked the Family Court to "determine *whether* Respondent's Supplement is confidential and should be sealed" and argued that "certain court records are confidential *if* the Court determines that confidentiality is required."  (FC Dkt. No. 356 ¶¶ 9, 5) (emphasis added).  But Plaintiff dodges this central distinction and asks this Court to adopt an interpretation of the Rules of Judicial Administration that would allow a party to unilaterally and permanently restrict public access to court records simply by filing a motion, rendering the strict requirements for sealing orders under Rule 2.420(e)(2)-(4) – and the strong presumption of openness in Florida courts – entirely meaningless.  As a matter of well-established Florida law, the Court should reject Plaintiff's invitation.  *See State v. Goode*, 830 So. 2d 817, 824 (Fla. 2002) (a "basic rule of statutory construction" is that "courts should avoid readings that would render part of a statute meaningless"); *Rocket Grp., LLC v. Jatib*, 114 So.3d 398, 400-01 (Fla. 4th DCA 2013) ("[B]ecause of the presumption of openness in court proceedings, denial of access may not be based solely upon the wishes of parties to the litigation.").

　　　　*Second*, Plaintiff does not plausibly allege that the Supplement was, in fact, "restricted from public view" at any time relevant to this dispute.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must contain "enough facts to state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to state plausible claim, plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  This is because Plaintiff admits that the Supplement was in fact available to the public both before and after the Article was published on September 21, 2018, in part as a result of Plaintiff's own actions.  The Supplement was publicly filed by Delgado three days before Plaintiff filed his Motion to Seal on September 17, 2018.  (FC Dkt. No. 356.)  Then, on September 24, the allegations in the Supplement were discussed at length during a conference held in open court, a transcript of which Plaintiff *himself* ultimately filed on the public docket.  (Shullman Decl. Ex. H; FC Dkt. No. 443.)  Underscoring the public access to the Supplement, on the same day as the hearing, the Supplement was readily provided to Defendants by the Miami-Dade Clerk's office, as it was again on October 16, 2018.  (*Id.* Exs. I,

J.)[2]  Even if the Supplement *were* restricted from public view at any point, which Plaintiff has not plausibly alleged, Defendants were entitled to report on it, as set forth below.  Plaintiff has therefore failed to allege a single wrongful act or omission on the part of Defendants that would support his claims.

Plaintiff argues that it was Defendants who let the "cat . . . out of the bag" and thus "stole Miller's opportunity to permanently seal the Supplement."  (Opp. 6-7.)  But there is nothing whatsoever in the record to indicate that the Clerk's decision to release the Supplement on two occasions after Plaintiff's Motion to Seal had anything to do with the publication of the Article.[3]  Nor did Plaintiff in any way modify or abandon his request to seal the Supplement during the September 24 Hearing.  Plaintiff's claim boils down *at most* to his legally unsupportable contention that the Supplement may have been restricted from public view for *one week*, between September 17 (when Plaintiff filed his Motion to Seal) and September 24 (when the Clerk gave Defendants a copy of the Supplement).  On this basis alone, Plaintiff seeks to hold Defendants accountable to the tune of $100 million.  The flimsiness of this claim, particularly when juxtaposed with the strong statutory and public policy imperative favoring the openness of Florida courts, provides no legal basis on which to seek any damages, let alone the outrageous sum Plaintiff demands.

---

[2] Plaintiff contends that "[t]he circumstances surrounding how Defendants' process server" obtained the Supplement from the Clerk on two occasions "have not been explored through discovery."  (Opp. 3 n.5.)  Defendants respectfully submit that such inquiry is unnecessary for the Court to grant this Motion to Dismiss.  The copies of the Supplement that were obtained from the Clerk on September 24 and October 16 (*see* Shullman Decl. Exs. I, J) are indisputable public records that speak for themselves.  Nonetheless, should the Court find otherwise, Defendants are willing to provide limited discovery into how they obtained the Supplement from the Clerk on September 24 and October 16, 2018.  Discovery into Defendants' original source for the Supplement is irrelevant because, for the purposes of this motion *only*, Defendants accept as true (as they must) Plaintiff's allegation that Defendants originally obtained the Supplement from Delgado.  (Compl. ¶ 135.)

