UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:18-cv-24227-CMA

JASON MILLER,

     Plaintiff,

      v.

GIZMODO MEDIA GROUP, LLC,
a Delaware Corporation, KATHERINE
KRUEGER, individually, and
WILL MENAKER, individually,

     Defendants.

_____/

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND
AND INCORPORATED MEMORANDUM OF LAW**

{BC00184016:1}

Plaintiff, Jason Miller ("Miller" or "Plaintiff"), by counsel and pursuant to Rules 15 and 16(b) of the Federal Rules of Civil Procedure, moves for leave to amend his First Amended Complaint against Defendants, Gizmodo Media Group, LLC ("Gizmodo"), Katherine Krueger ("Krueger") and Will Menaker ("Menaker"), after the December 19, 2018 deadline to amend pleadings set forth in this Court's Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge [Doc. 19] (the "Scheduling Order"), and states in support as follows:

<u>**INTRODUCTION**</u>

Far from being "frivolous," this case presents a clear picture of how people supposedly acting as "journalists" manipulate the First Amendment to try to insulate themselves from liability for attacking someone they despise while they generate online views and revenue in the process. From the outset, Miller alleged he was targeted by Defendants because of his political associations and their ill-will, greed, and personal animosity. [Doc. 5 ¶¶ 10, 95, 118, 127, 129] Until December 31, 2018, Miller did not know *and could not have known* just how deep Defendants' hatred runs, the full extent of their actual malice, nor what transpired behind the scenes before Defendants intentionally and knowingly abused the power of speech. It was only after Defendants' December 31, 2018 discovery responses Miller learned specific details about Defendant's subjective motivation for attacking him:

> He was a top tier scumbag even before this Jesus

> "Jason Miller is fat faced goatee pervert and C?m dumping retard who should be forcibly sterilized"

That baby killing wet brained panty sniffer



What a retard     KRUEGER-000019

(*See* **Exhibit 1**; Krueger-000001-02, 000004, 000019)

As is often the case, media defendants are seeking an expedited dismissal of this action under First Amendment principles before discovery can run its full course. That request inherently risks the premature disposition of viable claims before Miller has the benefit of meaningful discovery of *all* the facts, including facts which (like those depicted above) *are solely within the Defendants' knowledge* but essential to certain elements of Plaintiff's claims, including actual malice and personal jurisdiction.

While Menaker in large part stonewalled Miller's jurisdictional discovery and produced no documents, Defendants Gizmodo and Krueger provided some discovery and documents. The minimal discovery provided thus far bolsters Miller's existing actual malice and personal jurisdiction allegations and refutes arguments raised in Krueger's and Gizmodo's [Doc. 44] and Menaker's anticipated [Doc. 30] motions to dismiss. In particular, Krueger's recently disclosed internal communications with Gizmodo and her messages with her boyfriend,[1] Menaker, add substantial support for Miller's existing actual malice and jurisdictional allegations and demonstrate the grounds upon which Defendants' have or will argue dismissal is warranted under the First Amendment lack merit.

This recent discovery revealed not only direct and circumstantial evidence of actual malice beyond what Miller already plausibly alleged [Doc. 5, ¶¶ 123-143], but new evidence concerning Gizmodo's and Krueger's knowledge concerning whether the Supplement they published was sealed, as well as their knowledge and belief they could not publish sealed court filings. The recent discovery also revealed Menaker's knowledge of the connections between his

---

[1]   Prior to filing the First Amended Complaint, Miller's counsel researched the potential romantic relationship between Krueger and Menaker alluded in Menaker's October 16, 2018 tweet, but found conflicting evidence on social media concerning whether they were actually romantically involved. Consequently, Miller's counsel was not comfortable under Rule 11 alleging they were boyfriend and girlfriend in the First Amended Complaint.

tortious conduct and Florida, as well as his personal, private reasons for his defamatory tweet about Miller.  Although Menaker seeks to shroud his defamatory tweet about Miller in First Amendment protection by touting his background as a "podcaster and satirist" and "leftist commentator," and by labeling his defamatory tweet "rhetorical hyperbole" [Doc. 30 pp. 1], the new evidence demonstrates he was not a disinterested journalist weighing in on an article about a "prominent conservative political operative" who merely "mocked Miller's litigious behavior in colorful and clearly sarcastic terms."   [Id.]   In reality, Menaker defamed Miller for personal reasons after his girlfriend was sued and because he was angry and despises Miller; and Menaker did so in concert with Krueger while they pondered how the defamatory tweet would impact this Florida case:



