IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

JASON MILLER,

   Plaintiff,

v.                                                    1:18-CV-24227-CMA-Altonaga

GIZMODO MEDIA GROUP, LLC, et al.,

   Defendants.

---

**DEFENDANT WILLIAM MENAKER'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT**

Pursuant to this Court's January 12, 2019 Order, Dkt. 59, Defendant William Menaker hereby opposes Plaintiff's January 11, 2019 Motion for Leave to Amend his Complaint ("Mot. for Leave"), Dkt. 57.

Menaker moved on December 6, 2018 to dismiss Plaintiff's First Amended Complaint for lack of personal jurisdiction and failure to state a claim. Mot. to Dismiss, Dkt. 30. That motion, held in abeyance during jurisdictional discovery, demonstrated that Florida's long-arm statute does not reach Menaker and that exercising personal jurisdiction over him in Florida would violate due process. *Id.* at 6-11. It also explained that the statement at issue cannot give rise to a defamation claim as a matter of law for three independent reasons: (1) the statement is a nonactionable use of rhetorical hyperbole; (2) in the alternative, the statement expresses a protected opinion based on fully disclosed facts; and (3) Plaintiff, a public figure, failed to plead facts plausibly alleging that Menaker published the statement with constitutionally required "actual malice" fault. *Id.* at 11-20.

Plaintiff belatedly now moves for leave to amend his pleadings, claiming that he has discovered "previously unknown facts" that purportedly bear on jurisdiction and the merits.

1

Mot. for Leave at 3-4.  That motion should be denied.  *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003) ("[A] motion to amend may be denied on numerous grounds such as undue delay . . . and futility of the amendment.") (citation omitted).  The proposed amendments are futile because none of the allegations Plaintiff wishes to add would allow his claim against Menaker to survive a motion to dismiss under Rule 12(b)(2) or 12(b)(6).  Moreover, the allegations that Plaintiff seeks to add regarding personal jurisdiction could have been timely pleaded, and no good cause is proffered justifying the delay.

## I.    THE PROPOSED AMENDMENTS AS TO JURISDICTION ARE UNTIMELY

Plaintiff's proposed amendments allegedly relating to personal jurisdiction should be rejected at the outset as untimely.  Where, as here, "a motion to amend is filed after the deadline imposed by the scheduling order, the moving party must show good cause to amend."  *Creative Compounds, LLC v. Starmark Labs., Inc.*, 2009 WL 8741970, at *1 (S.D. Fla. June 23, 2009), *aff'd sub nom. Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303 (Fed. Cir. 2011). "This good cause standard precludes modification of a scheduling order unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'"  *Id.* (quoting *Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695, 699 (11th Cir. 2005)).

The Scheduling Order in this case required that motions to amend the pleadings be filed by December 19, 2018.  Order at 1, Nov. 7, 2018, Dkt. 19.  On December 20, 2018, Plaintiff moved to extend that deadline, arguing in part that he needed more time to gather information about "Menaker's contacts with Florida."  Renewed Mot. to Extend Deadline at ¶ 6, Dec. 20, 2018, Dkt. 50.  The Court denied that motion because "none of Plaintiff's stated reasons amounts to good cause to modify a scheduling order."  Order at 1, Dec. 21, 2018, Dkt. 51.  The Court emphasized the rule that "[t]he filing of a complaint is not an invitation to engage in a fishing

expedition," and that "reasonable diligence must take place prior to commencing litigation." *Id.* at 1-2.

On January 11, 2019, Plaintiff filed his present Motion for Leave to Amend his First Amended Complaint, along with a copy of his proposed Second Amended Complaint. As discussed in Part II, *infra*, all of Plaintiff's proposed amendments are futile as a matter of law. But, as a threshold matter, the information purportedly relevant to personal jurisdiction also could have been timely pleaded.

