UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

1:18-CV-24227-CMA-Altonaga

| | |
|---|---|
| JASON MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GIZMODO MEDIA GROUP, LLC, | ) |
| a Delaware Corporation, KATHERINE | ) |
| KRUEGER, individually, and WILL | ) |
| MENAKER, individually, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS GIZMODO MEDIA GROUP, LLC'S AND KATHERINE KRUEGER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Pursuant to this Court's January 14, 2019 Order (ECF No. 62) (the "Order") Defendants Gizmodo Media Group, LLC and Katherine Krueger (together, "Defendants") respectfully submit this supplemental memorandum of law in support of Defendants' Motion to Dismiss (ECF No. 44).

### PRELIMINARY STATEMENT

This Court has asked Defendants to brief the question of whether "[a]ssuming without deciding, the Supplement was in fact sealed in the state court proceedings before September 21, 2018, as Plaintiff maintains," the "application of the sealed order to the Gizmodo Defendants would constitute an impermissible prior restraint." (Order at 1.)[1] The simple answer to that question is: yes. If such an order existed, and if it precluded Defendants from publishing the Supplement, it would be constitutionally impermissible. Plaintiff maintains that the Supplement was effectively "sealed" by a unique combination of the "queue system" in the Florida Clerk's office and his own unilateral filing of a motion to seal the Supplement three days *after* it was originally filed in open court. This hypothetical "seal" of a document that had already been

---

[1] Capitalized terms not otherwise defined shall have the meaning ascribed to them in Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 44).

1

released to the public would clearly be a prior restraint. Prior restraints are "the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) and, accordingly, in order to be upheld as constitutional, must, after judicial scrutiny, overcome a rigorous three-part test, *id.* at 562. Here, not only was no such showing made, but the sealing Plaintiff maintains occurred involved no judicial scrutiny. As a result, the "sealed order" as maintained by Plaintiff would be unconstitutional if applied to prevent Defendants from publishing the Supplement.

To the extent that this Court has asked Defendant to assess whether a hypothetical sealing order entered by the Florida court pursuant to Rule 2.420 of the Florida Rules of Judicial Administration would be an impermissible prior restraint, the answer is also yes. If such an order existed and if it precluded Defendants from publishing the Supplement, it would be constitutionally impermissible. All parties concede that the Supplement was originally filed in the open public files of the Florida court – indeed, the Supplement as filed bears a public docket number. (*See* Shullman Exs. G, I, J.) And the document was lawfully obtained by Gizmodo. (*See* Compl. ¶ 153.) Any efforts to restrain the publication of the already public Supplement, therefore, would likewise be unconstitutional.

In this case, that is of profound significance. Plaintiff's entire theory of liability is that because of the "sealing order," Defendants have lost their fair report defense and their absolute privilege articulated in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975). That the very "sealing order" he maintains strips Defendants of these First Amendment rights is an unconstitutional prior restraint serves as further evidence of the weakness of his claims.

## ARGUMENT

**I.    THE "SEALED ORDER" AS MAINTAINED BY PLAINTIFF OPERATES AS AN IMPERMISSIBLE PRIOR RESTRAINT IF ENFORCED AGAINST DEFENDANTS**

For the purposes of assessing whether a hypothetical sealing order would be an impermissible prior restraint, it is important to understand the nature of such order, as described by Plaintiff. Specifically, Plaintiff claims that although the Supplement was publicly filed on September 14, 2018 (Compl. ¶ 135), it was not available to the public from September 14-17 because it was in a "queue." And Plaintiff then claims it was "exempt from the public right of access" from September 17, when Miller filed his Motion to Seal, until September 24, 2018,

when Gizmodo was nonetheless able to retrieve it from the court files,[2] because the Clerk was not allowed (Plaintiff says) to release it to the Defendants until the court ruled on Plaintiff's motion pursuant to Florida Rule of Judicial Administration Rule 2.420(e)(1). (Opp. 6; *see* Compl. ¶¶ 91 151, 152, 154.) That is, the nature of the sealing order we are to assume existed was an alleged *de facto* seal that arose because of the Clerk's obligation under Rule 2.420(e)(1): "Information that is subject to a [motion to determine confidentiality] shall be treated as confidential by the clerk pending the court's ruling on the motion." In sum, Plaintiff maintains that the time the Supplement was publicly filed but allegedly in queue, combined with the seven days between when he filed his motion to seal and the Clerk handed the Supplement to Gizmodo, was a "sealing order."

