**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

JASON MILLER,

    Plaintiff,

v.                            1:18-CV-24227-CMA

GIZMODO MEDIA GROUP, LLC, et al.,

    Defendants.

_____

**DEFENDANT WILLIAM MENAKER'S RENEWED MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURSDICTION AND FAILURE TO STATE A CLAIM**
**AND SUPPORTING MEMORANDUM OF LAW**

BALLARD SPAHR LLP

Charles D. Tobin (Fla. Bar No. 816345)
Chad R. Bowman (admitted *pro hac vice*)
Maxwell S. Mishkin (admitted *pro hac vice*)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
bowmanchad@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Defendant William Menaker*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..........................................................................................ii

PRELIMINARY STATEMENT .....................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................2

I.      THE PARTIES..................................................................................................2

II.     MILLER'S UNDERLYING CUSTODY LAWSUIT ......................................3

III.    THE SPLINTER REPORT................................................................................4

IV.     MILLER'S INITIAL COMPLAINT ................................................................5

V.      MENAKER'S CHALLENGED STATEMENT.................................................5

VI.     MILLER'S AMENDED COMPLAINT ...........................................................6

ARGUMENT .................................................................................................................6

I.      MENAKER IS NOT SUBJECT TO PERSONAL JURISDICTION IN
        FLORIDA .........................................................................................................6

        A.      Florida's Long-Arm Statute Does Not Apply To Menaker ...................7

        B.      Due Process Prohibits Exercising Personal Jurisdiction Over Menaker ........8

II.     MENAKER'S CHALLENGED STATEMENT CANNOT GIVE RISE TO A
        DEFAMATION CLAIM AS A MATTER OF LAW.......................................11

        A.      The Challenged Statement Is A Nonactionable Use Of Rhetorical
                Hyperbole............................................................................................11

        B.      In The Alternative, The Challenged Statement Expresses A "Pure
                Opinion".............................................................................................15

        C.      Miller Fails To Plausibly Allege That Menaker Published The
                Challenged Statement With "Actual Malice" Fault..............................17

CONCLUSION............................................................................................................20

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alternate Energy Corporation v. Redstone*,
    328 F. Supp. 2d 1379 (S.D. Fla. 2004) ..............................................9, 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................2

*Bioheart, Inc. v. Peschong*,
    2013 WL 1729278 (S.D. Fla. Apr. 22, 2013) .......................................10

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    137 S. Ct. 1773 (2017) ...........................................................8

*Byrd v. Hustler Magazine, Inc.*,
    433 So. 2d 593 (Fla. 4th DCA 1983) ...............................................6

*Catalyst Pharmaceuticals, Inc. v. Fullerton*,
    2017 WL 6558397 (S.D. Fla. Aug. 8, 2017) .........................................8

*Clifford v. Trump*,
    --- F. Supp. 3d ---, 2018 WL 4997419 (C.D. Cal. Oct. 15, 2018) ...................14

*Del Fuoco v. O'Neill*,
    2011 WL 601645 (M.D. Fla. Feb. 11, 2011) .........................................16

*Dunn v. Air Line Pilots Association*,
    193 F.3d 1185 (11th Cir. 1999) ...................................................20

*Fortson v. Colangelo*,
    434 F. Supp. 2d 1369 (S.D. Fla. 2006) ............................................15

*Franklin v. Anderson Media*,
    2011 WL 3875519 (M.D. Fla. Aug. 31, 2011) ........................................7

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ..............................................................17

*Greenbelt Cooperative Publishing Association v. Bresler*,
    398 U.S. 6 (1970) ................................................................12

*Harte-Hanks Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ..............................................................20

ii

*Haynes v. Alfred A. Knopf, Inc.*,
  8 F.3d 1222 (7th Cir. 1993) ...............................................................................16

*Horsley v. Feldt*,
  304 F.3d 1125 (11th Cir. 2002) .......................................................................2, 13

*Horsley v. Rivera*,
  292 F.3d 695 (11th Cir. 2002) ...........................................................................12

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988)...............................................................................................12

*Internet Solutions Corp. v. Marshall*,
  39 So. 3d 1201 (Fla. 2010)................................................................................7, 9

*Jacobus v. Trump*,
  55 Misc. 3d 470 (N.Y. Sup. Ct. 2017) ...............................................................14

*Keller v. Miami Herald Publishing Co.*,
  778 F.2d 711 (11th Cir. 1985) .......................................................................13, 16

*Klayman v. City Pages*,
  2015 WL 1546173 (M.D. Fla. Apr. 3, 2015) .....................................................19

*Knievel v. ESPN, Inc.*,
  223 F. Supp. 2d 1173 (D. Mont. 2002)...............................................................11

*Levin v. McPhee*,
  119 F.3d 189 (2d Cir. 1997)................................................................................16

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ............................................................................9

*Madsen v. Women's Health Center, Inc.*,
  512 U.S. 753 (1994)............................................................................................14

*Maritime Executive, LLC v. Larson Electronics, LLC*,
  2018 WL 2938376 (S.D. Fla. June 11, 2018) .......................................................8

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ...............................................................2, 17, 19

*Mile Marker, Inc. v. Peter Publishing, LLC*,
  811 So. 2d 841 (Fla. 4th DCA 2002)..................................................................18

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)............................................................................................11, 12

*Moldea v. New York Times Co.*,
  22 F.3d 310 (D.C. Cir. 1994) ....................................................................................16

*Morse v. Ripken*,
  707 So. 2d 921 (Fla. 4th DCA 1998) .........................................................................16

*Mother Doe I v. Al Maktoum*,
  632 F. Supp. 2d 1130 (S.D. Fla. 2007) ....................................................................6, 7

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ...................................................................................................17

*Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin*,
  418 U.S. 264 (1974) ...................................................................................................12

*Rasmussen v. Collier County Publishing Co.*,
  946 So. 2d 567 (Fla. 2d DCA 2006) ..........................................................................16

