UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

1:18-CV-24227-CMA-Altonaga

JASON MILLER,                              )
                                           )
                Plaintiff,                 )
                                           )
       vs.                                 )
                                           )
GIZMODO MEDIA GROUP, LLC,                  )
a Delaware Corporation, KATHERINE          )
KRUEGER, individually, and WILL            )
MENAKER, individually,                     )
                                           )
                Defendants.                )

**DEFENDANTS GIZMODO MEDIA GROUP, LLC'S AND KATHERINE KRUEGER'S SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Pursuant to this Court's January 14, 2019 Order (ECF No. 62) (the "Order") Defendants Gizmodo Media Group, LLC and Katherine Krueger (together, "Defendants") respectfully submit this supplemental reply memorandum of law in support of Defendants' Motion to Dismiss (ECF No. 44).

**PRELIMINARY STATEMENT**

This Court asked the parties to address a single discrete question: "Assuming . . . the Supplement was in fact sealed in the state court proceedings before September 21, 2018, as Plaintiff maintains . . . whether the application of the sealed order to the Gizmodo Defendants would constitute an impermissible prior restraint." (Order at 2.) As we said in our January 18 brief, if such an order barred publication of information already disclosed publicly, it would be a prior restraint. Plaintiff spends the bulk of his brief repeating his argument that his independent act of filing a motion to seal the Supplement[1] automatically stripped Defendants of the privileges guaranteed to them by the First Amendment and the fair report privilege (arguments that we have already addressed at length), and then saying that if a hypothetical sealing order barred

---

[1] Capitalized terms not otherwise defined have the meaning ascribed to them in Defendants' Motion to Dismiss the Complaint (ECF No. 44 ("Mem.")).

1

Defendants from relying on the fair report privilege, it would not be a prior restraint. We disagree, because stripping Defendants of their constitutional rights would be at least a *de facto* prior restraint.

## ARGUMENT

As we explained to the Court in our January 18 brief, if under the facts of this case a hypothetical sealing order operated to bar publication of the Supplement, it would be a prior restraint as it would prohibit Defendants from reporting on information that was public prior to the imposition of the order. Plaintiff avoids addressing the hypothetical. Instead, Plaintiff makes generalized arguments about sealing orders, and then argues that if a sealing order stripped Defendants of their constitutional protections, it would not be a prior restraint.

Of course, Defendants have never argued that all sealing orders are categorical prior restraints, nor claimed that "Rule 2.420 . . . is an unconstitutional prior restraint." (Opp. 10; 2.) Therefore, Plaintiff's entire argument is a red herring. And the cases he cites to support it are inapposite because they involve sealing orders entered by California and New York courts. *See In re Estate of Hearst*, 67 Cal. App. 3d. 777, 783 (Cal. Ct. App. 1977) (sealing orders entered by a probate court were not prior restraints because they did not, by their terms, apply to the press); *Coopersmith v. Gold*, 156 Misc. 2d 594, 602-03, 594 N.Y.S.2d 521, 527-28 (Sup. Ct. Rockland Cty. 1992) (unsealing portions of court record that had been sealed by court order and noting that a "[a] sealing order is not 'an unconstitutional restriction of the freedom of the press'" because a "court has inherent control over its own records *and may order* that those records be sealed") (emphasis added).[2] That is not what the hypothetical seal at issue here is – instead, the sealing order Plaintiff maintains was in place in this action is one that he claims arose unilaterally when he filed a motion to seal. As we have previously explained, the sealing order Plaintiff describes would never satisfy the tests set down by the courts and would undoubtedly be deemed a prior restraint if it barred publication. *See, e.g.*, *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976) (to be upheld as constitutional, a prior restraint must overcome a three-part test after

---

[2] Notably, the court in *Coopersmith*, in unsealing the court record, focused on the legislative history of the trial court rule permitting a court to seal court records upon a finding of good cause, noting that its "primary purpose . . . was to prevent parties from designating documents or records as confidential and obtaining court orders sealing those records as a matter of course." 156 Misc. 2d at 529, 594 N.Y.S.2d at 605. That is precisely what Plaintiff seeks – impermissibly – to do here.

judicial scrutiny); *Palm Beach Newspapers, LLC v. State*, 183 So. 3d 480, 483 (Fla. 4th DCA 2016) (requiring a "party seeking to uphold a prior restraint or censorship order . . . [to] demonstrate that there are no alternative measures to protect the competing interest and that the prior restraint or censorship will be effective to accomplish that purpose").

