# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

JASON MILLER,

    Plaintiff,

v.                                         1:18-CV-24227-CMA

GIZMODO MEDIA GROUP, LLC, et al.,

    Defendants.

_____

# REPLY MEMORANDUM IN FURTHER SUPPORT OF
# DEFENDANT WILLIAM MENAKER'S RENEWED MOTION TO DISMISS
# FOR LACK OF PERSONAL JURSDICTION AND FAILURE TO STATE A CLAIM

BALLARD SPAHR LLP

    Charles D. Tobin (Fla. Bar No. 816345)
    Chad R. Bowman (admitted *pro hac vice*)
    Maxwell S. Mishkin (admitted *pro hac vice*)
    1909 K Street, NW, 12th Floor
    Washington, DC 20006
    Telephone: (202) 661-2200
    Fax: (202) 661-2299
    tobinc@ballardspahr.com
    bowmanchad@ballardspahr.com
    mishkinm@ballardspahr.com

*Counsel for Defendant William Menaker*

# PRELIMINARY STATEMENT

Plaintiff Jason Miller's Opposition ("Opp.") to Defendant William Menaker's Renewed Motion to Dismiss ("Mot.") is more remarkable for what it ignores than for what it argues.

<u>First</u>, even though Menaker's principal argument for dismissal is lack of personal jurisdiction, Miller ignores both authority that Florida's long-arm statute does not extend to a non-resident defendant's alleged online defamation of a non-resident plaintiff, Mot. at 7-8, and the Supreme Court's most recent decision on due process limits to specific jurisdiction. In *Bristol-Myers Squibb Co. v. Superior Court of California*, the Court expressly held that when "plaintiffs are not [forum state] residents and do not claim to have suffered harm in that State," and when "all the conduct giving rise to the nonresidents' claims occurred elsewhere," the forum state "cannot claim specific jurisdiction" over an out-of-state defendant as a matter of law. 137 S. Ct. 1773, 1781-82 (2017). That holding squarely controls here, because Miller is not a Florida resident, the conduct giving rise to Miller's claim against Menaker did not occur in Florida, and Miller failed to plead that he suffered any harm in Florida as a result of Menaker's statement.

<u>Second</u>, in an attempt to avoid this open-and-shut application of controlling case law on jurisdiction, and other issues, Miller simply ignores this Court's Order denying him leave to amend his Complaint. Miller continually cites allegations not found in the operative pleadings. Though these references are improper, even if credited they would not save Miller's claim from dismissal on jurisdiction or the merits because, following jurisdictional discovery, Miller still offers no evidence that personal jurisdiction over Menaker in this action is proper, instead urging the untenable proposition that his posting a message on Twitter alone is sufficient. It is not.

1

Third, Miller ignores decades of Supreme Court cases irrefutably holding, contrary to Miller's argument, that the First Amendment firmly protects Menaker's statement. It clearly does. *See United States v. Stevens*, 559 U.S. 460 (2010).

Fourth, Miller ignores this Circuit's leading case on the doctrine of pure opinion. In *Turner v. Wells*, the Eleventh Circuit held that "statements of pure opinion are protected from defamation actions by the First Amendment," and explained that a statement is considered a "pure opinion" when "the defendant makes a comment . . . based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." 879 F.3d 1254, 1262 (11th Cir. 2018). Because Menaker's characterization of Miller as a "baby-killer" was based entirely on information that Menaker made available to his readers via hyperlink, the statement cannot give rise to a defamation claim.

Fifth, Miller ignores the text of the statement itself in disputing that it amounts to rhetorical hyperbole. Miller baldly asserts that "Menaker did not use loose, figurative terms or fiery rhetoric," pretending away that Menaker also called Miller "rat-faced" and a "homunculus" and sarcastically described a nine-figure lawsuit against his own girlfriend as "cool!"

