**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**1:18-CV-24227-CMA-Altonaga**

| | |
|---|---|
| JASON MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GIZMODO MEDIA GROUP, LLC, | ) |
| a Delaware Corporation, KATHERINE | ) |
| KRUEGER, individually, and WILL | ) |
| MENAKER, individually, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW REGARDING THE REPORTER'S PRIVILEGE REQUESTED BY MAGISTRATE JUDGE GOODMAN**

Defendants Gizmodo Media Group, LLC ("Gizmodo") and Katherine Krueger ("Krueger") (together, the "Gizmodo Defendants") respectfully submit this memorandum of law regarding their assertion of the reporter's privilege over the identity of the confidential source ("the Source") who provided Krueger with a copy of the Mother's Supplement to Mother's March 2018 Motion for Court to Consider Psychological Evaluation of the Father (the "Supplement"), filed by Arlene "A.J." Delgado ("Delgado") in a proceeding in the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County, Florida (the "Miami-Dade Court"), between Plaintiff Jason Miller ("Miller") and Delgado, Case No. 17-016674 FC 17.

The issue presented here is serious, and stark. Plaintiff demands that this Court order the Gizmodo Defendants to violate a promise of confidentiality to a source, an act that for any journalist would constitute the ultimate breach of his or her professional ethics and sense of duty. Yet Plaintiff makes this extraordinary demand without even attempting to meet any of the stringent requirements of the reporter's privilege. Under any version of the robust reporter's privileges to protect confidential sources available under Florida, New York, or Eleventh Circuit constitutional law, Plaintiff is not entitled to this information.

## FACTUAL BACKGROUND

### A.    The Supplement

On September 14, 2018, Delgado filed the Supplement in support of a prior, publicly filed motion in her family court proceeding against Miller. (*See* Shullman Declaration in Support of Motion to Dismiss ("MTD"), Ex. J (ECF No. 32-10).) The Supplement alleges that Miller engaged in an affair with a woman identified as Jane Doe, and that after Jane Doe became pregnant, Miller dosed her with an abortion pill without her knowledge, leading to her hospitalization and the termination of the pregnancy. (First Amended Complaint (ECF No. 4.) ("Complaint" or "Compl.") ¶¶ 2, 15, 88.)

1

Delgado filed the Supplement publicly; it is identified on the Miami-Dade Court docket. (Ex. 1 at Dkt. No. 351; Compl. ¶ 89 (Delgado "fil[ed] [her] false and salacious accusations in the public record")). Three days later, on September 17, 2018, Miller filed a "Motion to Determine Confidentiality of and to Seal Court Records," in which he sought to seal the Supplement. (MTD Exs. C, D (ECF Nos. 32-3, 32-4); (Ex 1 at Dkt. No. 356)) ("Motion to Seal")); (*see also* Compl. ¶ 91.). Miller's Motion to Seal was never granted, and no order exists sealing the Supplement. (*See* Ex. 1.) Indeed, on September 24, 2018, three days after the Article was published, and again on October 16, 2018, the Gizmodo Defendants obtained copies of the Supplement from the Miami-Dade Court Clerk. (*See* MTD Exs. I-J (ECF Nos. 32-9, 32-10).)

### B.   Publication of the Splinter Article With the Supplement

Krueger, a reporter for Gizmodo, received a copy of the publicly filed Supplement from the Source. (*See* Declaration of Katherine Krueger filed herewith ("Krueger Decl.") ¶ 2.) On the afternoon of September 21, 2018, Krueger contacted Delgado for comment on the Supplement, and to ask whether it was publicly filed. (*See* Krueger Decl., Ex. A at 1-2.) Delgado responded that it was but declined to comment. (*Id.*) Krueger then emailed Delgado a PDF copy of the as-filed Supplement. (*Id.*) The metadata to this attachment does not disclose the Source's identity in any way, nor did Krueger disclose the identity of the Source to Delgado, or to any other third party. (*See* Ex. 2; Kreuger Decl. ¶¶ 5-6.). On September 21, 2018, Gizmodo published an article on www.splinternews.com, titled "Court Docs Allege Ex-Trump Staffer Drugged Woman He Got Pregnant With 'Abortion Pill'" (the "Article") ((MTD Ex. G (ECF No. 32-7).). The Article reported on the Supplement and embedded a file-stamped copy of it. (*Id.*)