[3] Plaintiff's self-serving Exhibit 1 was created by Miller in the hopes that it would support his case, but it does not.  Notably, though Plaintiff's Exhibit 1 states that the Supplement has been "locked as a confidential pleading" since September 17, 2018 and that the "policy" of the Clerk's office "is only to furnish copies of confidential pleadings to the parties in the case or their respective Attorneys of Record," it does *not* attest that no copies of the Supplement were distributed to others after that date.  Nor does Exhibit 1 acknowledge the undisputed fact that the Supplement has *never* been "locked" on the public docket available to Defendants and the public generally.

4

II.     **PLAINTIFF FAILS TO REBUT THE APPLICATION OF THE CONSTITUTIONAL OR FAIR REPORT PRIVILEGES**

Rather than address his complete lack of allegations of wrongdoing against Defendants, or grapple with the undisputed facts that conclusively dispose of his claims, Plaintiff argues for a world in which the longstanding constitutional protections that shield Defendants from liability do not exist.  Initially, Plaintiff conflates the absolute constitutional privilege established by *Cox Broadcasting* with the fair report privilege, ostensibly to avoid confronting the application of *Cox.*  But such protections cannot be so casually set aside.  When, as here, a judicial filing has been made publicly available, *Cox Broadcasting* and its progeny absolutely shield the press from liability for reporting on information that the government itself has issued.  420 U.S. at 496 ("[T]he First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records."); *see also Medico v. Time, Inc.*, 643 F.2d 134, 137, 143-44 (3d Cir. 1981) (applying *Cox* to bar defamation claim); *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1299 (D.C. Cir. 1988) (same).  Plaintiff does not dispute that the Supplement was publicly filed, discussed in open court, and repeatedly made available by the Clerk's office, and that there has been no order sealing it.  *Cox* therefore mandates dismissal of Plaintiff's Complaint.  420 U.S. at 496.

Indeed, the principles underlying *Cox* underscore that one cannot seek to impose $100 million in damages on Defendants for reporting on allegations in a court filing that was available to the public both *before* and *after* the Article was published, but that Plaintiff claims (without citation to any specific evidence) was restricted from public access – at most – for one week.  *Id.* at 494-95 ("[I]nterests in privacy fade when the information involved *already appears on the public record*.  This conclusion is compelling when viewed in terms of the First and Fourteenth Amendments and in light of the public interest in a vigorous press.") (emphasis added).  *Cox* unquestionably favors the dissemination of information from official proceedings – it does not suggest that Plaintiff can play a game of "gotcha" with the timing of when a document was received.

Nor do Plaintiff's claims gain traction even if the Clerk's office failed to adhere to its own policies by publicly disseminating a record that should have been treated as confidential pending a ruling on a motion to seal.  *See The Florida Star v. B.J.F.*, 491 U.S. 524, 538 (1989) (where the "government has failed to police itself in disseminating information . . . the imposition of damages against the press can hardly be said to be a narrowly tailored means of

safeguarding anonymity").[4]  (Opp. 7-8.)  The Supreme Court has held that if a publisher obtains information "in a manner lawful in itself but from a source who has obtained it unlawfully," the government may not constitutionally punish the disclosure of such information "by one not involved in the initial illegality." *Bartnicki v. Vopper*, 532 U.S. 514, 528-29 (2001).  Plaintiff certainly has not alleged any impropriety or illegality in the means by which Defendants obtained the Supplement; he has merely alleged that Defendants received the Supplement from Delgado (which, again, Defendants accept as true solely for purposes of this motion and do not concede).  Yet, as *Bartnicki* makes clear, even if Plaintiff had plausibly alleged that Delgado wrongfully distributed the Supplement, it would be legally irrelevant to Defendants' right to publish it and to the decision of this motion.  *Id.*  Indeed, how and where Defendants obtained the Supplement has no bearing on the application of the fair report privilege.  *See Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So. 2d 972, 976 (Fla. 3d DCA 1987) (method by which reporter gathered information about proceeding "does not change the fact that . . . report was a fair and accurate summary"); *Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 596 (2d Dep't 2009) ("how a reporter gathers his information concerning a judicial proceeding is immaterial" for purposes of the privilege).