(*See* **Exhibit 2**; Krueger 000017-18)

Miller seeks leave to amend his First Amended Complaint to incorporate these and other facts learned through recent discovery, as well as facts Miller diligently although recently determined through an independent investigation into Menaker's Twitter followers (information

Menaker refused to provide).  Miller's proposed amendment also addresses alleged pleading deficiencies raised in Gizmodo's and Krueger's pending [Doc. 44] and Menaker's anticipated [Doc. 30] motions to dismiss.  To the extent necessary based on Defendants' arguments, Miller's proposed additional factual allegations provide further support for his claims against Defendants, refute or resolve factual and legal issues raised in Defendants' motions to dismiss, and further establish this Court's personal jurisdiction over Menaker and the viability of Miller's defamation claim against him.  Through his proposed Second Amended Complaint, Miller seeks to:

1. Allege additional facts in support of his allegations that Menaker engaged in tortious acts in, directed to, and causing harm in the state of Florida;

2. Allege additional facts in support of his allegations that Menaker's defamatory tweet was posted with actual malice and is not protected by the First Amendment; and

3. Allege additional facts in support of his allegations that Krueger and Gizmodo acted with actual malice and their knowledge about the court filing they published about Miller being sealed and that they could not publish sealed court filings; and

4. Separately allege claims for Invasion of Privacy by Publication of Private Facts and Invasion of Privacy by Misappropriation to address arguments raised by Krueger and Gizmodo.

A copy of Plaintiff's proposed Second Amended Complaint is attached hereto as **Exhibit 3**.

## OVERVIEW OF THE CASE

Miller initially sued Defendants Krueger and Gizmodo for defamation, tortious interference, intentional infliction of emotional distress, invasion of privacy, and conspiracy because they published an article about (the "Article") and a full copy of a fabricated and defamatory court filing from a Miami-Dade family law case (the "Supplement") that was sealed and exempt from public view.  [Doc. 1]  Among other things, the Article and Supplement stated Miller attempted to murder, and killed the unborn child of, one woman, beat another woman, and tried to cover up these horrific crimes.  On October 18, 2018, Miller filed his First Amended

Complaint to address the diversity of Gizmodo [Doc. 4] and to add Defendant Menaker as a party and assert a defamation claim against him for posting a tweet on October 16, 2018 stating Miller is a "baby killer." [Doc. 5]

Miller maintained he was the target of Defendants' tortious attacks for personal, political, and economic reasons, and because Miller was a prime target for attacks against Trump supporters, which inflame passions and drive readership. [Doc. 15 ¶¶ 127-130, 117-118, 142-143] Miller also alleged Defendants were driven by ill-will and hostility toward Miller. [*Id.* ¶¶ 127, 118] Miller alleged actual malice and personal jurisdiction over Defendants based on the limited information available to him at that time concerning their subjective intent and Menaker's connections in Florida.

Defendants Krueger and Gizmodo moved to dismiss Miller's complaint, arguing Miller failed to state a cause of action because they are protected by the First Amendment and fair reporting privilege, and because Miller failed to state viable causes of action for the other torts he alleged. [Doc. 44] Among other things, Gizmodo and Krueger suggest the Supplement they published was not sealed and they had no way of knowing it was sealed, as "there has been no indication whatsoever on the public docket that the Supplement is under seal." [*Id.* at p. 2] Although Miller objects to, disagrees with, and refuted these contentions [Doc. 33], Krueger's recently produced messages and e-mails (discussed below) show their argument is not accurate.[2]

---

[2] Without knowing how the Court will rule on the motion to dismiss [Doc. 44], nor whether the Court is inclined to consider outside evidence proffered by Gizmodo and Krueger over Miller's objection [Doc. 53 at p. 3], Miller in part seeks leave to amend as to Gizmodo and Krueger to the extent the Court is persuaded by their arguments or accepts their evidence and believes Miller's current allegations against them are insufficient to state a plausible claim for relief. However, Miller believes his claims against Gizmodo and Krueger are properly pleaded in the First Amended Complaint.

Defendant Menaker is expected to contest personal jurisdiction and the merits of Miller's claims. [Doc. 30] Menaker may challenge the facial sufficiency of Miller's existing jurisdictional allegations [*Id.* at p. 7] and argue his tweet was insufficient to subject him to jurisdiction in Florida. [*Id.* at pp. 7-10] Menaker may argue he cannot be held liable for his tweet because it is nonactionable rhetorical hyperbole and protected opinion. [Doc. 30 at pp. 11-16] Menaker also may argue Miller failed to plausibly allege actual malice. [*Id.* at pp. 17-20] Miller disagrees with each argument and believes the basis for personal jurisdiction and his defamation claim against Menaker are sufficiently pleaded. However, based on the recently obtained discovery, Miller now can and seeks leave to allege previously unknown facts that further support personal jurisdiction over Menaker and the viability of Miller's claim against him.