<u>First</u>, Plaintiff proposes to add allegations about the location of Menaker's public Twitter followers. Mot. for Leave at 10. Plaintiff states that he retained the services of an outside consultant "to complete a review and analysis of Menaker's Twitter followers," and that based on those results, he has now "confirmed" that out of Menaker's approximately 82,000 followers, "at least 200 . . . have a Florida location." *Id.* But the consultant avers that Plaintiff's counsel did not contact him about this task until "early December 2018." Decl. of Erik Zimmerman ¶ 2, Jan. 11, 2019, Dkt. 57-7. He then states that he "completed this . . . review process on January 7, 2019." *Id.* ¶ 8. The consultant thus conducted this analysis in approximately five weeks.

Menaker published the challenged Twitter message on October 16, 2018. First Amended Complaint ("FAC") ¶ 120, Dkt. 5. Plaintiff amended his pleadings and added Menaker as a defendant in this action two days later, on October 18, 2018. Plaintiff asserted that Menaker "is a citizen of, permanently resides in, and is domiciled in New York." *Id.* ¶ 31. If Plaintiff had started to analyze the location of Menaker's Twitter followers at the same time, on the theory that the location of a small portion of the people potentially reading a challenged online statement was relevant to jurisdiction, he therefore could have obtained that information by late November 2018. Even if Plaintiff had waited until he was certain that Menaker would contest

3

personal jurisdiction, Plaintiff knew from the November 1, 2018 meet-and-confer that Menaker would move to dismiss under Rule 12(b)(2).  *See* Joint Scheduling Report at 2 ¶ (C)(ii), Nov. 6, 2018, Dkt. 18 ("Menaker will be filing a motion(s) to dismiss based on personal jurisdiction and on the merits").  If Plaintiff had started analyzing Menaker's Twitter followers at *that* point, he could have obtained results by early December 2018.  Plaintiff thus has no reason, other than a lack of diligence, to explain why he did not obtain information about the location of Menaker's public Twitter followers in time to amend his pleadings prior to the December 19, 2018 deadline.

Second, Plaintiff seeks to add allegations about *himself* and about how the content of the challenged message purportedly relates to Florida.  Specifically, Plaintiff proposes to allege that Menaker's statement relates to the "Florida paternity case involving his minor son, who resides in Florida"; that it also relates to "this lawsuit pending in Florida"; and that "[a]lthough [Plaintiff] is not a Florida resident, he has vested personal and economic interests in this state."  Proposed Second Amended Complaint ("SAC") ¶ 37, Dkt. 57-3.  Such information plainly was available to Plaintiff when he filed his First Amended Complaint.  Plaintiff offers no reason – let alone one amounting to good cause – why he did not add these allegations prior to the Court's deadline of December 19, 2018.

If Plaintiff had been diligent, he could have pleaded his "new" allegations as to personal jurisdiction well before the deadline set by the Scheduling Order.[1]  Plaintiff has therefore failed to make a showing of good cause for leave to amend his pleadings as to personal jurisdiction.

---

[1] Plaintiff's assertion that he could not have amended his pleadings before he received discovery responses is unpersuasive in light of his concession that he waited "just over three weeks after the Scheduling Order was entered" to serve his requests.  Mot. for Leave at 12.  The Court entered its Scheduling Order on November 7, setting a December 19 deadline to amend pleadings.  Dkt. 19 at 1.  Even if Plaintiff had waited a full week and served his written discovery requests on November 14, he would have received responses by Decemebr 14.

## II.     ALL OF THE PROPOSED AMENDMENTS ABOUT MENAKER ARE FUTILE

The Court should also deny Plaintiff's motion because his proposed amendments are futile as to both jurisdiction and the merits of his claim against Menaker. *Maynard*, 342 F.3d at 1287. Plaintiff still cannot show that exercising personal jurisdiction over Menaker would satisfy Florida's long-arm statute and due process. Moreover, Plaintiff's assertions with respect to the doctrines of rhetorical hyperbole and pure opinion have no legal basis, and his argument as to actual malice ignores this Circuit's controlling case law.