A sealing order of this kind – if applied to restrain Defendants from reporting on the Supplement – would clearly be unconstitutional. As the Supreme Court has recognized, prior restraints on speech are "one of the most extraordinary remedies known to our jurisprudence" and are universally recognized to be "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press*, 427 U.S. at 559. "The damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events." *Id.* A prior restraint therefore "comes to th[e] Court with a heavy presumption against its constitutional validity." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971); *see also Miami Herald Publ'g. Co. v. McIntosh*, 340 So.2d 904, 908 (Fla. 1976) (any prior restraint is on expression is presumptively unconstitutional and "the party who seeks to have such a restraint upheld carries a heavy burden of showing justification" for its imposition).

The Supreme Court has held that to determine whether a restriction on the media amounts to an unconstitutional prior restraint, a reviewing court must:

---

[2] For the reasons discussed in the Motion to Dismiss and at the hearing on January 14, the allegation that the Supplement was ever "treated as confidential by the clerk" is inherently implausible. One of the most compelling examples of its implausibility is that when Defendants sought to obtain the Supplement from the Clerk, on September 24 – the next business day after Plaintiff's counsel informed Defendants' counsel that the Supplement was "sealed" – the clerk provided it to them with no difficulty. (Shullman Decl. Ex. I.) There is no basis to believe that anything else would have happened on September 21, the day the Article was published, or at any time before then. At best, Plaintiff may have *thought* it was under seal but the Clerk's office made a mistake and handed it out. Such a scenario would be nonactionable as a matter of constitutional law. *See The Florida Star v. B.J.F.*, 492 U.S. 524, 538 (1989).

> examine the evidence before the trial judge when the order was entered to determine (a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger. The precise terms of the restraining order are also important.

*Nebraska Press*, 427 U.S. at 562. Consistent with this mandate, Florida courts require "[a] party seeking to uphold a prior restraint or censorship order . . . [to] demonstrate that there are no alternative measures available to protect the competing interest and that the prior restraint or censorship will be effective to accomplish that purpose." *Palm Beach Newspapers, LLC v. State*, 183 So. 3d 480, 483 (Fla. 4th DCA 2016); *see also Miami Herald Publ'g Co.*, 340 So.2d at 908 ("[T]he activity restrained must pose a clear and present danger or a serious or imminent threat to a protected competing interest and . . . such a restraint cannot be upheld if reasonable alternatives are available.") (citing *CBS v. Young*, 522 F.2d 234 (6th Cir. 1975)). Here, Plaintiff cannot make this showing.

*First,* because Plaintiff's claim that the Supplement was sealed rests solely on his interpretation of the vagaries of the "queue" system and the automatic operation of a statute, there has been no judicial consideration of such a hypothetical seal.[3] To the contrary, Plaintiff simply filed a notice and motion and purported to seal the Supplement himself. This is obviously inconsistent with the requirement of judicial review articulated in *Nebraska Press*. 427 U.S. at 562; *see also Palm Beach Newspapers*, 183 So.3d at 483.