*Riley v. Harr*,
  292 F.3d 282 (1st Cir. 2002) ......................................................................................16

*Sandals Resorts International Ltd. v. Google, Inc.*,
  86 A.D.3d 32 (N.Y. App. Div. 2011) .........................................................................13

*Santilli v. Van Erp*,
  2018 WL 2172554 (M.D. Fla. Apr. 20, 2018) ......................................................13, 15

*Silvester v. ABC, Inc.*,
  839 F.2d 1491 (11th Cir. 1988) ..................................................................................18

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) ...................................................................................................20

*Stewart v. Sun Sentinel Co.*,
  695 So. 2d 360 (Fla. 4th DCA 1997) ............................................................................6

*Turner v. Wells*,
  198 F. Supp. 3d 1355 (S.D. Fla. 2016) ......................................................................16

*Turner v. Wells*,
  879 F.3d 1254 (11th Cir. 2018) ........................................................................ *passim*

*Vision Media TV Group, LLC v. Forte*,
  724 F. Supp. 2d 1260 (S.D. Fla. 2010) ......................................................................10

*Walden v. Fiore*,
  571 U.S. 277 (2014) .....................................................................................................9

**Statutes**

Fla. Stat. § 48.193 ..........................................................................................................................7

Va. Code Ann. § 8.01-223.2 ...........................................................................................................2

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Local Rule 7.1, and this Court's January 24, 2019 Order, Dkt. 69, Defendant William Menaker hereby renews his motion to dismiss Count VI of Plaintiff Jason Miller's First Amended Complaint with prejudice for lack of personal jurisdiction or, in the alternative, for failure to state a claim as a matter of law.  In support of this renewed motion, Menaker states as follows:

## PRELIMINARY STATEMENT

William Menaker is a New York-based podcaster and satirist.  Plaintiff Jason Miller added Menaker as a defamation defendant in the Amended Complaint simply because Menaker posted a statement on Twitter that Miller did not like, which linked to and commented on an article published by the *New York Post*'s celebrity news and gossip website *Page Six*.  Menaker does not belong in this lawsuit.  Most centrally, Miller, a Virginia resident, seeks to assert a claim against Menaker, a New York resident, in *Florida*, a jurisdiction to which Menaker has *no* legally relevant contacts.  Both Florida law and the U.S. Constitution require that the claim against Menaker be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

Beyond this jurisdictional defect, the claim against Menaker fails on multiple substantive grounds.  Miller is a prominent conservative political operative, Menaker is a leftist commentator, and the challenged statement mocked Miller's litigious behavior in colorful and clearly sarcastic terms.  No defamation claim can arise out of these circumstances, because Menaker's statement is nonactionable as rhetorical hyperbole and as a protected expression of opinion based on fully disclosed facts.  Moreover, even if the challenged statement were reasonably understood as an assertion of fact, Miller inarguably is a public figure for purposes of this claim, and he has failed to plead any facts plausibly establishing that Menaker published the statement knowing that it was false or with a high degree of awareness of its probable falsity.

1

Under well-established First Amendment doctrine, therefore, the claim against Menaker cannot survive a Rule 12(b)(6) motion to dismiss.

Although Miller's claim against Menaker fails no matter which state's law governs it, the law of Virginia – where Miller resides – logically controls here. *Cf. Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (conducting Florida choice-of-law analysis as to defamation claim). And because this defamation claim is "based solely on [a statement] regarding matters of public concern . . . protected under the First Amendment," as shown below, Menaker reserves the right to seek an award of his "reasonable attorney fees and costs" pursuant to Virginia law, Va. Code Ann. § 8.01-223.2, upon the dismissal of this claim.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### I.    THE PARTIES

Plaintiff Jason Miller is a citizen and resident of Virginia. First Amended Complaint ("FAC") ¶ 18, Dkt. 5. Miller worked as a Senior Communications Advisor for the Trump presidential campaign, and following the 2016 election Miller was the Communications Director of President-elect Trump's transition team. *Id.* ¶ 37. Miller "was slated to be President Trump's White House Communications Director," but those plans were scuttled after press reports surfaced that Miller had carried on an extramarital affair and fathered a child with fellow Trump aide A.J. Delgado. *Id.* ¶ 37 & n.2. Miller instead entered the private sector, working in "crisis communications, corporate communications, and media relations," and he also became a

---

[1] Well-pleaded factual allegations in the operative Complaint are accepted as true solely for purposes of this motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court may also review the Complaint's attachments and take judicial notice of public records on a motion to dismiss without converting it into a summary judgment motion. *E.g.*, *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002) (report underlying defamation claim properly considered on motion to dismiss without converting it to summary judgment motion).

commentator on CNN, "often appearing on national television advocating for and defending the Trump Administration."  *Id.* ¶ 38.

      Defendant William Menaker is a citizen and resident of New York.  *Id.* ¶ 31.  Menaker hosts the *Chapo Trap House* podcast, which is "known for its far-left commentary," *id.* ¶ 116, and which has been described as "crass, obnoxious and frequently hilarious" and "the strangest, silliest, most principled podcast you probably haven't heard of yet."  Zach Carter, *'Chapo Trap House' And The Slackers' Revolt*, HuffPost, Oct. 13, 2018, https://www.huffingtonpost.com/entry/chapo-trap-house-guide-to-revolution_us_5bb38cabe4b0d1ebe0e53c7b; Colette Shade, *The Radical Cheek of 'Chapo Trap House'*, Pacific Standard, Nov. 4, 2016, https://psmag.com/news/the-radical-cheek-of-chapo-trap-house.  Menaker also is a co-author of *The Chapo Guide to Revolution: A Manifesto Against Logic, Facts, and Reason*, which *Newsweek* characterized as "a gallows humor overview of the political landscape," and *The New York Times* called "a satirical guide to American politics and culture."  Andrew Whalen, *Chapo Trap House Book 'Chapo Guide To Revolution' Is More Than Political Comedy, It's A Climate Change Call To Action*, Newsweek, Aug. 23, 2018, https://www.newsweek.com/chapo-trap-house-book-review-guide-revolution-podcast-1088453; *Best Sellers, Hardcover Nonfiction*, The New York Times, Sept. 8, 2018, https://www.nytimes.com/books/best-sellers/2018/09/09/hardcover-nonfiction/.