Even if the Florida Family Court had issued a sealing order in response to Plaintiff's motion – which never occurred – it would be unconstitutional if applied to Defendants. The reason is simple and not in dispute: the Supplement was public before Plaintiff filed his motion to seal, and thus any subsequent order blocking its publication would be a prior restraint.[3] *See, e.g.*, *Nebraska Press*, 427 U.S. at 568; *Oklahoma Publ'g Co. v. District Court in and For Oklahoma Cty.*, 430 U.S. 308, 309 (1977); *Florida Pub. Co. v. Brooke*, 576 So. 2d 842, 846 (Fla. 1st DCA 1991); *Jacksonville Television, Inc. v. Florida Dep't. of Health & Rehab. Servs.*, 659 So. 2d 316, 318 (Fla. 1st DCA 1994). To hold otherwise would impermissibly constrain the press from reporting on matters of public concern. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975) (the freedom of the press to publish information "plac[ed] in the public domain on official court records" is "of critical importance to our type of government"); *cf. Florida Star v. B.J.F.*, 491 U.S. 524, 533 (1989) (state may not punish publication of lawfully obtained information about a matter of public significance "absent a need to further a state interest of the highest order") (internal citations omitted).

Next, Plaintiff attempts to avoid the Court's direct question entirely by arguing that he is not seeking to enjoin Gizmodo from publishing the Supplement. (Opp. 7.) Instead, he argues, the "sealing order" (which, again, he claims exists because he unilaterally filed a request to seal) stripped Defendants of the protections guaranteed to them by the First Amendment to the United

---

[3] Plaintiffs argues that it is "irrelevant" whether the Supplement was publicly available between its filing and his Motion to Seal because Rule 2.420 allows a party to designate documents "confidential" after they are initially filed. (Opp. 5-6.) But in doing so, he relies on a provision of the Rules of Judicial Administration that is entirely inapposite here. Rule 2.42(d)(2)(A), which Plaintiff invokes, provides that a party may file a Notice of Confidential Information within Court filing "[i]if any document in a court file contains information *as described in subdivision (d)(1)(B).*" But 2.420(d)(1)(B) lists certain kinds of information that must be *automatically* maintained as confidential, such as Social Security numbers, HIV tests results, victim information in domestic violence actions, and the like. That section has nothing to do with information contained in "court record[s] determined to be confidential *in case decision or court rule*" under 2.420(c)(9) (emphasis added), which is the provision Plaintiff invoked in seeking to seal the Supplement. (FC Dkt. No. 356.)

States Constitution in *Cox Broadcasting*, and the laws of the States of New York and Florida. (*Id*.) But, even if not a prior restraint, this serious consequence would be constitutionally impermissible. That was the conclusion the court reached in *Alvarado v. KOB-TV, LLC*, No. 05-750 WJ/LAM, 2005 WL 8163399 (D.N.M. Nov. 14, 2005) when it rejected the very same arguments the Plaintiff is making here. Specifically, there the Plaintiffs argued that published information had been obtained in violation of a sealing order and, as a result, "the First Amendment defense does not apply." *Id.* at *3. The court squarely rejected that argument, holding that because the sealing order was a prior restraint, "KOB-TV's broadcast of the allegedly objectionable information was protected under the First Amendment." *Id.* at * 4.[4] A sealing order – even a properly obtained sealing order – cannot, therefore, act to strip Defendants of their constitutional protections.

And, indeed, Plaintiff cites no valid authority to support his argument that merely moving to seal a document automatically strips Defendants of the fair report privilege and the constitutional right to report on publicly available documents. The only authority on which Plaintiff relies – in the 17 pages of briefing on this motion and the 20 page addendum – are three New York cases – *Stevenson v. News Syndicate Co., Inc.*, 276 A.D. 614, 96 N.Y.S.2d 751 (2d Dep't 1950), *Danzinger v. Hearst Corp.*, 304 N.Y. 244 (1952), and *Shiles v. News Syndicate Co.*, 27 N.Y.2d 9 (1970). As Defendants argued in their moving papers and at oral argument, however, Plaintiff is egregiously misstating the law. The New York State legislature expressly rejected the very policy Plaintiff reads into *Stevenson* and *Danzinger*. Those two cases (decided in 1950 and 1952, respectively, before defamation law was constitutionalized in *New York Times*, 376 U.S. 254, and before the Supreme Court created the absolute privilege that attaches to documents obtained from court filings in *Cox Broadcasting*), held that the then existing fair report privilege, codified as Section 337 of the New York Civil Practice Act, did not apply to reports of matrimonial actions, then governed by Rule 278 of the New York rules of Civil Practice. Neither of these rules, however, remain on the books. More than that, the current New