Sixth, though Miller does not dispute that he is a public figure and therefore must allege facts plausibly establishing that Menaker made the challenged statement with actual malice fault, Miller ignores this Circuit's case law on what can constitute actual malice. Miller repeatedly alleges that Menaker made his statement out of "ill-will," but "[i]ll-will, improper motive or personal animosity plays *no role* in determining whether a defendant acted with 'actual malice.'" *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) (emphasis added).

Although Miller again seeks leave to amend his Complaint, it is clear that any such amendment is unsupported by good cause, Def.'s Opp. to Pl.'s Mot. for Leave to Amend at 2-4,

Jan. 13, 2019, Dkt. 60, and would also be futile, *id.* at 5-11; *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003).  For these reasons and those discussed below, the Court should dismiss Miller's claim against Menaker with prejudice.

## I. MENAKER IS NOT SUBJECT TO PERSONAL JURISDICTION IN FLORIDA

In his Renewed Motion to Dismiss, Menaker demonstrated that (1) Florida's long-arm statute does not reach him and (2) exercising personal jurisdiction over him in Florida would violate due process.  Mot. 6-11.  Miller does not address the line of authority declining to extend the long-arm statute to non-resident defamation plaintiffs.  *Id.* at 7-8.  This alone is fatal to his claim.  He also ignores the Supreme Court's recent decision in *Bristol-Myers*.  That decision makes clear Florida courts cannot exercise jurisdiction over Menaker here because both he and Miller are residents of other states, Miller did not plead any injury in Florida, and the conduct giving rise to the claim – the publication of the challenged statement – did not occur in Florida.  Mot. 8.  Miller offers no response at all on this point.

Miller instead attempts to focus his jurisdictional argument on three other subjects: (1) the location of Menaker's Twitter followers; (2) Miller's own purported connections to Florida; and (3) Menaker's knowledge about this lawsuit.  These issues only underscore the inadequacy of Miller's jurisdictional argument.

<u>First</u>, Miller asserts that he has "submitted evidence" about the location of Menaker's Twitter followers, purportedly "demonstrating third-parties accessed Menaker's defamatory tweet in Florida."  Opp. 4.  This "evidence" is the same declaration that Miller belatedly submitted as part of his rejected motion for leave to amend.  *Id.* at 4-5.  Even if the Court were to credit this "evidence" now, it shows that out of Menaker's approximately 82,000 Twitter followers, there are "at least 200 followers in Florida."  *Id.* at 7.  In other words, Miller's

"evidence" shows that only two-tenths of one percent of Menaker's Twitter followers are from Florida, even though Florida accounts for just over six percent of the U.S. population.[1]

To establish jurisdiction, Miller needs to show, *inter alia*, that Menaker purposefully "targeted" or "directed" or "aimed" his Twitter statement at a Florida audience. *Sovereign Offshore Servs., LLC v. Shames*, 2017 WL 7798664, at *3-4 (S.D. Fla. Aug. 3, 2017); *Bioheart, Inc. v. Peschong*, 2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013); *Vision Media TV Grp., LLC v. Forte*, 724 F. Supp. 2d 1260, 1266 (S.D. Fla. 2010); *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004). If it has any relevance to the jurisdictional inquiry, therefore, Menaker's disproportionately small number of followers in Florida weighs *against* the notion that he directed the statement at Florida. The only case that Miller cites addressing jurisdiction in the context of Twitter messages supports Menaker on this point. *Boddy v. Pourciau*, 2018 WL 4637380, at *5 (W.D. Wash. Sept. 27, 2018) ("To hold that Defendants are subject to this court's jurisdiction simply because the tweets were viewable in Washington would open Defendants to being haled into every court in the country.").