### C.   This Action

On October 15, 2018, Miller sued the Gizmodo Defendants for defamation and a variety of other torts arising out of the publication of the Article. Plaintiff filed the First Amended

Complaint on October 18, 2018.  The Complaint's allegations against the Gizmodo Defendants hinge almost entirely on the provably false allegation that the Supplement is under seal and that Defendants are thus somehow not afforded the benefits of the First Amendment or the fair report privilege.  (Compl. ¶¶ 91, 92, 96, 97, 99, 102, 144-158.)

The Gizmodo Defendants moved to dismiss the Complaint on December 6, 2018 (ECF No. 31) ("MTD"), in relevant part on the basis that (i) the Supplement is a public record and the Gizmodo Defendants cannot be liable for accurately reporting on it, *see Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975); and (ii) the Article is privileged from liability under fair report privileges, *see Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. 3d DCA 1993); *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dep't 2009).  See MTD at 7-18.  In his opposition, Plaintiff made the baseless claim that these privileges are not available to the Gizmodo Defendants because the Supplement was not "given to them by a government official," and because of his unresolved motion to seal the Supplement. (*See* ECF No. 53 at 7, 5-9.)

### D.     Discovery in this Action to Date

In response to Plaintiff's discovery requests, the Gizmodo Defendants have objected to the extent Plaintiff seeks the identity of any confidential source, and (for purposes relevant here) invoked the reporter's privilege provided by New York and Florida statutory and common law, as well as the First Amendment.  *See, e.g.*, Ex. 3, Responses 1-5, 8, 9, 12, 18; Ex. 4, Responses 1-7, 9, 12, 13, 19, 21, 22, 24, 25, 30; Ex. 5, Responses 1-5, 7, 8, 11, 16, 18; Ex. 6, Responses 1-7, 9, 12, 13, 20, 21, 23, 24, 36.  The Gizmodo Defendants understand that Plaintiff seeks the identity of the Source who provided the Supplement to Krueger.

To date, Plaintiff has not taken any non-party depositions that might yield any information about the identity of the Source.  In fact, Plaintiff has not taken *any* steps readily available to him to divine this information.  For instance, Plaintiff has not subpoenaed the

Miami-Dade Court Clerk's office regarding who accessed the Supplement before the Article was published. Nor has Plaintiff deposed Delgado, to determine whether she shared copies of the Supplement with any other party after it was filed, or Richard Schurr, Delgado's former attorney (to whom Delgado claims to have given a copy of the Supplement).

At a March 27, 2019 hearing before this Court (the "March 27 Hearing"), Plaintiff's counsel speculated that the Gizmodo Defendants may have waived the privilege against disclosing the Source's identity when Krueger shared a copy of the Supplement with Delgado. Plaintiff also argued, echoing his arguments in opposition to the Motion to Dismiss, that the manner in which Krueger obtained the Supplement has some kind of legal significance to the Shield Law issue. Following the March 27 Hearing, the Court directed the parties to file briefs on whether the Source's identity is privileged from disclosure. (ECF No. 98.).

## ARGUMENT

The Source's identity is privileged information under the laws of both New York and Florida, as well as in the Eleventh Circuit, and this Court thus may not compel its disclosure.

### I.     THERE IS NO CONFLICT OF LAWS

While the parties disagree on which State's law should apply to the Gizmodo Defendants' assertion of privilege, the Gizmodo Defendants do not believe it is necessary for this Court to conduct a full-blown conflicts analysis. "[I]f no conflict exists between two bodies of law the court does not need to make a choice of law determination." *AIG Premier Ins. Co. v. RLI Ins. Co.*, 812 F. Supp. 2d 1315, 1321 (M.D. Fla. 2011); *see also Howard v. Antilla,* 191 F.R.D. 39, 43 (D.N.H. 1999) (no need to conduct conflict of laws analysis where "both states' privilege rules protect Antilla's confidential sources from discovery"). Here, no conflict exists because while the tests applied may differ, the outcome is the same – the Source is privileged.