Finally, Plaintiff seeks to avoid the fair report privilege altogether by advancing the unsupportable argument that the privilege does not apply because the Article reported on the nonpublic court filings of a private litigant about a purported "public figure" rather than information provided by public officials.  (Opp. 7-16.)  Plaintiff contends that "[t]he common thread among cases applying the privilege to nonpublic court records or proceedings is the involvement of the government or governmental action."  (*Id.* 14.)  According to Plaintiff, this is because the press acts in an "agency role" when it reports on civil litigation, but a "supervisory" role when it reports on government proceedings.  (*Id.*)  And, Plaintiff reasons, "[s]upervising governmental agencies or officials . . . justifies reporting about matters that may be secret or

---

[4] Any choice of law analysis is unnecessary because Plaintiff's claims fail under the law of both New York and Florida.  *See Five for Entm't, S.A. v. Rodriguez*, 2013 WL 632977, at *5 (S.D. Fla. Feb. 20, 2013). Plaintiff does not dispute this, but instead inexplicably offers a litany of "facts [that] should be noted" if the Court chooses to conduct a choice-of-law analysis.  (Opp. 3-4.)  And aside from a passing reference to a June 2018 decision in *Gubarev v. Buzzfeed, Inc.*, No. 17-cv-60426-UU (ECF Nos. 169, corrected as ECF No. 171), which Defendants expressly acknowledged in their motion to dismiss (Mem. 15 n.9), Plaintiff makes no attempt to argue that there is a true conflict between Florida and New York law on the fair report privilege.

confidential," but "[t]hat justification is absent when the press publicizes the contents of private litigants' court filings." (*Id.* 16.)

Plaintiff's theory, however, fails at the gate: as he now concedes, the Supplement was hardly a "nonpublic" court record. It was filed on the public record, discussed in open court, and the court clerk provided it to the public at least twice upon request. Though Plaintiff tries to muddy the legal waters by theorizing about policy considerations, he cannot obscure that he fails to dispute these critical facts, which are fatal to his defamation claim. Further, even if the Supplement were somehow "nonpublic," Plaintiff fails to cite a single case holding that the fair report privilege is categorically unavailable to the nonpublic court filings of private litigants. New York courts routinely apply the fair report privilege to court records in civil litigation between private litigants. *See, e.g.*, *Gillings v. New York Post*, 87 N.Y.S.3d 220, 223 (2d Dep't 2018) (applying privilege to article describing divorce action commenced against the plaintiff by his former wife); *Shawe v. Kramer Levin Naftalis & Frankel LLP*, 151025/17, 2018 WL 6537120, at *1-2 (1st Dep't Dec. 13, 2018 (applying privilege to press release describing litigation over corporate control of company); *Lacher v. Engel*, 817 N.Y.S.2d 37, 43 (1st Dep't 2006) (applying privilege to statements made to New York Law Journal describing malpractice action). Moreover, it is clear from the face of Section 74 that "[t]he legislature has . . . made clear its intent that the absolute privilege shall apply to fair and true reports of [any] judicial . . . proceedings . . . *regardless of whether they are public or nonpublic*." *Keogh v. New York Herald Tribune, Inc.* 274 N.Y.S.2d 302, 305 (Sup. Ct. N.Y. Cnty. 1966), *aff'd* 285 N.Y.S.2d 262 (1st Dep't 1967) (emphasis added); *see also Gubarev v. Buzzfeed*, No. 1:17-cv-60426-UU, 2018 WL 6683647, at *6 (S.D. Fla. Dec. 19, 2018) (New York courts apply the fair report privilege to any official proceeding, "even if it is not open to the public"). In Florida, where courts have less frequently had occasion to consider the fair report privilege, the privilege has nonetheless been applied to court records relating to private litigants. *See, e.g.*, *Thomas v. Patton*, No. 162005CA003777, 2005 WL 3048033, at *3 (Fla. Cir. Ct. Oct. 21, 2005) (applying privilege to accurate reports of guardianship proceeding in probate court). As Defendants already explained at length in their opening brief, *Ortega* plainly extends the privilege to nonpublic records. 510 So. 2d at 976. (*See* Mem. 14-15.)

None of the cases cited by Plaintiff for the proposition that the fair report privilege can only apply to confidential or sealed court filings where the press reports on the government in a