## PROCEDURAL BACKGROUND

This lawsuit was filed October 15, 2018 [Doc. 1]. Defendants Krueger and Gizmodo formally agreed to accept service on October 24, 2018 [Doc. 9 and 10]. Menaker was personally served on October 20, 2018 [Doc. 13].

On November 1, 2018, the parties held an attorney conference pursuant to this Court's October 24, 2018 Order [Doc. 11]. On November 6, 2018, the parties submitted their Joint Scheduling Report [Doc. 18], which among other things proposed a deadline of March 11, 2019 to amend or add parties so the parties "can conduct preliminary discovery to determine whether amendments to the pleadings are necessary." [Doc. 18 at p. 2] On November 7, 2018, the Court

entered her Scheduling Order [Doc. 19] setting December 19, 2018 as the deadline to file motions to amend pleadings or join parties.[3]

On November 30, 2018, Plaintiff served interrogatories, requests for production and requests for admission on Gizmodo and Krueger; as well as personal jurisdiction interrogatories and requests for production on Menaker.   On November 30, 2018, Plaintiff also issued subpoenas for documents to a central non-party, Arlene Delgado ("Delgado"), and her former counsel.[4]   Among other things, those subpoenas sought documents relevant to identifying Defendants' source of the Supplement

On December 6, 2018, Defendants Krueger and Gizmodo [Doc. 31] and Defendant Menaker [Doc. 30] filed motions to dismiss.   On December 7, 2018, the Court entered her Order [Doc. 33] denying Defendants' motions to dismiss without prejudice and directing Defendants to comply with her October 24, 2018 Order [Doc. 12].   The same day, the Court scheduled a hearing on December 11, 2018 [Doc. 34] to address jurisdictional discovery related to Menaker's anticipated motion to dismiss.   At that hearing, Menaker's counsel noted his objection to the jurisdictional discovery served by Miller on November 30, 2018.   Following the hearing, the Court issued her Order reinstating Krueger's and Gizmodo's Motion to Dismiss and directing Miller and Menaker to file joint status reports on the progress of jurisdictional discovery. [Doc. 40]

On December 19, 2018 [Doc. 48], and by renewed motion filed December 20, 2018 [Doc. 50], Plaintiff moved to extend the deadline to amend pleadings up to and including

---

[3] The trial date is set for the trial term beginning September 3, 2019; the deadline to file pre-trial motions is set for May 21, 2019; and the deadline to complete mediation is May 13, 2019.

[4] Delgado objected, claimed privilege, and refused to produce any responsive documents to Miller.   [Doc. 47]   Delgado's former counsel responded that he had no responsive documents. (*See* **Exhibit 4**)

February 19, 2019; noting Defendants' discovery responses were not due until December 31, 2018 and that Delgado objected to her subpoena.   On December 21, 2018, the Court denied Plaintiff's motion seeking to extend the amendment deadline.   [Doc. 51]   On December 26, 2018, Miller responded to Gizmodo's and Krueger's Motion to Dismiss [Doc. 53].   Gizmodo's and Krueger's Motion to Dismiss was fully briefed on January 2, 2019 [Doc. 54], and is set for hearing on January 14, 2019.

## NEWLY DISCOVERED EVIDENCE

On December 31, 2018, Gizmodo and Krueger served their written responses to *some*[5] of Miller's discovery requests and produced some documents.[6]   Among other things, Gizmodo and Krueger produced:

- A series of messages between Krueger and Gizmodo Editor Tim Marchman on Friday, September 21, 2018, before the Supplement was published, in which Marchman locates the online public docket for Miller's family case and Marchman and Krueger immediately (and contrary to their argued position at Doc. 44 p. 2) recognize the Supplement may be sealed;

- A string of e-mails between Krueger and Delgado from September 21, 2018 in which Krueger asks if the Supplement is sealed, and in response Delgado claims (incorrectly) it was not sealed yet but was the subject of Miller's motion to seal it which was to be heard in the Florida family case on September 24, 2018;

- E-mail strings on September 21, 2018, *before* the Article and Supplement were published, between Krueger, Gizmodo's in-house legal department, and Gizmodo's Florida outside counsel of record[7] in this case, which

---

[5]   On December 12, 2018, counsel for Krueger and Gizmodo asked for an extension until January 30, 2019 to respond to Miller's discovery.   Miller agreed in part, but insisted Krueger and Gizmodo to respond to certain discovery requests (those pertinent to the pending and anticipated motions to dismiss) by the original December 31, 2018 deadline so as to remain diligent in pursuit of facts that may be necessary to support an amendment.