### A.     Plaintiff's Proposed Amendments Are Futile As To Personal Jurisdiction

As discussed above, Plaintiff seeks to amend his jurisdictional pleadings by adding allegations about Menaker's Twitter followers, elaborating on *Plaintiff's* connections to Florida, and discussing the content of the challenged statement. These proposed amendments are futile because Plaintiff still cannot show, as he must, that Menaker is subject to personal jurisdiction in Florida.

First, the proposed allegations about Menaker's Twitter followers do not bolster Plaintiff's jurisdictional argument. Plaintiff seeks to allege that out of Menaker's approximately 82,000 Twitter followers, "at least 200 . . . have a Florida location." Mot. for Leave at 10. Thus, Plaintiff now wants to plead that approximately two-tenths of one percent of Menaker's Twitter followers are from Florida, even though Florida accounts for just over six percent of the U.S. population. *Quick Facts: Florida*, U.S. Census Bureau, https://www.census.gov/quickfacts/fact/table/fl,US/PST045217. However, to establish personal jurisdiction over Menaker, Plaintiff would need to show, *inter alia*, that Menaker "targeted" or "directed" or "aimed" his Twitter statement at a Florida audience. *Sovereign Offshore Servs., LLC v. Shames*, 2017 WL 7798664, at *3-4 (S.D. Fla. Aug. 3, 2017); *Bioheart, Inc. v. Peschong*, 2013 WL 1729278, at *5 (S.D. Fla.

5

Apr. 22, 2013); *Vision Media TV Grp., LLC v. Forte*, 724 F. Supp. 2d 1260, 1266 (S.D. Fla. 2010); *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004). If it has any relevance at all, therefore, Menaker's disproportionately small number of followers in Florida weighs *against* the notion that he directed the statement to a Florida audience. Moreover, the only case that Plaintiff cites addressing personal jurisdiction in the context of allegedly defamatory Twitter messages rejects Plaintiff's argument as to these Florida-based followers. *Boddy v. Pourciau*, 2018 WL 4637380, at *5 (W.D. Wash. Sept. 27, 2018) ("To hold that Defendants are subject to this court's jurisdiction simply because the tweets were viewable in Washington would open Defendants to being haled into every court in the country.").

Second, Plaintiff misleadingly pads the pleadings with "new" allegations about his *own* connections to Florida. *See* Proposed SAC ¶ 37. In *Walden v. Fiore*, the U.S. Supreme Court expressly rebuffed that approach, stating that it has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the *plaintiff* (or third parties) and the forum State." 571 U.S. 277, 284 (2014) (emphasis added). It is the extent of *Menaker's* ties to Florida – or, here, the absence of such connections – that is relevant to jurisdiction. On this point, the Court in *Walden* specifically cited *Hanson v. Denckla*, 357 U.S. 235 (1958), where it "rejected a plaintiff's argument that a Florida court could exercise personal jurisdiction over a trustee in Delaware based solely on the contacts of the trust's settlor, who was domiciled in Florida and had executed powers of appointment there." *Walden*, 571 U.S. at 284. The one case that Plaintiff cites addressing Twitter-based defamation rejects the argument that Plaintiff appears to hinge his jurisdictional theory upon, for the same reason. *Boddy*, 2018 WL 4637380, at *5 ("To the extent that Plaintiffs focus on their own connections with Washington, Plaintiffs are misguided. Again, as clarified in *Walden*, the personal

6

jurisdiction inquiry does not center on Plaintiffs' contacts with the forum state. Rather, Defendants' conduct must connect them to the forum – not just to Plaintiffs – in a substantial and meaningful way, and Defendants' relationship with Plaintiffs cannot alone serve as the basis for specific personal jurisdiction.") (citation omitted).[2]