*Second*, because the "sealed order" as maintained by the Plaintiff relies on no judicial review, there has been no finding that the "precise terms" of such hypothetical sealing order comply with the requirements of *Nebraska Press*, 427 U.S. at 562. *See Florida Pub. Co. v. Brooke*, 576 So.2d 842, 846 (Fla. 1st DCA 1991) (order that "made no findings as to the need for the restraint of the press" and gave no "proper consideration to less stringent measures" to prevent the threatened harm was an unconstitutional prior restraint); *Clear Channel Comm'cns, Inc. v. Murray*, 636 So.2d 818, 821-22 (Fla. 1st DCA 1994) (quashing trial court order as

---

[3] In addition, Florida courts have held that sealing orders that do not comply with the procedures of Rule 2.420 would be invalid as asserted against the media. *Carter v. Conde Nast Publ'ns*, 983 So.2d 23, 26 (Fla. DCA 2008) (holding that sealing order that failed to comply with the requirements of Rule 2.420(e) (previously numbered Rule 2.420(d)) would be invalid if it had been issued after the rule's passage, but was, in that case, not invalid because it was issued before the rule was passed).

unconstitutional prior restraint where there was "nothing in the record to indicate that the trial judge complied with [the] directives [of *Nebraska Press*]").

To the contrary, were this Court to accept Plaintiff's concept of a "sealing order," then any party to a judicial proceeding who did not like what was said about him in a court filing could simply walk into court and unilaterally impose on the press "one of the most extraordinary remedies known to our jurisprudence" merely by filing a motion. *See Nebraska Press*, 427 U.S. at 562. If used to constrain publication of the information, this would be plainly unconstitutional. *See id.* Indeed, the Sixth Circuit's order in *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996), *opinion clarified* (May 8, 1996), emphasizes the weakness of Plaintiff's argument. In that case, a reporter was given sealed court filings from a confidential source, although, at the time, he did not know they were under seal. *Id.* at 223. The documents were sealed because the parties had designated them confidential pursuant to a protective order, but there had been no finding by the Court that they were, in fact, confidential. *Id.* at 222. Nonetheless, the trial court issued an injunction prohibiting the publication of those documents on the grounds that they had been obtained in violation of the protective order (while simultaneously issuing an order finding that the documents had been improperly sealed in the first place and releasing them to the public). The publication appealed the first injunction and the Sixth Circuit rejected it as unconstitutional. In particular, the Court first noted that the "District Court fail[ed] to conduct any First Amendment inquiry before granting the two TROs" and then held:

> Far from falling into that "single, extremely narrow class of cases" where publication would be so dangerous to fundamental government interests as to justify a prior restraint, *New York Times Co. v. United States*, 403 U.S. 713, 726, 91 S. Ct. 2140, 2147–48, 29 L.Ed.2d 822 (1971) (Brennan, J. concurring), the documents in question are standard litigation filings that have now been widely publicized. The private litigants' interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint.

*Id* at 225. Here, as there, the order Plaintiff maintains "sealed" the Supplement is based solely on the interest of a private litigant, acting without supervision from the Court. It would, therefore, be a prior restraint if invoked to bar publication.

*Third*, the hypothetical sealing order as alleged by Plaintiff would be a prior restraint because the Supplement was already public before Plaintiff made the motion to seal. Once information is made public, the press cannot be constitutionally restrained from reporting on it.

5

*See Nebraska Press*, 427 U.S. at 568 ("[O]nce a public hearing [has] been held, what transpired there could not be subject to prior restraint."); *Oklahoma Publ'g Co. v. District Court in and For Oklahoma Cty.*, 430 U.S. 308, 309 (1977) (reversing injunction prohibiting media from reporting name and likeness of juvenile defendant that had been publicly released); *Florida Pub. Co.*, 576 So.2d at 846 ("Although a government may deny access to information and punish its theft, government may not prohibit or punish the publication of information once it falls into the hands of the press unless the need for secrecy is manifestly overwhelming."); *Jacksonville Television, Inc. v. Florida Dept. of Health & Rehab. Servs.*, 659 So.2d 316, 318 (order prohibiting broadcast of interview with mother of dependent children whose names had been inadvertently released by the court was an unconstitutional prior restraint); *Jeffries v. State*, 724 So.2d 897-899-900 (Miss. 1998) ("[W]hen information has been obtained legally from a public proceeding or document, the United States Supreme Court and appellate courts around the country have consistently rejected any restraint on its publication."); *cf. Ashcraft v. Conoco, Inc.*, 218 F.3d 288 (4th Cir. 2000) (news organization could not be held in contempt for reporting on sealed court records which a clerk gave to a journalist by mistake).  This is entirely consistent with the constitutional privilege established by *Cox Broadcasting Corp. v. Cohn*, which independently shields Defendants from reporting on the Supplement and provides an independent basis for dismissal here.  420 U.S. at 496 ("We are reluctant to embark on a course that would make public records generally available to the media but forbid their publication."); *see also Florida Star*, 491 U.S. at 535 ("[P]unishing the press for its dissemination of information which is already publicly available is relatively unlikely to advance [state interests].")