## II.    MILLER'S UNDERLYING CUSTODY LAWSUIT

      Miller initiated a custody proceeding against Delgado shortly after their child was born.  FAC ¶¶ 32, 41.  Delgado has stated that Miller's motivation in filing that action was "revenge," based on her belief that Miller "blames [her] for not terminating the pregnancy or not keeping it confidential."  Nicole Lafond, *Ex-Trump Aide Says Jason Miller Forcing Long Custody Battle For 'Revenge,'* Talking Points Memo, Apr. 7, 2018, https://talkingpointsmemo.com/muckraker/

ex-trump-aide-says-jason-miller-forcing-long-custody-battle-for-revenge (cited at FAC ¶ 43).

Indeed, according to Delgado, "Miller [had] asked her on two separate occasions if 'there was

any chance [she would] terminate the pregnancy.'"  McKay Coppins, *From Trump Aide to Single*

*Mom*, The Atlantic, Aug. 15, 2017, https://www.theatlantic.com/politics/archive/2017/08/from-

trump-aide-to-single-mom/536892/ (cited at FAC ¶ 41).

On September 14, 2018, Delgado filed a supplement (the "Supplement") to her prior

motion in the custody proceeding, which asked the court to order Miller to undergo a

psychological evaluation.  FAC ¶ 88.  The Supplement alleges that, years earlier: (1) Miller

entered into a sexual relationship with an unnamed dancer at Rachel's Gentleman's Club; (2) the

woman subsequently became pregnant; (3) Miller provided the woman with "a Smoothie

beverage" that surreptitiously contained "an abortion pill," which the woman consumed; and

(4) the beverage induced an abortion, which caused the woman to be "hospitalized for two days."

*See* Mother's Suppl. to Mother's Mar. 2018 Mot. for Court to Consider Psychological Evaluation

of the Father at 1-2, *Miller v. Delgado*, No. 17-016674 FC 17 (Fla. 11th Cir. Ct. Sept. 14, 2018).

The Supplement further alleges that Miller was "physically abusive" to another woman with

whom he also was "involved" around the same period of time, stating in particular that Miller

"physically beat her ('with an open hand')."  *Id.* at 9.

## III.    THE SPLINTER REPORT

On September 21, 2018, *Splinter* published a news report titled "Court Docs Allege Ex-

Trump Staffer Drugged Woman He Got Pregnant With 'Abortion Pill'" (the "*Splinter* Report"),

which remains online at https://splinternews.com/court-docs-allege-ex-trump-staffer-drugged-

woman-he-got-1829233105.  FAC ¶ 96 & Ex. 3.  The *Splinter* Report, written by journalist

Katherine Krueger, summarizes and provides readers with a complete copy of the Supplement,

and it notes that while "Delgado confirmed the document's authenticity to Splinter," Miller

"strongly disputed the claims made in the filing." FAC Ex. 3 at ECF pp. 9-10.  The *Splinter*

Report also references Delgado's prior allegation (and Miller's denial) that Miller had pressed

Delgado about the possibility of an abortion after Miller learned about her pregnancy.  *Id.* at 11.

## IV.    MILLER'S INITIAL COMPLAINT

On October 15, 2018, Miller filed his original Complaint in this action, naming Krueger

and *Splinter*'s corporate parent Gizmodo Media Group, LLC ("Gizmodo") as defendants, and

bringing claims for defamation (Count I), tortious interference (Count II), intentional infliction of

emotional distress (Count III), invasion of privacy (Count IV), and civil conspiracy (Count V).

Those initial pleadings asserted that, as a result of the *Splinter* Report, "Miller's life as he knew

it was over."  Compl. ¶ 15.  Miller alleged that the *Splinter* Report "destroyed" his reputation, *id.*

¶ 2, caused him to lose his job at CNN, *id.* ¶ 98, and led him to be "convicted in the court of

public opinion," *id.*  Miller's original Complaint against Gizmodo and Krueger sought "in excess

of One Hundred Million Dollars" in compensatory and punitive damages.  *Id.* ¶ 17.

## V.    MENAKER'S CHALLENGED STATEMENT

On the same day that Miller filed his initial Complaint, the *New York Post*'s celebrity

news and gossip site *Page Six* published an article titled "Jason Miller files $100M defamation

suit against Gizmodo Media Group" (the "Page Six Article"), which contains a hyperlink to the

*Splinter* Report and remains online at https://pagesix.com/2018/10/15/jason-miller-files-100m-

defamation-suit-against-gizmodo-media-group/.  The next morning, Menaker posted a message

on Twitter that linked to the Page Six Article and stated, "Rat-faced baby-killer and Trump PR

homunculus, Jason Miller, is suing my girlfriend for $100 million, cool!"  FAC ¶¶ 120, 143.

## VI.     MILLER'S AMENDED COMPLAINT

On October 18, 2018 – two days after Menaker published the challenged statement on Twitter – Miller filed his First Amended Complaint in this action, which added Menaker as a defendant.  The revised pleadings include a new claim for defamation against Menaker alone (Count VI), which alleges that "Menaker's statement that Miller is a 'baby killer' is not true." FAC ¶ 210.  Though Miller continues to plead that his "life was in shambles and his reputation was destroyed" weeks before Menaker published the challenged statement, FAC ¶ 2, the First Amended Complaint asserts that Menaker's message somehow also "caused Miller to suffer significant damages, including damage to his reputation," *id.* ¶ 213.  Miller accordingly seeks "compensatory, special, and punitive damages" against Menaker as well.  *Id.* ¶ 216.