---

[4] In his Supplemental Opposition, Plaintiff attempts to distinguish *Alvarado* on the ground that this is a defamation action and *Alvarado* only involved invasion of privacy and intentional infliction of emotional distress claims. (Opp. 14.) This is not even a distinction – Plaintiff himself asserts invasion of privacy claims and intentional infliction of emotional distress claims – but if so, it is a distinction without a difference. The defenses KOB asserted in that case were the same as those Defendants would assert here, including the privilege articulated in *New York Times v. Sullivan*, 376 U.S. 254 (1964).

4

York fair report statute, New York Civil Rights Law § 74, was expressly amended to broaden the privilege to include reports of non-public actions, like the matrimonial filings at issue in *Stevenson* and *Danzinger*.  See *Shiles*, 27 N.Y.2d at 20 (Breitel, J., dissenting) (amendments to New York's fair report statute, "by deleting the word 'public,' had the purpose of overruling the Danzinger and Stevenson cases . . . The effect was to give newspapers absolute immunity from tort liability for publication of 'fair and true reports' of judicial, legislative, or other official proceedings, even if not public").  Plaintiff's continued insistence that *Stevenson* and *Danzinger* are still good law when, in fact, they have been expressly repudiated by the New York State Legislature merely emphasizes the desperate measures he will go to save his claim.

Plaintiff's reliance on *Shiles* is equally disingenuous.  *Shiles* held in 1970 that the fair report privilege did not apply to sealed court records in matrimonial actions governed by New York Domestic Relations Law § 235, and its holding has since been strictly confined to its facts. *See Zappin v. NYP Holdings, Inc.*, 16 Civ. 8838, 2018 WL 1474414, at *5 (S.D.N.Y. Mar. 26, 2018) (*Shiles* does not categorically prohibit the application of Section 74 in matrimonial proceedings); *Zappin v. Daily News*, 16 Civ. 8762, 2017 WL 3425765, at *9 (S.D.N.Y. Aug. 9, 2017) (*Shiles* did not bar application of fair report privilege to article on public evidentiary hearing in plaintiff's divorce proceedings).  The dispute between Delgado and Miller is not a matrimonial action governed by New York Domestic Relations Law § 235 – in fact, it is not a matrimonial proceeding at all.  Rather, it is a paternity proceeding in Florida state court.  *Shiles* does not help the Plaintiff here.[5]  Finally, there is no better evidence that Plaintiff's understanding of these three cases is simply wrong than the many cases in New York that apply the fair report privilege in both matrimonial and family court proceedings.  *See, e.g.*, *Gillings v. New York Post*, 166 A.D.3d 584, 586-87, 87 N.Y.S.3d 220, 223 (2d Dep't 2018) (applying privilege to article describing divorce action); *Zappin v. NYP Holdings, Inc.*, 2018 WL 1474414, at *5 (same); *Zappin v. Daily News*, 2017 WL 3425765, at *9 (same); *Uzamere v. Daily News*,

---

[5] Plaintiff without foundation claims that *Shiles*, a matrimonial case, is a similar action to this one.  But the Miller/Delgado dispute is a paternity proceeding, which in New York, would be governed by the Family Court Act.  N.Y. Fam. Ct. Act §§ 115, 166.  Family Court actions have, since 1997, been presumptively open to the public.  *See, e.g.*, *In re Adoption of Doe*, 16 Misc. 3d 714, 717 n.7, 842 N.Y.S.2d 200, 203 n.7 (Surrogate's Ct. N.Y. Cty. 2007) (the Uniform Rules for the Family Court were amended in 1997 to provide that "The Family Court is open to the public.  Members of the public, including the news media, shall have access to all courtrooms, lobbies, public waiting areas, and other common areas of Family Court[.]")

5

*L.P.*, 34 Misc. 3d 1203(A), 2011 WL 6934526, at *3 (Sup. Ct. N.Y. Cty. Nov. 10, 2011) (applying privilege to article that recited statements from affidavit filed in plaintiff's divorce); *Mills v. Raycom Media, Inc.*, 34 A.D.3d 1352, 1352-53, 824 N.Y.S.2d 845, 845-46 (4th Dep't 2006) (applying privilege to broadcast on Family Court neglect proceeding).[6]  Plaintiff has cited no valid authority for his claim that he can strip Defendants of their constitutional and statutory rights simply by making a motion to seal.