Second, the Opposition argues that Miller's own connections to Florida indicate that Menaker targeted the challenged statement at Florida. Specifically, Miller asserts that the statement was "about Miller in the context of this lawsuit and Miller's paternity case pending in Florida, which involves Miller's minor son and parental rights in Florida." Opp. 7-8. Miller could have made – but did not make – any allegations in his Complaint about injuries in Florida as a result of Menaker's statement. More importantly, though, these new allegations are jurisdictionally irrelevant. In *Walden v. Fiore*, the Supreme Court stated that it has "consistently

---

[1] See *Quick Facts: Florida*, U.S. Census Bureau, https://www.census.gov/quickfacts/fact/table/fl,US/PST045217. The Court may consider official government records at the motion to dismiss stage because they are undisputedly subject to judicial notice. *See, e.g.*, *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 812 (11th Cir. 2015).

rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the *plaintiff* (or third parties) and the forum State." 571 U.S. 277, 284 (2014) (emphasis added). On this point, the Court in *Walden* specifically cited *Hanson v. Denckla*, 357 U.S. 235 (1958), where it "rejected a plaintiff's argument that a Florida court could exercise personal jurisdiction over a trustee in Delaware based solely on the contacts of the trust's settlor, who was domiciled in Florida and had executed powers of appointment there." *Walden*, 571 U.S. at 284. The one case that Plaintiff cites addressing Twitter-based defamation likewise rejects Miller's argument on this point. *Boddy*, 2018 WL 4637380, at *5 ("To the extent that Plaintiffs focus on their own connections with Washington, Plaintiffs are misguided. Again, as clarified in *Walden*, the personal jurisdiction inquiry does not center on Plaintiffs' contacts with the forum state. Rather, Defendants' conduct must connect them to the forum – not just to Plaintiffs – in a substantial and meaningful way, and Defendants' relationship with Plaintiffs cannot alone serve as the basis for specific personal jurisdiction.") (citation omitted).

Miller attempts to salvage his jurisdictional case by relying on two Supreme Court decisions, *Calder v. Jones*, 465 U.S. 783 (1984), and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). Opp. 5-6. Neither supports jurisdiction over Menaker. In *Keeton*, the Court held that New Hampshire courts could exercise personal jurisdiction over a California publisher in a libel case brought by a New York plaintiff because the publisher "continuously and deliberately exploited the New Hampshire market," to the tune of 10,000 to 15,000 magazine copies sold there each month, and therefore it could have "reasonably anticipate[d] being haled into court there in a libel action based on the contents of its magazine." 465 U.S. at 780-81. And in *Calder*, the Court held that out-of-state defendants could be subject to personal jurisdiction in a California libel case brought by a California plaintiff because the defendants relied on

5

"California sources" and "knew that the brunt of that injury would be felt by [plaintiff] in the State *in which she lives and works* and in which the [publisher] has its *largest* circulation." 465 U.S. at 789-90 (emphases added); *see also Walden*, 571 U.S. at 288 n.7 (discussing this aspect of *Calder*). Here, Miller has not alleged – and cannot allege – any facts demonstrating that Menaker "continuously and deliberately exploited" the Florida market with his Twitter account, and Miller does not even attempt to argue that Menaker knew the "brunt" of any "injury" caused by his Twitter message would have been felt in Florida – a state where Miller and Menaker do not reside and where a tiny fraction of Menaker's Twitter followers can be found. *Calder* and *Keeton* thus offer no support for Miller's jurisdictional argument.

Third, Miller argues – again referencing material not in the Complaint – that Menaker knew this lawsuit and Miller's custody proceeding were pending in Florida before Menaker published the challenged statement. Opp. 7-8. But Miller cites no authority for the absurd legal rule he urges – that commenting on a lawsuit confers jurisdiction on courts in the state where that lawsuit is pending. Florida law and due process do not allow such bootstrapped theories of jurisdiction. Quite the contrary: in *Bioheart*, the court found no personal jurisdiction over an out-of-state defamation defendant even though *that* defendant had "knowledge that [plaintiff] is located in Florida." 2013 WL 1729278, at *5. Thus, the fact that this case and the custody proceeding were pending in Florida does nothing to establish personal jurisdiction over Menaker as a matter of law.