### A.     The Confidential Source Information is Privileged Under New York Law

Under New York law, Plaintiffs are absolutely precluded from compelling the disclosure of the Source's identity. The New York Shield Law provides in relevant part:

> Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist … presently … employed or otherwise associated with any newspaper, magazine, [etc] . . . shall be adjudged in contempt by any court . . . for refusing or failing to disclose any news obtained or received in confidence or the identity of the source of such news coming into such person's possession in the course of gathering or obtaining news for publication or to be published in a newspaper, magazine, [etc] . . .

N.Y. Civil Rights Law § 79-h(b). As New York's highest court has held, "the statute grants an absolute privilege precluding reporters from being compelled to reveal the identity of confidential sources." *Holmes v. Winter*, 22 N.Y.3d 300, 308 (N.Y. 2013); *see also Sharon v. Time, Inc.*, 599 F. Supp. 538, 583 (S.D.N.Y. 1984) (Shield Law gives defendant "right to withhold identifying details" about confidential sources in response to discovery).

Here, there is no question that Krueger is a professional journalist who works for a professional news organization. Krueger obtained the Supplement from the Source under a promise of confidentiality to the Source. Under New York law, the identity of the Source is therefore absolutely privileged, and Plaintiffs' request to compel the Source must be denied.

**B.    The Confidential Source Information is Privileged Under Florida Law and Eleventh Circuit Jurisprudence**

1. <u>The Florida Common Law and Statutory Reporter's Privilege</u>

The Gizmodo Defendants' Source is also protected under Florida law – but via a different test. The reporter's privilege for protecting the identity of confidential sources is so important to the public policy of Florida that there are actually three independent bodies of law recognizing that privilege: Florida common law, the Florida Shield Law enacted by the Legislature, and the First Amendment as applied by the Eleventh Circuit and Florida courts. *See Gubarev v. BuzzFeed, Inc.*, No. 1:17-CV-60426, 2017 WL 6547898, at *2 (S.D. Fla. Dec. 21, 2017).

The Florida Supreme Court recognized a qualified reporter's privilege grounded in the

5

First Amendment to the United States Constitution more than 40 years ago in *Morgan v. State*, 337 So. 2d 951 (Fla. 1976).  The Court subsequently clarified that the privilege is recognized by Florida common law as well.  *State v. Davis*, 720 So. 2d 220, 225 (Fla. 1998); *Tribune Co. v. Huffstetler*, 489 So. 2d 722, 723-24 (Fla. 1986).  The privilege protects a journalist's newsgathering information unless the subpoenaing party shows that (1) the information sought is relevant to the specific issues in the case, (2) the information cannot be obtained by alternative means, and (3) there is a compelling interest in disclosure.  *See Davis*, 720 So. 2d at 224.

In 1998, the Florida Legislature also adopted a statutory privilege, which provides:

> (2) PRIVILEGE.--A professional journalist has a qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news. . . . A party seeking to overcome this privilege must make a clear and specific showing that:
> (a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought;
> (b) The information cannot be obtained from alternative sources; and
> (c) A compelling interest exists for requiring disclosure of the information.

Fl. Stat. § 90.5015.  The statute requires "clear and specific findings" of these factors before any order of disclosure may issue.  *Id*.

### 2. The First Amendment Privilege Recognized by the Eleventh Circuit

In addition, the Eleventh Circuit recognizes a privilege grounded in the First Amendment that may only be pierced if the party seeking the reporter's confidential source presents: "substantial evidence[:][1] that the challenged statement was published and is both factually untrue and defamatory; [2] that reasonable efforts to discover the information from alternative sources have been made and that no other reasonable source is available; and [3] that knowledge of the identity of the informant is necessary to proper preparation and presentation of the case." *Miller v. Transamerican Press, Inc.*, 628 F.2d 931, 932 (5th Cir. 1980) (per curiam) ("*Miller II*"); *accord Price v. Time, Inc.*, 416 F.3d 1327, 1343-44 (11th Cir. 2005); *United States v.*

*Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986).