"supervisory" capacity support such a restrictive interpretation of the privilege.  *See, e.g.*, *Ortega*, 510 So. 2d at 975 (the press has a qualified privilege to "report on matters brought out in public proceedings . . . [which sometimes] involve a discussion of private persons"); *Medico v. Time, Inc.*, 643 F.2d 134, 143 (3d Cir. 1981) (the Supreme Court's "commitment to dissemination of information of interest and value to the public" is equally served by news reports on public and non-public records); *Komarov v. Advance Mag. Publs.*, 691 N.Y.S.2d 298, 300 (Sup. Ct. N.Y. Cnty. 1999) (privilege applies generally to "any pleading made within the course of [a judicial] proceeding," including an affidavit "not prepared for public consumption"). The decision in *Stevenson v. News Syndicate Co., Inc.*, from which Plaintiff quotes extensively, deals with an outdated version of New York's fair report statute that expressly applied only to reports of "public" proceedings.  96 N.Y.S.2d 751,755-56 (2d Dep't 1950).  That decision is doubly irrelevant here because it addressed the application of the privilege to matrimonial records that in New York are presumptively sealed by statute, *id.*, which family court records in Florida are not.  (*See* Compl. ¶ 89 (alleging that Delgado filed the Supplement "in the public record"); ¶ 152 (explaining that the public can obtain access to family court records, except those that are sealed).)  Plaintiff's reliance on *Nixon v. Warner Communications*, 435 U.S. 589, 609 (1978), which addressed whether the First and Sixth Amendments required the release of Nixon's White House tapes to the press for copying and has nothing to do with the fair report privilege, is simply inexplicable and completely irrelevant.

In the end, Plaintiff's attempt to impose a bright line rule precluding application of the fair report privilege to nonpublic filings by private litigants finds no support in the law.  It is well-established that that the privilege must not be construed in a manner that would "curtail the scope of the privilege and thus restrict the press's ability to serve its basic function."  *Gubarev*, 2018 WL 6683647, at *9; *see also Cholowsky*, 887 N.Y.S.2d at 595 ("The case law has established a liberal interpretation of the 'fair and true report' standard of Civil Rights Law § 74 so as to provide broad protection to news accounts of judicial or other proceedings.").  Plaintiff's policy arguments are, therefore, baseless.

Finally, Plaintiff makes no attempt whatsoever to argue that the Article is not a fair and accurate report of what the Supplement says.  Without any allegations of falsehood, his defamation claim must be dismissed.  *See Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. 3d DCA 1993) (once the fair report attaches, it can be defeated only where the

challenged report is not "reasonably accurate and fair"); *Glendora v. Gannett Suburban Newspapers*, 608 N.Y.S.2d 239, 240-41 (2d Dep't 1994) (where a report is a "fair and true" account of court record, the Section 74 privilege is "absolute"). Plaintiff does not dispute that Defendants accurately reported on a document that was publicly filed in open court and has never been sealed. And even if Plaintiff had plausibly alleged that the Supplement were restricted from public view at any time, Defendants were entitled to report on it. Plaintiff's claim must therefore be dismissed.

## III.    PLAINTIFF'S NON-DEFAMATION CLAIMS MUST BE DISMISSED

Plaintiff's attempt to save his privacy claim fails with his very first sentence: "Under New York Law, Miller's claim for invasion of privacy is actionable[.]" (Opp. 16.) To the contrary, New York's highest court has expressly held that New York "ha[s] no common law of privacy" and does not recognize the privacy torts that are actionable in other jurisdictions. *Howell v. New York Post Co., Inc.*, 596 N.Y.S.2d 350, 354 (N.Y. 1993). This conclusively disposes of Plaintiff's privacy claim under New York law. Plaintiff attempts to confuse the issue by referring to New York Civil Rights Law § 51 (Opp. 17) – New York's right of publicity statute – which is inapplicable on its face. That provision, which is to be narrowly construed, is "strictly limited to nonconsensual commercial appropriations of the name, portrait or picture of a living person." *Messenger ex rel. Messenger v. Gruner + Jahr Printing and Pub.*, 706 N.Y.S.2d 52, 55 (N.Y. 2000). It does not provide a cause of action for damages for publication of private facts, *see Freihofer v. Hearst Corp.*, 490 N.Y.S.2d 735, 739 (N.Y. 1985), and Plaintiff has not pled the elements of a § 51 claim. Section 51 in fact does not apply "to reports of newsworthy events or matters of public interest." *Messenger ex rel. Messenger*, 706 N.Y.S.2d at 55 ("newsworthiness" is to be "broadly construed" and includes articles on "any subject of public interest"); *see also Bement v. NYP Holdings, Inc.*, 760 N.Y.S.2d 133, 136 (1st Dep't 2003) (article relating to sexual relationships of public officials was "clearly . . . newsworthy"). The same holds true for Florida's right of publicity statute. *See* Fla. Stat. § 540.08 (cause of action for unauthorized use of name or likeness "shall not apply" to any "bona fide news report . . . having a current and legitimate public interest").