[6]   Krueger and Gizmodo objected to Miller's interrogatories and requests for production seeking information and documents about their source of the Supplement based on journalist shield privileges.   (*See* **Composite Exhibit 5**)

[7]   As alleged in Miller's proposed Second Amended Complaint (Ex. 3), Gizmodo's outside counsel is well-versed in Rule 2.420, Fla. R. Jud. Admin., and knew and would have conveyed to

occurred in response to Krueger's and Gizmodo's concerns (even after e-mailing Delgado) the Supplement was sealed and their recognition it could not be published because it was sealed and was subject to Miller's sealing motion;

- iMessages between Krueger and Menaker *before* the Supplement was published recognizing the accusations in the Supplement are inherently improbable and also commenting Miller is a "top tier scumbag;" and

- iMessages between Krueger and Menaker after Krueger learned about Miller's lawsuit, in which she and Menaker confirm their personal relationship and ill-will and hostility toward Miller, and then agree Menaker should publish his October 16, 2018 defamatory tweet for personal reasons even though it could impact this Florida lawsuit:



---

Gizmodo and Krueger that Miller's motion to seal the Supplement automatically sealed it.  (*See* Ex. 3 ¶ 111)

That's so retarded

That baby killing wet brained
panty sniffer



What a retard     KRUEGER-000019

Quite a badge of honor **to** be
sued for a hundred mill

On December 31, 2018, Menaker served his responses and objections to Miller's jurisdictional discovery. (*See* **Exhibit 6**)  Menaker did not produce any documents.  Among other things, Miller sought information and documents to ascertain:  Menaker's Twitter followers and which of them were located in Florida; information about Menaker's communications with Krueger; and Menaker's contacts with Florida.  In response, Menaker directed Miller to search his publicly available list of approximately 82,000 Twitter followers[8] and objected to discovery regarding his communications with Krueger.

In the interim, Miller's outside consultant, Trial Consulting Services, had already been engaged to complete a review and analysis of Menaker's Twitter followers to identify followers located in Florida.  (*See* **Exhibit 7**)   This process required purchasing a report from an aggregator, a random sampling verification process, and manual reviews to verify the results.  That work was not completed until January 7, 2019.  (*Id.*)  Then, those results had to be (and still are being) reviewed and cross-checked against Menaker's followers who made impressions on (or accessed) Menaker's October 16, 2018 tweet.  (*Id.*)  So far, Miller has confirmed at least 200 of Menaker's followers have a Florida location and that his defamatory tweet was accessed in Florida.

---

[8]  Menaker has access to functions on his Twitter account as the user that Miller does not.  For example, Menaker can use features to easily access all of his followers' impressions on his tweet.

## MEMORANDUM OF LAW

Miller recognizes his obligation to show good cause to amend after the deadline in the Scheduling Order. *John Morrell & Co. v. Royal Caribbean Cruises Ltd.*, 243 F.R.D. 699 (S.D. Fla. 2007); *Percival v. FAM Trip Tours.com, LLC*, 2006 WL 8432181 (S.D. Fla. Jul. 13, 2006). "Good cause" exists where a scheduling deadline could not have been met despite the movant's diligent efforts to do so. *John Morrell & Co.*, 243 F.R.D. at 701 (*citing Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

"Diligence" is evaluated by considering: (1) whether plaintiff failed to ascertain facts prior to filing the Complaint and to acquire information during the discovery period; (2) whether the information supporting the proposed amendment was available to plaintiff; and (3) whether even after acquiring the information the plaintiff delayed in seeking amendment. *Kernal Records Oy v. Mosley*, 794 F.Supp.2d 1355, 1369 (S.D. Fla. 2011) (citing *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F.Supp.2d 1371, 1375 (M.D. Fla. 2009)). If good cause is shown through diligence, amendment should be given freely when justice so requires, in the absence of undue delay, bad faith, dilatory motive, repeated failures to cure pleading deficiencies, undue prejudice, futility, etc. *Hurtado v. Raly Development, Inc.*, 281 F.R.D. 696, 700 (S.D. Fla. 2012).