Third, Plaintiff seeks to add allegations that Menaker knew this lawsuit and the custody proceeding were pending in Florida. Mot. for Leave at 17. But Plaintiff cites no authority for the proposition that a New York resident could be subjected to jurisdiction in Florida because he posted a message to a national audience that (1) linked to a news report (from a New York publisher) about litigation in Florida and (2) commented about a Virginia resident participating in that litigation. Florida law and due process do not allow such bootstrapped theories of jurisdiction. Indeed, in *Bioheart*, for example, the court found no personal jurisdiction over an out-of-state defamation defendant even though that defendant had "knowledge that [plaintiff] is located in Florida." 2013 WL 1729278, at *5. Thus, even if Menaker knew that this case and the custody proceeding were pending in Florida at the time he published the challenged statement, that knowledge alone does nothing to establish personal jurisdiction over Menaker.

Even after jurisdictional discovery, Plaintiff still simply cannot show that Menaker is properly subject to personal jurisdiction in Florida regardless of the "new" allegations that he seeks leave to add. Plaintiff's proposed amendments are therefore futile as to jurisdiction.

---

[2] Plaintiff presumably cites *Boddy* because the court there granted leave to conduct jurisdictional discovery, but it did so to allow the plaintiffs to explore the "affiliate relationship" between defendants and one of plaintiff's potential competitors in Washington, as well as one of the defendant's "repeated[] travel[s] to Washington to . . . conduct business in direct competition with Plaintiffs." 2018 WL 4637380, at *8. The court also noted that several of the challenged messages were "directed at . . . specific Twitter users" who could potentially be Washington residents. *Id.* at *2. Here, Menaker did not direct the challenged statement at specific Twitter users, *see* FAC ¶ 120, and he has essentially no contacts with Florida at all, let alone any contacts relevant to this cause of action, *see* Decl. of William Menaker ¶¶ 3-13, Dec. 5, 2018, Dkt. 30-1.

### B. Plaintiff's Proposed Amendments Are Futile As To The Merits

The Court should likewise reject Plaintiff's proposed amendments with respect to the merits of his claim against Menaker. Plaintiff seeks leave to add allegations concerning Menaker's text messages with Ms. Krueger, which Plaintiff characterizes as revealing Menaker's "ill-will" and "hostility" towards Plaintiff, but Plaintiff's claim against Menaker would still properly be dismissed because his statement remains nonactionable as a matter of law. The proposed amendments are thus futile on the merits as well as jurisdiction.

First, as Menaker's motion to dismiss makes clear, the challenged statement is either a nonactionable use of rhetorical hyperbole or a protected opinion based on fully disclosed facts. Mot. to Dismiss at 11-17. Plaintiff argues that alleging Menaker's "ill-will" towards Plaintiff would render those doctrines inapplicable because, Plaintiff asserts, "[s]peech uttered incident to a personal dispute is not constitutionally protected." Mot. for Leave at 16-17. That is simply an incorrect statement of the law. For one, Plaintiff principally cites *Connick v. Myers*, where the Supreme Court held that a *public employee*, speaking as an employee, could be disciplined for making statements on "matters only of personal interest." 461 U.S. 138, 147 (1983). Yet even there, the Court held that the speech in question was *not* "totally beyond the protection of the First Amendment," and moreover the Court expressly *rejected* the idea that "speech on private matters falls into one of the narrow and well-defined classes of expression which carries so little social value, such as obscenity, that the State can prohibit and punish such expression by all persons in its jurisdiction." *Id.* For another, Plaintiff quotes from Justice Alito's dissent in *Synder v. Phelps*, overlooking the Court's actual holding that "[t]he arguably inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern," and that "in public debate we must tolerate insulting, and even outrageous,

8

speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." 562 U.S. 443, 453, 458 (2011) (citations, internal marks, and alterations omitted).