The Supplement was – at a *minimum* – publicly available from September 14, 2018, when Delgado filed it on the public docket (Compl. ¶ 89; FC Dkt. No. 351), until September 17, 2018, when Plaintiff moved to seal it (Compl. ¶ 91; FC Dkt. No. 356).  Even "queued" public filings are public filings, and Plaintiff's claim that the Supplement was not public is belied by the fact that the Supplement obtained and published by Gizmodo has a public filing number on it (and, of course, is not marked as sealed).  (*See* Shullman Decl. Ex. G.)  Further, it is of no issue how or from whom Defendants obtained the filing; even assuming that Ms. Delgado was the source, she was not restricted from sharing the publicly filed document (although she could be penalized for it) and the application of the fair report privilege does not depend on the public filing coming from the court.  *See Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So.2d

972, 976 (Fla. 3d DCA 1987) (that reporter gathers second-hand information regarding official proceeding has no bearing on application of fair report privilege); *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dep't 2009) ("how a reporter gathers his information concerning a judicial proceeding is immaterial" to application of fair report privilege).

The Supreme Court's decision in *Oklahoma Publishing Co.* is squarely controlling on this point. 430 U.S. at 308-309. In that case, an Oklahoma statute provided that juvenile proceedings are presumptively private and that juvenile records are open to public inspection only by order of the court. *Id.* at 309. Nonetheless, in a murder case involving a juvenile defendant, reporters learned the defendant's name – which was mentioned in open court during a detention hearing – and photographers took pictures of the defendant leaving the courthouse. *Id.* The trial court subsequently issued a pretrial order barring the media from disseminating the defendant's name or likeness. *Id.* The Court struck down the trial court's order as an unconstitutional prior restraint, emphasizing that the defendant's name and likeness were "publicly revealed" and finding "no evidence that [the media] acquired the information unlawfully or even without the State's implicit approval." *Id.* at 311. So too here. The Supplement was available on the public record for a minimum of four days. The retroactive sealing order described by Plaintiff therefore could not constitutionally stop Gizmodo – or anyone else – from reporting on it.

Similarly, in *Palm Beach Newspapers, LLC v. State*, 183 So.3d 480, 483 (Fla. 4th DCA 2016), transcripts of an inmate's recorded telephone conversations were placed on the public docket of a murder case in which he was a prosecution witness. *Id.* at 482. The trial court entered an order directing the Palm Beach Post to remove an article from its website that had published the transcripts and prohibiting further dissemination of those records. The appeals court reversed, finding that the order was an unconstitutional prior restraint. *Id.* at 484. In addition to holding that the trial court had "failed to explain why [the inmate's] privacy rights were so compelling as to overcome the Post's First Amendment right to publish the transcripts," the appeals court emphasized that by the time the sealing order issued, the transcripts were already available in the open court file, making the sealing order ineffectual.[4] *Id. See id.*; *Bank*

---

[4] Notably, the court in *Palm Beach Newspapers* also reversed the trial court's sealing order because it failed to make the specified findings required by Rule 2.420(e)(3), as constitutionally required by *Barron Newspapers v. Fla. Freedom Newspapers*, 531 So.2d 113, 118 (Fla. 1988). 183 So.3d at 485.