## ARGUMENT

To safeguard freedom of expression, Florida courts favor the prompt dismissal of legally untenable claims that target activities protected by the First Amendment.  *E.g.*, *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997) ("pretrial dispositions are 'especially appropriate' because of the chilling effect these cases have on freedom of speech") (quoting *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978)).  Courts thus have a "prominent function" in deciding how far such cases can proceed as a matter of law.  *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983).  This defamation claim against Menaker, which is legally untenable on both jurisdictional grounds and on the merits, and which arises out of constitutionally protected speech, cannot survive a motion to dismiss.

## I.     MENAKER IS NOT SUBJECT TO PERSONAL JURISDICTION IN FLORIDA

"Generally, a federal court may properly exercise personal jurisdiction over a non-resident defendant only if two requirements are satisfied: (1) the state long-arm statute, and (2) the Due Process Clause."  *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1134 (S.D.

Fla. 2007).  "[I]f the applicable state statute governing personal jurisdiction is satisfied, the Court must then determine whether sufficient 'minimum contacts' exist to satisfy the due process requirements of the Fourteenth Amendment, which include 'traditional notions of fair play and substantial justice.'"  *Id.* (citation omitted).  As discussed below, Menaker's *only* real connection to Florida is that Miller has sued him here.  The claim against Menaker should accordingly be dismissed at the outset because Florida's long-arm statute does not reach him, and exercising personal jurisdiction over Menaker in Florida would not satisfy due process.

### A.      Florida's Long-Arm Statute Does Not Apply To Menaker

This Court does not have personal jurisdiction over Menaker because Florida's long-arm statute, Fla. Stat. § 48.193, cannot be satisfied here.  As an initial matter, Miller does not identify which section of the long-arm statute allegedly applies to Menaker, FAC ¶ 35, a failing that itself justifies dismissal of the claim against him, *Franklin v. Anderson Media*, 2011 WL 3875519, at *4 (M.D. Fla. Aug. 31, 2011).  Moreover, the only provision of the long-arm statute that could even *conceivably* apply here is not satisfied on the face of the pleadings.

The long-arm statute provides in part that a person submits himself to the jurisdiction of Florida's courts by "[c]ommiting a tortious act within [Florida]."  Fla. Stat. § 48.193(1)(a)(2).  In the online defamation context, Florida courts have interpreted this provision to extend as far as cases where an out-of-state defendant publishes allegedly defamatory material online about a *Florida-based* plaintiff.  *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1206, 1214-25 (Fla. 2010) ("allegedly defamatory material about a *Florida* resident placed on the Web and accessible in Florida constitutes an 'electronic communication into Florida' when the material is accessed (or 'published') in Florida") (emphasis added).  But Miller is a citizen and resident of

Virginia, FAC ¶ 18, and Menaker is a citizen and resident of New York, *id.* ¶ 31. The Court can conclude on these basic facts that Florida's long-arm statute cannot possibly extend to Menaker.[2]

## B.     Due Process Prohibits Exercising Personal Jurisdiction Over Menaker

The claim against Menaker should also be dismissed because exercising personal jurisdiction over Menaker would not meet constitutional due process requirements. That conclusion is clear from the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, which addressed claims in California brought by non-California plaintiffs against a non-California defendant arising out of non-California conduct. 137 S. Ct. 1773 (2017). The Court held that pursuant to "settled principles regarding specific jurisdiction," where "plaintiffs are not [forum state] residents and do not claim to have suffered harm in that State," and "all the conduct giving rise to the nonresidents' claims occurred elsewhere," the forum state's "courts cannot claim specific jurisdiction" as a matter of law. *Id.* at 1781-82. So, too, here: Miller is not a Florida resident; the conduct giving rise to Miller's claim against Menaker did not occur in Florida; and Miller has not alleged that he suffered harm in Florida from Menaker's statement.

Eleventh Circuit law compels the same result. In cases such as this one, this Circuit applies a "three-part due process test, which examines: (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities

---

[2] Moreover, even if Miller *were* a Florida citizen, the long-arm statute still would not be satisfied here because Miller fails to allege that Menaker's statement was in fact accessed in Florida. FAC ¶¶ 116-22; 142-43; 207-16. An identical pleading failure led this Court to dismiss, for lack of personal jurisdiction, another recent defamation claim against a non-resident defendant arising out of online speech. *Catalyst Pharm., Inc. v. Fullerton*, 2017 WL 6558397, at *8-9 (S.D. Fla. Aug. 8, 2017), *aff'd*, 2018 WL 4211595 (11th Cir. Sept. 5, 2018); *accord Mar. Exec., LLC v. Larson Elecs., LLC*, 2018 WL 2938376, at *4 (S.D. Fla. June 11, 2018). The defamation claim against Menaker is properly dismissed on this basis as well.

within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal marks omitted). This inquiry, which a plaintiff must independently satisfy to confer jurisdiction, is even "more restrictive" than the long-arm statute. *Internet Sols.*, 39 So. 3d at 1216.