Indeed, if this Court were to accept Plaintiff's argument that his motion to seal stripped Defendants of their constitutional rights, it would cause a profound chilling effect on the media's ability to publish information from the public files of Florida and other courts, which would work as a *de facto* prior restraint.  *See New York Times*, 376 U.S. at 278 (where publishers face successive damages awards, "[t]he pall of fear and timidity imposed upon those who would give voice to public criticism is an atmosphere in which the First Amendment freedoms cannot survive"); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) ("the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation" amount to impermissible prior restraints); *G.& A. Books, Inc. v. Stern*, 604 F. Supp. 898, 908 (S.D.N.Y. 1985) ("[W]hen government seeks to discourage speech, even sanctions short of actual suppression may constitute a prior restraint if they exercise a sufficient chilling effect on protected speech.").  The fair report privilege exists to encourage reporting on what happens in our courts and in our government.  *See, e.g.*, *Beary v. West Publishing Co.*, 763 F.2d 66, 68 (2d Cir. 1985) (the purpose of Section 74 "is to implement the public policy in favor of encouraging publication and dissemination of judicial decisions and proceedings as being in the public interest"); *Ortega*, 510 So. 2d at 976 (fair report privilege "exists so that the public may be kept informed of the workings of government . . . [t]hat purpose is served . . . when the information brought out in official proceedings is reported").[7]  Stripping Defendants of their constitutional and statutory

---

[6] These cases are consistent with those that hold that the fair report privilege applies to sealed or confidential materials.  *See Freeze Right Refrig. & A.C. Servs. v. City of New York*, 101 A.D.2d 175, 183, 475 N.Y.S.2d 383, 389 (1st Dep't 1984); *Komarov v. Advance Magazine Publishers*, 180 Misc. 2d 658, 660, 691 N.Y.S.2d 298, 300 (Sup. Ct. N.Y. Cty. 1999); *Keogh v. N.Y. Herald Tribune, Inc.*, 51 Misc. 2d 888, 891, 274 N.Y.S.2d 302, 305 (Sup. Ct. N.Y. Cty. 1966), *aff'd*, 28 A.D.2d 1209 (1st Dep't 1967); *Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So.2d 972, 976 (Fla. 3d DCA 1987).

[7] Plaintiff repeats throughout his briefs that the fair report privilege applies only to information obtained from a government source.  (ECF No. 54 at 7-16; Opp. at 16-17.)  This claim is incorrect.  The relevant inquiry is whether the allegedly defamatory statements are contained in a

rights if there happens to be a sealing order in place – or, as here, where nothing has occurred but a motion to seal – would run headlong into these constitutional and statutory rights. Even assuming *arguendo* that Plaintiff's motion to seal actually operated to "seal" the Supplement,[8] Defendants did not and could not have known it, as there was no such indication on the public docket or the Supplement itself. To now conclude that Defendants are precluded from relying on fair report and constitutional defenses that protect reporting on publicly available judicial records, and must now defend a $100 million defamation claim, offends the strong public policy that undergirds both the *Cox* privilege and the fair report privilege. And it may cause media organizations to not publish or delay publication for fear of being caught in traps like the one Plaintiff is seeking to lay here. This chilling effect is itself a grave constitutional harm that can work as a *de facto* prior restraint, even if not a literal one. *See Elrod v. Burns*, 427 U.S. 347, 373-4 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")

      This is not an abstract or hypothetical concern. The press routinely reports on court filings that are filed publicly but subsequently restricted from public view. For example, the *Des Moines Register* recently reported on court documents that were filed publicly in the divorce proceedings of U.S. Senator Joni Ernst, but quickly sealed by the judge in that case.[9] The court

---

record to which the fair report privilege applies, not how the journalist obtained the information. *Ortega*, 510 So. 2d at 976 (fact that reporter gathers second-hand information regarding an official proceeding is immaterial to whether fair report privilege applies); *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115, 887 N.Y.S.2d 592, 596 (2d Dep't 2009) ("[O]nce it is established that the publication is reporting on a judicial proceeding, 'how a reporter gathers his information concerning a judicial proceeding is immaterial provided his [or her] story is a fair and substantially accurate portrayal of the events in question.'").