Because Florida's long-arm statute cannot reach Menaker and due process would not permit Florida courts to exercise personal jurisdiction over Menaker in this case, and because no

amount of amendment could cure these jurisdictional failures, the Court should grant Menaker's renewed motion to dismiss with prejudice pursuant to Rule 12(b)(2).[2]

## II. THE CLAIM AGAINST MENAKER ALSO FAILS ON THE MERITS

As Menaker's Renewed Motion to Dismiss also demonstrated, the challenged statement cannot give rise to a defamation claim as a matter of law because it is either a nonactionable use of rhetorical hyperbole or a protected opinion based on fully disclosed facts. Mot. 11-17. Miller's claim further fails on the independent basis that he has not plausibly established that Menaker published the challenged statement with actual malice fault. *Id.* at 17-20.

Miller's first response is to argue that the challenged statement is completely outside the bounds of the First Amendment's protection because "[s]peech uttered incident to a personal dispute simply is not constitutionally protected." Opp. 9. That statement is simply incorrect. Miller's reliance on *Connick v. Myers* for this argument is inapt. In *Connick*, the Supreme Court held that a *public employee*, speaking as an employee, could be disciplined for making statements on "matters only of personal interest," and even there, the Court held that the speech in question was *not* "totally beyond the protection of the First Amendment," and moreover the Court expressly *rejected* the idea that "speech on private matters falls into one of the narrow and well-defined classes of expression . . . that the State can prohibit and punish . . . by all persons in

---

[2] Though the Court need not address the issue, Miller's argument regarding "fair play and substantial justice" is a complete non sequitur, particularly Miller's time-to-trial comparison between cases in this District and the Southern District of New York. Opp. 8. On this point, Miller primarily cites *Gubarev v. Buzzfeed, Inc.*, where one of the plaintiffs was allegedly a Florida resident and where the Southern District of New York was "Defendants' proposed alternative forum." 253 F. Supp. 3d 1149, 1162 (S.D. Fla. 2017). Here, Menaker has not proposed an alternative forum, and Miller does not even mention *his own* home district, the Eastern District of Virginia, where last year the median filing-to-trial time for civil cases was 12.4 months, compared to 16.5 months in this District. *See* Admin. Office of the U.S. Courts, "U.S. District Courts—Federal Court Management Statistics-Profiles—During the 12-Month Periods Ending September 30, 2013 Through 2018," Sept. 30, 2018, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2018/09/30-1.

its jurisdiction." 461 U.S. 138, 147 (1983). Miller further inappropriately cites *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942), to argue that "the First Amendment does not shield utterances that form 'no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" Opp. 9 n.5. But Chief Justice Roberts excoriated that very argument decades later in *United States v. Stevens*:

> The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits. The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it. The Constitution is not a document "prescribing limits, and declaring that those limits may be passed at pleasure."

559 U.S. at 470 (quoting *Marbury v. Madison,* 1 Cranch 137, 178 (1803)). Miller's threshold merits argument thus outright ignores modern First Amendment case law.

Miller's second response is to conflate the separate doctrines – and separate bases for dismissal – of rhetorical hyperbole and pure opinion. Opp. 9-18. For example, Miller urges that "Menaker's decision to surround" the term "baby-killer" with the terms "rat-faced" and "homunculus" and "cool!" is "no different than trying to add 'in my opinion' to his tweet, which the Supreme Court considers meaningless." *Id.* at 10. For the purposes of the pure opinion doctrine, however, the relevant undisputed facts are: (1) Menaker's statement included a hyperlink to the Page Six Article, which reported the underlying allegations that "Miller tried to kill a woman [and] killed her unborn child," as well as Miller's denial of those allegations; (2) the Page Six Article contains a hyperlink to the *Splinter* Report, which stated that "court documents claim . . . Miller surreptitiously dosed [his paramour] with an abortion pill without her knowledge, leading, the woman claims, to the pregnancy's termination"; and (3) the *Splinter*