        3.      The Gizmodo Defendants Properly Invoked The Reporter's Privilege

There can be no reasonable dispute that the Gizmodo Defendants are entitled to invoke the Florida Shield Law, as well as the common-law and constitutional privileges. Gizmodo, through www.splinternews.com, indisputably publishes "information of public concern relating to local, statewide, national, or worldwide issues or events" (how the Shield Law defines "news"), the Article at issue here is clearly "news," and Krueger is a professional journalist who gathered information for the Article in the course of her employment for a news organization. Fl. Stat. § 90.5015(1)(a), (1)(b). *See also TheStreet.com, Inc. v. Carroll*, 20 So. 3d 947 (4th DCA 2009) (per curiam) (Shield Law applies to internet-based news outlets); *Carroll v. TheStreet.com, Inc.*, 2014 WL 5474048, at *6 (S.D. Fla. Apr. 10, 2014); *Gubarev*, 2017 WL 6547898, at *4 ("nothing in the statute . . . limits the privilege to traditional print media").

        4.      Plaintiffs Cannot Overcome the Reporter's Privileges

Once the reporter's privileges are properly invoked, the burden then shifts to Plaintiff, who bears the "heavy burden" of proving he is entitled to overcome these privileges. *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 47 (N.D. Fla. 1998). To overcome the statutory privilege Plaintiff must make a "clear and specific showing" that he has overcome all elements of the three-part test, Fl. Stat. § 90.5015(2), and for purposes of the First Amendment privilege must present "substantial evidence." *Miller II*, 628 F.2d at 932. Importantly, mere speculation cannot suffice to overcome the reporter's privilege. *Smoliak v. Greyhound Lines, Inc.*, 2005 WL 3434742, at *3 (N.D. Fla. Oct. 17, 2005). While the onus is thus not upon Gizmodo Defendants in this case, this Memorandum will outline several reasons why Plaintiff cannot meet his burden.

*First*, it is doubtful that Plaintiff could even demonstrate that the Source is material to any "unresolved issues that have been raised in the proceeding," the first prong of the Shield Law.

Plaintiff claims that he needs to know the identity of the Source because the Gizmodo Defendants have purportedly relied on it in invoking privileges under the First Amendment and fair report statutes.  (*See* Ex. 7 at 18:10-14). But the Gizmodo Defendants have done no such thing.  The Gizmodo Defendants have never even alluded to the Source in asserting First Amendment or fair report privileges, nor do they have any intention of using the identity of the Source to establish truth or intent.  That should end the inquiry.

The privileges invoked by the Gizmodo Defendants turn on the Supplement's status as a filed court document, not who provided it to them.  Plaintiff's argument that the fair and true report privilege turns on whether a document is obtained from a government official is simply incorrect.  The privilege "extends to 'the report of *any official proceeding*, or any action taken by any officers or agency of the government of the United States, or of any State or of any of its subdivisions.'"  *OAO Alpha Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 40 (D.D.C. 2005) (quoting Restatement (Second) of Torts § 611 cmt. d (1977)) (emphasis added).  It is well-settled under both New York and Florida law that the privilege applies regardless of who Krueger received the Supplement from – or for that matter, whether Krueger found it on a park bench – as long as the Supplement was part of an official proceeding, which it indisputably was. *See Friedman v. Bloomberg L.P.*, 871 F.3d 185, 195 n.6 (2d Cir. 2017) ("how a reporter gathers his information concerning a judicial proceeding is immaterial provided his or her story is a fair and substantially accurate portrayal of the events in question.") (citation omitted); *Ortega v. Post-Newsweek Stations, Fla., Inc.*, 510 So. 2d 972, 976 (Fla. 3d DCA 1987) ("[T]he fact that a reporter gathers information of an official proceeding second-hand 'is immaterial provided his story is a fair and substantially accurate portrayal of the events in question.'") (citation omitted).  Indeed, in *Gubarev v. BuzzFeed*, this Court recently held that New York law applied to an online report on an official proceeding published by a New York news website, and that New York's