Similarly, Plaintiff fails to grapple with the controlling precedent that dictates dismissal of his privacy claim under Florida law. Florida's public disclosure of private facts tort requires a plaintiff to show the disclosure of *truthful* private facts. *See Tyne v. Time Warner Entm't Co.*,

204 F. Supp. 2d 1338, 1344 (M.D. Fla. 2002), *aff'd* 425 F.3d 1363 (11th Cir. 2005) (private facts tort requires "the dissemination of *truthful* private information").  Plaintiff's contention that the Article "disclosed to millions of people *fabricated claims*" contained in the Supplement (Opp. 1 (emphasis added)) cannot support a private facts claim as matter of law.  Though Plaintiff once again tries to assert that the truthful "private" fact disclosed by Defendants is "the non-public fact [that] the allegations [in the Supplement] were made" (Opp. 17), the existence of the Supplement is a matter of public record and therefore not actionable.  *Heath v. Playboy Enters., Inc.*, 732 F. Supp. 1145, 1148 (S.D. Fla. 1990).  At bottom, Plaintiff objects to the "scandalous, morbid, and sensational accusations" in the Article, which he claims "have no place in the public domain."  (Opp. 18.)  But because he has not alleged they are truthful, his invasion of privacy claim fails as a matter of law.

Finally, Plaintiff tries to circumvent Florida's single action rule and avoid dismissal of his duplicative non-defamation claims under New York law simply by describing the ways in which he claims to have been injured by Defendants' publication of the Article.  (Opp. 19.)  He claims that Defendants have engaged in "[a] conspiracy to abuse the protections of the First Amendment" (by publishing the Article); "deprived him of the right to permanently remove the Supplement from the public domain" (by publishing the Article); "refused to pull the Article even after Miller advised them it was sealed and false" (*i.e.*, by continuing to publish the Article); and, in Krueger's case, "tweet[ed] the article to her followers" (*i.e.*, discussed the publication of the Article).  (*Id.*)  No matter how many ways Miller may choose to characterize his claims, they hinge entirely on a single factual allegation: that Defendants published the Article, something they were allowed to do, and in connection with which Plaintiff fails to plausibly allege a single legally wrongful act.  These additional claims must likewise be dismissed as a matter of law.  *See Klayman v. Judicial Watch Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014) (single action rule mandates dismissal of tort claims based on same facts as defamation claim); *Fleisher v. NYP Holdings, Inc.*, 104 A.D.3d 536, 538-9, 961 N.Y.S.2d 393, 395 (1st Dep't 2013) (dismissing tort claims as duplicative of defamation claims).

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening memorandum of law, Defendants respectfully request that the Court dismiss the Complaint in its entirety, with prejudice.

Dated: January 2, 2019

Respectfully submitted,

/s/ *Elizabeth A. McNamara*                           /s/ *Deanna K. Shullman*
Elizabeth A. McNamara (*pro hac vice*)         Deanna K. Shullman (Florida Bar No. 514462)
Katherine M. Bolger (*pro hac vice*)           Rachel Fugate (Florida Bar. No. 144029)
Claire K. Leonard (*pro hac vice*)             Giselle M. Girones (Florida Bar. No. 124373)
DAVIS WRIGHT TREMAINE             SHULLMAN FUGATE PLLC
1251 Avenue of the Americas, 21st Floor    2101 Vista Parkway, Suite 4006
New York, New York 10020                West Palm Beach, FL 33411
Telephone: (212) 489-8230              Telephone: (561) 429-3619
lizmcnamara@dwt.com                    dshullman@shullmanfugate.com
katebolger@dwt.com                     rfugate@shullmanfugate.com
claireleonard@dwt.com                  ggirones@shullmanfugate.com

*Attorneys for Defendants Gizmodo Media*
*Group, LLC and Katherine Krueger*

11

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2019, a true and correct copy of the foregoing has been served by CM/ECF on all counsel or parties of record on the service list.

/s/Deanna K. Shullman
Deanna K. Shullman
Florida Bar No. 514462

## SERVICE LIST

*Attorneys for Plaintiff:*

Kenneth G. Turkel, Esq.
kturkel@bajocuva.com
Shane B. Vogt, Esq.
shane.vogt@bajocuva.com
BAJO CUVA COHEN TURKEL
100 N. Tampa Street, Ste. 1900
Tampa, FL 33602
Telephone: (813) 443-2193

*Attorneys for Defendant Will Menaker:*

Charles D. Tobin, Esq.
tobinc@ballardspahr.com
Chad R. Bowman, Esq. (*pro hac vice*)
bowmanchad@ballardspahr.com
Maxwell S. Mishkin, Esq. (*pro hac vice*)
mishkinm@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Telephone: (202) 661-2218