Miller was diligent in ascertaining *available* facts before filing the Complaint and in acquiring the information upon which amendment is sought during the discovery period, which only recently began. Virtually all of the information supporting the proposed amendment was not available to plaintiff before discovery (with the exception of Menaker's Twitter followers' locations and their impressions on his tweet – which Miller diligently hired an outside consultant to research and verify and was an involved and time consuming process). After acquiring

Defendants' discovery responses on December 31, 2018, conducting extensive legal research based on those newly discovered facts and the many nuanced constitutional arguments raised in the motions to dismiss, and incorporating those facts and the law into this motion and his proposed Second Amended Complaint, Miller promptly sought leave to amend within 11 days.

Unlike the plaintiff in *Kernal Records*, Miller is not waiting to see how the court rules before seeking leave.  794 F.Supp.2d at 1370.  The discovery responses Miller received on December 31, 2018 revealed new material facts Miller was unable to uncover outside formal discovery in this lawsuit.  In particular, Miller's discovery sought communications between and amongst the Defendants and non-parties and information about Defendants' subjective intent that Miller had no way of obtaining absent formal discovery powers.

Consequently, Miller was unable to amend by the deadline because responses to the discovery he served on November 30, 2018 were not yet due.  Miller was not dilatory in serving his initial discovery requests.  They were served just over three weeks after the Scheduling Order was entered, and before Defendants had even formally moved to dismiss or answered Miller's Complaint.

Miller recognizes the filing of a complaint is not an invitation to engage in a fishing expedition to establish a plausible claim for relief.  [Doc. 51]  Indeed, Miller maintains his First Amended Complaint already meets the *Iqbal* and *Twombly* standard,[9] even though cases involving the First Amendment—much like cases involving personal jurisdiction challenges—

---

[9] A plaintiff's burden to plausibly allege elements of a cause of action is "exceedingly low." *Williams v. Jeremiah's International Trading Co., Inc.*, 2009 WL 1587216 (M.D. Fla. June 5, 2009); *Elias v. Rolling Stone, LLC*, 872 F.3d 97, 111 (2d Cir. 2017) (Lohier, J., concurring in part and dissenting in part) ("[A]s the majority points out, the plausibility threshold is exceedingly low.") (citing *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184-85 (2d Cir. 2012); *Workneh v. Super Shuttle Int'l, Inc.*, 2017 WL 1185221, *3 (S.D.N.Y. Mar. 28, 2017); *Bailey v. N.Y. Law Sch.*, 2017 WL 835190, *7 (S.D.N.Y. Mar. 1, 2017).

involve many critical facts a plaintiff cannot learn through reasonable diligence before a suit is filed.

In cases such as this one, where actual malice is an element of a claim and the full factual context surrounding challenged speech are at play, the defendant's subjective intent is a central issue. By nature, facts concerning a publisher's subjective mental state are not reasonably available before a lawsuit is filed. "Malice may be proved inferentially because it is a matter of the defendant's[10] subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000).

The new facts Miller discovered provide direct and circumstantial evidence of Defendants' subjective intent and additional support for Miller's existing actual malice allegations and allegations surrounding the context of Defendants' speech. A plaintiff's allegations of direct and circumstantial facts must be viewed in totality to determine whether they plausibly set forth knowledge of falsity or reckless disregard for the truth. *Celle*, 209 F.3d at 183 ("There is no doubt that evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity."). The totality of these circumstances includes, among other factors: bias or ill-will; motive; failure to investigate; a predetermined and preconceived plan to malign plaintiff's character; refusals to retract; and inherently improbable defamatory statements. *Connaughton*, 491 U.S. at 668; *Celle*, 209 F.3d at 183; *Hunt*

---

[10] Defendants "are prone to assert their good-faith belief" in their actions  and "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself," and thus plaintiffs necessarily rely on circumstantial evidence to allege and prove their claims.  Herbert v. Lando, 441 U.S. 153, 170 (1979); Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 668 (1989).