The Supreme Court in *Hustler Magazine, Inc. v. Falwell* directly and unambiguously rejected the argument that Plaintiff advances here. In affirming a $200,000 jury verdict for plaintiff Reverend Falwell, the Fourth Circuit quoted defendant Larry Flynt's sworn testimony that, in publishing a parody advertisement implying that Falwell had engaged in "an incestuous rendezvous with his mother in an outhouse," Flynt "want[ed] to upset Reverend Falwell" and "wanted to convey" that Falwell was "a glutton" and "a liar" and "a hypocrite," and that one of Flynt's "objectives" in publishing the challenged piece was "[t]o assassinate" Falwell's "integrity." *Falwell v. Flynt*, 797 F.2d 1270, 1272-73 (4th Cir. 1986). The Supreme Court reversed, holding that "First Amendment protection" can extend even "to speech that is patently offensive and is *intended* to inflict emotional injury." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (emphasis added). As the Court explained, "one of the prerogatives of American citizenship is the right to criticize public men and measures. Such criticism, inevitably, will not always be reasoned or moderate; public figures as well as public officials will be subject to vehement, caustic, and sometimes unpleasantly sharp attacks." *Id.* at 51 (citations and internal marks omitted). Flynt's personal feelings towards Falwell thus did not render his speech constitutionally unprotected.

The proposed amendment here alleges that Menaker harbored ill will against Plaintiff after Plaintiff filed a $100 million lawsuit against Menaker's girlfriend, and that in text message communications preceding the challenged statement, Menaker expressed this view. But the challenged statement, like the parody in *Falwell*, would not lose its First Amendment protections even if the pleadings alleged that Menaker was motivated at least in part by ill will toward

9

Plaintiff. The proposed amendments are thus irrelevant with respect to whether the challenged statement is nonactionable rhetorical hyperbole or a protected expression of opinion based on disclosed facts.

Second, Menaker's motion to dismiss demonstrates that Plaintiff's claim fails because he does not plausibly establish that Menaker published the challenged statement with "actual malice," *i.e.*, that Menaker knowingly published a false statement of fact about Plaintiff. Mot. to Dismiss at 17-20. Plaintiff argues that if he could amend his pleadings to allege Menaker's "ill-will" and "motive," he could satisfy his fault pleading requirements. Mot. for Leave at 15. In support of this argument, Plaintiff includes a full page of case citations on actual malice from other courts. *Id.* at 13-14. Yet Plaintiff conspicuously fails to cite – let alone distinguish – the Eleventh Circuit's controlling decision in *Dunn v. Air Line Pilots Association*, which unambiguously stated that "[i]ll-will, improper motive or personal animosity plays *no role* in determining whether a defendant acted with 'actual malice.'" 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) (emphasis added). As the Eleventh Circuit explained, the actual malice test instead "requires a plaintiff to establish by clear and convincing evidence . . . that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to its truth." *Id.* at 1198 (citations and internal marks omitted). None of Plaintiff's proposed amendments would be relevant to this test.

Plaintiff's request to include allegations about Menaker's communications with Ms. Krueger aims, on its face, to plead that Menaker published the challenged statement with ill will. *See* Proposed SAC ¶¶ 142-46. But that is legally immaterial with respect to whether Menaker "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir.

10

2018) (citation omitted).  Because Plaintiff's proposed amendments do not allege *specific* facts which would, if proven, *plausibly* establish that Menaker published the challenged statement with actual malice, they still would not satisfy the *Iqbal*/*Twombly* pleading standard and are therefore futile.

## CONCLUSION

For each and all of the foregoing reasons, Menaker respectfully requests that the Court deny Plaintiff's motion for leave to amend his First Amended Complaint.

Dated:  January 13, 2019

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (Fla. Bar No. 816345)
Chad R. Bowman (admitted *pro hac vice*)
Maxwell S. Mishkin (admitted *pro hac vice*)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
bowmanchad@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Defendant William Menaker*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of January, 2019, I caused a true and correct copy of the foregoing Opposition to Plaintiff's Motion for Leave to Amend his Complaint to be electronically filed with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ Charles D. Tobin
Charles D. Tobin (Fla. Bar No. 816345)