7

*Julius Bauer & Co. v. Wikileaks*, 535 F. Supp. 2d 980, 985 (N.D. Cal. 2008) (where "there is evidence in the record that 'the cat is out of the bag' . . . the issuance of an injunction would therefore be ineffective"); *Nebraska Press*, 427 U.S. at 561-62 (before imposing a prior restraint, a court must assess "how effectively a restraining order would operate to prevent the threatened danger"). That is precisely the situation here. By the time Plaintiff's theoretical sealing order could conceivably take effect on September 17, 2018, the Supplement had already been filed on the public record.

The "sealed order" as maintained by Plaintiff would, therefore, constitute an impermissible prior restraint if applied to bar Plaintiff's from publishing the Supplement.

II. **AN ORDER PURSUANT TO RULE 2.420(E)(3) WOULD ALSO BE AN IMPERMISSIBLE PRIOR RESTRAINT IF APPLIED TO RESTRAIN PUBLICATION OF THE SUPPLEMENT**

To the extent that this Court asks Defendants to assess whether a sealing order issued by the Florida court pursuant to Rule 2.420(e)(3) of the Florida Rules of Judicial Administration would be an impermissible prior restraint if applied to bar the Gizmodo Defendants from publishing the Supplement, the answer is also yes.[5]

While such an order, which requires notice to the media[6] and on-the record findings by a judge, Rule 2.420(e)(3)-(4), would not have the procedural infirmities outlined above, it would still be impermissible because the Supplement was publicly available from September 14-September 17 and it was lawfully obtained by Gizmodo. As such, it would fail the third prong on the *Nebraska Press* test, which looks to the "effectiveness" of a prior restraint. As discussed above, once information has been "publicly revealed" and lawfully obtained, it is constitutionally impermissible to restrain its publication because such an injunction would be ineffective. *Oklahoma Publishing Co.*, 430 U.S. at 308-309; *Nebraska Press*, 427 U.S. at 562; *c.f. Florida Star*, 491 U.S. at 535. In *Alvarado v. KOB-TV, LLC*, No. 05-750 WJ/LAM, 2005 WL 8163399

---

[5] It bears repeating, however, that no such order has ever been entered and, indeed, Plaintiff does not argue that it has. Pursuant to Rule 2.420(e)(2) of the Florida Rules of Judicial Administration, a sealing order can only be entered after a hearing that occurs within 30 days after filing the motion to seal, which must be an open public proceeding. In addition, before such an order can enter, there must be findings on the record as to why the order issued. Rule 2.420(e)(3). That simply did not happen here. There is no sealing order. This absence of a sealing order is confirmed by the facts that there is no such sealing order included on the docket and that the public-facing version of the docket at the time of publication or at any time since does not contain any indication that the Supplement was ever sealed.

[6] There was no notice to the media in this case.

at *4 (D.N.M. Nov. 14, 2005), for example, the court held that a sealing order constituted an unconstitutional prior restraint where the media lawfully obtained information that was subject to it. *Id.* There, the plaintiffs claimed that the defendant media organization had gotten the sealed document from someone within the Albuquerque Police Department, plaintiffs' employer. *Id.* at *2. Because that was not unlawful conduct by the television station, the court held that the sealing order as applied to them was an unconstitutional prior restraint. *Id.* at *4. *See also Procter & Gamble*, 78 F.3d at 225 (even where parties to civil litigation have obligation not to disseminate information, such rule "does not govern the situation where an independent news agency, having gained access to the sealed documents, decides to publish them").

In this case, then, an order pursuant to Rule 2.420 that prohibited Gizmodo from publishing the Supplement would be an impermissible prior restraint.