All three prongs weigh against subjecting Menaker to this Court's jurisdiction. Menaker is a citizen and resident of New York. FAC ¶ 30. He owns no property in Florida. Ex. A ¶ 5 (Decl. of William Menaker, Dec. 5, 2018). He has never paid taxes in Florida. *Id.* ¶ 6. He has no bank accounts or direct investments in Florida. *Id.* ¶¶ 7, 8. He has never been employed by a Florida business, nor has he ever employed any Florida residents. *Id.* ¶¶ 9, 10. He has never registered to vote in Florida. *Id.* ¶ 11. And he published the challenged statement without making telephone calls to Florida or otherwise communicating with Florida sources. *Id*. ¶ 12. Menaker's only connections to Florida are a few family vacations to Disney World and Key West, the most recent of which occurred more than a decade ago. *Id.* ¶ 13. This is precisely the type of "random, fortuitous, or attenuated" contact that the U.S. Supreme Court has deemed insufficient to establish personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

Moreover, in the defamation context specifically, Florida courts have held that due process is not satisfied merely because a challenged statement could be read by Florida residents. For instance, in *Alternate Energy Corporation v. Redstone*, the court granted a Michigan defendant's motion to dismiss defamation claims made by a Nevada plaintiff for lack of jurisdiction, explaining that "the mere fact that allegedly libelous statements appeared in a publication sold to Florida residents is not sufficient to give a defendant fair warning that he may be haled into court here." 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004). Because there was "no

9

indication that Defendant 'expressly aimed' its publication at the state of Florida," the court found that "Defendant has not purposefully availed himself of the benefits of doing business in this state and could not reasonably have anticipated" being sued in Florida.  *Id.*  Similarly, in *Bioheart, Inc. v. Peschong*, the court held that due process would not be satisfied where a California defendant posted allegedly defamatory statements online about a Florida plaintiff, because the plaintiff "provide[d] no evidence that [the website] generally, or [defendant's] comments in particular, were purposefully directed at a Florida audience."  2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013).  And in *Vision Media TV Group, LLC v. Forte*, the court dismissed a Florida plaintiff's defamation claim against North Carolina defendants for lack of personal jurisdiction where there was "no record evidence showing that the website at issue targeted Florida or that Defendants acted to aim their conduct at a Florida audience."  724 F. Supp. 2d 1260, 1266 (S.D. Fla. 2010).  Here, Miller does not even allege, nor could he plausibly show, that Menaker "targeted" or "directed" or "aimed" his statement at a Florida audience.

For that same reason, as well as the lack of any meaningful connection between Menaker and Florida, forcing Menaker to litigate here surely would offend notions of fair play and substantial justice.  *Forte*, 724 F. Supp. 2d at 1267 ("Plaintiff has failed to identify any facts or make any arguments in support of finding that the state of Florida has an interest in adjudicating this dispute or that jurisdiction over Defendants would comport with fair play and substantial justice."); *Bioheart, Inc.*, 2013 WL 1729278, at *5 ("Even if [plaintiff] established that [defendant] had minimum contacts with Florida, the exercise of jurisdiction over him would not comport with traditional notions of fair play and substantial justice.").  Under this Circuit's due process test, therefore, Menaker is not subject to personal jurisdiction in Florida.

Thus, pursuant to both Florida's long-arm statute and due process considerations, Miller's claim against Menaker should be dismissed for lack of personal jurisdiction.

## II.     MENAKER'S CHALLENGED STATEMENT CANNOT GIVE RISE TO A DEFAMATION CLAIM AS A MATTER OF LAW

Additionally, or in the alternative, Miller's claim fails under the First Amendment. "While defamation is primarily a creature of state law, the First Amendment safeguards for freedom of speech and press limit state law." *Knievel v. ESPN, Inc.*, 223 F. Supp. 2d 1173, 1177 (D. Mont. 2002) (internal marks omitted), *aff'd*, 393 F.3d 1068 (9th Cir. 2005). Three such safeguards are fatal to a claim of defamation here: (1) the challenged statement is a nonactionable use of rhetorical hyperbole; (2) in the alternative, the statement expresses a protected opinion based on fully disclosed facts; and (3) Miller, a public figure, has failed to plausibly plead that Menaker published the statement with "actual malice" fault.

### A.     The Challenged Statement Is A Nonactionable Use Of Rhetorical Hyperbole

Miller is suing over a message posted on Twitter that reads in full, "Rat-faced baby-killer and Trump PR homunculus, Jason Miller, is suing my girlfriend for $100 million, cool!" FAC ¶ 120. Miller singles out the term "baby-killer," which he alleges is "false and defamatory." *Id.* ¶¶ 122, 208. Under Eleventh Circuit law, the Court views this challenged statement in full and in context. *Turner v. Wells*, 879 F.3d 1254, 1267 (11th Cir. 2018) (chiding plaintiff for "cherry pick[ing] statements . . . out of context"). In context, it is clear that the use of the term "baby-killer" is "rhetorical hyperbole" that cannot give rise to a defamation claim as a matter of law.

Recognizing the "constitutional limits on the type of speech which may be the subject of state defamation actions," *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16-20 (1990) (emphasis omitted), the Supreme Court has held that "rhetorical hyperbole" cannot give rise to a viable defamation claim. On this basis, the Court has shielded from liability the description of a real

11

estate developer as engaging in "blackmail," which the Court called "a vigorous epithet," and the characterization of workers crossing a picket line as "traitors," which the Court deemed "a lusty and imaginative expression of . . . contempt," even though in both cases plaintiffs argued that those statements accused them of criminal conduct.  *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 286 (1974); *Greenbelt Co-op. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970).  Likewise, the Court concluded that Jerry Falwell could not prevail on a claim arising out of a parody advertisement implying that he had engaged in "a drunken incestuous rendezvous with his mother in an outhouse," because the First Amendment protects "speech that is patently offensive and is intended to inflict emotional injury" so long as it "could not reasonably have been interpreted as stating actual facts about the public figure involved." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 48, 50 (1988).  This "*Bresler-Letter Carriers-Falwell* line of cases" protects satire and rhetorical hyperbole, which "provides assurance that public debate will not suffer for lack of 'imaginative expression.'"  *Milkovich*, 497 U.S. at 20.