[8] There was no plausible basis to believe the Supplement was ever sealed. Defendants learned on September 21, 2018 that the Supplement was purportedly sealed and, the very next business day, on September 24, retrieved a copy from the Clerk. Plaintiff has pleaded no facts that establish that the outcome would have been different had they sent the runner to court on September 21.

[9] Luke Nozicka and Linh Ta, "Divorce filing: U.S. Sen. Joni Ernst says her husband physically attacked her," *Des Moines Register* (Jan. 22, 2019), *available at* https://www.desmoinesregister.com/story/news/2019/01/22/joni-ernst-gail-senator-iowa-ia-divorce-congress-politics-trump-republican-washington-des-moines/2637142002/; Stephen Gruber-Miller, "'I am a survivor,' Ernst says as divorce details become public," *Des Moines Register* (Jan. 23, 2019), *available at* https://www.desmoinesregister.com/story/news/politics/2019/01/23/joni-ernst-divorce-husband-gail-affair-domestic-abuse-iowa-election-politics-us-army-senate-ia-trump/2654374002/

filings variously alleged that Ernst had an affair during her marriage, and that Ernst's husband was physically and emotionally abusive to her.[10] Even after the filings were sealed, the *Register* and numerous other outlets continued to report on the story, without independently investigating the allegations in the sealed filings.[11] This reporting, appropriately, has not been challenged by Ernst, her husband, or the court in their divorce proceedings. For good reason: to constrain the press from relying on the constitutional and fair report privilege when reporting on matters of public record, even where those records are later shielded from public view, would be plainly unconstitutional and contravene the purpose of those privileges. *See Oklahoma Pub. Co.*, 430 U.S. at 310; *Florida Star*, 492 U.S. at 533.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' moving papers, Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice.

Dated: January 25, 2019

Respectfully submitted,

/s/ *Elizabeth A. McNamara*
Elizabeth A. McNamara (*pro hac vice*)
Katherine M. Bolger (*pro hac vice*)
Claire K. Leonard (*pro hac vice*)
DAVIS WRIGHT TREMAINE
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
lizmcnamara@dwt.com
katebolger@dwt.com
claireleonard@dwt.com

/s/ *Deanna K. Shullman*
Deanna K. Shullman (Florida Bar No. 514462)
Rachel Fugate (Florida Bar. No. 144029)
Giselle M. Girones (Florida Bar. No. 124373)
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
rfugate@shullmanfugate.com
ggirones@shullmanfugate.com
*Attorneys for Defendants Gizmodo Media Group, LLC and Katherine Krueger*

---

[10] *Id.*

[11] *See, e.g.*, "Sen. Joni Ernst claims husband assaulted her, denies allegation of affair," *CBS News* (Jan. 24, 2019), *available at* https://www.cbsnews.com/news/senator-joni-ernst-says-in-divorce-filing-she-her-ex-husband-physically-assaulted-her/; Dartunorro Clark, "In divorce papers, Joni Ernst says Trump interviewed her for VP spot during campaign," *NBC News* (Jan. 22, 2019), *available at* https://www.nbcnews.com/politics/politics-news/divorce-papers-joni-ernst-says-trump-interviewed-her-vp-spot-n961226; Bob Fredericks, "Joni Ernst claims husband was physically abusive: divorce filing," *New York Post* (Jan. 22, 2019), *available at* https://nypost.com/2019/01/22/joni-ernst-claims-husband-was-physically-abusive-divorce-filing/.

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2019, a true and correct copy of the foregoing has been served by CM/ECF on all counsel or parties of record on the service list.

/s/*Deanna K. Shullman*
Deanna K. Shullman
Florida Bar No. 514462

## SERVICE LIST

*Attorneys for Plaintiff* :

Kenneth G. Turkel, Esq.
kturkel@bajocuva.com
Shane B. Vogt, Esq.
shane.vogt@bajocuva.com
BAJO CUVA COHEN TURKEL
100 N. Tampa Street, Ste. 1900
Tampa, FL 33602
Telephone: (813) 443-2193

*Attorneys for Defendant Will Menaker:*

Charles D. Tobin, Esq.
tobinc@ballardspahr.com
Chad R. Bowman, Esq. (*pro hac vice*)
bowmanchad@ballardspahr.com
Maxwell S. Mishkin, Esq. (*pro hac vice*)
mishkinm@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Telephone: (202) 661-2218