8

Report includes a complete copy of the Supplement, which alleges that Miller "caus[ed] the death of an unborn child via a forcibly induced abortion."[3] Under the Eleventh Circuit's decision in *Turner* – which Miller ignores – Menaker's use of the term "baby-killer" is thus "a comment . . . based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public," and therefore is a nonactionable expression of "pure opinion" protected by the First Amendment. *Turner*, 879 F.3d at 1262.

The fact that Menaker chose to "surround" the term "baby-killer" with the terms "rat-faced" and "homunculus" – and with the sarcastic comment that a nine-figure lawsuit against his girlfriend is "cool" – is, on the other hand, *highly* relevant for the doctrine of rhetorical hyperbole, which is an alternate basis for dismissal on the merits. Menaker used "the sort of loose, figurative language that no reasonable person would believe presented facts," which the Eleventh Circuit held in *Horsley v. Rivera* to mean that a statement is rhetorical hyperbole. 292 F.3d 695, 702 (11th Cir. 2002). Miller's retort is pure *ipse dixit*, looking past the text of the statement, the medium on which it was published, and the occupation of its writer to assert that "[t]here is nothing in Menaker's tweet that negates the impression he was *seriously* maintaining Miller killed a baby . . . ." Opp. 15 (emphasis added).

Miller's third and final response on the merits arguments is to assert that he has alleged facts plausibly establishing constitutional "actual malice" fault based on Menaker's purported "ill-will" toward him. Opp. 18-20. Again, these arguments cite to materials outside of the operative Complaint, but even if the Court were to consider them, they do nothing to plausibly establish that Menaker published the challenged statement with actual malice, *i.e.*, that Menaker "actually entertained serious doubts as to the veracity of the published account, or was highly

---

[3] Capitalized terms have the same meanings as in Menaker's Renewed Motion.

aware that the account was probably false." *Turner*, 879 F.3d at 1273 (citation omitted). As he did on his failed motion for leave, Miller offers nearly a full page of case citations from other courts, Opp. 19 & nn. 15-16, yet conspicuously fails to cite – let alone distinguish – the Eleventh Circuit's controlling decision in *Dunn v. Air Line Pilots Association*, which unambiguously stated that "[i]ll-will, improper motive or personal animosity plays *no role* in determining whether a defendant acted with 'actual malice.'" 193 F.3d at 1198 n.17 (emphasis added); *see also, e.g.*, *Henry v. Collins*, 380 U.S. 356, 357-58 (1965) (per curiam) (reversing defamation judgment where jury instruction on actual malice could be read merely to require intent to inflict harm rather than intent to do so through knowingly false statements).

Because Miller has not alleged *specific* facts which would, if proven, *plausibly* establish that Menaker published the challenged statement with actual malice, Miller failed to plead the fault element of his defamation claim. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-02 (11th Cir. 2016) ("[E]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice."); *Turner*, 879 F.3d at 1272-74 (same). His claim should be dismissed with prejudice pursuant to Rule 12(b)(6) for that independent reason as well.

## **CONCLUSION**

For each and all of foregoing reasons and those set out in his Renewed Motion, Menaker respectfully requests that the Court dismiss Count VI of Miller's First Amended Complaint with prejudice for lack of personal jurisdiction or failure to state a claim as a matter of law, and grant such other and further relief as the Court deems just and proper.

Dated: February 14, 2019					Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (Fla. Bar No. 816345)
Chad R. Bowman (admitted *pro hac vice*)
Maxwell S. Mishkin (admitted *pro hac vice*)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
bowmanchad@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Defendant William Menaker*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2019, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF. I also certify the foregoing is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Charles D. Tobin*
Charles D. Tobin (Fla. Bar No. 816345)