8

fair report privilege requires *only* that it be clear that the report concerned an official proceeding, that the official proceeding must have in fact been "underway at the time of publication," and that the report have been a "fair and true." 340 F. Supp. 3d 1304, 1314–15 (S.D. Fla. 2018). In other words, the source of the information reported on is irrelevant to whether the fair report privilege applies.[1] Accordingly, the identity of the Source is simply not an "issue that ha[s] been raised" in this case, which would be necessary to satisfy even the first prong of the Shield Law.

*Second*, to satisfy the requirements of § 90.5015(2), or the First Amendment privilege, the party seeking disclosure must "show that he has exhausted *all* alternatives to compelling the testimony" of the reporter. *McCarty*, 195 F.R.D. at 46-47*; see also Redd v. U.S. Sugar Corp.*, 1993 WL 428667, at *2 (Fla. Cir. Ct. May 27, 1993) (party seeking disclosure is required to "exhaust or make reasonable effort to exhaust non-media sources for the information sought"); *Gadsden Cty. Times v. Horne*, 426 So. 2d 1234, 1242 (Fla. 1st DCA 1983). Florida courts take this rule so seriously that they have required the party seeking disclosure to depose, or at least interview, more than 100 possible sources before moving to compel the identity of a confidential source. *See, e.g.*, *Overstreet v. Neighbor*, 9 Media L. Rep. 2255, 2256 (Fla. Cir. Ct. Sept. 13, 1983) (requiring exhaustion of at least 117 individuals to defeat common law privilege) (attached as Ex. 8); *Muhammad v. State*, 132 So. 3d 176, 190 (Fla. 2013) (affirming decision to quash

---

[1] Plaintiff's reliance on *Funk v. Scripps Media, Inc.*, 2019 WL 1146705 (Tenn. Mar. 13, 2019), is utterly misplaced. That case turned on a specific *statutory* exception to Tennessee's Reporter's Shield Law, where a libel defendant "asserts a defense based upon the source of [the allegedly defamatory] information." *Id*. at *10. The court held that the defendant's argument that "the source of that information is an official action or proceeding," where the filings at issue were under seal, triggered this statutory exception. *Id*. * 11. However, the Florida and New York Shield Laws do not include any similar statutory exception, thus the court's interpretation of the Tennessee statute is of no moment here. Moreover, the *Funk* decision did not actually hold that the defendant had to disclose the identity of the *individual* who provided the court papers reported on, as opposed to identifying the papers filed in the official proceeding which were the "source" for the report. *Id*. *9, *13. Here, the Supplement is visible on the public docket and has been repeatedly obtained from the Miami-Dade Court Clerk. There is no question of the source of the information reported on.

9

subpoena on exhaustion grounds where plaintiff had failed to seek the identity of "even one" of "twenty-eight" other witnesses). The test is not, therefore, whether it would be burdensome for the party seeking to compel disclosure to seek other sources, or whether that party believes the news organization could offer the most credible evidence; "[t]he test is simply whether other sources for the same information are available." *Florida v. Abreu*, 16 Med. L. Rep. 2493, 2494 (Fla. Cir. Ct. Oct. 31, 1989) (attached as Ex. 9); *see also Smoliak*, 2005 WL 3434742, at *3 (requiring party seeking disclosure to "actually question[] the[] witnesses . . . to determine exactly what they know or whether they could identify" other possible sources); *WTVJ-NBC 6 v. Shehadeh*, 56 So. 3d 104 (Fla. 3d DCA 2011) (no disclosure of confidential "leaker" warranted where plaintiff did not seek this information from other sources).[2]  Here, Plaintiff has yet to depose a single witness. In fact, he has made no credible effort to learn this information *except* through the Gizmodo Defendants. Plaintiff cannot, therefore, make the clear and specific showing required to overcome the Shield Law or any version of the reporter's privilege.