*v. Liberty Lobby*, 720 F.2d 631, 645 (11th Cir. 1983); *Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir. 1995) ("[I]ll will is considered circumstantial evidence of actual malice."); *Duffy v. Leading Edge Prods., Inc.*, 44 F3d 308, 315 n. 10 (5th Cir. 1995) ("[E]vidence of ulterior motive can often bolster an inference of actual malice."); *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969) (jury can find actual malice based on "a predetermined and preconceived plan to malign [the plaintiff's] character."); *Ham's v. City of Seattle*, 152 F.Appx. 565, 568 (9th Cir. 2005); *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 539 (7th Cir. 1982); *Alioto v. Cowles Comm., Inc.*, 519 F.2d 777, 780-81 (9th Cir. 1975), *aff'd*, 623 F.2d 616 (9th Cir. 1980); *Sharon v. Time, Inc.*, 599 F.Supp. 538, 576 (S.D.N.Y. 1984); *Sisemore v. U.S. News & World Report, Inc.*, 662 F. Supp. 1529, 1536 (D. Alaska 1987); *Tosti v. Ayik*, 476 N.E.2d 928, 936 (Mass. 1985), *aff'd*, 508 N.E. 2d 1368 (Mass. 1987); *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015); *Tavoulareas v. Piro*, 763 F.2d 1472, 1477 (D.C. Cir. 1985), vacated on other grounds, 759 F.2d 90 (D.C. Cir. 1985); *Zerargue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987); *Spacecon Specialty Contractors, LLC v. Besinger*, 713 F.3d 1028, 1057-58 (10th Cir. 2013) (rush to publish despite lack of time pressure is actual malice); *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987) (malice can be established when statement is so inherently improbable only a reckless man would have put it in circulation); *Vasquez v. O'Brien*, 85 A.D.2d 791, 792 (3d Dep't 1981) ("The context of the statements themselves and the context in which they arose may give rise to significant suggestions of possible falsity which should alert the speaker… [and] inaccurate or untrue use of language, in the intense political climate then prevailing, could certainly be found to be evidence of actual malice…").

Here, Miller already alleged many of these factors [Doc. 5 ¶¶ 123-143, 118] and believes his existing allegations are legally sufficient to state plausible claims for relief against all Defendants.  Menaker argued otherwise [Doc. 30 pp. 17-20].  To the extent the Court may agree, Miller now can and seeks leave to allege additional facts learned through the recent discovery to further demonstrate Menaker's actual malice.  Specifically, Menaker's and Krueger's iMessages about Miller are direct and circumstantial evidence of bias, ill-will, motive, and a preconceived plan to malign Miller that combined with other alleged facts support a finding of actual malice. *Connaughton*, 491 U.S. at 668; *Celle*, 209 F.3d at 183; *Shoen*, 48 F.3d at 417; *Duffy*, 44 F.3d at 315 n.10; *Biro*, 807 F.3d at 546; *Goldwater*, 414 F.2d at 337.  Menaker's preconceived plan to malign Miller and deliberate or purposeful avoidance of the falsity of his defamatory tweet further support a finding of actual malice. *Goldwater*, 414 F.2d at 337; *Harris*, 152 F.App'x. at 568; *Gertz*, 680 F.2d at 539; *Alioto*, 519 F.2d at 780-81; *Sharon*, 599 F.Supp. at 576; *Sisemore*, 662 F.Supp. at 1536; *Tosti*, 476 N.E.2d at 936.

Actual malice also can be inferred from the relation of the parties, the circumstances attending the publication, the terms of the publication itself, and from the words or acts of the defendant before, at, or after the time of the communication. *DR Partners v. Floyd*, 228 S.W.3d 493, 498 (Tex. App. – Texarkana 2007) (citing *Proctor & Gamble Mfg. Co. v. Hagler*, 880 S.W.2d 123, 126 (Tex. App. – Texarkana), *writ denied*, 884 S.W.2d 771 (Tex. 1994); *Ball v. E.W. Scripps Co.*, 801 S.W.2d 684, 686-87 (1990) (evidence of bias or hostility lends evidence to other circumstances showing actual malice including holding a grudge).  Here, the recent discovery shows Menaker held a personal grudge against Miller because Miller sued his girlfriend, and that in words before and at the time of his defamatory tweet Menaker acted out of ill-will, hostility, and bias toward Miller.

Krueger's and Gizmodo's recently produced internal communications also reveal direct and circumstantial evidence of their serious doubts about the inherent improbability and seriousness of the accusations in the Supplement, as well as their knowledge they could not publish sealed court filings, serious doubts (if not actual knowledge) about whether the Supplement was sealed, actual or imputed knowledge through their counsel the Supplement was sealed, and their rush to publish the Supplement with a grossly inadequate investigation and for no legitimate reason. *St. Amant*, 390 U.S. at 732; *Dalbec*, 828 F.2d at 927; *Vasquez*, 85 A.D.2d at 792; *Hunt*, 720 F.2d at 645; *Bensinger*, 713 F.3d at 1057-58; *Butts*, 388 U.S. at 158.