### III. THE "SEALING ORDER" DOES NOT STRIP DEFENDANTS OF ITS FIRST AMENDMENT DEFENSES

Because the sealing order, had it been issued, would have operated as an unconstitutional prior restraint if applied to bar Defendants' publication of the Article, Plaintiff's contention that Defendants are precluded from invoking the fair report privilege or *Cox Broadcasting* is even more spurious.[7]

In *Alvarado*, the plaintiffs in a defamation case argued that the defendant television station was not entitled to invoke traditional First Amendment defenses because, plaintiffs claimed, the information published had been under seal. 2005 WL 8163399, at *3. The television station argued that it did not violate the sealing order because it did not apply to the media, but that in any event, if the court were to follow the plaintiffs' reasoning, the sealing order would constitute an impermissible prior restraint. *Id.* The court sided with the television station, holding:

> Based on these circumstances, the Court agrees with KOB-TV that application of the sealing order to KOB-TV would have constituted an impermissible prior restraint on the news station, considering the strong presumption against the use of gag orders on the media. *See, Nebraska,* 427 U.S. at 571 ("barriers to prior restraint remain high and the presumption against its use continues intact"). Since KOB-TV could not be bound by the sealing order under the prohibition against prior restraint, and since Plaintiffs allege that the leak came from someone within APD (First Amended Compl., § 48), KOB-TV did not unlawfully obtain the information it broadcast. Therefore, KOB-TV's broadcast of the allegedly

---

[7] It is also wrong as a matter of law. (*See* Mem. 8-16.)

objectionable information was protected under the First Amendment. Cmp., *The News-Journal Corp. v. Foxman*, 939 F.2d 1499 (11th Cir. 1991) (while newspaper would not suffer irreparable injury as a result of restrictive order entered by state trial judge, it could not be prevented from publishing the information that became available because the issue would become one of prior restraint).

*Id.* at *4.

Here, as there, the information published was obtained lawfully. Any order precluding its publication would be an unconstitutional prior restraint, which should not operate to strip Defendants of their defamation defenses, including the fair report privilege.

## CONCLUSION

Plaintiff's hypothetical sealing order, if applied to bar publication of the Article, would be an unconstitutional prior restraint. The Supplement is an ordinary judicial record subject to the full protections of the fair report privilege. *See Alan v. Palm Beach Newspapers, Inc.*, 973 So.2d 1177, 1180 (Fla. 4th DCA 2008) (privilege covers court records and trial testimony); *Branca v. Mayesh*, 101 A.D.2d 872, 873, *aff'd* 63 N.Y.2d 994 (N.Y. App. 2d Dep't 1984) (fair report privilege extends to any pleading made within the course of a judicial proceeding). On this basis, Plaintiff's claims must be dismissed. For the foregoing reasons and those set forth in Defendants' moving papers, Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice.

Dated: January 18, 2019

Respectfully submitted,

/s/ *Elizabeth A. McNamara*
Elizabeth A. McNamara (*pro hac vice*)
Katherine M. Bolger (*pro hac vice*)
Claire K. Leonard (*pro hac vice*)
DAVIS WRIGHT TREMAINE
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
lizmcnamara@dwt.com
katebolger@dwt.com
claireleonard@dwt.com

/s/ *Deanna K. Shullman*
Deanna K. Shullman (Florida Bar No. 514462)
Rachel Fugate (Florida Bar. No. 144029)
Giselle M. Girones (Florida Bar. No. 124373)
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
rfugate@shullmanfugate.com
ggirones@shullmanfugate.com

*Attorneys for Defendants Gizmodo Media Group, LLC and Katherine Krueger*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2019, a true and correct copy of the foregoing has been served by CM/ECF on all counsel or parties of record on the service list.

*/s/Deanna K. Shullman*

Deanna K. Shullman
Florida Bar No. 514462

## SERVICE LIST

*Attorneys for Plaintiff* :

Kenneth G. Turkel, Esq.
kturkel@bajocuva.com
Shane B. Vogt, Esq.
shane.vogt@bajocuva.com
BAJO CUVA COHEN TURKEL
100 N. Tampa Street, Ste. 1900
Tampa, FL 33602
Telephone: (813) 443-2193

*Attorneys for Defendant Will Menaker:*

Charles D. Tobin, Esq.
tobinc@ballardspahr.com
Chad R. Bowman, Esq. (*pro hac vice*)
bowmanchad@ballardspahr.com
Maxwell S. Mishkin, Esq. (*pro hac vice*)
mishkinm@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Telephone: (202) 661-2218