The Eleventh Circuit has similarly provided robust protection for commentary.  In *Horsley v. Rivera*, 292 F.3d 695 (11th Cir. 2002), the owner of an anti-abortion website sued Geraldo Rivera for defamation after Rivera stated on national television that the plaintiff was an "accomplice to homicide" following the murder of a doctor in New York.  The court held that Rivera's statement was rhetorical hyperbole protected by the First Amendment, explaining that Rivera used "the sort of loose, figurative language that no reasonable person would believe presented facts," and that "reasonable viewer[s] would have understood Rivera's comments merely as expressing his belief that [plaintiff] shared in the moral culpability for [the doctor's] death, not as a literal assertion that [plaintiff] had, by his actions, committed a felony." *Id.* at 702.  The court reached an identical result when the same plaintiff sued over a statement made

12

during a televised debate that he has "the blood of these doctors on [his] hands," and that he "incited and . . . inspired and conspired with others." *Horsley v. Feldt*, 304 F.3d 1125, 1130 (11th Cir. 2002). Similarly, in *Keller v. Miami Herald Publishing Co.*, an editorial cartoon depicting a notorious nursing home was held protected as rhetorical hyperbole. 778 F.2d 711 (11th Cir. 1985). As the court explained, "it would have been unreasonable to interpret the cartoonist as alleging that [the owner] was involved in specific criminal activity or was a member of organized crime merely because the three men in the cartoon were dressed like gangsters." *Id.* at 716. Instead, "the cartoonist was using the gangster caricature 'in a loose, figurative sense' to express the statement that [the owner] made a great deal of money by taking advantage of sick, elderly people." *Id.*

In reaching this decision, the Eleventh Circuit in *Keller* noted that because it "must consider the circumstances giving rise to the publication of a statement to determine how the statement must have been understood, then certainly it must take note of the medium through which the statement is expressed." *Id.* It thus observed that "[c]artoonists employ hyperbole, exaggeration, and caricature to communicate their messages to the reader." *Id.* Courts across the country have treated certain avenues for online speech in a similar manner. *E.g.*, *Santilli v. Van Erp*, 2018 WL 2172554, at *6 (M.D. Fla. Apr. 20, 2018) (finding plaintiffs were "not likely to succeed on their defamation claims" in part because challenged statements were made on the "type of online forum where a reasonable person expects to find controversy and accompanying rhetoric"), *report and recommendation adopted*, 2018 WL 2152095 (M.D. Fla. May 10, 2018); *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (N.Y. App. Div. 2011) (finding challenged statements nonactionable and noting that "[t]he culture of Internet communications . . . has been characterized as encouraging a 'freewheeling, anything-goes writing style'").

Recent cases involving Miller's former employer make clear that Twitter is a unique online home for rhetorical expression.  In *Jacobus v. Trump*, a New York state court held that President Trump's allegedly false statements on Twitter that plaintiff "begged" him for a job were "loose, figurative, and hyperbolic," and therefore nonactionable.  55 Misc. 3d 470, 482-83 (N.Y. Sup. Ct. 2017), *aff'd*, 156 A.D.3d 452 (N.Y. App. Div. 2017).  More recently, in *Clifford v. Trump*, a California federal court held that President Trump's post on Twitter – stating that plaintiff engaged in a "total con job" in describing a man who allegedly threatened her daughter and told her to "[l]eave Trump alone" – was protected as "'rhetorical hyperbole' normally associated with politics and public discourse in the United States."  --- F. Supp. 3d ---, 2018 WL 4997419, at *7 (C.D. Cal. Oct. 15, 2018), *appeal filed*, No. 18-56351 (9th Cir. Oct. 16, 2018).  The court found that the message "displays an incredulous tone, suggesting that the content of his tweet was not meant to be understood as a literal statement about Plaintiff," adding, "[a]s the United States Supreme Court has held, a published statement that is 'pointed, exaggerated, and heavily laden with emotional rhetoric and moral outrage' cannot constitute a defamatory statement."  *Id.* at *8 (quoting *Milkovich*, 497 U.S. at 32).

Viewed in light of these decisions, Menaker's statement is a clear case of rhetorical hyperbole.  It displays an incredulous tone, sarcastically describing Miller's demand for $100 million from Krueger as "cool!"  FAC ¶ 120.  It is pointed and exaggerated, calling Miller "rat-faced" and a "homunculus."  *Id.*  And it is "heavily laden with emotional rhetoric and moral outrage," ironically employing the term "baby-killer" – a phrase commonly used by anti-abortion activists, *e.g.*, *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 759 (1994) – to call out the apparent hypocrisy of a conservative figure who reportedly pressured one paramour to obtain an

14

abortion and allegedly dosed another with an abortifacient.[3]  Moreover, like the nonactionable messages in *Jacobus* and *Clifford*, Menaker's challenged statement was made on Twitter, which is "the type of online forum where a reasonable person expects to find controversy and accompanying rhetoric."  *Santilli*, 2018 WL 2172554, at *6.  In sum, viewing the challenged statement in context and as a whole, Menaker's description of Miller as a "[r]at-faced baby-killer and Trump PR homunculus" is a vigorous epithet or an imaginative expression of contempt, and it could not reasonably have been interpreted as asserting actual facts about Miller.  The statement therefore amounts to rhetorical hyperbole, and under clear Supreme Court case law, the Court should dismiss this defamation claim.

### B.   In The Alternative, The Challenged Statement Expresses A "Pure Opinion"

Additionally, or in the alternative, the phrase "baby-killer" cannot give rise to a defamation claim because it would be a protected opinion based on fully disclosed facts.