*Finally*, Plaintiffs cannot demonstrate a compelling need to know the Source's identity. This prong of the privilege balances the interest in disclosure against the strong public policy interest in protecting journalists. *Gadsden*, 426 So. 2d at 1242; *Morgan*, 337 So. 2d at 954. As a result, courts have routinely quashed subpoenas when the moving party cannot demonstrate the compelling necessity of the requested information. *See McCarty*, 195 F.R.D. at 47 (refusing to compel identity of source because plaintiff did now show the "testimony is so compelling that he cannot otherwise establish his entitlement to relief on his asserted claims."); *see also State v. Smith*, 2001 WL 1750827, at *1 (Fla. Cir. Ct. Mar. 15, 2001); *Smith v. Scarlett*, 28 Media L.

---

[2] Moreover, the Eleventh Circuit has explicitly held that merely interviewing a potential source of knowledge is not enough; rather, *actual sworn depositions* are required to satisfy this prong of the First Amendment privilege. *Price*, 416 F.3d at 1347. Nor is it sufficient to have noticed depositions, without a showing that the deposition itself was fruitless. *Gubarev*, 2017 WL 6547898, at *4.

Rep. 2310 (Fla. 1st Cir. Ct. 2000) (attached as Ex. 10) (privilege not overcome because "no evidence that Defendant cannot litigate his case in a fair manner without [the information]").

The Eleventh Circuit has articulated a clear guideline for assessing compelling need in the context of a defamation lawsuit:  A compelling need may be established where the "only source for the allegedly libelous comments is the [confidential] informant."  *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726 (5th Cir. 1980) ("*Miller I*"); *see also Price*, 416 F.3d at 1345 (citing *Miller I*).  Here, the Source whose identity Plaintiff seeks to compel is *not* the source of the allegedly defamatory allegations in the Supplement – rather, Delgado made these statements.  The source Plaintiff seeks is simply the messenger who provided the Supplement to the Gizmodo Defendants.  The identity of this person neither establishes the truth of the challenged statements nor is it relevant to the Gizmodo Defendants' state of mind.

Finally, the fact that Plaintiff has so utterly failed to seek alternative sources of information also negates a finding that they have a compelling need for it.  In *Gadsden*, for example, the First District Court of Appeal reversed an order compelling production of source information in a libel case in part because the "fact that [the plaintiff] has failed to attempt to obtain the information from alternative sources would negate any [] finding [of compelling need]."  426 So. 2d at 1242; *see also WTVJ-NBC-6*, 56 So. 3d at 106 ("no compelling interest" where plaintiff failed to seek discovery of third parties).

In sum, Plaintiff cannot sustain his heavy burden to overcome the Shield Law, Florida common law, or the First Amendment reporter's privilege, and the Gizmodo Defendants cannot be compelled to identify the Source.

**II.     IF THERE IS A CONFLICT, THIS COURT SHOULD APPLY NEW YORK LAW**

If, however, this Court were to conclude that Plaintiffs have sustained their burden under Florida law, then it would be required to conduct a choice-of-law analysis.  In determining *which*

11

state privilege law to apply in the event of a conflict, the Court looks to the choice-of-law rules of the state in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). Florida applies the approach of section 139 of the Restatement (Second) of Conflict of Laws (the "Restatement") to choice of law questions involving privilege issues in tort cases. *Anas v. Blecker*, 141 F.R.D. 530, 532 (M.D. Fla. 1992).[3] Section 139 provides, in relevant part, that:

> (2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

Thus, Section 139(2) provides that Florida law should be applied, unless New York has the most significant relationship with the communication and there are other reasons why its law should be preferred. In making that determination, the Restatement provides that factors to be considered should include "(1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded, (3) the kind of privilege involved and (4) fairness to the parties." Restatement § 139, cmt. d.[4] This list is not exhaustive, however, and it is not a balancing test. Courts have recognized that even a single consideration may justify applying the foreign privilege. *See, e.g.*, *Anas*, 141 F.R.D. at 532 (finding "special reason" to apply Illinois law where applying Florida law would make the party resisting disclosure "subject … to the privilege laws of all fifty states"); *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 222 F.R.D. 124, 133