The new facts also are relevant to Gizmodo's and Krueger's argument Miller's non-defamation claims are barred by the single action rule.  For example, Krueger's October 16, 2018 agreement with Menaker to post his defamatory tweet served a purpose of reinforcing Krueger's original publication of the Defamatory Article and Supplement.  Essentially, Krueger enlisted her boyfriend to use his large Twitter following to confirm that Miller is indeed a "baby killer," as first professed in her Defamatory Article.

The newly discovered evidence concerning Menaker's personal and private motivations when he defamed Miller also lends further support to Miller's defamation claim.  Specifically, the Supreme Court recognizes speech concerning a personal dispute cannot be disguised as speech about matters of legitimate public concern to be shielded from liability.  *Connick v. Myers*, 461 U.S. 138, 148 (1983).  Where the circumstances surrounding a defamatory statement are alleged to show the statement was uttered as a personal attack and that a defendant's claimed commentary on public matters was merely contrived to try to insulate speech on a private matter from liability, there is no first amendment protection.  *Snyder v. Phelps*, 562 U.S. 443, 455 (2011).

Speech uttered incident to a personal dispute is not constitutionally protected. *Connick*, 461 U.S. at 148, 153-54. As Justice Alito recognized in his dissent in *Snyder*:

> This Court has recognized that words may "by their very utterance inflict injury" and that the First Amendment does not shield utterances that form "no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942); *see also Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940) ("[P]ersonal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution.").

562 U.S. at 465.

Here, like in *Gersh v. Anglin*, 2018 WL 5962480, *4 (D. Mont. Nov. 14, 2018), Miller now can assert previously unknown facts through which he can plausibly allege Menaker's speech "involved a matter of strictly private concern," and that Menaker's "speech on public matters [if any] was intended to mask an attack… over a private matter." These new facts also demonstrate Menaker tried to turn his personal hostilities into a "cause celébre." *Id.*

As for personal jurisdiction over Menaker, the discovery Miller recently obtained along with his own investigation into the location of Menaker's Twitter followers (which Menaker refused to disclose) revealed new facts solidifying jurisdiction. Through personal jurisdiction discovery, Miller confirmed Menaker's knowledge this lawsuit and Miller's paternity case were pending in Florida. (*See* Ex. 6, Int. Nos. 5-7) Miller also confirmed Menaker has Twitter followers in Florida and that those followers accessed his defamatory tweet. (*See* Ex. 7) Krueger's document production also revealed she and Menaker worked in concert with one another to defame Miller for personal reasons despite Menaker's recognition the defamatory tweet could impact this lawsuit in Florida. (*See* Ex. 2)

This District recently analyzed personal jurisdiction in the context of a defamatory online article in *Gubarev v. Buzzfeed, Inc.*, Case No. 1:17-cv-60426-UU [Doc. 27] (May 22, 2017).  Applying the same long-arm statute and due process analysis from *Gubarev*, Miller can now allege a more comprehensive factual basis to establish Menaker committed a tortious act within Florida or a tortious act outside Florida that caused injury to Miller in Florida, that Miller's claim against Menaker arises out of Menaker's contacts with Florida, and that Menaker's tortious act was aimed at Florida and caused harm to Miller that Menaker should have anticipated would be suffered in Florida.  *Id.* at pp. 5-20 (citing *Madara v. Hall*, 916 F.2d 1510, 1515 (11th Cir. 1990); *Wendt v. Horowitz*, 822 So.2d 1252, 1253 (Fla. 2002); *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1215 (Fla. 2010); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013); *Calder v. Jones*, 465 U.S. 783 (1984); *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).  Miller also has a factual basis to allege jurisdiction based on the location of Menaker's Twitter followers combined with other case-related facts demonstrating Menaker expressly aimed his tweet at Florida.  *Boddy v. Pourciau*, 2018 WL 4637380, *6-7 (W.D. Wash. Sept. 27, 2018).  Menaker has approximately 200 Twitter followers in Florida, some of which accessed his defamatory tweet.  His defamatory tweet was about Miller in the context of this lawsuit in Florida and Miller's paternity case pending in Florida, which involves Miller's minor son in Florida, Miller's reputation in Florida, and Miller's parental and visitation rights in Florida.