"[S]tatements of pure opinion are protected from defamation actions by the First Amendment."  *Turner*, 879 F.3d at 1262 (citing *Keller*, 778 F.2d at 714-15, 717).  A statement is considered a "pure opinion" when "the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public."  *Id.*; *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006).  "Whether the statement is one of fact or opinion" is a question of law for the court.  *Turner*, 879 F.3d at 1262-63.  In making that determination, "the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the

---

[3] Miller has notably expunged his own Twitter messages criticizing then-candidate Trump for shifting positions on abortion before Miller joined his staff.  *See* Judd Legum, *What Donald Trump's New Communications Director Really Thinks Of Donald Trump, In 11 Deleted Tweets*, ThinkProgress, June 28, 2016, https://thinkprogress.org/what-donald-trumps-new-communications-director-really-thinks-of-donald-trump-in-11-deleted-tweets-e1bf573fb840/.

words used in the publication." *Keller*, 778 F.2d at 717; *Morse v. Ripken*, 707 So. 2d 921, 922

(Fla. 4th DCA 1998). Further, the court "must consider the context in which the statement was

published." *Rasmussen v. Collier Cty. Publ'g Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006).

Indeed, courts widely agree that "even a provably false statement is not actionable if it is plain

that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or

surmise, rather than claiming to be in possession of objectively verifiable facts." *Riley v. Harr*,

292 F.3d 282, 289 (1st Cir. 2002) (internal marks omitted); *Levin v. McPhee*, 119 F.3d 189, 197

(2d Cir. 1997); *Moldea v. New York Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994); *Haynes v.*

*Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). Courts also have not hesitated to apply

the constitutional protections for opinion at the motion to dismiss stage. *E.g.*, *Turner v. Wells*,

198 F. Supp. 3d 1355, 1358 (S.D. Fla. 2016); *Del Fuoco v. O'Neill*, 2011 WL 601645, at \*7-8

(M.D. Fla. Feb. 11, 2011).

     The term "baby-killer" is thus protected at this stage as a pure opinion based on fully

disclosed facts when viewed, as it must be, in its full context. The challenged statement includes

a hyperlink to the Page Six Article, which reported the underlying allegations that "Miller tried

to kill a woman [and] killed her unborn child," as well as Miller's denial of those allegations.

Moreover, the Page Six Article contains a hyperlink to the *Splinter* Report, which stated that

"court documents claim . . . Miller surreptitiously dosed [his paramour] with an abortion pill

without her knowledge, leading, the woman claims, to the pregnancy's termination." And the

*Splinter* Report includes a complete copy of the Supplement itself, which alleges that Miller

"caus[ed] the death of an unborn child via a forcibly induced abortion." Menaker's use of the

term "baby-killer," even if viewed in the literal light that Miller urges, is therefore "a comment

. . . based on facts which are set forth in the publication or which are otherwise known or

available to the reader or listener as a member of the public." *Turner*, 879 F.3d at 1262.  The

statement, accordingly, constitutes a nonactionable expression of pure opinion protected by the

First Amendment, and dismissal is warranted on that basis as well.

       C.      **Miller Fails To Plausibly Allege That Menaker Published The Challenged Statement With "Actual Malice" Fault**

As an additional, independent basis for dismissal, Miller also fails to meet his pleading

burden to allege facts that, if proven, could plausibly establish that Menaker made the statement

with the requisite level of fault.

For purposes of defamation suits, the First Amendment distinguishes private figures from

public figures.  The latter are individuals "who, by reason of the notoriety of their achievements

or the vigor and success with which they seek the public's attention," assume a place on the

public stage and thereby both "run[] the risk of closer public scrutiny" and achieve "access to the

channels of effective communication" to correct alleged falsehoods published about them.  *Gertz*

*v. Robert Welch, Inc.*, 418 U.S. 323, 342-44 (1974).  In light of this country's "profound national

commitment" to the debate of public issues, those who have chosen to engage in public

endeavors or participate in public debate accept a greater risk of critical public comment and

scrutiny.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  To prevail on a defamation

claim, these public figures must plead, and ultimately prove, by clear and convincing evidence,

"actual malice" fault, which turns on "whether the defendant actually entertained serious doubts

as to the veracity of the published account, or was highly aware that the account was probably

false." *Turner*, 879 F.3d at 1273 (internal marks omitted).

Moreover, as the Eleventh Circuit recently explained, a public figure defamation plaintiff

must plead sufficient facts that, if proven, would *plausibly* establish actual malice, and the failure

to do so requires dismissal.  *Turner*, 879 F.3d at 1272-74; *Michel*, 816 F.3d at 701-02 ("[E]very

circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice.") (collecting cases).

Miller tacitly concedes through his own pleadings that he is a public figure, and he alleges the actual malice standard of fault. *E.g.*, FAC ¶ 122 ("Menaker's statement . . . was published with actual malice."). Even without his admission, the Court could readily conclude "as a question of law," *Turner*, 879 F.3d at 1271, that Miller is a public figure.[4] For one, Miller "had ready access to the media for many years prior to [the challenged statement]," *Silvester v. ABC, Inc.*, 839 F.2d 1491, 1494 (11th Cir. 1988), both directly as "a Political Commentator for CNN" and indirectly as an advisor to "Fortune 500 CEOs on crisis communications, corporate communications, and media relations," FAC ¶ 38. *See also Mile Marker, Inc. v. Peter Publ'g, LLC*, 811 So. 2d 841, 846 (Fla. 4th DCA 2002) (noting that plaintiff "enjoyed greater media access, consistent with public figure status"). Miller also "voluntarily placed [himself] in a position and acted in a manner which invited public scrutiny and comment," *Silvester*, 839 F.2d at 1494, including by working as a senior advisor to a major-party candidate's presidential campaign and then as a senior communications official for the President-elect, FAC ¶ 37. Moreover, prior to Menaker's challenged statement, Miller "thrust [himself] forward in a particular public controversy," *Turner*, 879 F.3d at 1272, namely the controversy over the very allegations made against him in the Supplement, which were initially reported by *Splinter* and subsequently received widespread coverage.[5] In sum, before Menaker posted the challenged

---

[4] In deciding whether Miller is a public figure, the Court may take judicial notice of press reports about him. *See, e.g.*, *Turner*, 879 F.3d at 1272 n.5 (adjudicating public figure issue at motion to dismiss stage based upon judicial notice of prior published reports about plaintiff).