---

[3] The choice of law analysis for which state's privilege law applies is distinct from the analysis governing the choice of substantive law, and so it is possible to reach different results on those questions in the same case. *See, e.g., Indep. Petrochem. Corp. v. Aetna Cas. and Sur. Co.*, 117 F.R.D. 292, 296 (D.D.C. 1987).

[4] Plaintiff's residence is irrelevant to the choice of law question presented here, because the Restatement looks to the state with the most significant relationship with "the communication." Restatement § 139(2).

(E.D. Mich. 2004) (finding "special reason" to apply New York Shield Law because "New York is the center of the financial publishing industry, and the New York companies who gave these materials to Moody's, also a New York company, surely relied on the protections of New York law"). Applying this test here, it is clear that New York law should apply.

First, New York is the State with the most significant relationship to the Article. *See Mazzella v. Philadelphia Newspapers, Inc.*, 479 F. Supp. 523, 527 (E.D.N.Y. 1979) (applying the reporter's privilege of the State where "the events that led to the … [defamatory] article" in question took place, including the newsgathering). Gizmodo's investigation into the Supplement was organized and directed from Gizmodo's headquarters in New York, as was the decision to publish the Article and Supplement. *See* Compl. ¶ 19-24, 29. Krueger also resides in New York, which is where she received the Supplement. *Id*. ¶ 30. Nor can Plaintiff, a resident and domiciliary of Virginia, claim any more than a tenuous connection to Florida. *Id*. ¶18.

Similarly, the four factors set forth in the Restatement favor New York law. First, as discussed *supra*, New York's contacts with the publication of the Article are far more "numerous and important" Florida's. *Id.* at cmt. d. Second, as discussed above, the identity of the Source is of, at most, marginal relevance either to the defense or the prosecution of this action. As to the third factor, the Restatement looks to whether the foreign privilege, though different, is "generally similar to" a privilege the forum also recognizes, and whether it is the kind of privilege that "is well established and recognized in many states." *Id.* That factor clearly favors New York. Virtually every state, including Florida and New York, recognizes a strong reporter's privilege. While Florida's privilege is qualified, and New York's privilege is absolute, the two are without question "generally similar" in the safeguards they afford the press.

The fourth factor, fairness to the parties, also strongly favors applying New York law. This factor primarily looks to whether the parties could reasonably have relied "on the fact that

13

communications of the sort are treated in strict confidence in the state of the most significant relationship." *Id.*  Here the Source entered into confidential communications with Krueger, a reporter based in New York and employed by a New York publication, under a promise of confidentiality.  Indeed, where one state has "superior contacts with the dispute," the court may infer that the parties to the communication relied on its law.  *Harrisburg Auth. v. CIT Capital USA, Inc.*, 716 F. Supp. 2d 380, 393 n.19, n.23 (M.D. Pa. 2010); *Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 566 (N.D. Ill. 2007) (applying Connecticut attorney-client privilege law under Restatement because "[h]ad they sought guidance on the scope of the privilege, all of the individuals involved in these communications would likely have consulted Connecticut law"). [5]

For all these reasons, to the extent that there is a conflict between New York and Florida law, this Court should apply New York's absolute protection for confidential sources.