Through his proposed amendment, Miller also seeks to address arguments raised by Defendants concerning the legal sufficiency of his First Amended Complaint in a timely manner.  For example, Miller seeks leave to separately allege causes of action for invasion of privacy by publication of private facts and invasion of privacy by misappropriation (*see* Ex. 3, Counts IV

and V) in response to arguments raised by Gizmodo and Krueger [Doc. 44, pp. 17-18; Doc. 54, pp. 9-10]. Miller seeks leave to amend to bolster his actual malice allegations against Menaker (*see* Ex. 3, ¶¶ 139-147) in response to his anticipated arguments [Doc. 30, pp. 17-20].

Miller also seeks leave to allege new, recently discovered facts addressing Menaker's contention his tweet was rhetorical hyperbole or pure opinion [Doc. 30, pp. 11-16]. Menaker's personal relationship with Krueger, his messages with her surrounding his tweet, and his actual malice (*see* Ex. 3 ¶¶ 139-147, 169-181) provide additional context to properly evaluate whether Menaker's tweet is protected speech. *Connick*, 461 U.S. at 148; *Snyder*, 562 U.S. at 455; *Florida Medical Center, Inc. v. New York Post Co., Inc.*, 568 So.2d 454, 458-459 (Fla. 4th DCA 1990) (discussing opinion and rhetorical hyperbole and how statements containing provably false factual connotations or implications of false and defamatory facts are treated); *Cianci v. New Times Publishing Co.*, 639 F.2d 54, 60-65 (2d Cir. 1980) (recognizing liability for accusations of criminal activity, even in the form of opinion, and liability for re-publication); *Friedman v. Bloomberg, L.P.*, 884 F.3d 83, 96-97 (2d Cir. 2018) (district court's dismissal of defamation claim as rhetorical hyperbole reversed because "extort" was reasonably capable of meaning plaintiff actually committed criminal act).

Miller respectfully requests leave to file his proposed Second Amended Complaint (Ex. 3) so he can support all of his claims and jurisdictional allegations with newly discovered facts that were previously unavailable to him. These new facts provide a clearer picture of why and how Miller was attacked and Defendants' subjective knowledge and intent when they defamed him, invaded his privacy, intentionally inflicted emotional distress upon him, and interfered with his ability to earn a living and support his family. They also show why Menaker is subject to jurisdiction in Florida. It is fair and reasonable that Miller be permitted an

opportunity in the very early stages of this litigation to allege all of the facts of which he is aware to support his claims and address the reasons why Defendants argue his claims should be dismissed.

Miller has not acted in bad faith or with dilatory motive, nor undue delay. He has not failed to cure deficiencies by amendments previously allowed. The amendment he seeks will not prejudice Defendants and is not futile. Over the past two months, Miller has diligently pursued discovery and a time-consuming independent investigation of jurisdictional facts through an outside consultant, while also responding to Gizmodo's and Krueger's dismissal arguments and researching and evaluating Menaker's anticipated arguments (including over and actually on the intervening holidays), and promptly incorporated the fruits of those efforts into this motion and his proposed Second Amended Complaint.

This case involves a significant number of fact intensive, complex legal issues surrounding the First Amendment that do not lend themselves to bare-bones pleadings; as well as numerous legally-significant facts Miller had no way of knowing or discovering until December 31, 2018. To suggest that Miller's counsel has not been extremely diligent in the pursuit of the facts upon which amendment is sought and in the incorporation of those facts into his proposed amended pleading based on extensive and exhaustive research on complex constitutional issues and First Amendment pleading requirements simply would not accurate.

## CONCLUSION

Miller has good cause and thereupon respectfully requests, to the extent necessary, leave to allege recently discovered facts in support of personal jurisdiction over Menaker and to address any pleading deficiencies argued by Defendants the Court may believe to exist.

## Good Faith Certification Pursuant to Local Rule 7.1(a)(3)

Counsel for Plaintiff conferred with counsel for Defendants in good faith concerning the relief requested in this motion and they oppose the relief requested herein.   Counsel for Defendants indicated they oppose the amendment as untimely and futile.   Counsel for Krueger and Gizmodo also indicated they will file an opposition today.

Dated:  January 11, 2019.                        Respectfully submitted,

                                     /s/ Shane B. Vogt
                                     Kenneth G. Turkel – FBN 867233
                                     E-mail:  kturkel@bajocuva.com
                                     Shane B. Vogt – FBN 257620
                                     E-mail:  svogt@bajocuva.com
                                     BAJO | CUVA | COHEN | TURKEL
                                     100 North Tampa Street, Suite 1900
                                     Tampa, Florida 33602
                                     Tel:  (813) 443-2199
                                     Fax: (813) 443-2193
                                     *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 11, 2019, the foregoing document was filed with

the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ Shane B. Vogt*_____
Attorney