[5] *E.g.*, Tamar Lapin, *Ex-Trump staffer accused of slipping abortion pill into girlfriend's smoothie*, The New York Post, Sept. 23, 2018, https://nypost.com/2018/09/23/ex-trump-staffer-

statement, Miller had opened himself to public scrutiny through his high-profile professional endeavors, he had established ready access to the media to respond to criticism, and his alleged misconduct toward his paramours already had become the subject of nationwide press reports.

Because Miller is a public figure for the purpose of this claim, he must undertake the "daunting" task of pleading – and ultimately proving – facts sufficient to demonstrate that Menaker published the challenged statement with actual malice. *Klayman v. City Pages*, 2015 WL 1546173, at *13 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016). Yet Miller makes no attempt to allege *specific* facts which would, if proven, *plausibly* establish actual malice. Instead, his pleadings make only three generic allegations, none of which is sufficient to survive this motion to dismiss.

<u>First</u>, Miller merely parrots the actual malice standard itself, alleging that Menaker "had actual knowledge the accusation that Miller was a 'baby killer' was false when he published," or that "Menaker published his tweet with reckless disregard for the falsity of his statement." FAC ¶ 142. Such conclusory allegations, without supporting factual allegations, are insufficient to plead actual malice. *Turner*, 879 F.3d at 1273 (alleging that defendants "knowingly and recklessly" ignored or deliberately avoided learning information is insufficient to plead actual malice where "the complaint [does] not set forth facts demonstrating that the [d]efendants acted in these ways"); *Michel*, 816 F.3d at 704 ("Allegations such as these amount to little more than threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

accused-of-slipping-abortion-pill-into-girlfriends-smoothie/; Brian Steinberg, *Trump Campaign Aide Jason Miller Exits CNN Analyst Job After Accusations*, Variety, Sept. 22, 2018, https://variety.com/2018/tv/news/jason-miller-cnn-donald-trump-1202953710/; Aris Folley, *Ex-Trump staffer out at CNN amid 'false and defamatory accusations'*, The Hill, Sept. 22, 2018, https://thehill.com/blogs/blog-briefing-room/news/407947-ex-trump-staffer-out-at-cnn-amid-false-and-defamatory.

statements, which are insufficient to support a cause of action.") (alterations and internal marks omitted).

Second, Miller alleges that Menaker "harbors ill-will and hostility" toward him. FAC ¶¶ 118-19. Such allegations cannot establish actual malice as a matter of law. *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) ("Ill-will, improper motive or personal animosity plays no role in determining whether a defendant acted with 'actual malice.'").

Third, Miller alleges that Menaker ignored his denial of the allegations made against him in the Supplement. FAC ¶ 143 & Ex. 1. As a matter of law, denials like these, "however vehement," cannot establish actual malice because "such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) (internal marks omitted). And this denial in particular, which takes the form of a declaration that Miller submitted from an anonymous individual who claims never to have met Miller, cannot possibly establish that Menaker "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

In sum, none of these allegations plausibly establishes that Menaker knowingly published a false statement about Miller. Miller has therefore failed to carry his burden at the pleading stage with respect to alleging actual malice fault.

## CONCLUSION

For each and all of foregoing reasons, Menaker respectfully requests that the Court dismiss Count VI of the First Amended Complaint with prejudice for lack of personal jurisdiction or for failure to state a claim as a matter of law, and grant such other and further relief as the Court deems just and proper.

Dated:  January 24, 2019         Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (Fla. Bar No. 816345)
Chad R. Bowman (admitted *pro hac vice*)
Maxwell S. Mishkin (admitted *pro hac vice*)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
bowmanchad@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Defendant William Menaker*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of January, 2019, I caused a true and correct copy of

the foregoing Renewed Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State

a Claim and Supporting Memorandum of Law and the exhibit thereto to be electronically filed

with the Clerk of the Court using CM/ECF.  I also certify the foregoing document and the exhibit

thereto are being served this day on all counsel of record in this case via transmission of Notice

of Electronic Filing generated by CM/ECF.

/s/ Charles D. Tobin
Charles D. Tobin (Fla. Bar No. 816345)

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

JASON MILLER,

    Plaintiff,

v.                                 1:18-CV-24227-CMA-Altonaga

GIZMODO MEDIA GROUP, LLC, et al.,

    Defendants.

_____/

## DECLARATION OF WILLIAM MENAKER

I, William Menaker, declare as follows:

1.      I respectfully submit this declaration in support of my Motion to Dismiss Count VI of Plaintiff Jason Miller's First Amended Complaint for lack of personal jurisdiction.  I am over eighteen years of age, and if called upon I could testify as to the facts stated herein.

2.      I am a host of *Chapo Trap House*, a political comedy podcast, and a co-author of the book *The Chapo Guide to Revolution: A Manifesto Against Logic, Facts, and Reason*.

3.      I currently live in Brooklyn, New York.  I have lived in New York since 1983.

4.      I have never lived in the state of Florida.

5.      I do not own any property in the state of Florida.

6.      I have never paid taxes in the state of Florida.

7.      I do not have any bank accounts in the state of Florida.

8.      I do not have direct investments in any Florida business.

9.      I have never been employed by a Florida business.

10.      I have never employed a Florida resident.

11.      I have never registered to vote in the state of Florida.

12.     I did not make telephone calls to anyone in Florida or otherwise communicate with any Florida sources in connection with the Twitter message at issue in this case.

13.     To the best of my recollection, I have visited Florida four times: twice on family vacations to Disney World, and twice on family vacations to Key West.  The most recent such visit was more than 10 years ago.

I hereby affirm, pursuant to 28 U.S.C. § 1746 and under the penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on: 12/5/18

William Menaker