### III.   THE GIZMODO DEFENDANTS HAVE NOT WAIVED THE PRIVILEGE

Finally, at the March 27 Hearing, Plaintiff speculated that the reporter's privilege was waived when Krueger shared the copy of the Supplement received from the Source with Delgado on September 21, 2018, because this communication somehow revealed the Source's identity.  This contention is utterly baseless, because the communication *did not* reveal the Source's identity in any fashion.  Indeed, a review of the email in question shows that the identity of the Source was never even discussed.  *See* Krueger Decl., Ex. A.  Nor was the identity of the Source inadvertently revealed through the metadata of the copy of the Supplement Krueger sent Delgado.  *See* Ex. 2.  In other words, Plaintiff's "waiver" argument is nothing but wishful

---

[5] Finally, one additional factor that favors the application of the law of the state with the most significant relationship to the privilege issue is that it remains unsettled whether Florida law will even apply to this case at all.  District Judge Altonaga has not ruled on the pending Motion to Dismiss, or any other pending dispositive motion, and therefore has not made a ruling on what law should be applied.

thinking. Krueger has never revealed the Source's identity to any third party, and Plaintiff cannot point to any evidence to the contrary.

Nor can Plaintiff claim a "waiver" is effected due to what he calls the "crucial" role of the Source's identity. First, as set out above, the Source's identity is irrelevant to this case, and the Gizmodo Defendants will not rely upon that information for any of their defenses. *See supra* at 8-9. Second, even if the Gizmodo Defendants did plan to use the Source's identity as part of their defenses (which again, they do not), this would still not justify an order compelling the information. In both Florida and New York the "sword and shield" doctrine does not effect a waiver of the reporter's privilege. In fact, at least in Florida, it does not effect a waiver of *any* privilege in the context of affirmative defenses. *TheStreet.com, Inc.*, 20 So. 3d at 947-949 (the sword-and-shield doctrine does not apply where "the discovery in dispute related to an affirmative defense," and even if it did apply, "the proper remedy would be to dismiss or strike petitioners' [relevant] defenses and not to compel production of the very information claimed to be privileged."). The New York Court of Appeals has similarly held that, even if a journalist relies on a confidential source in support of her defenses, this cannot result in the journalist being divested of the absolute protection provided by the Shield Law. *Oak Beach Inn Corp. v. Babylon Beacon*, 62 N.Y.2d 158, 166 (N.Y. 1984). *See also Sprewell v. NYP Holdings, Inc.*, 43 A.D.3d 16, 18-19 (1st Dep't 2007); *Bement v. N.Y.P. Holdings, Inc.*, 307 A.D.2d 86, 91 (1st Dep't 2003). Accordingly, even if the Source's identity was crucial in this case, there is still no waiver.

## CONCLUSION

Plaintiff has not demonstrated a compelling need – or really any need – for the identity of the Source and has not made any efforts to obtain that information from a third party. Under any test, therefore, he has not overcome the reporter's privilege. This court should, therefore, sustain the Gizmodo Defendants' objections to disclosure of the Source.

15

Respectfully submitted,

April 8, 2019

| /s/ *Katherine M. Bolger* | /s/ *Deanna K. Shullman* |
|---|---|
| Elizabeth A. McNamara (*pro hac vice*) | Deanna K. Shullman (Florida Bar No. 514462) |
| Katherine M. Bolger (*pro hac vice*) | Rachel Fugate (Florida Bar. No. 144029) |
| Claire K. Leonard (*pro hac vice*) | Giselle M. Girones (Florida Bar. No. 124373) |
| DAVIS WRIGHT TREMAINE | SHULLMAN FUGATE PLLC |
| 1251 Avenue of the Americas, 21st Floor | 2101 Vista Parkway, Suite 4006 |
| New York, New York 10020 | West Palm Beach, FL 33411 |
| Telephone: (212) 489-8230 | Telephone: (561) 429-3619 |
| lizmcnamara@dwt.com | dshullman@shullmanfugate.com |
| katebolger@dwt.com | rfugate@shullmanfugate.com |
| claireleonard@dwt.com | ggirones@shullmanfugate.com |
| *Attorneys for Defendants Gizmodo Media Group, LLC and Katherine Krueger* | *Attorneys for Defendants Gizmodo Media Group, LLC and Katherine Krueger* |

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2019, a true and correct copy of the foregoing has been served by CM/ECF on all counsel or parties of record on the service list.

/s/*Deanna K. Shullman*

Deanna K. Shullman
Florida Bar No. 514462

4813-5463-8993v.8 0109559-000002