EXHIBIT 7

```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
                    MIAMI DIVISION
              CASE NO. 14-24009-CIV-JLK

JASON MILLER,

            Plaintiff,              MIAMI, FLORIDA
        vs.
                                    MARCH 27, 2019

GIZMODO MEDIA GROUP, LLC, et al.,
                                    PAGES 1 - 71
            Defendants.
_____/




             TRANSCRIPT OF DISCOVERY HEARING HEARING

            BEFORE THE HONORABLE JONATHAN GOODMAN

               UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

FOR PLAINTIFF MILLER:        SHANE BRADY VOGT, ESQ.
                             Bajo Cuiva Cohel Turkel
                             100 North Tampa Street
                             Suite 1900
                             Tampa, Florida  33602

```
                      APPEARANCES (cont'd.)


FOR DEFEDANTS GIZMODO
  & KUREGER:                    DEANNA KENDALL SHULLMAN, Esq.
                                Shullman Fugate PLLC
                                2101 Vista Parkway
                                Suite 4006
                                West Palm Beach, FL

                                KATHERINE M. BOLGER,ESQ.
                                Davis Wright Tremaine, LLC
                                1251 Avenue of the Americas
                                21st Floor
                                New York, New York  10020


FOR DEFENDANT MENAKER:          MAXWELL S. MISHKIN, ESQ.
                                CHAD R. BOWMAN, ESQ.
                                Ballard Spahr, LLP
                                1909 K. Street NW
                                12 Floor
                                Washington, DC  20006













REPORTED BY:                    DIANE M. MILLER, RMR, CRR
                                Official Court Reporter
                                701 Clematis Street
                                West Palm Beach, FL  33104
                                (561)514-3728
                                diane_miller@flsd.uscourts.gov
```

Wednesday, March 27, 2019.

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2            THE COURTROOM DEPUTY:  United States District Court
 3   for the Southern District of Florida is now in session, the
 4   Honorable Jonathan Goodman presiding.
 5            THE COURT:  Good afternoon folks; this is Jonathan
 6   Goodman.  Thanks for phoning in.
 7            As I understand it, we have Mr. Vogt, Miss Shullman,
 8   and Miss Bolger, correct?
 9            MR. VOGT:  Yes, Your Honor.
10            MS. SHULLMAN:  Yes, Your Honor correct.
11            MR. MISHKIN:  Your Honor, this is Max Mishkin on
12   behalf of Defendant Will Menaker, I just joined as well.
13            THE COURT:  All right.  Let me just get that down.
14   Would you mention your name one more time, sir?
15            MR. MISHKIN:  It's Max Mishkin, Your Honor.
16            THE COURT:  Yes, all right, thank you.  You are
17   phoning in from Washington?
18            MR. MISHKIN:  That's correct.
19            THE COURT:  All right.
20            So by the way, Miss Shullman, I heard you say, when
21   you phoned in, that you were here for the hearing before
22   Magistrate Goodman.  So we are actually called magistrate
23   judges, and we have been magistrate judges under federal
24   statute for more than 25 years, so you probably would be better
25   served to use the term "magistrate judge" in federal court,
```

Wednesday, March 27, 2019.

```
 1  especially when the judge is listening, just a practice
 2  pointer, if you don't mind.
 3          MS. SHULLMAN:  I appreciate that, Your Honor.  I
 4  certainly did not mean any offense by the reference.
 5          THE COURT:  Just trying to help you out because all
 6  of us pretty much have the same philosophy.
 7          But in any event, folks, we are here for a discovery
 8  hearing on two issues.  The first one has to do with -- I
 9  shouldn't say the first one, I should say one issue has to do
10  with the particular wordsmithing of a confidentiality
11  agreement; and the second issue or the other issue has to do
12  with a potential dispute involving a shield law and whether or
13  not that is a particularly sophisticated matter --
14          What's that?
15          UNIDENTIFIED SPEAKER:  Someone joined the called.
16          THE COURT:  I'm sorry.  Who is it that just joined
17  the call?
18          MR. BOWMAN:  Your Honor, Chad Bowman on behalf of
19  will Menaker.
20          THE COURT:  Are you in the same office as
21  Mr. Mishkin?
22          MR. BOWMAN:  I am, Your Honor.
23          THE COURT:  Are you, like, down the hall from
24  Mr. Mishkin?
25          MR. BOWMAN:  I am, Your Honor; but we understood we
```

Wednesday, March 27, 2019.

```
 1  were not to use speaker phones, so we were each calling in from
 2  our own desks.
 3          THE COURT:  That's fine.  The hearing has been
 4  underway for a couple minutes already.  I guess you can pick up
 5  from Mr. Mishkin what you missed.
 6          MR. BOWMAN:  My apologies, Your Honor.
 7          THE COURT:  In any event, the other issue is whether
 8  the dispute concerning a shield law is sufficiently complex to
 9  warrant the submission of memoranda because normally under my
10  discovery procedures, order, motions, and memoranda are not
11  permitted, but I do allow the parties to specifically request
12  the ability to submit memoranda if the issue is complex enough,
13  so I think that I have a general feel for what the issue is,
14  but that would be an assumption on my part, so why don't you
15  tell me specifically the precise nature of the shield law
16  dispute.
17          Who is going to be speaking first?
18          MR. VOGT:  I can speak first, Your Honor.  This is
19  Shane Vogt on behalf of the plaintiff.
20          THE COURT:  Yes.
21          MR. VOGT:  There are a number of objections that were
22  raised in interrogatories and requests for production, based on
23  the shield law, particularly related to the source of the
24  supplement that was published in this case, and I think that
25  that, in and of itself, is going to raise some legal issues and
```

```
 1   factual issues that need briefing.
 2          Choice of law issues will probably need to be
 3   addressed particularly whether New York law or Florida law
 4   applies to the assertion of the shield law as well as whether
 5   the privilege has been waived by disclosure of information over
 6   which it is being asserted to third parties as well as whether
 7   or not the plaintiff can establish the requisite factors to
 8   overcome the shield law and obtain discovery of information.
 9          One thing I did want to note for the Court was in the
10   Gubarev versus BuzzFeed case which was pending in the Southern
11   District, there actually was an opinion issued in that case by
12   Magistrate Judge O'Sullivan which, after an informal hearing
13   such as this one, Magistrate Judge O'Sullivan did order
14   additional briefing which was fairly extensive in that case;
15   and although some of the legal issues are overlapping, we
16   obviously have some different facts at issue here, and I think
17   that that sort of lends itself to our position that we think
18   that additional briefing on this issue may be helpful for the
19   Court.
20          THE COURT:  So when you say, Mr. Vogt, that the issue
21   came up in objections to interrogatories and requests for
22   production, is this written discovery propounded to Gizmodo
23   Media, or to Miss Krueger, or to Mr. Menaker, to all three, to
24   two of the three, to one of the three?  What are you talking
25   about?
```

```
 1           MR. VOGT:  It was written discovery, interrogatory
 2   requests for production issued to Gizmodo Media and to Miss
 3   Krueger.
 4           THE COURT:  All right.  So in response to that
 5   written discovery, Gizmodo and Miss Krueger raised objections
 6   and those objections relied in part on some sort of a shield
 7   law; do I have that right?
 8           MR. VOGT:  Yes, Your Honor.
 9           THE COURT:  And I guess it was one omnibus response
10   or objection filed on behalf of both Gizmodo and Miss Krueger,
11   or did even defendant submit a separate response and a separate
12   individualized objection?
13           MR. VOGT:  Each submitted separate individualized
14   objections to each of the interrogatories and requests for
15   production of approximately ten of the interrogatories and 16
16   of the requests for production in response to those, even
17   Miss Krueger and Gizmodo asserted the same objection which was
18   citing to the New York and Florida and federal constitutional
19   shield law as a basis for not providing information.
20           THE COURT:  I'm not familiar with the constitutional
21   shield law; what is that all about?
22           MR. VOGT:  There is an Eleventh Circuit case that
23   actually recognizes a privilege under the First Amendment of
24   the constitution to protect sources for publishers.  It's very
25   similar to the statutory enactments in Florida and New York.  I
```

1 believe it is qualified, such as the Florida privilege is,

2 whereas the New York privilege may not be qualified.

3         MS. SHULLMAN:  The New York privilege absolutely is,

4 Your Honor.

5         THE COURT:  First of all, folks, when you speak, you

6 are going to need to speak loudly so we can hear who is

7 talking.  Secondly, before you speak, you need to identify who

8 is speaking because I certainly don't recognize your voices --

9 first time I have ever heard any of you -- and in addition to

10 that, when the court reporter transcribes this hearing, if

11 anybody orders the transcript, he or she will need to know who

12 is speaking.  So with those objections in mind, who was it who

13 just blurted out that last comment?

14         MS. SHULLMAN:  Your Honor, it was Deanna Shullman, on

15 behalf of Gizmodo.

16         THE COURT:  What did you say, ma'am, because you were

17 not speaking loudly enough?

18         MS. SHULLMAN:  Sure; I apologize for that.

19         Mr. Vogt was indicating that he wasn't sure whether

20 the New York privilege was qualified, and so I simply

21 interjected that the New York statute, which is Civil Rights

22 Law 79-h(b) would provide an absolute privilege for Gizmodo and

23 Krueger sources.

24         THE COURT:  That's actually not how I interpreted his

25 comment.  I interpreted Mr. Vogt's comment to be that the

1  common law constitutional shield law or privilege mentioned in

2  this Eleventh Circuit case was a qualified doctrine.

3         Is that what you meant, Mr. Vogt?

4         MR. VOGT:  Yes, Your Honor.

5         THE COURT:  Okay, that's what I thought.

6         So in any event, Mr. Vogt, you believe that this

7  issue is worthy of briefing, correct?

8         MR. VOGT:  Yes, Your Honor.

9         THE COURT:  And what about the Gizmodo lawyers, what

10 do you think, worthy of briefing or not?

11        MS. SHULLMAN:  Your Honor, this is Deanna Shullman

12 again, on behalf of GMG, Gizmodo and Krueger.

13        This is a New York -- Miss Krueger is a New York

14 journalist reporting for a New York company.

15        THE COURT:  Counsel, Counsel, I'm so sorry.  I

16 probably did a bad job of asking my question because I thought

17 my question was one capable of being answered yes or no, but

18 let me try again.

19        I'm not looking for legal argument now, I'm not

20 looking for historical perspective, I'm not looking for the

21 right or wrong or the substance.  It was a simple question:  Do

22 you believe that this issue is worthy of briefing?  Here are

23 the two possible answers:  Yes, no.

24        MS. SHULLMAN:  Yes, Your Honor, if Mr. Vogt is going

25 to raise a choice of law issue.

Wednesday, March 27, 2019.

```
1            THE COURT:  Were there any objections, Mr. Vogt, to
2    any written discovery propounded to Mr. Menaker under either
3    the statutory shield laws or the Eleventh Circuit common law
4    constitutional shield or so-called privilege?
5            MR. VOGT:  No, Your Honor.
6            THE COURT:  And that's because he is still asserting
7    jurisdictional arguments, and you have not yet gotten to
8    discovery, correct?
9            MR. VOGT:  Correct, Your Honor.
10           THE COURT:  Okay.
11           So let's have some briefing.  The first question we
12   should ask is:  I'd like to hear your suggestions on how long
13   of a memorandum would be appropriate, although the local rules
14   permit lawyers to submit memoranda in one-and-a-half spacing, I
15   have 63-year-old eyes and I don't really do very well with
16   one-and-a-half spacing, so any memoranda which gets submitted
17   will be double spacing.
18           So with a double spacing format, Mr. Vogt, how many
19   pages are you suggesting for a simultaneously filed memoranda
20   because we are not getting to a situation of brief, response,
21   reply.  It is just going to be both sides submitting a
22   memorandum on a date certain on the issues.  So how many pages
23   are you suggesting, Mr. Vogt?
24           MR. VOGT:  Twenty.
25           THE COURT:  And, Miss Shullman?
```

Wednesday, March 27, 2019.

```
 1              MS. SHULLMAN:  Twenty as well then, Your Honor.

 2              THE COURT:  Well, just because Mr. Vogt says 20

 3   doesn't mean that has to be your suggestion, because you said

 4   20 pages as well.  But if you wanted to, for example, say ten

 5   pages, I'm perfectly happy to entertain a request for ten

 6   pages.  So are you still a 20-pager, or do you want to suggest

 7   some other page limit?

 8              MS. SHULLMAN:  Your Honor, are you asking me what

 9   Mr. Vogt's page limit will be or what my client's page limit

10   will be.

11              THE COURT:  Were you under the assumption there would

12   be different page limits for different parties?

13              MS. SHULLMAN:  No; but, I guess my assumption is if

14   Mr. Vogt felt like he needed 20 pages to get the issue across,

15   that is more than than I think is necessary.  But the issue may

16   be more complicated for him than it is for me, so if he needs

17   20 pages, I don't want to -- I don't want to shortchange his

18   briefing, so I would just ask for reciprocity.

19              THE COURT:  Well, Miss Shullman, of course.  Whatever

20   page limit I give him I'm going to give you.  That's kind of a

21   given.

22              If, on the other hand, you think that his 20-page

23   request is unnecessary, is not objective, is overstated, is too

24   much, then you can simply say, I think each of us can get the

25   job done in ten pages.  That's all I'm asking.  So are you
```

Wednesday, March 27, 2019.

```
 1   still --
 2           MS. SHULLMAN:  I think -- sorry, Your Honor.
 3           THE COURT:  Go ahead, I'm listening.
 4           MS. SHULLMAN:  I think each of us can get it done in
 5   15 pages probably.
 6           THE COURT:  Okay, folks; and so I agree, this will be
 7   a 15-page, double-spaced memorandum, and it will be basically
 8   covering the points that Mr. Vogt mentioned, but I'll repeat
 9   them in case you need to have the specificity.  But just to
10   make all of you feel a little more comfortable, later on today
11   or tomorrow, I'll be issuing a post-hearing administrative
12   order which will pinpoint in writing the specific issues.  So
13   although all of you may be taking good notes now, just
14   understand that even if your notes are not as perfect as you
15   might want them to be, the order will pinpoint the precise
16   issue.
17           So one of the issues will be choice of law, whether
18   the New York shield law or the Florida statutory shield law
19   applies and then, in addition, whether the Eleventh Circuit
20   so-called shield law perhaps also sometimes called a privilege
21   would apply.
22           Mr. Vogt, what was the name of the case, that
23   Eleventh Circuit case it that you told me earlier concerning
24   the --
25           MR. VOGT:  It is --
```

Wednesday, March 27, 2019.

13

```
1          THE COURT:  -- concerning the constitutional
2   so-called immunity or shield law, give me that case name place.
3          MR. VOGT:  The cite I have is Price versus Time Inc.,
4   and the cite is 416 F.3d, 1327.
5          THE COURT:  And that's an Eleventh Circuit case?
6          MR. VOGT:  Yes, Your Honor.
7          THE COURT:  From what year?
8          MR. VOGT:  It was -- it was modified on denial of
9   brief hearing in 2005.
10         THE COURT:  All right.  So what issue is the one that
11  I just mentioned; the second is whether any of the defendants
12  waived the protection of a shield law or common law immunity;
13  and third is whether -- I think the way you phrased it,
14  Mr. Vogt, is whether the plaintiff can establish the requisite
15  factors.  And by that, did you mean whether the plaintiff can
16  establish the requisite factors to pierce or get beyond or
17  avoid the shield laws; is that what you meant to say?
18         MR. VOGT:  Yes, Your Honor.
19         THE COURT:  Okay.  Now is there also an issue -- you
20  folks will tell me.  Is there also an issue as to whether or
21  not the underlying order in the family law case was under seal?
22  Is that a factual dispute?  Mr. Vogt, first, your position.
23         MR. VOGT:  Yes, Your Honor.
24         THE COURT:  Yes, it is under dispute?
25         MR. VOGT:  Yes.
```

Wednesday, March 27, 2019.

```
 1              THE COURT:  Miss Shullman, you agree?

 2              MS. SHULLMAN:  No, I disagree, Your Honor, because I

 3    thought everybody agreed that it was not under seal.  Whether

 4    it should have been under seal is a different question and one

 5    that I don't think is germane to the inquiry of the shield law

 6    issue.

 7              THE COURT:  So your position is that this order from

 8    the family court was not ever under seal?

 9              MS. SHULLMAN:  There was no order sealing that, Your

10    Honor.

11              THE COURT:  And what do you say, Mr. Vogt, was it

12    under seal or not?

13              MR. VOGT:  We say that it was under seal, Your Honor.

14              THE COURT:  Okay.  So the fourth issue will be

15    whether the family court order was under seal; or, if not,

16    whether it was supposed to be and whether the parties were

17    aware of an intent to treat the order as an under-seal order.

18              And the reason that I mentioned this, I don't know

19    much about what happened in that family law case.  And I'm just

20    speaking hypothetically not about your case, but about cases in

21    general.  Let's assume for discussion that there is a hearing;

22    judge issues an order at the hearing orally, and he says, I

23    want this order to be under seal, I don't want anybody knowing

24    about this, this will be a confidential matter, it is going to

25    be filed under seal.
```

Wednesday, March 27, 2019.

```
 1              And then in the administrative follow through -- by
 2    the way, just to continue the hypothetical, let's assume that
 3    the lawyers and the parties are at this hearing where the judge
 4    says this but administratively there is some kind of a snafu
 5    and the order that is supposed to be filed under seal is not
 6    filed under seal.  It should have been, but it wasn't.  So then
 7    one possible issue might be, well, what are the consequences on
 8    the shield law and whether or not the argument that the shield
 9    law doesn't apply to under seal orders.  What's the affect on
10    the snafu on that legal principle?
11              So in discussion of that issue, you will discuss
12    first the facts about what the heck happened with this order.
13    Was it supposed to be filed under seal or not?  And if it was
14    supposed to be filed under seal, what happened?  And then the
15    second part of that will be the legal consequences.
16              The next question --
17              MS. BOLGER:  Your Honor -- sorry.
18               Your Honor, this is Kate Bolger, in New York, also
19    nor the defendants.  And I actually think Mr. Vogt may agree
20    with me that in the facts of this particular case -- and I
21    understand Your Honor's hypothetical, but Mr. Vogt is not
22    arguing --
23              And, Shane, please don't let me put words in your
24    mouth.
25              -- but I don't think the parties believe the question
```

Wednesday, March 27, 2019.

1  of whether this file was under seal is relevant to the source

2  issue, the reporter's privilege issue; and I'm only mentioning

3  it, Your Honor, because it might save us all pages of text to

4  read or to write.  And I think there is a potential that we

5  agree that it actually doesn't play into the shield law

6  analysis, and I thought I might suggest that and ask Mr. Vogt

7  his opinion to see if it has narrowed the issues for Your

8  Honor.

9           THE COURT:  Mr. Vogt?

10          MR. VOGT:  Your Honor, we think that actually it

11  could play into it.  There was a recent decision out of the

12  Supreme Court of Tennessee where the actual source of the

13  information was relevant in terms of whether or not it was a

14  government official; and obviously, the way that the summary

15  judgment that we are talking about got into the hands of the

16  defendants and whether it came from the clerk of the court, for

17  example, or from an individual could be significant, and I

18  think that at least does tie into some of the issues that Your

19  Honor is asking about.

20          THE COURT:  So to cut to the chase, you think that

21  the issue of whether this family court order was filed under

22  seal or not filed under seal or was intended to be filed under

23  seal could have a legal impact on the analysis, correct?

24          MR. VOGT:  Correct.

25          THE COURT:  All right.  So I believe, Miss Bolger,

1  that your suggestion to remove an issue from the menu of

2  issues, while well-intentioned -- and I certainly appreciate

3  your desire to streamline the list of issues -- I think you

4  have not persuaded Mr. Vogt to join your side of that request.

5          Correct, Mr. Vogt?

6          MR. VOGT:  Correct, Your Honor.

7          MS. BOLGER:  It simply doesn't -- and I'm sorry to be

8  difficult.  I don't even understand how it could be germane,

9  but I understand that I have -- I have -- I will -- I will

10 write, it's just -- it's apples and oranges, Your Honor.  It

11 would be relevant to -- plaintiff has argued it is relevant to

12 the fair report privilege, but that's not relevant to the

13 reporter's privilege.  That's my argument is that it is very

14 much apples and oranges; but I hear I can't get agreement on

15 that, and we will write.  It just seems -- it seems like a

16 waste of everybody's time, but I hear Your Honor, and I will

17 move on.

18          THE COURT:  Listen, I don't know enough about this

19 issue to definitively decide either way.  I'm only here

20 handling a discovery issue, the substance of which we are not

21 even supposed to be talking about today.  The only issue on

22 that was going to be whether or not it was so exceptional and

23 atypical to require briefing.  So you folks know far more than

24 me about the law because I have not researched it, and you

25 haven't given me the benefit of your legal research and

1  analysis but let me ask Mr. Vogt this question, since you have

2  been dealing with these issues for a while and I have not.

3          Under either the New York or Florida shield law, does

4  it matter whether the information came from an improper source

5  such as a sealed order?  I'm talking not about this case, just

6  hypothetically.  So hypothetically, if the shield law protects

7  the media and gives the media some relief, is there a carve-out

8  or an exception if the order, the court order being reported on

9  was filed under seal?  Does that legally matter?

10         MR. VOGT:  I don't know that there is an exception

11  your Honor, but I do believe that by raising the shield law,

12  the defendants put at issue in the case their source of the

13  information in terms of whether or not it came from the clerk

14  or an official government agency or individuals.

15         MS. BOLGER:  Your Honor, this is Kate Bolger, again.

16         Your Honor, there is no exception.  In New York, it

17  is an absolute privilege.  There is no test if New York law

18  applies that defendants cannot be compelled to provide this

19  information.

20         If Florida law applies, there is a three-part test --

21  that's the same as in the Eleventh Circuit and the Second

22  Circuit -- and that looks to whether the information is

23  critical and necessary, whether it is available from other

24  sources which, by the way, there is no effort to get it from

25  other sources, and whether it is material and necessary to the

1  maintenance of the action, whether -- the identity of the

2  source that is.  So who the source is and what the -- whether

3  the identity of that source is critical and necessary is

4  important.  But there is no exception for how it was gotten;

5  and, in fact, the Supreme Court in a decision called *Bartnicki*

6  *versus Vopper* said essentially that if a publication obtains

7  something that was obtained by somebody else unlawfully, they

8  still can't be liable for publishing it.  So it is not --

9  that's an analogy, not an exact on point case.  But there is no

10  exception.  It is not a part of the three-part test recognized

11  by Florida or the federal courts.  It is just apples and

12  oranges, Your Honor.

13          THE COURT:  So I find this fascinating, so let me

14  just ask you a hypothetical question.  And this wasn't

15  officially on the agenda for this afternoon, but I have no

16  further hearings for the remainder of the day, so I can

17  certainly explore some of the topics.

18          But let's just say, for the sake of the discussion,

19  that a court order is filed under seal and nobody is supposed

20  to get access to it.  When a reporter pays $100 to an employee

21  in the clerk's office to give that reporter a copy of the

22  sealed order, you are telling me that the shield law still

23  applies?

24          MS. BOLGER:  Yes -- it's Kate Bolger again, Your

25  Honor; and yes, the shield law would still apply in New York.

Wednesday, March 27, 2019.

1    It would be absolute.  There would be no way to compel that.

2    And in Florida, that would -- the shield law would apply and

3    the plaintiff would be required to overcome that by making the

4    three-part showing that the identity of the source was critical

5    and necessary, that the identity of the source is highly

6    material and relevant to the maintenance of the claim, and that

7    the identity of that source couldn't be found out by, for

8    example, a subpoena to the clerk's office.  The Florida

9    privilege and the settled privilege would actually say that

10   before you can get this information from the reporter, you have

11   to ask the clerk.

12          So yes, Your Honor, it would be wholly irrelevant.

13   And in New York, you would never even get there because the

14   reporter could simply say, my source is confidential, and that

15   would end the analysis.

16          THE COURT:  Even if, for example, the reporter in New

17   York obtained the information by bribing a clerk to improperly

18   provide a copy of the sealed order?

19          MS. BOLGER:  Yes, Your Honor, even if -- even if --

20   sorry, it is Miss Bolger again -- even if that were the

21   circumstance.

22          You could get it from the clerk, Your Honor.  You

23   could go -- the plaintiff, in this instance, could go to the

24   clerk and he could subpoena the clerk, and the clerk would

25   testify the reporter paid me $100 to get this; and then the

1   plaintiff could argue that the defendants acted wrongly and

2   that they were blowing -- that they violated the standard of

3   care, but they couldn't -- but that's different from being

4   required to compel the identity of the source.  In New York,

5   you cannot do that, that's why the choice of law issue is so

6   incredibly crucial here.

7           So how -- whether or not the order was under seal, it

8   just -- it matters for the fair report privilege which is what

9   the motion was or at least that's what the plaintiff says.  But

10  it doesn't matter for this privilege.  This privilege is that

11  defined three-part test or the absolute privilege in New York.

12          THE COURT:  Are you folks having a discovery dispute

13  concerning the fair reporting privilege, or is it just now

14  based on the shield law?

15          MS. SHULLMAN:  Your Honor, this is Deanna Shullman,

16  again.  We have a -- the Gizmodo defendants which include

17  Gizmodo and Miss Krueger have a pending dispositive motion

18  before the Court on the fair report privilege.  We have moved

19  to dismiss on that basis, and the court has not yet ruled on

20  that motion.  That is an entirely separate inquiry than the

21  shield law.

22          THE COURT:  So is the fair reporter privilege

23  sometime called the neutral reporting privilege?

24          MS. SHULLMAN:  This is Miss Shullman again, Your

25  Honor.  Those are actually two different privileges.  The

1  neutral report privilege is not recognized in Florida, but the

2  fair report privilege is recognized in Florida.  Those are two

3  slightly different privileges.

4       Neutral reportage, since Your Honor has time and is

5  interested, it's more if you report on a matter of controversy

6  neutrally without taking sides -- he said this, she said

7  this -- that's what the neutral reportage would cover.

8       The fair report privilege protects journalists from

9  reporting on matters in court files, public records,

10 information obtained from Government officials, information

11 contained in court records, information provided in discovery

12 in a criminal case, things of that nature.

13      THE COURT:  So, Mr. Vogt, since we are dealing here

14 in this brief which you folks are going to be filing on the two

15 state shield laws, New York or Florida and the Eleventh Circuit

16 case *Price versus Time Inc.*, I'm not sure that I'm

17 understanding from you why it matters whether the court order

18 was filed under seal or not.  Can you explain that to me one

19 more time?  Because if I really don't need this issue to be

20 briefed, I agree with Miss Bolger that it would be a waste of

21 your time and my time to get into it, so if you could go over

22 that one more time with me so I can get a better handle on it.

23      MR. VOGT:  Yes, Your Honor.  My position on that was

24 merely that it may be relevant to the analysis of the shield

25 law when the document that we are talking about, the summary

1  judgment was obtained from a government official.

2         THE COURT:  And why would that matter?

3         MR. VOGT:  Because if the position is that by taking

4  the position that the fair reporting privilege applies, we

5  would -- we would be addressing whether or not the document was

6  obtained from a government official which, if it was obtained

7  from the clerk, for example, the privilege would apply.  If it

8  was not obtained from the court, the privilege would not apply

9  in terms of the fair report privilege.  So it really only ties

10 into the issue Your Honor is addressing in terms of whether or

11 not the fair report privilege puts at issue the source of the

12 information which is then relevant to the shield law analysis.

13        THE COURT:  Well, the fair reporting privilege, as I

14 understand from Miss Bolger, is currently involved in a motion

15 to dismiss which is pending in front of Judge Altonaga, not me,

16 right?

17        MR. VOGT:  Correct.

18        THE COURT:  So to the extent that the status of the

19 order as sealed or not sealed might be legally relevant, the

20 relevance would concern the fair reporting privilege which is

21 at issue in the motion to dismiss, am I right?

22        MR. VOGT:  I would agree with that, Your Honor.

23        THE COURT:  And that's not before me.

24        MR. VOGT:  Correct.

25        THE COURT:  So I'm not going to have that final

Wednesday, March 27, 2019.

1    issue, George, on our list of topics.

2            So, Miss Bolger, you have convinced me -- even though

3    you didn't get Mr. Vogt to agree with you, you have convinced

4    me that that's not an issue that needs to be briefed before me.

5    Maybe it is an issue for Judge Altonaga on the motion to

6    dismiss for the fair reporting privilege, but that's not before

7    me.  So the homework assignment will be a little bit shorter.

8            So the next issue we have concerning the brief when

9    this memorandum should be filed and -- so I don't know how well

10   you folks know Judge Altonaga, but she is a very efficient

11   judge.  She wants her trial scheduling orders complied with.

12   She wants the discovery deadlines complied with.  She expects

13   the lawyers to move the case along.  She expects me, as a

14   magistrate judge, to move the matters that are on my plate

15   along; and, to the extent that you have this discovery dispute,

16   I'm not going to let it ripen in the noon day sun while it is

17   on my plate.

18           So with that general thought in might not mind, what

19   is your suggestion, Mr. Vogt on when you think you will be able

20   to submit this 15-page memorandum?

21           It's now 4:32.

22           MR. VOGT:  Your Honor, I would ask to to have until

23   April 8th.

24           THE COURT:  And, Miss Shullman, again, you don't need

25   to give the same date as Mr. Vogt.  You know, if he gets April

1  8th, you will get April 8th; if you gets April 3rd, you will

2  get April 3rd, same date for all sides.  What is your

3  suggestion as to the deadline?

4          MS. SHULLMAN:  Your Honor, this is Miss Shullman.

5          You know, I had -- Mr. Vogt had never raised a waiver

6  issue with us prior to this call, so I would actually request

7  the opportunity to brief after Mr. Vogt, if Your Honor is

8  amenable to that, because I don't have any -- as far as I'm

9  aware, there is no evidence of waiver in Florida.  If that is

10 the choice of law, there is no such thing as waiver.  Miss

11 Bolger can speak better to New York law.  So I'm not sure what

12 he is going to argue there, so I would request that we have a

13 period of time after he responds, you know, maybe five days or

14 so after he responds to be able to put in our response.

15         THE COURT:  So I appreciate the creativity and the

16 tenacity; but no, it is going to be a simultaneously filed

17 brief.  But in order to help you out, because I appreciate to a

18 certain degree your dilemma, Mr. Vogt, tell us please what

19 exactly you mean by waiver of the shield law protection through

20 disclosure of information to third parties.  What is that all

21 about?

22         MR. VOGT:  No, Your Honor, on September 21st, prior

23 to the publication of the sealed court filing, the Miss Krueger

24 sent a copy of it to A.J. Delgado [phonetic].

25         THE COURT:  Sent a copy of what to Mrs. Delgado.

Wednesday, March 27, 2019.

1          MR. VOGT:  Of the summary judgment, the sealed filing

2  that we have been talking about.

3          THE COURT:  Okay, go ahead.

4          MR. VOGT:  And that by disclosing that information to

5  a third party, that was opening a waiver of the shield.

6          MS. BOLGER:  This is Miss Bolger, again.

7          Of course, there is no evidence, and there is

8  absolutely no reason to believe that Miss Krueger told Miss

9  Delgado the identity of the source; though, of course, the

10  defendants are not asserting the privilege over the supplement,

11  they are asserting privilege over the source, and so unless

12  there is some evidence that Miss Krueger told Miss Delgado the

13  source, I think we don't need this waiver argument either.  You

14  can't waive something you haven't disclosed.

15          THE COURT:  In that case, I imagine that part of your

16  argument on this waiver issue will be that it's not a bona fide

17  issue because regardless of whether Miss Krueger sent a copy to

18  Miss Delgado, there is no evidence, no record evidence to show

19  that Miss Krueger disclosed to Miss Delgado the source of the

20  information, and so you can make that argument in your brief.

21  And I guess your analysis and your briefing on this particular

22  topic will be relatively succinct.

23          And, Mr. Vogt, if you have some evidence to suggest

24  that Miss Krueger told us to Miss Delgado -- well, let me ask

25  you this, sir, just so there are no surprises.  Do you have any

1  evidence to suggest that Miss Krueger told Miss Delgado the

2  source of the summary judgment?

3       MR. VOGT:  Right now, I do not, Your Honor, simply

4  because the attachments that were connected to the e-mail were

5  not included in what was produced to us.

6       THE COURT:  So in any event, maybe that will be an

7  argument that I'll see in your brief, that you don't have the

8  evidence and the reason is what you just articulated.  But who

9  knows, I'll have to wait and see what you folks argue in this

10 memorandum.  So it's going to be simultaneously filed.

11      And so, Miss Shullman, since I've rejected your

12 request to file second, given the fact that this will be a

13 simultaneously filed memorandum, what date are you suggesting?

14      MS. SHULLMAN:  April 5th, Your Honor.

15      THE COURT:  April 5th.

16      So Mr. Vogt, I think I heard you suggest what,

17 April 7th?

18      MR. VOGT:  I had April 8th, Your Honor.

19      THE COURT:  April 8th, okay.

20      MR. VOGT:  That following Monday, but it was -- I'm

21 in a full day hearing in federal court in Tampa on Friday, and

22 a full day mediation out of town on Thursday of the prior week.

23      THE COURT:  What is the discovery cutoff?

24      MR. VOGT:  May 6th.

25      THE COURT:  So we will use the April 8th date; that

Wednesday, March 27, 2019.

1   way in case you need it, you folks can refine it, polish it,

2   and get it in the best possible condition over the weekend, if

3   you need to.  All right, so we will use the April 8th

4   simultaneously filed deadline.

5           So it took a lot of time just to get sort of this

6   administrative matter out of the way of whether or not we are

7   going to have a brief and if so, the issues, and the deadline

8   and the length, but we have gotten that out of the way.

9           So now let's get to the issue that hopefully was on

10  the top of the list, the dispute over the language of the

11  confidentiality agreement.

12          Before we get into the actual disagreement, I have a

13  question for both sides.  There are two types of documents that

14  typically come before me when we are dealing with these kinds

15  of issues.  Where the lawyers have various designations on

16  documents, "confidential," sometimes you will see "highly

17  confidential," sometimes you will see "attorney's eyes only,"

18  and they tend to be fairly standard.  But generally, this kind

19  of framework arises in one of two scenarios.  The first

20  scenario is the parties will privately have a confidentiality

21  agreement.  The other scenario is that the parties will submit

22  to me a stipulated protective order, or a stipulated

23  confidentiality order, or a stipulated protective order

24  governing confidentiality, but the point is, it is not merely

25  an agreement between the parties, it is an actual order of the

1  court; and, almost always, it is submitted to me by agreement

2  after the parties have spent sometime wordsmithing the

3  document.

4        I understand that you have some drafting differences

5  between yourselves, but when you are tending to have a purely

6  private confidentiality agreement signed by you folks but not

7  entered as a court order, or did you actually intend to have a

8  court issued protective order concerning confidentiality?

9  Mr. Vogt?

10       MR. VOGT:  Our intention was just to have a private

11  agreement, Your Honor.

12       THE COURT:  Miss Shullman?

13       MS. SHULLMAN:  That was our intention as well, Your

14  Honor.

15       THE COURT:  Well, if that's the case, then who am I

16  to force a particular version on you by agreement?  You know,

17  if you want to agree to something and agree to language, you

18  can.  And if you don't, who am I to say you shall agree to

19  this, that is no longer an agreement, it is more of a court

20  order in part framed by most of the things that you agree to;

21  but on the things that you didn't agree to, I'm resolving the

22  dispute court order.  I just have a hard time grasping the

23  concept that this was going to be a private agreement which, by

24  definition, means that you agree, but you are not agreeing on

25  this.  Do you follow my confusion here?

Wednesday, March 27, 2019.

1        MS. SHULLMAN:  Yes, Your Honor.  This is Miss

2   Shullman.

3        I think what has started out as Mr. Vogt's and my

4   intent to come to a private agreement has turned into an

5   inability to agree.  So at this point, we are going to need the

6   court to enter a confidentiality order because, as you have

7   pointed out, the parties can't simply agree on this language.

8        THE COURT:  Sure.

9        MS. SHULLMAN:  So you know, appreciating that Your

10  Honor can't force either side here to enter into an agreement,

11  I think the reason we brought you the dispute in this way is to

12  say, okay, we can't reach an agreement; both sides have

13  documents that they need to produce that would be subject to a

14  protective order, and so, you know, the most efficient way to

15  bring the dispute to you is to kind of where we are stuck and

16  ask you to resolve these disputes and enter an order in

17  accordance with the way you resolve it.

18       THE COURT:  So, Mr. Vogt, given the fact that you

19  have not agreed on all of the terms and my reluctance to force

20  an agreement on you by determining how your dispute should be

21  resolved, do you have any problems with me issuing a protective

22  order concerning confidentiality as opposed to a purely private

23  confidentiality agreement?

24       MR. VOGT:  No objection Your Honor.

25       THE COURT:  All right, good.  So this will be

Wednesday, March 27, 2019.

1    ultimately issued in the form of a protective order concerning

2    confidentiality.  So let's get to the first dispute which

3    happens to be in paragraph two under the section entitled

4    "confidential material."  And the part that you can't agree on

5    is in the middle, that paragraph on the second page starting

6    with the phrase "could cause substantial injury," and ending

7    with "or common law."  Is everything on the same page as me,

8    with that phrase?

9              MS. SHULLMAN:  Yes, Your Honor.

10             MR. VOGT:  This is Mr. Vogt; yes, Your Honor.

11             THE COURT:  So who is it that wants this language in

12   there?  Mr. Vogt?

13             MR. VOGT:  Yes, Your Honor, it is us.

14             THE COURT:  All right.  And so either Miss Shullman

15   or Miss Bolger, tell me why that language should not be in

16   there.

17             MS. SHULLMAN:  Your Honor, this is Miss Shullman.

18             This is language that would expand the definition of

19   that which Mr. Vogt or any party or nonparty could identify as

20   "attorney's eyes only."  And what is important about this is

21   that this is a defamation case about the supplement that we

22   have been talking about that Gizmodo reported on.

23             The supplement was filed in the family case between a

24   nonparty, Miss Delgado, and the plaintiff here, Mr. Miller.

25   They are involved in a family court matter.  Mr. Miller and the

Wednesday, March 27, 2019.

1  mother in that case had an affair that resulted in a child, and

2  they are in a very acrimonious family law dispute right now.

3        Mr. Miller who is the plaintiff here and father in

4  that action is suing here for defamation, for statements based

5  on things that the mother said in a supplement.

6        The mother claims that Mr. Miller had an affair with

7  another woman that he identifies in the complaint as "Jane

8  Doe;" that Mr. Miller got her pregnant, and that he then

9  slipped her an abortion pill in a Smoothie causing Jane Doe, as

10  she is identified in the complaint in this action, to lose her

11  child.

12        Mr. Miller, the plaintiff here, sued the defendants

13  for reporting on the contents of that court record; and in

14  specific, the entire premise of the claim in this case is that

15  the court record about Jane Doe is 100 percent false.  He even

16  goes so far in his complaint as to attach a redacted purported

17  declaration of this Jane Doe which says that she doesn't even

18  know who the plaintiff is and never met and never met him.

19        So what Mr. Vogt is attempting to do through this

20  provision, as he has already said in his responses -- you know,

21  in his written responses to our discovery, specifically his

22  response to the 22nd request for production, he says that he

23  will only supply us an unredacted copy of the Doe affidavit

24  with an "attorney's eye only" designation.  And so that is the

25  impetus for him wanting to expand the definition of "attorney's

Wednesday, March 27, 2019.

```
 1   eyes only," to protect innocent third parties or substantial
 2   injury for privacy rights.
 3         We simply cannot defend this case if information
 4   related to Jane Doe is designated for "attorney's eyes only."
 5   It wop mean that Miss Bolger and I couldn't disclose it to our
 6   clients at all.  That is a category that permits disclosure
 7   only to outside counsel, testifying witnesses with firsthand
 8   knowledge, certain support personnel like a court reporter or
 9   you, and experts who have opted into the agreement.
10         I'm not even sure Mr. Miller has standing to protect
11   the interests of a nonparty via this protective order, who he
12   claims he doesn't even know.  In the subpoena context, he
13   certainly wouldn't be able to expand; but, more critically,
14   designating all Doe information "attorney's eyes only" would
15   significantly handicap the defendant and provide a substantial
16   impediment to defending this action.
17         The crux of this case is statements about Jane Doe.
18   She is the very premise of plaintiff's claim, and then to say
19   defendants then cannot share information concerning Doe is
20   tantamount to precluding us from testing the veracity of the
21   statements purportedly false in this case made by her and about
22   her in the court record that we -- that we reported on.
23         THE COURT:  So let's just say for the sake of
24   discussion that we included the language that Mr. Miller wants,
25   and let's assume that Mr. Vogt goes forward and designates the
```

Wednesday, March 27, 2019.

1  material concerning Jane Doe as "attorney's eyes only"

2  information, wouldn't you still be able to disclose that

3  document and that information to several categories of

4  individuals even under the "attorney's eyes only" designation?

5          MS. SHULLMAN:  No, Your Honor, not in a way that this

6  "for now" agreement is.  It would be outside counsel -- that's

7  Miss Bolger, myself, and people in our office -- testifying

8  witnesses with firsthand knowledge, support personnel like

9  court reporters, and experts with adopted -- opted into the

10  agreement.  This is not a practical solution.  The defendants

11  already know Jane Doe's real name and have known it for

12  sometime.  I, personally, as well as members of my support team

13  have discussed Jane Doe at length with various nonparties in an

14  effort to locate her because the plaintiff has refused to

15  supply her address without this "attorney's eyes only"

16  designation.

17          My team has talked to a bunch of people that have the

18  same name as Jane Doe trying to find her; and in doing so, we

19  have talked to a bunch of people about the substance of the

20  supplement in trying to locate who this Jane Doe is.  Our

21  client, Miss Bolger's and my client, they know the identity of

22  Jane Doe.  So this is a AEO designation that would be entirely

23  ineffective here and, if it was in place, would prevent me from

24  sharing -- from trying to locate her, from trying to talk to

25  her, from trying to talk to employers of her, from trying to

Wednesday, March 27, 2019.

1 talk to people who know her to test the veracity of the

2 declaration that is attached as Exhibit 1 in the complaint in

3 this case which is the entire premise of the plaintiff's claim

4 that what we said about her is false.

5        THE COURT:  So if we take this language out, Miss

6 Shullman, what would be the difference between confidential and

7 confidential attorneys eyes only?

8        MS. SHULLMAN:  Your Honor, this is exactly what I

9 tried in negotiating this agreement unsuccessfully with

10 Mr. Vogt was to say that the designation of these materials as

11 confidential would adequately, you know, protect against, you

12 know, use outside the scope of this litigation which is all the

13 defendants want to be able to do.  Confidentially designated

14 materials have a -- as you might expect, have a much broader

15 list of those people who are allowed to see it -- the parties,

16 officers, employees who need them, experts, consultants,

17 witnesses, you know, the support personnel.  It would allow us

18 to use the information obtained in the -- in the Doe materials

19 to defend the claim, to reveal those matters so that we could

20 basically test the veracity of her declaration.

21        MS. BOLGER:  This is Miss Bolger.

22        And the one thing that Mr. Vogt has consistently said

23 to Miss Shullman is that he doesn't want the defendants to

24 public this information; and, obviously, the confidentiality

25 order would bar them from doing that.  That's not an option for

1   the defendants, if they want to be bound by the confidentiality

2   order.

3         So the one rational we really heard for this, which

4   is don't publish the information, we are on board with.  It is

5   part of confidentiality order.  If we get the information in

6   discovery, the defendants can't publish the information, or

7   they violated the order, which obviously they wouldn't do.  So

8   that's the -- the important thing, of course, is that this

9   information stays protected, and we just need to be able to

10  defend ourselves by using this information to gather facts.

11  And also, of course, Your Honor, this would mean that the

12  defendants themselves wouldn't be able to talk to us about this

13  information, and how could they make decisions about settling

14  or what discovery was needed.  It handicaps our defense and

15  adds nothing to the levels of protection, the defendants have

16  already agreed that they will not publish confidential

17  information.

18         THE COURT:  So if I were to remove this language at

19  the defendant's request, then we would be left with a

20  protective order which purports to have a confidential

21  classification and a confidential 'attorney's eyes only"

22  classification, except the definition of those two

23  classifications would, for all practical purposes, be

24  identical; am I right?

25         MS. SHULLMAN:  No.  This is Miss Shullman again,

1    Your Honor.

2          The "attorneys eye' only" designation -- and

3    candidly, you know, the defendants are pretty much completed

4    their -- other than a few documents we are withholding for a

5    confidential designation.  I'm not sure we even need an

6    "attorney's eyes only" designation, but the way that the

7    agreement was written, it would not just be commercially

8    sensitive as confidential information might be, but it was --

9    as you typically see, it had that additional thing of being

10   commercially sensitive and it would result in competitive harm

11   to the designated party.  So it was not just commercially

12   sensitive material, it was commercially sensitive material, the

13   disclosure of which would result in competitive harm to the

14   designating party or its interests.

15         That's typically in my practice where I see

16   "attorney's eyes only" -- Hey, Coke, I'm not going to give

17   you -- this is Pepsi, I'm not going to give you my secret

18   formula because each giving it to your employees would create

19   such a competitive, you know, prejudice that I need to mark

20   this "attorney's eyes only."

21         You know, I personally can't think of anything that

22   needs this designation in that case.  I think when we were

23   working through it, as an agreement, you know, we sort of

24   wanted to leave that option only.  But even as written, AEO

25   material would have that additional -- you know, that

Wednesday, March 27, 2019.

1  additional level that it may result in competitive harm.

2          THE COURT:  Mr. Vogt.

3          MR. VOGT:  Well, Your Honor, if I start with the

4  [unintelligible] you have been talking about, I don't think

5  that there is anything legally that prevents us from extending

6  a protection for "attorney's eyes only" to the categories of

7  information that I want to add.  Limiting "attorney's eyes

8  only" to only documents that are commercially sensitive and may

9  result in competitive harm significantly narrows the universe

10 of information that may for legitimate purposes need designated

11 to where only attorneys can see it.

12          The arguments that are being made about Jane Doe and

13 her identity and the redaction, the only thing that we redacted

14 from the declaration of Jane Doe is actually attached to the

15 complaint as Exhibit 1 is her personal identifying information.

16 And so the concern that have been expressed with respect to the

17 provision that we have been talking about as it relates to Jane

18 Doe and the inability to do certain things with her information

19 is designated "attorney's eyes only" versus only

20 "confidential," I actually addressed that problem in the third

21 provision that we would talk about today which is proposed

22 paragraph 11 which agrees that the parties will maintain of

23 identity of Jane Doe, her address, and her personal identifying

24 information confidential.  So they can disclose to their

25 client, so I don't know, you know -- I don't really know where

Wednesday, March 27, 2019.

39

1   the concern comes from there.

2        When we are talking about this first provision for

3   "attorney's eyes only" designation, I just think it is unfair

4   to limit it to only commercial things because really, even

5   today, that can only protect them.  There is nothing for things

6   that my client may have that he wants to designate for

7   "attorney's eyes only."  And if they have a problem with the

8   designation or they want to challenge it, there is a provision

9   for that in this agreement, just like there is in virtually

10  every agreement, and I'm sure the orders that Your Honor enters

11  where the parties meet and confer and see if they are agree and

12  if not it, the Court will make a decision on whether or not it

13  should actually be designated "attorney's eyes only."

14       THE COURT:  So give me an example, Mr. Vogt, of the

15  type of information that you think you would need to discuss

16  with your client but would not be able to do so under the

17  defendant's definition of an "attorney's eyes only"

18  designation.

19       MR. VOGT:  Well, in terms of what the defendants may

20  designate, or what my client might designate, Your Honor?

21       THE COURT:  If the defendant designates something as

22  "attorney's eyes only" which means that you but not Mr. Miller

23  could see the information, give me an example of that and then

24  explain why it would be unduly prejudicial to your ability to

25  prosecute this case.

Wednesday, March 27, 2019.

```
1              MR. VOGT:  I can't think of anything really that we
2    have asked for that they would produce that if they designated
3    "attorney's eyes only" would be designated detrimental to my
4    client, not being able to show it to him.  The only thing I
5    think they talked about designating "confidential" and not even
6    "attorney's eyes only" is some of their advertising revenue
7    date, things like that.
8              MS. SHULLMAN:  This is Miss Shullman, Your Honor.
9              Mr. Vogt is correct, the defendants don't have any
10   intention to [inaudible] I need to back up.  Mr. Menaker has
11   obviously has --
12             THE COURT:  Louder please, louder and more slowly
13   please.
14             MS. SHULLMAN:  Sorry, Your Honor.
15             This is Miss Shullman again.  I should -- my clients,
16   Gizmodo and Miss Krueger, do not intend to, based on those
17   discovery requests that we have seen thus far, we have about a
18   dozen documents that we are withholding pending this
19   determination, but they are all to be marked "confidential."
20   We don't actually have an intent to mark things "attorney's
21   eyes only" which is why I said I don't think that we need an
22   AEO designation in the order.
23             By contrast, Mr. Vogt has indicated an intention to
24   designate his financial information -- Mr. Miller's financial
25   information and information concerning Jane Doe "attorney's
```

1   eyes only;" and as Miss Bolger and I have both pointed out in

2   this hearing, you know, if we are not able to discuss, for

3   example, the financial condition of the plaintiff, we are not

4   able to adequately and effectively advise our clients.  I mean,

5   I don't want to be dramatic and suggest that it is malpractice,

6   but how do I tell Miss Krueger, "you should settle or you

7   shouldn't settle," when I can't discuss with her the financial

8   damages that Mr. Miller claims and the documents that

9   demonstrate or go to those issues.

10          So I think -- you know, I think Mr. Vogt [inaudible]

11   is attempting to [inaudible] "attorneys eyes only" designation.

12          THE COURT:  Ma'am, I can't understand you.  You are

13   breaking up really badly.  I don't know what the problem is,

14   but I'm catching like everything third word.

15          MS. SHULLMAN:  Okay.  I'm sorry, I will -- I'm not

16   sure where to start, but I will try one more time.

17          Mr. Vogt has indicated that he intends to designate

18   both financial records and records concerning Miss Doe as

19   "attorney's eyes only," and it will be incredibly difficult for

20   us to advise our clients or to defend an action if we are

21   allowed -- if we are not allowed to share that information with

22   anybody but yourselves.  The example I gave was how do I tell

23   Miss Krueger that she should or should not settle or that she

24   should or should not take a particular discovery path when I

25   cannot share with her the basis of Mr. Miller's claims for

1  damages.

2          I think that the plaintiff is simply trying to

3  overreach on the "attorney's eyes only" designation when a

4  "confidential" designation would be sufficient to protect his

5  interests.

6          THE COURT:  George, do we have a Word version of this

7  proposed confidentiality agreement that the parties may be

8  submitted to us to our e-mail inbox, or has that not yet

9  happened?

10          UNIDENTIFIED SPEAKER:  No.

11          THE COURT:  So, folks, I'm saying this now before I

12  forget it, before the end of the day because, believe me, this

13  hearing will at some point end, and when it does, within an

14  hour or so after that, I would like you, Miss Shullman, to

15  submit to my e-mail inbox -- I'm not using the Word file on

16  CM/ECF.  I'm not saying that.  You are going to submit to my

17  e-file inbox which is Goodman@FLSD.UScourts -- plural --

18  UScourts.gov.  You will submit to me the latest version in Word

19  format of the proposed confidentiality agreement which we will

20  then transform into a protective order concerning

21  confidentiality.  But I need that document in Word format so we

22  don't have to like start of scratch and start pasting and doing

23  all sorts of things which are going to get into difficulty,

24  okay.  So within an hour after this hearing is over, you will

25  submit that latest version in Word format, all right?

Wednesday, March 27, 2019.

1          MS. SHULLMAN:  Your Honor, just for clarity -- this

2    is Miss Shullman -- do you want me to submit my client's latest

3    version or the version that includes Mr. Vogt's proposed

4    changes?

5          THE COURT:  Good point.  All right, so let me modify

6    that.  I believe -- all right.

7          So, Mr. Vogt, you are the one, because I think it's

8    your version that has the extra paragraph 11, is that correct?

9          MR. VOGT:  Yes, Your Honor.

10          THE COURT:  All right, and then you also -- all

11    right.  So anyways, within an hour after this hearing is done,

12    you will submit, not file, submit to my e-file inbox, your

13    latest version of the proposed confidentiality agreement.  I

14    think you sent that to me in an e-mail maybe yesterday, but I

15    just need it in Word format so we can make changes, understood?

16          MR. VOGT:  Yes, Your Honor.

17          And if you could -- I apologize, I didn't get the

18    phone book up a little bit on the address to send it to you.  I

19    have "Goodman@" and then I didn't get anything after that.

20          THE COURT:  "Goodman@FLSD"-- F for Florida, L as in

21    love, S as in southern, D as in district, "FLSD.UScourts"

22    plural with an S, "UScourts.gov."

23          Do you want to read that back to me, so we are all

24    clear what it is?

25          MR. VOGT:  Goodman@FLSD.UScourts.gov.

```
1              THE COURT:  Thank you.

2              So you will do that within an hour, just get to me

3  the latest version in Word so that we can make necessary

4  changes.

5              So on this particular issue which we are dealing

6  which we are dealing with on page 2, I'm going to be

7  eliminating the highlighted language for the definition of

8  "attorney's eyes only."  I'm going to be including only the

9  additional language about "which may result in competitive

10 harm."  So phrased differently, I'm ruling against you Mr. Vogt

11 on that issue, and I'm ruling in favor of the defendants on

12 that issue.

13             The next dispute that you folks have concerning this

14 document is on page 5 under paragraph 5, "access to

15 confidential materials and specifically, as I understand it,

16 there is a dispute as to subparagraph C as it currently reads,

17 "a testifying witness or deponent provided the disclosure is

18 relevant to testimony being elicited from the witness or

19 deponent and counsel for the parties confer about the

20 disclosure before it is made."  And as I understand it, all of

21 the language beginning with the word "provided" is something

22 that Mr. Miller wants but the defendants do not.  Do I have

23 that right?

24             MR. VOGT:  Correct.

25             MS. SHULLMAN:  Yes, Your Honor.
```

Wednesday, March 27, 2019.

```
 1              THE COURT:  All right.  So tell me, Miss Shullman,

 2   why that additional language is a problem.

 3              MS. SHULLMAN:  Your Honor, this is Miss Shullman,

 4   again.

 5              The additional language is a problem because in this

 6   particular case, we have some 25 depositions that need to be

 7   taken.  The agreement or what will be conformed to an order has

 8   a mechanism for designating portions of deposition testimony

 9   confidential.  With this additional language, the potential for

10   obstruction on either side is great.  If either party is

11   required to make a relevant showing each time it wants to show

12   a document marked "confidential" to a witness, when relevance

13   is not a proper deposition objection anyway, and the parties

14   that have to confer about the disclosure before it is made, the

15   defendant's position is that this unnecessarily bogs down the

16   deposition process in a case that is likely to have two dozen

17   depositions so -- and I think the problem is, you know, the

18   harm is to both sides here when we have to make extra showings

19   of relevance that are not appropriate for depositions because

20   it is not an appropriate objection at a deposition, before we

21   can show a document to a witness, and have to have a

22   meet-and-confer process, I foresee that almost at every

23   deposition we will be calling Your Honor to resolve these sort

24   of proffers when it is not necessary, because if you go a few

25   paragraphs up, we have provided in section 3B a mechanism in
```

1   which to designate deposition testimony confidential which

2   should be adequate to protect whatever interests it is that

3   Mr. Vogt can articulate for including this additional language.

4           THE COURT:  Mr. Vogt.

5           MR. VOGT:  Yes, Your Honor.

6           This specific provision provides for disclosing

7   information designated confidential to a testifying witness or

8   a deponent.  That testifying witness or deponent is not bound

9   by this confidentiality agreement or any confidentiality order

10  that the Court enters because they are not a party to the case.

11  Them being shown a confidential document at a deposition

12  results in no limitation on them from disclosing the

13  confidential information.

14          Several of the people that we are going to depose are

15  members of the media who can immediately go out and talk about

16  whatever confidential document they have been shown in a

17  deposition which essentially eviscerates the entire purpose of

18  this agreement.  So we want restrictions that obviously prevent

19  just unrelated showing a journalist confidential information

20  about Mr. Miller, financial, things of that nature, who then is

21  free to go out and talk about them, and we wanted the parties

22  to confer before those types of documents were shown to

23  witnesses so that we would have an opportunity, if necessary,

24  to say, we don't think that should be shown to that witness

25  because they are not bound by this agreement or by a court

```
 1   order and we want to seek protection from the court.
 2             MS. BOLGER:  Your Honor, this is Miss Bolger.
 3             I have never had a litigation where the opposing
 4   counsel could tell me what I could or couldn't show a witness
 5   at a deposition.  That's a really odd procedure to me.
 6             What I would recommend as a fix is we can just say
 7   that any witness who sees any information designated
 8   "confidential" at a deposition can simply sign the
 9   confidentiality agreement and then they are bound by the
10   confidentiality agreement.
11             If the concern is unfettered disclosure, then there
12   is a better way to fix that than Mr. Vogt or me telling each
13   other what is relevant to how we choose to prosecute or defend
14   this litigation.  It just seems to bog down the process and is
15   rife for trying to control testimony in a way that wouldn't be
16   proper.
17             MR. VOGT:  If I could respond with one thing, Your
18   Honor.  I have no way to force a witness to sign a document
19   whereby they are agreeing to be bound by a confidentiality
20   agreement or confidentiality order.
21             THE COURT:  So that's a very interesting point that
22   you raise, Mr. Vogt, because I have issued dozens and dozens
23   and dozens of stipulated protective orders concerning
24   confidentiality over the nine years that I'm doing this job,
25   and I would say that most of them include a provision which
```

1   says in words or substance, the deponent point agrees to sign

2   this acknowledgement that he or she will be bound by the

3   stipulated protective order, et cetera, et cetera.

4           And this -- and 99 percent of the time, it is a

5   stipulated protective order.  This is what the parties want and

6   so I issue it.  But I always ask myself:  Why the heck would

7   any witness every sign that?  I mean, most of the time, a

8   witness are not there voluntarily, they are there under

9   subpoena; they don't want to be there in the first place; you

10  start asking questions and then you say, oh, by the way,

11  Mr. Witness, before you answer this next we, you need to sign

12  this stipulated confidentiality agreement which basically says,

13  if you slip up or mess up whether intentionally or otherwise,

14  you can be in a lot of trouble.  I have always wondered why any

15  witness would ever sign that, especially if the witness shows

16  up represented by counsel.

17          If I were representing a fact witness at a deposition

18  and somebody said, you are going to need to -- you have to sign

19  this stipulation before you answer the question, I would say,

20  I'm not signing it, don't ask me the question; next question.

21          So I have to tell that I don't find that particular

22  suggestion helpful, even though it is done all of the time.  I

23  find it to be potentially unworkable and inherently illogical.

24  On the other hand, Mr. Vogt, your suggestion, quite frankly, is

25  sort of circular and doesn't give you much protection either

Wednesday, March 27, 2019.

1  because the way you have it, it can be disclosed to a

2  testifying witness or deponent if the disclosure is relevant to

3  the testimony being elicited from the deponent.

4          So let's imagine a situation where we are at a

5  deposition, opposing Counsel starts asking the witness

6  questions.  You deem the questions to be irrelevant to the

7  issues in the case, but the document being disclosed to the

8  witness is, in fact, relevant to the question being elicited --

9  the testimony being illicit and you just happen to find the

10 topic not relevant.  Under your version of this protective

11 order, the confidential information could still be provided to

12 the witness because, after all, it is relevant to the testimony

13 being elicited.  Do you follow what I'm saying?

14         MR. VOGT:  Yes, Your Honor; you are 100 percent

15 right.

16         THE COURT:  So I have never seen additional language

17 like this.  I have always seen simply a category for a

18 testifying witness or deponent, so I'm going to remove the

19 additional language starting with the worth "provided."

20         Let's go to the final of the three disputes which is

21 your paragraph 11:  Jane Doe."  So I assume that you want this,

22 but the defendants do not; is that correct?

23         MR. VOGT:  Correct, Your Honor.

24         THE COURT:  So, Miss Shullman, what is wrong with

25 paragraph 11?

1          MS. SHULLMAN:  Well, I think it is superfluous in one
2    sense in that if he produces documents related to Miss Doe and
3    marks them "confidential," he doesn't need this additional
4    protection.  But what I have explained to him, as I explained
5    earlier in this hearing, I have already -- if this is made an
6    order, I have already violated the order.  I have disclosed the
7    identity of Jane Doe and people on my team of defenders,
8    support staff, and otherwise have disclosed the identity of
9    Jane Doe, not in a court file but in the course of trying to
10   defend this lawsuit.
11          So as I deposited to Mr. Vogt when we were trying to
12   negotiate this as an agreement, I think and as Miss Bolger
13   explained, we don't have any intention of publishing her name,
14   but we do have every intention of disclosing her name in the
15   course and scope of discovery, and the "confidential"
16   designation definition is sufficiently broad to allow him to
17   designate all of the Jane Doe materials "confidential," and end
18   at the same place because, under the agreement generally, items
19   designated as "confidential," as he points out, are subject to
20   paragraph seven before they can be filed with the Court.  So I
21   don't think that this language is necessary, and I fear, as
22   particularly being put in as an order, that if I am making an
23   agreement to maintain the identity of Jane Doe a secret, I have
24   already disclosed it just not in a court file.  So I don't
25   think the language is necessary.

1          I think the designation of the material as

2   "confidential" in combination with paragraph 7 which describes

3   how parties must proceed in trying to file confidential

4   material sufficiently address any interests of again nonparty

5   Jane Doe that is sought to be protected by this superfluous

6   paragraph.

7          THE COURT:  Do you have any intent, you or your legal

8   team, to further disclose the identity of Jane Doe to others?

9          MS. SHULLMAN:  Yes.  In the course and scope of

10  discovery, Your Honor, we -- once we -- I have her name, but I

11  don't have the other information that's redacted from her

12  affidavit.  So once I have that information, I plan to subpoena

13  her, take her deposition; and I also plan, in all likelihood,

14  to talk to other people about her because I have two -- as the

15  defendant, I have two versions.  I have the version contained

16  in the supplement where Jane Doe describes -- the mother

17  describes purportedly what Jane Doe told her, and I have a

18  declaration of Jane Doe saying, "I have never even heard of the

19  plaintiff."  I am going to test the veracity of that, and I'm

20  not going to do it just through Jane Doe.  I'm going to do it

21  through other people in the course and scope of this litigation

22  who may be able to tell me more about Jane Doe, or perhaps the

23  name -- you know, again, hypothetically, Your Honor, perhaps

24  Jane Doe exists, but the affiant is not actually Jane Doe,

25  maybe there is another person out there that is Jane Doe.  So

1  in defending this lawsuit, yes, I need to be able to freely

2  describe the facts and circumstances attributed to Jane Doe in

3  the supplement.

4         THE COURT:  And so, for example, as part of your

5  preparations of the defense in the case, would you perhaps want

6  to do a background check on Jane Doe and find out her criminal

7  record, whether or not she has a prior litigation history,

8  whether she has been terminated from employment, whether she

9  has submitted fraudulent claims, that sort of thing?

10         MS. SHULLMAN:  Yes.

11         THE COURT:  Right.  So if you are not able to

12  mention, for example, to your private investigator or to

13  interview neighbors, you know, what can you tell me about --

14  whatever Jane Doe's real name is, you would basically be

15  handcuffed in your ability to probe the background of Jane Doe.

16         MS. SHULLMAN:  Yes, Your Honor.  We need to be able

17  to do that, again, in the context of this litigation.  That's

18  you know, all we plan to do.

19         THE COURT:  So what about those practical points,

20  Mr. Vogt?

21         MR. VOGT:  I certainly understand those points.  I

22  mean, my intention with this paragraph was primarily to keep

23  this woman's name as much as possible, obviously realizing that

24  we are involved in litigation, out of the court file.  She is a

25  nonparty, she submitted a declaration to us saying that none of

1  this stuff actually happened, it is extremely embarrassing.

2  Her occupation as an adult dancer is unknown to her parents, so

3  we were trying to do everything we could -- I mean, more so as

4  a decent human being than in the capacity as a lawyer to try

5  and protect this woman as much as possible and keep her name

6  out of the court file.

7            THE COURT:  Bear with me just a minute, please.

8            So I understand the legitimate concerns of both

9  sides.  What about something like this.  Paragraph 11:  "Other

10  than" -- by the way, I'm speaking slowly so my law clerk can

11  type this down:  "Other than for legitimate use prosecuting or

12  defending this lawsuit," comma, and then the rest of the

13  sentence remains, "the parties agree to maintain the identity,"

14  blah, blah, blah, blah, blah.

15            And then the next sentence which starts with "any

16  pleadings or other papers," I'll add the word "publicly."  So

17  "any pleadings or other papers publicly filed shall not use

18  Jane Doe's name."

19            And then after that sentence, I will add, "if any

20  party needs to disclose her name in a court filing, then it

21  shall be submitted under seal," period; and then the rest of

22  the paragraph remains as it is mentioning paragraph 7, et

23  cetera, et cetera.

24            So how does that work for you, Mr. Vogt?

25            MR. VOGT:  I agree with that, Your Honor.

```
 1          THE COURT:  Miss Shullman, does that work for you?
 2          MS. SHULLMAN:  Your Honor, I missed a word in your --
 3  you were going to add a qualifier to the first sentence, and I
 4  missed a word.  You said "other than for" and then I missed --
 5          THE COURT:  "Other than for legitimate use
 6  prosecuting or defending this lawsuit, the parties agree to,"
 7  et cetera.
 8          MS. BOLGER:  Your Honor, this is Kate Bolger.
 9          Do we need "legitimate" only because it seems like a
10  word that is question begging.  Obviously, we are going to
11  litigate this case, there is not a market in human decency only
12  on the plaintiff's side of the V.  Obviously, we want to
13  prosecute this case consistent with our ethical and legal
14  obligations.  "Legitimate" just seems to me to be a word that
15  is question begging and so that's -- my only commentary is it
16  seems to me that that begs an issue.  No one is intending to be
17  illegitimate, they are just intending to, consistent with their
18  ethical and legal obligations, defend this litigation.
19          MS. SHULLMAN:  This is Miss Shullman, Your Honor.
20          It goes back to the point about what the plaintiff
21  thinks is relevant may not be what we think is relevant, and so
22  the same goes for the use of the word "legitimate."  What we
23  believe is a legitimate you use of her name in defending the
24  action may not be what Mr. Miller thinks is a legitimate use.
25          THE COURT:  So I understand your point, folks; but
```

Wednesday, March 27, 2019.

1    there are many similar phrases and terms and concepts in the

2    law, including in the rules of civil procedure, including in

3    the local rules, places like good faith, bad faith,

4    meritorious, et cetera.  Yes, those are adjectives; yes, people

5    can going to argue whether something is legitimate or

6    illegitimate; whether it is bad faith, or good faith.  Yes, any

7    time there is a modifier or an adjective, lawyers can quibble

8    over it.  That doesn't mean that the word shouldn't be there in

9    the first place.

10            So if we follow your theory, Miss Bolger, we would

11    eliminate all of those words from statutes, from rules, from

12    local rules, and then people could then assume that those

13    consents were inherent in the statute or the rule or the local

14    rule, and then they would litigate them anyway.  So I

15    appreciate your perspective, but I'm going to keep the word in.

16    Thank you very much, though.

17            Anything else Mr. Vogt?  Can you live with this the

18    way I have modified it?

19            MR. VOGT:  Yes, Your Honor.

20            THE COURT:  Okay.  Defense, any heart attacks over

21    the suggested modification?

22            MS. SHULLMAN:  No, Your Honor -- Miss Shullman.

23            MR. MISHKIN:  Your Honor, this is Mr. Mishkin on

24    behalf of the defendant Menaker, just chiming in here.

25            The latest version of this, what was an agreement

1  then is now proposed to be styled as an order purported to be

2  entered on behalf of Mr. Menaker as well as the other parties,

3  and we raised [unintelligible] counsel, because Mr. Menaker has

4  not been involved in discovery to this point and was not

5  involved in the negotiation of this agreement, if you are going

6  to be getting a Word copy of this agreement, we would ask that

7  you remove Mr. Menaker from it, at this time; and, you know,

8  subject to what might happen down the road, it may become

9  appropriate for Mr. Menaker to enter into his own protective

10 order.  But since he was not involved up until now, and I can't

11 speak as to what his views might be on any of the issues we

12 have discussed today, we think would be appropriate for this

13 order to be limited only for the plaintiff and the Gizmodo

14 defendants, i.e., Gizmodo and Miss Krueger.

15         THE COURT:  Thank you for that suggestion, but I'm

16 not going to do that.  This is not going to be an agreement.

17 It is not even going to mention the names of Mr. Miller or

18 Gizmodo or Miss Krueger, or your client.  It is simply going to

19 say "this order shall govern these proceedings;" for example,

20 that's the introductory paragraph.  And then the next paragraph

21 under "scope," it is not going to say "this agreement," it will

22 be "this order."  So your client is not agreeing to anything.

23 He is going to be subject to the order whether he likes it or

24 not, just like the defendant and -- the defendants and the

25 plaintiff are going to be subject to this order whether they

1  like it or not.  Make sense?

2       MR. MISHKIN:  I would -- Your Honor, I would just ask

3  you to pause on that for a second because the discussions we

4  have had today, my client has had no input on.  I can't speak

5  to whether he would have -- whether arguments he might have

6  made may have swayed Your Honor to make different decisions.

7  The fact of the matter is, you know, I'm here only to protect

8  my client's interest to the extent he has not weighed in.

9       THE COURT:  So what you are suggesting is I enter two

10  protective orders, one now for the parties who are in the case,

11  and then one statement later, perhaps, if your client loses on

12  his jurisdictional motion to dismiss, you want me to have a

13  customized protective order just for Mr. Menaker?  Is that what

14  you are saying?

15       MR. MISHKIN:  That is what I'm saying, but if Your

16  Honor feels differently, than we will respect your order, of

17  course.

18       THE COURT:  I'm happy to listen to your input and

19  your comments and suggestions, so why don't we do this.  I will

20  simply allow you now to provide any and all input that you want

21  about any topics that we have discussed concerning this

22  protective order, and I'll specifically put on the record that

23  by making these comments and arguments, you are not waiving in

24  any way directly, expressly, implicitly or otherwise your

25  jurisdictional arguments.  You are simply responding to a

1  question from Magistrate Judge.

2              So are there any substantive comments or wordsmithing

3  comments that you have concerning what was a proposed

4  confidentiality agreement but which will soon be a protective

5  order concerning confidentiality?

6              MR. MISHKIN:  No, Your Honor.

7              THE COURT:  All righty, very well.  Anything else

8  from either side this afternoon?  First plaintiff, Mr. Vogt?

9              MR. VOGT:  Your Honor, would you like me to go ahead,

10  before I submit the Word version, and cut out the paragraphs

11  that you have ordered that are not going to be included?

12              THE COURT:  Sure, if you would like to do that, you

13  can.  There may be some additional massaging or tweaking that

14  I'm going to do; but, to the extent that I have already made

15  those rulings and omitted the language, sure, you can feel free

16  to do that.

17              MR. VOGT:  Okay, thank you, Your Honor.

18              THE COURT:  Miss Shullman, anything further, Defense?

19              MS. SHULLMAN:  No, thank you, Your Honor.

20              THE COURT:  Miss Bolger?

21              Any.

22              MS. BOLGER:  No, thank you, Your Honor.

23              THE COURT:  All right.  So you will hopefully get

24  that to me, Mr. Vogt, in the next hour or so to the e-file

25  inbox.

Wednesday, March 27, 2019.

1          MR. VOGT:  Yes, Your Honor.

2          THE COURT:  Thank you for phoning in; take care.  We.

3          Will be in recess.

4          MS. SHULLMAN:  Thank you, Your Honor.

5    (PROCEEDINGS ADJOURNED)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Wednesday, March 27, 2019.

<div style="border:1px solid black; padding:20px;">

## C-E-R-T-I-F-I-C-A-T-E

     I hereby certify that the foregoing is

an accurate transcription and proceedings in the

above-entitled matter.

*4/5/2019*
DATE

    */s/DIANE MILLER*
DIANE MILLER, RMR, CRR, CRC
Official Court Reporter
United States District Court
701 Clematis Street, Room 259
West Palm Beach, FL  33401
561-514-3728

</div>

Wednesday, March 27, 2019.

MR. BOWMAN: [4] 4/17 4/21 4/24
5/5
MR. MISHKIN: [7] 3/10 3/14 3/17
55/22 57/1 57/14 58/5
MR. VOGT: [58] 3/8 5/17 5/20 6/25
7/7 7/12 7/21 9/3 9/7 10/4 10/8 10/23
12/24 13/2 13/5 13/7 13/17 13/22
13/24 14/12 16/9 16/23 17/5 18/9
22/22 23/2 23/16 23/21 23/23 24/21
25/21 25/25 26/3 27/2 27/17 27/19
27/23 29/9 30/23 31/9 31/12 38/2
39/18 39/25 43/8 43/15 43/24 44/23
46/4 47/16 49/13 49/22 52/20 53/24
55/18 58/8 58/16 58/25
MS. BOLGER: [9] 15/16 17/6 18/14
19/23 20/18 26/5 47/1 54/7 58/21
MS. SHULLMAN: [41] 3/9 4/2 8/2
8/13 8/17 9/10 9/23 10/25 11/7 11/12
12/1 12/3 14/1 14/8 21/14 21/23 25/3
27/13 29/12 29/25 30/8 31/8 31/16
34/4 35/7 36/24 40/7 40/13 41/14
42/25 44/24 45/2 49/25 51/8 52/9
52/15 54/1 54/18 55/21 58/18 59/3
THE COURT: [105]
THE COURTROOM DEPUTY: [1] 3/1
UNIDENTIFIED SPEAKER: [2] 4/14
42/9

## $

$100 [2] 19/20 20/25

## '

'attorney's [1] 36/21

## /

/s/DIANE [1] 60/5

## 1

100 [3] 1/22 32/15 49/14
10020 [1] 2/8
11 [5] 38/22 43/8 49/21 49/25 53/9
12 [1] 2/11
1251 [1] 2/7
1327 [1] 13/4
14-24009-CIV-JLK [1] 1/2
15 [1] 12/5
15-page [2] 12/7 24/20
16 [1] 7/15
1900 [1] 1/22
1909 [1] 2/11

## 2

20 [4] 11/2 11/4 11/14 11/17
20-page [1] 11/22
20-pager [1] 11/6
20006 [1] 2/12
2005 [1] 13/9
2019 [2] 1/5 60/5
2101 [1] 2/4
21st [2] 2/7 25/22
22nd [1] 32/22
25 [2] 3/24 45/6
259 [1] 60/7
27 [1] 1/5

## 3

33104 [1] 2/24
33401 [1] 60/8
33602 [1] 1/23
3728 [2] 2/24 60/8
3B [1] 45/25
3rd [2] 25/1 25/2

## 4

4/5/2019 [1] 60/5
4006 [1] 2/4
416 [1] 13/4
4:32 [1] 24/21

## 5

514-3728 [1] 2/24
561 [1] 2/24
561-514-3728 [1] 60/8
5th [2] 27/14 27/15

## 6

63-year-old [1] 10/15
6th [1] 27/24

## 7

701 [2] 2/23 60/7
71 [1] 1/7
79-h [1] 8/22
7th [1] 27/17

## 8

8th [7] 24/23 25/1 25/1 27/18 27/19
27/25 28/3

## 9

99 [1] 48/4

## A

A.J [1] 25/24
ability [3] 5/12 39/24 52/15
able [15] 24/19 25/14 33/13 34/2
35/13 36/9 36/12 39/16 40/4 41/2
41/4 51/22 52/1 52/11 52/16
abortion [1] 32/9
above [1] 60/4
above-entitled [1] 60/4
absolute [4] 8/22 18/17 20/1 21/11
absolutely [2] 8/3 26/8
access [2] 19/20 44/14
accordance [1] 30/17
accurate [1] 60/3
acknowledgement [1] 48/2
acrimonious [1] 32/2
across [1] 11/14
acted [1] 21/1
action [6] 19/1 32/4 32/10 33/16 41/20
54/24
actual [3] 16/12 28/12 28/25
actually [17] 3/22 6/11 7/23 8/24
15/19 16/5 16/10 20/9 21/25 25/6
29/7 38/14 38/20 39/13 40/20 51/24
53/1
add [3] 38/7 53/16 53/19 54/3
addition [2] 8/9 12/19
additional [14] 6/14 6/18 37/9 37/25
38/1 44/9 45/2 45/5 45/9 46/3 49/16

49/19 50/3 58/13
address [4] 34/15 38/23 43/18 51/4
addressed [2] 6/3 38/20
addressing [2] 23/5 23/10
adds [1] 36/15
adequate [1] 46/2
adequately [2] 35/11 41/4
adjective [1] 55/7
adjectives [1] 55/4
ADJOURNED [1] 59/5
administrative [3] 12/11 15/1 28/6
administratively [1] 15/4
adopted [1] 34/9
adult [1] 53/2
advertising [1] 40/6
advise [2] 41/4 41/20
AEO [3] 34/22 37/24 40/22
affair [2] 32/1 32/6
affect [1] 15/9
affiant [1] 51/24
affidavit [2] 32/23 51/12
after [11] 6/12 25/7 25/13 25/14 29/2
42/14 42/24 43/11 43/19 49/12 53/19
afternoon [3] 3/5 19/15 58/8
again [15] 9/12 9/18 18/15 19/24
20/20 21/16 21/24 24/24 26/6 36/25
40/15 45/4 51/4 51/23 52/17
against [2] 35/11 44/10
agency [1] 18/14
agenda [1] 19/15
agree [20] 12/6 14/1 15/19 16/5 22/20
23/22 24/3 29/17 29/17 29/18 29/20
29/21 29/24 30/5 30/7 31/4 39/11
53/13 53/25 54/6
agreed [3] 14/3 30/19 36/16
agreeing [3] 29/24 47/19 56/22
agreement [44] 4/11 17/14 28/11
28/21 28/25 29/1 29/6 29/11 29/16
29/19 29/23 30/4 30/10 30/12 30/20
30/23 33/9 34/6 34/10 35/9 37/7
37/23 39/9 39/10 42/7 42/19 43/13
45/7 46/9 46/18 46/25 47/9 47/10
47/20 48/12 50/12 50/18 50/23 55/25
56/5 56/6 56/16 56/21 58/4
agrees [2] 38/22 48/1
ahead [2] 12/3 26/3 58/9
al [1] 1/6
allow [4] 5/11 35/17 50/16 57/20
allowed [3] 35/15 41/21 41/21
almost [2] 29/1 45/22
along [2] 24/13 24/15
already [8] 5/4 32/20 34/11 36/16 50/5
50/6 50/24 58/14
also [7] 12/20 13/19 13/20 15/18
36/11 43/10 51/13
although [3] 6/15 10/13 12/13
Altonaga [3] 23/15 24/5 24/10
always [4] 29/1 48/6 48/14 49/17
am [8] 4/22 4/25 23/21 29/15 29/18
36/24 50/22 51/19
amenable [1] 25/8
Amendment [1] 7/23
Americas [1] 2/7
analogy [1] 19/9
analysis [7] 16/6 16/23 18/1 20/15
22/24 23/12 26/21

**A**

and more [1] 40/12
another [2] 32/7 51/25
answer [2] 48/11 48/19
answered [1] 9/17
answers [1] 9/23
anybody [3] 8/11 14/23 41/22
anything [8] 37/21 38/5 40/1 43/19
 55/17 56/22 58/7 58/18
anyway [2] 45/13 55/14
anyways [1] 43/11
apologies [1] 5/6
apologize [2] 8/18 43/17
APPEARANCES [2] 1/20 2/1
apples [3] 17/10 17/14 19/11
applies [6] 6/4 12/19 18/18 18/20
 19/23 23/4
apply [6] 12/21 15/9 19/25 20/2 23/7
 23/8
appreciate [5] 4/3 17/2 25/15 25/17
 55/15
appreciating [1] 30/9
appropriate [5] 10/13 45/19 45/20
 56/9 56/12
approximately [1] 7/15
April [12] 24/23 24/25 25/1 25/1 25/2
 27/14 27/15 27/17 27/18 27/19 27/25
 28/3
argue [4] 21/1 25/12 27/9 55/5
argued [1] 17/11
arguing [1] 15/22
argument [7] 9/19 15/8 17/13 26/13
 26/16 26/20 27/7
arguments [5] 10/7 38/12 57/5 57/23
 57/25
arises [1] 28/19
articulate [1] 46/3
articulated [1] 27/8
asked [1] 40/2
asking [6] 9/16 11/8 11/25 16/19
 48/10 49/5
asserted [2] 6/6 7/17
asserting [3] 10/6 26/10 26/11
assertion [1] 6/4
assignment [1] 24/7
assume [5] 14/21 15/2 33/25 49/21
 55/12
assumption [3] 5/14 11/11 11/13
attach [1] 32/16
attached [2] 35/2 38/14
attachments [1] 27/4
attacks [1] 55/20
attempting [2] 32/19 41/11
attorney's [27] 28/17 31/20 32/24
 32/25 33/4 33/14 34/1 34/4 34/15
 37/6 37/16 37/20 38/6 38/7 38/19
 39/3 39/7 39/13 39/17 39/22 40/3
 40/6 40/20 40/25 41/19 42/3 44/8
attorneys [4] 35/7 37/2 38/11 41/11
attributed [1] 52/2
atypical [1] 17/23
available [1] 18/23
Avenue [1] 2/7
avoid [1] 13/17
aware [2] 14/17 25/9

**B**

background [2] 52/6 52/15
bad [3] 9/16 55/3 55/6
badly [1] 41/13
Bajo [1] 1/21
Ballard [1] 2/10
bar [1] 35/25
Bartnicki [1] 19/5
based [4] 5/22 21/14 32/4 40/16
basically [4] 12/7 35/20 48/12 52/14
basis [3] 7/19 21/19 41/25
Beach [3] 2/5 2/24 60/8
Bear [1] 53/7
become [1] 56/8
before [20] 1/12 3/21 8/7 20/10 21/18
 23/23 24/4 24/6 28/12 28/14 42/11
 42/12 44/20 45/14 45/20 46/22 48/11
 48/19 50/20 58/10
begging [2] 54/10 54/15
beginning [1] 44/21
begs [1] 54/16
behalf [8] 3/12 4/18 5/19 7/10 8/15
 9/12 55/24 56/2
believe [10] 8/1 9/6 9/22 15/25 16/25
 18/11 26/8 42/12 43/6 54/23
benefit [1] 17/25
best [1] 28/2
better [4] 3/24 22/22 25/11 47/12
between [4] 28/25 29/5 31/23 35/6
beyond [1] 13/16
bit [2] 24/7 43/18
blah [5] 53/14 53/14 53/14 53/14
 53/14
blowing [1] 21/2
blurted [1] 8/13
board [1] 36/4
bog [1] 47/14
bogs [1] 45/15
Bolger [22] 3/8 15/18 16/25 18/15
 19/24 20/20 22/20 23/14 24/2 25/11
 26/6 31/15 33/5 34/7 35/21 35/21
 41/1 47/2 50/12 54/8 55/10 58/20
Bolger's [1] 34/21
BOLGER,ESQ [1] 2/6
bona [1] 26/16
book [1] 43/18
both [8] 7/10 10/21 28/13 30/12 41/1
 41/18 45/18 53/8
bound [6] 36/1 46/8 46/25 47/9 47/19
 48/2
BOWMAN [2] 2/10 4/18
BRADY [1] 1/21
breaking [1] 41/13
bribing [1] 20/17
brief [9] 10/20 13/9 22/14 24/8 25/7
 25/17 26/20 27/7 28/7
briefed [2] 22/20 24/4
briefing [10] 6/1 6/14 6/18 9/7 9/10
 9/22 10/11 11/18 17/23 26/21
bring [1] 30/15
broad [1] 50/16
broader [1] 35/14
brought [1] 30/11
bunch [2] 34/17 34/19
BuzzFeed [1] 6/10

**C**

C-E-R-T-I-F-I-C-A-T-E [1] 60/1
call [2] 4/17 25/6
called [8] 3/22 4/15 10/4 12/20 12/20
 13/2 19/5 21/23
calling [2] 5/1 45/23
came [4] 6/21 16/16 18/4 18/13
can't [14] 17/14 19/8 26/14 30/7 30/10
 30/12 31/4 36/6 37/21 40/1 41/7
 41/12 56/10 57/4
candidly [1] 37/3
cannot [5] 18/18 21/5 33/3 33/19
 41/25
capable [1] 9/17
capacity [1] 53/4
care [2] 21/3 59/2
carve [1] 18/7
carve-out [1] 18/7
case [43] 1/2 5/24 6/10 6/11 6/14 7/22
 9/2 12/9 12/22 12/23 13/2 13/5 13/21
 14/19 14/20 15/20 18/5 18/17 19/9
 22/12 22/16 24/13 26/15 28/1 29/15
 31/21 31/23 32/1 32/14 33/3 33/17
 33/21 35/3 37/22 39/25 45/6 45/16
 46/10 49/7 52/5 54/11 54/13 57/10
cases [1] 14/20
catching [1] 41/14
categories [2] 34/3 38/6
category [2] 33/6 49/17
cause [1] 31/6
causing [1] 32/9
certain [4] 10/22 25/18 33/8 38/18
certainly [6] 4/4 8/8 17/2 19/17 33/13
 52/21
certify [1] 60/2
cetera [6] 48/3 48/3 53/23 53/23 54/7
 55/4
CHAD [2] 2/10 4/18
challenge [1] 39/8
changes [3] 43/4 43/15 44/4
chase [1] 16/20
check [1] 52/6
child [2] 32/1 32/11
chiming [1] 55/24
choice [5] 6/2 9/25 12/7 21/5 25/10
choose [1] 47/13
Circuit [9] 7/22 9/2 10/3 12/19 12/23
 13/5 18/21 18/22 22/15
circular [1] 48/25
circumstance [1] 20/21
circumstances [1] 52/2
cite [2] 13/3 13/4
citing [1] 7/18
CIV [1] 1/2
civil [2] 8/21 55/2
claim [5] 20/6 32/14 33/18 35/3 35/19
claims [2] 32/6 33/12 41/8 41/25 52/9
clarity [1] 43/1
classification [2] 36/21 36/22
classifications [1] 36/23
clear [1] 43/24
Clematis [2] 2/23 60/7
clerk [10] 16/16 18/13 20/11 20/17
 20/22 20/24 20/24 20/24 23/7 53/10
clerk's [2] 19/21 20/8
client [11] 34/21 34/21 38/25 39/6

**C**

client... [7]  39/16 39/20 40/4 56/18
  56/22 57/4 57/11
client's [1]  11/9 43/2 57/8
clients [4]  33/6 40/15 41/4 41/20
CM [1]  42/16
CM/ECF [1]  42/16
Cohel [1]  1/21
Coke [1]  37/16
combination [1]  51/2
come [2]  28/14 30/4
comes [1]  39/1
comfortable [1]  12/10
comma [1]  53/12
comment [3]  8/13 8/25 8/25
commentary [1]  54/15
comments [4]  57/19 57/23 58/2 58/3
commercial [1]  39/4
commercially [5]  37/7 37/10 37/11
  37/12 38/8
common [4]  9/1 10/3 13/12 31/7
company [1]  9/14
compel [2]  20/1 21/4
compelled [1]  18/18
competitive [2]  37/10 37/13 37/19
  38/1 38/9 44/9
complaint [5]  32/7 32/10 32/16 35/2
  38/15
completed [1]  37/3
complex [2]  5/8 5/12
complicated [1]  11/16
complied [2]  24/11 24/12
concept [1]  29/23
concepts [1]  55/1
concern [4]  23/20 38/16 39/1 47/11
concerning [18]  5/8 12/23 13/1 21/13
  24/8 29/8 30/22 31/1 33/19 34/1
  40/25 41/18 42/20 44/13 47/23 57/21
  58/3 58/5
concerns [1]  53/8
condition [2]  28/2 41/3
confer [5]  39/11 44/19 45/14 45/22
  46/22
confidential [35]  14/24 20/14 28/16
  28/17 31/4 35/6 35/7 35/11 36/16
  36/20 36/21 37/5 37/8 38/20 38/24
  40/5 40/19 42/4 44/15 45/9 45/12
  46/1 46/7 46/11 46/13 46/16 46/19
  47/8 49/11 50/3 50/15 50/17 50/19
  51/2 51/3
confidentiality [28]  4/10 28/11 28/20
  28/23 28/24 29/6 29/8 30/6 30/22
  30/23 31/2 35/24 36/1 36/5 42/7
  42/19 42/21 43/13 46/9 46/9 47/9
  47/10 47/19 47/20 47/24 48/12 58/4
  58/5
Confidentially [1]  35/13
conformed [1]  45/7
confusion [1]  29/25
connected [1]  27/4
consents [1]  55/13
consequences [2]  15/7 15/15
consistent [2]  54/13 54/17
consistently [1]  35/22
constitution [1]  7/24
constitutional [5]  7/18 7/20 9/1 10/4

13/1
consultants [1]  35/16
cont'd [1]  2/1
contained [2]  22/11 51/15
contents [1]  32/13
context [2]  33/12 52/17
continue [1]  15/2
contrast [1]  40/23
control [1]  47/15
controversy [1]  22/5
convinced [2]  24/2 24/3
copy [7]  19/21 20/18 25/24 25/25
  26/17 32/23 56/6
could [23]  16/11 16/17 16/23 17/8
  20/14 20/22 20/23 20/23 20/24 21/1
  22/21 31/6 31/19 35/19 36/13 39/23
  43/17 47/4 47/4 47/17 49/11 53/3
  55/12
couldn't [4]  20/7 21/3 33/5 47/4
counsel [9]  9/15 9/15 33/7 34/6 44/19
  47/4 48/16 49/5 56/3
couple [1]  5/4
course [10]  11/19 26/7 26/9 36/8
  36/11 50/9 50/15 51/9 51/21 57/17
courts [1]  19/11
cover [1]  22/7
covering [1]  12/8
CRC [1]  60/6
create [1]  37/18
creativity [1]  25/15
criminal [2]  22/12 52/6
critical [3]  18/23 19/3 20/4
critically [1]  33/13
CRR [2]  2/22 60/6
crucial [1]  21/6
crux [1]  33/17
Cuiva [1]  1/21
currently [2]  23/14 44/16
customized [1]  57/13
cut [2]  16/20 58/10
cutoff [1]  27/23

**D**

damages [2]  41/8 42/1
dancer [1]  53/2
date [7]  10/22 24/25 25/2 27/13 27/25
  40/7 60/6
Davis [1]  2/6
day [5]  19/16 24/16 27/21 27/22 42/12
days [1]  25/13
DC [1]  2/12
deadline [3]  25/3 28/4 28/7
deadlines [1]  24/12
dealing [5]  18/2 22/13 28/14 44/5 44/6
DEANNA [4]  2/3 8/14 9/11 21/15
decency [1]  54/11
decent [1]  53/4
decide [1]  17/19
decision [3]  16/11 19/5 39/12
decisions [2]  36/13 57/6
declaration [6]  32/17 35/2 35/20 38/14
  51/18 52/25
deem [1]  49/6
defamation [2]  31/21 32/4
DEFEDANTS [1]  2/2
defend [7]  33/3 35/19 36/10 41/20

47/13 50/10 54/18
defendant [8]  2/9 3/12 7/11 33/15
  39/21 51/15 55/24 56/24
defendant's [3]  36/19 39/17 45/15
defendants [26]  1/7 13/11 15/19 16/16
  18/12 18/18 21/1 21/16 26/10 32/12
  33/19 34/10 35/13 35/23 36/1 36/6
  36/12 36/15 37/3 39/19 40/9 44/11
  44/22 49/22 56/14 56/24
defenders [1]  50/7
defending [5]  33/16 52/1 53/12 54/6
  54/23
defense [4]  36/14 52/5 55/20 58/18
defined [1]  21/11
definition [7]  29/24 31/18 32/25 36/22
  39/17 44/7 50/16
definitively [1]  17/19
degree [1]  25/18
Delgado [9]  25/24 25/25 26/9 26/12
  26/18 26/19 26/24 27/1 31/24
demonstrate [1]  41/9
denial [1]  13/8
deponent [8]  44/17 44/19 46/8 46/8
  48/1 49/2 49/3 49/18
depose [2]  46/14
deposited [1]  50/11
deposition [13]  45/8 45/13 45/16
  45/20 45/23 46/1 46/11 46/17 47/5
  47/8 48/17 49/5 51/13
depositions [3]  45/6 45/17 45/19
describe [1]  52/2
describes [3]  51/2 51/16 51/17
designate [7]  39/6 39/20 39/20 40/24
  41/17 46/1 50/17
designated [11]  33/4 35/13 37/11
  38/10 38/19 39/13 40/2 40/3 46/7
  47/7 50/19
designates [2]  33/25 39/21
designating [4]  33/14 37/14 40/5 45/8
designation [18]  32/24 34/4 34/16
  34/22 35/10 37/2 37/5 37/6 37/22
  39/3 39/8 39/18 40/22 41/11 42/3
  42/4 50/16 51/1
designations [1]  28/15
desire [1]  17/3
desks [1]  5/2
determination [1]  40/19
determining [1]  30/20
detrimental [1]  40/3
diane [4]  2/22 2/25 60/5 60/6
difference [1]  35/6
differences [1]  29/4
different [8]  6/16 11/12 11/12 14/4
  21/3 21/25 22/3 57/6
differently [2]  44/10 57/16
difficult [2]  17/8 41/19
difficulty [1]  42/23
dilemma [1]  25/18
directly [1]  57/24
disagree [1]  14/2
disagreement [1]  28/12
disclose [5]  33/5 34/2 38/24 51/8
  53/20
disclosed [7]  26/14 26/19 49/1 49/7
  50/6 50/8 50/24
disclosing [4]  26/4 46/6 46/12 50/14

**D**

disclosure [9]  6/5 25/20 33/6 37/13 44/17 44/20 45/14 47/11 49/2
discovery [23]  1/11 4/7 5/10 6/8 6/22 7/1 7/5 10/2 10/8 17/20 21/12 22/11 24/12 24/15 27/23 32/21 36/6 36/14 40/17 41/24 50/15 51/10 56/4
discuss [4]  15/11 39/15 41/2 41/7
discussed [3]  34/13 56/12 57/21
discussion [4]  14/21 15/11 19/18 33/24
discussions [1]  57/3
dismiss [5]  21/19 23/15 23/21 24/6 57/12
dispositive [1]  21/17
dispute [16]  4/12 5/8 5/16 13/22 13/24 21/12 24/15 28/10 29/22 30/11 30/15 30/20 31/2 32/2 44/13 44/16
disputes [2]  30/16 49/20
district [7]  1/1 1/1 3/2 3/3 6/11 43/21 60/7
DIVISION [1]  1/2
doctrine [1]  9/2
document [12]  22/25 23/5 29/3 34/3 42/21 44/14 45/12 45/21 46/11 46/16 47/18 49/7
documents [9]  28/13 28/16 30/13 37/4 38/8 40/18 41/8 46/22 50/2
Doe [40]  32/8 32/9 32/15 32/17 32/23 33/4 33/14 33/17 33/19 34/1 34/13 34/18 34/20 34/22 35/18 38/12 38/14 38/18 38/23 40/25 41/18 49/21 50/2 50/7 50/9 50/17 50/23 51/5 51/8 51/16 51/17 51/18 51/20 51/22 51/24 51/24 51/25 52/2 52/6 52/15
Doe's [3]  34/11 52/14 53/18
doesn't [11]  11/3 15/9 16/5 17/7 21/10 32/17 33/12 35/23 48/25 50/3 55/8
doing [4]  34/18 35/25 42/22 47/24
done [4]  11/25 12/4 43/11 48/22
double [3]  10/17 10/18 12/7
double-spaced [1]  12/7
down [6]  3/13 4/23 45/15 47/14 53/11 56/8
dozen [2]  40/18 45/16
dozens [3]  47/22 47/22 47/23
drafting [1]  29/4
dramatic [1]  41/5

**E**

e-file [3]  42/17 43/12 58/24
e-mail [4]  27/4 42/8 42/15 43/14
each [8]  5/1 7/13 7/14 11/24 12/4 37/18 45/11 47/12
earlier [2]  12/23 50/5
ECF [1]  42/16
effectively [1]  41/4
efficient [2]  24/10 30/14
effort [2]  18/24 34/14
either [10]  10/2 17/19 18/3 26/13 30/10 31/14 45/10 45/10 48/25 58/8
Eleventh [8]  7/22 9/2 10/3 12/19 12/23 13/5 18/21 22/15
elicited [4]  44/18 49/3 49/8 49/13
eliminate [1]  55/11
eliminating [1]  44/7

else [3]  19/7 55/17 58/7
embarrassing [1]  53/1
employee [1]  19/20
employees [2]  35/16 37/18
employers [1]  34/25
employment [1]  7/25
enactments [1]  7/25
end [4]  20/15 42/12 42/13 50/7
ending [1]  31/6
enough [3]  5/12 8/17 17/18
enter [5]  30/6 30/10 30/16 56/9 57/9
entered [2]  29/7 56/2
enters [2]  39/10 46/10
entertain [1]  11/5
entire [3]  32/14 35/3 46/17
entirely [2]  21/20 34/22
entitled [2]  31/3 60/4
especially [2]  4/1 48/15
ESQ [4]  1/21 2/3 2/9 2/10
essentially [2]  19/6 46/17
establish [3]  6/7 13/14 13/16
et [7]  1/6 48/3 48/3 53/22 53/23 54/7 55/4
ethical [2]  54/13 54/18
even [23]  7/11 7/16 12/14 17/8 17/21 20/13 20/16 20/19 20/19 20/20 24/2 32/15 32/17 33/10 33/12 34/4 37/5 37/24 39/4 40/5 48/22 51/18 56/17
event [4]  4/7 5/7 9/6 27/6
ever [4]  8/9 14/8 48/15
every [4]  39/10 45/22 48/7 50/14
everybody [1]  14/3
everybody's [1]  17/16
everything [3]  31/7 41/14 53/3
evidence [8]  25/9 26/7 26/12 26/18 26/18 26/23 27/1 27/8
eviscerates [1]  46/17
exact [1]  19/9
exactly [2]  25/19 35/8
example [12]  11/4 16/17 20/8 20/16 23/7 39/14 39/23 41/3 41/22 52/4 52/12 56/19
except [1]  36/22
exception [5]  18/8 18/10 18/16 19/4 19/10
exceptional [1]  17/22
Exhibit [2]  35/2 38/15
exists [1]  51/24
expand [3]  31/18 32/25 33/13
expect [1]  35/14
expects [2]  24/12 24/13
experts [3]  33/9 34/9 35/16
explain [2]  22/18 39/24
explained [3]  50/4 50/4 50/13
explore [1]  19/17
expressed [1]  38/16
expressly [1]  57/24
extending [1]  38/5
extensive [1]  6/14
extent [4]  23/18 24/15 57/8 58/14
extra [2]  43/8 45/18
extremely [1]  53/1
eye [1]  32/24
eye' [1]  37/2
eyes [30]  10/15 28/17 31/20 33/1 33/4 33/14 34/1 34/4 34/15 35/7 36/21

37/6 37/16 37/20 38/6 38/7 38/19 39/3 39/7 39/13 39/17 39/22 40/3 40/6 40/21 41/1 41/11 41/19 42/3 44/8

**F**

F.3d [1]  13/4
fact [6]  19/5 27/12 30/18 48/17 49/8 57/7
factors [2]  6/7 13/15 13/16
facts [5]  6/16 15/12 15/20 36/10 52/2
factual [2]  6/1 13/22
fair [13]  17/12 21/8 21/13 21/18 21/22 22/2 22/8 23/4 23/9 23/11 23/13 23/20 24/6
fairly [2]  6/14 28/18
faith [4]  55/3 55/3 55/6 55/6
false [3]  32/15 33/21 35/4
familiar [1]  7/20
family [8]  13/21 14/8 14/15 14/19 16/21 31/23 31/25 32/2
far [4]  17/23 25/8 32/16 40/17
fascinating [1]  19/13
father [1]  32/3
favor [1]  44/11
fear [1]  50/21
federal [5]  3/23 3/25 7/18 19/11 27/21
feel [3]  5/13 12/10 58/15
feels [2]  17/16
felt [1]  11/14
few [2]  37/4 45/24
fide [1]  26/16
file [12]  16/1 27/12 42/15 42/17 43/12 43/12 50/9 50/24 51/3 52/24 53/6 58/24
filed [21]  7/10 10/19 14/25 15/5 15/6 15/13 15/14 16/21 16/22 18/9 19/19 22/18 24/9 25/16 27/10 27/13 28/4 31/23 50/20 53/17
files [1]  22/9
filing [4]  22/14 25/23 26/1 53/20
final [2]  23/25 49/20
financial [6]  40/24 40/24 41/3 41/7 41/18 46/20
find [6]  19/13 34/18 48/21 48/23 49/9 52/6
fine [1]  5/3
first [17]  4/8 4/9 5/17 5/18 7/23 8/5 8/9 10/11 13/22 15/12 28/19 31/2 39/2 48/9 54/3 55/9 58/8
firsthand [2]  33/7 34/8
five [1]  25/13
fix [2]  47/6 47/12
FL [3]  2/5 2/24 60/8
Floor [2]  2/7 2/11
FLORIDA [19]  1/1 1/4 1/23 3/3 6/3 7/18 7/25 8/1 12/18 18/3 18/20 19/11 20/2 20/8 22/1 22/2 22/15 25/9 43/20
FLSD [1]  43/20
FLSD.USCourts [2]  42/17 43/21
flsd.uscourts.gov [2]  2/25 43/25
folks [15]  3/5 4/7 8/5 12/6 13/20 17/23 21/12 22/14 24/10 27/9 28/1 29/6 42/11 44/13 54/25
follow [4]  15/1 29/25 49/13 55/10
following [1]  27/20

**F**

force [4]  29/16 30/10 30/19 47/18
foregoing [1]  60/2
foresee [1]  45/22
forget [1]  42/12
form [1]  31/1
format [5]  10/18 42/19 42/21 42/25
 43/15
formula [1]  37/18
forward [1]  33/25
found [1]  20/7
fourth [1]  14/14
framed [1]  29/20
framework [1]  28/19
frankly [1]  48/24
fraudulent [1]  52/9
free [2]  46/21 58/15
freely [1]  52/1
Friday [1]  27/21
front [1]  23/15
Fugate [1]  2/3
full [2]  27/21 27/22
further [3]  19/16 51/8 58/18

**G**

gather [1]  36/10
gave [1]  41/22
general [3]  5/13 14/21 24/18
generally [2]  28/18 50/18
George [2]  24/1 42/6
germane [2]  14/5 17/8
gets [3]  10/16 24/25 25/1
getting [2]  10/20 56/6
give [10]  11/20 11/20 13/2 19/21
 24/25 37/16 37/17 39/14 39/23 48/25
given [4]  11/21 17/25 27/12 30/18
gives [1]  18/7
giving [1]  37/18
GIZMODO [18]  1/6 2/2 6/22 7/2 7/5
 7/10 7/17 8/15 8/22 9/9 9/12 21/16
 21/17 31/22 40/16 56/13 56/14 56/18
GMG [1]  9/12
goes [4]  32/16 33/25 54/20 54/22
good [6]  3/5 12/13 30/25 43/5 55/3
 55/6
GOODMAN [8]  1/12 3/4 3/6 3/22
 42/17 43/19 43/20 43/25
got [2]  16/15 32/8
gotten [3]  10/7 19/4 28/8
govern [1]  56/19
governing [1]  28/24
government [5]  16/14 18/14 22/10
 23/1 23/6
grasping [1]  29/22
great [1]  45/10
GROUP [1]  1/6
Gubarev [1]  6/10
guess [4]  5/4 7/9 11/13 26/21

**H**

half [2]  10/14 10/16
hall [1]  4/23
hand [1]  11/22 48/24
handcuffed [1]  52/15
handicap [1]  33/15
handicaps [1]  36/14

handle [1]  22/22
handling [1]  17/20
hands [1]  16/15
happen [2]  49/9 56/8
happened [5]  14/19 15/12 15/14 42/9
 53/1
happens [1]  31/3
happy [2]  11/5 57/18
hard [1]  29/22
harm [6]  37/10 37/13 38/1 38/9 44/10
 45/18
have [127]
haven't [2]  17/25 26/14
having [1]  21/12
hear [4]  8/6 10/12 17/14 17/16
heard [5]  3/20 8/9 27/16 36/3 51/18
hearing [18]  1/11 1/11 3/21 4/8 5/3
 6/12 8/10 12/11 13/9 14/21 14/22
 15/3 27/21 41/2 42/13 42/24 43/11
 50/5
hearings [1]  19/16
heart [1]  55/20
heck [2]  15/12 48/6
help [2]  4/5 25/17
helpful [2]  6/18 48/22
her [36]  24/11 32/8 32/9 32/10 33/21
 33/22 34/14 34/15 34/18 34/24 34/25
 34/25 35/1 35/4 35/20 38/13 38/15
 38/18 38/23 38/23 41/7 42/15 50/13
 50/14 51/10 51/11 51/13 51/13 51/14
 51/17 52/6 53/2 53/2 53/5 53/20
 54/23
here [17]  3/21 4/7 6/16 9/22 17/19
 21/6 22/13 29/25 30/10 31/24 32/3
 32/4 32/12 34/23 45/18 55/24 57/7
hereby [1]  60/2
Hey [1]  37/16
highlighted [1]  44/7
highly [2]  20/5 28/16
him [7]  11/16 11/20 32/18 32/25 40/4
 50/4 50/16
historical [1]  9/20
history [1]  52/7
homework [1]  24/7
Honor [107]
Honor's [1]  15/21
HONORABLE [2]  1/12 3/4
hopefully [2]  28/9 58/23
hour [5]  42/14 42/24 43/11 44/2 58/24
human [1]  53/4 54/11
hypothetical [3]  15/2 15/21 19/14
hypothetically [4]  14/20 18/6 18/6
 51/23

**I**

I'd [1]  10/12
I'll [6]  12/8 12/11 27/7 27/9 53/16
 57/22
I'm [51]  4/16 7/20 9/15 9/19 9/19 9/20
 11/5 11/20 11/25 12/23 14/19 16/2
 17/7 17/19 18/5 22/16 22/16 23/25
 24/16 25/8 25/11 27/20 29/21 33/10
 37/5 37/16 37/17 39/10 41/14 41/15
 41/15 42/11 42/15 42/16 44/6 44/8
 44/10 44/11 47/24 48/20 49/13 49/18
 51/19 51/20 53/10 55/15 56/15 57/7

57/15 57/18 58/14
I've [1]  27/11
i.e [1]  56/14
identical [1]  36/24
identified [1]  32/10
identifies [1]  32/7
identify [8]  8/7 31/19
identifying [2]  38/15 38/23
identity [15]  19/1 19/3 20/4 20/5 20/7
 21/4 26/9 34/21 38/13 38/23 50/7
 50/8 50/23 51/8 53/13
illegitimate [2]  54/17 55/6
illicit [1]  49/9
illogical [1]  48/23
imagine [2]  26/15 49/4
immediately [1]  46/15
immunity [2]  13/2 13/12
impact [1]  16/23
impediment [1]  33/16
impetus [1]  32/25
implicitly [1]  57/24
important [3]  19/4 31/20 36/8
improper [1]  18/4
improperly [1]  20/17
inability [2]  30/5 38/18
inaudible [3]  40/10 41/10 41/11
inbox [5]  42/8 42/15 42/17 43/12
 58/25
Inc [2]  13/3 22/16
include [2]  21/16 47/25
included [3]  27/5 33/24 58/11
includes [1]  43/3
including [4]  44/8 46/3 55/2 55/2
incredibly [2]  21/6 41/19
indicated [2]  40/23 41/17
indicating [1]  8/19
individual [1]  16/17
individualized [2]  7/12 7/13
individuals [2]  18/14 34/4
ineffective [1]  34/23
informal [1]  6/12
information [50]  6/5 6/8 7/19 16/13
 18/4 18/13 18/19 18/22 20/10 20/17
 22/10 22/10 22/11 23/12 25/20 26/4
 26/20 33/3 33/14 33/19 34/2 34/3
 35/18 35/24 36/4 36/5 36/6 36/9
 36/10 36/13 36/17 37/8 38/7 38/10
 38/15 38/18 38/24 39/15 39/23 40/24
 40/25 40/25 41/21 46/7 46/13 46/19
 47/7 49/11 51/11 51/12
inherent [1]  55/13
inherently [1]  48/23
injury [2]  31/6 33/2
innocent [1]  33/1
input [3]  57/4 57/18 57/20
inquiry [2]  14/5 21/20
instance [1]  20/23
intend [2]  29/7 40/16
intended [1]  16/22
intending [2]  54/16 54/17
intends [1]  41/17
intent [4]  14/17 30/4 40/20 51/7
intention [7]  29/10 29/13 40/10 40/23
 50/13 50/14 52/22
intentionally [1]  48/13
intentioned [1]  17/2

**I**

interest [1]  57/8
interested [1]  22/5
interesting [1]  47/21
interests [5]  33/11 37/14 42/5 46/2
 51/4
interjected [1]  8/21
interpreted [2]  8/24 8/25
interrogatories [4]  52/2 6/21 7/14 7/15
interrogatory [1]  7/1
interview [1]  52/13
introductory [1]  56/20
investigator [1]  52/12
involved [6]  23/14 31/25 52/24 56/4
 56/5 56/10
involving [1]  4/12
irrelevant [2]  20/12 49/6
is [284]
issue [48]  4/9 4/11 4/11 5/7 5/12 5/13
 6/16 6/18 6/20 9/7 9/22 9/25 11/14
 11/15 12/16 13/10 13/19 13/20 14/6
 14/14 15/7 15/11 16/2 16/2 16/21
 17/1 17/19 17/20 17/21 18/12 21/5
 22/19 23/10 23/11 23/21 24/1 24/4
 24/5 24/8 25/6 26/16 26/17 28/9 44/5
 44/11 44/12 48/6 54/16
issued [5]  6/11 7/2 29/8 31/1 47/22
issues [19]  4/8 5/25 6/1 6/2 6/15
 10/22 12/12 12/17 14/22 16/7 16/18
 17/2 17/3 18/2 28/7 28/15 41/9 49/7
 56/11
issuing [2]  12/11 30/21
it [165]
it's [10]  3/15 7/24 17/10 17/10 19/24
 22/5 24/21 26/16 27/10 43/7
items [1]  50/18
its [1]  37/14
itself [2]  5/25 6/17

**J**

Jane [37]  32/7 32/9 32/15 32/17 33/4
 33/17 34/1 34/11 34/13 34/18 34/20
 34/22 38/12 38/14 38/17 38/23 40/25
 49/21 50/7 50/9 50/17 50/23 51/5
 51/8 51/16 51/17 51/18 51/20 51/22
 51/24 51/24 51/25 52/2 52/6 52/14
 52/15 53/18
JASON [1]  1/3
JLK [1]  1/2
job [3]  9/16 11/25 47/24
join [1]  17/4
joined [3]  3/12 4/15 4/16
JONATHAN [3]  1/12 3/4 3/5
journalist [2]  9/14 46/19
journalists [1]  22/8
judge [13]  1/13 3/25 4/1 6/12 6/13
 14/22 15/3 23/15 24/5 24/10 24/11
 24/14 58/1
judges [2]  3/23 3/23
judgment [4]  16/15 23/1 26/1 27/2
jurisdictional [3]  10/7 57/12 57/25

**K**

Kate [4]  15/18 18/15 19/24 54/8
KATHERINE [1]  2/6
keep [3]  52/22 53/5 55/15

KENDALL [1]  2/3
kind [4]  11/20 15/4 28/18 30/15
kinds [1]  28/14
knowing [1]  14/23
knowledge [2]  33/8 34/8
known [1]  34/11
knows [1]  27/9
Krueger [21]  6/23 7/3 7/5 7/10 7/17
 8/23 9/12 9/13 21/17 25/23 26/8
 26/12 26/17 26/19 26/24 27/1 40/16
 41/6 41/23 56/14 56/18
KUREGER [1]  2/3

**L**

language [21]  28/10 29/17 30/7 31/11
 31/15 31/18 33/24 35/5 36/18 44/7
 44/9 44/21 45/2 45/5 45/9 46/3 49/16
 49/19 50/21 50/25 58/15
last [1]  8/13
later [2]  12/10 57/11
latest [6]  42/18 42/25 43/2 43/13 44/3
 55/25
law [51]  4/12 5/8 5/15 5/23 6/2 6/3 6/3
 6/4 6/8 7/7 7/19 7/21 8/22 9/1 9/1
 9/25 10/3 12/17 12/18 12/18 12/20
 13/2 13/12 13/12 13/21 14/5 14/19
 15/8 15/9 16/5 17/24 18/3 18/6 18/11
 18/17 18/20 19/22 19/25 20/2 21/5
 21/14 21/21 22/25 23/12 25/10 25/11
 25/19 31/7 32/2 53/10 55/2
laws [3]  10/3 13/17 22/15
lawsuit [4]  50/10 52/1 53/12 54/6
lawyer [1]  53/4
lawyers [6]  9/9 10/14 15/3 24/13
 28/15 55/7
least [2]  16/18 21/9
leave [1]  37/24
left [1]  36/19
legal [10]  5/25 6/15 9/19 15/10 15/15
 16/23 17/25 51/7 54/13 54/18
legally [3]  18/9 23/19 38/5
legitimate [10]  38/10 53/8 53/11 54/5
 54/9 54/14 54/22 54/23 54/24 55/5
lends [1]  6/17
length [2]  28/8 34/13
let [8]  3/13 9/18 15/23 18/1 19/13
 24/16 26/24 43/5
let's [10]  10/11 14/21 15/2 19/18 28/9
 31/2 33/23 33/25 49/4 49/20
level [1]  38/1
levels [1]  36/15
liable [1]  19/8
like [19]  4/23 10/12 11/14 17/15 33/8
 34/8 39/9 40/7 41/14 42/14 42/22
 49/17 53/9 54/9 55/3 56/24 57/1 58/9
 58/12
likelihood [1]  51/13
likely [1]  45/16
likes [1]  56/23
limit [5]  11/7 11/9 11/9 11/20 39/4
limitation [1]  46/12
limited [1]  56/13
Limiting [1]  38/7
limits [1]  11/12
list [4]  17/3 24/1 28/10 35/15
listen [2]  17/18 57/18

listening [2]  4/1 12/3
litigate [2]  54/11 55/14
litigation [8]  35/12 47/3 47/14 51/21
 52/7 52/17 52/24 54/18
little [3]  12/10 24/7 43/18
live [1]  55/17
LLC [2]  1/6 2/6
LLP [1]  2/10
local [4]  10/13 55/3 55/12 55/13
locate [3]  34/14 34/20 34/24
long [1]  10/12
longer [1]  29/19
looking [3]  9/19 9/20 9/20
looks [1]  18/22
lose [1]  32/10
loses [1]  57/11
lot [2]  28/5 48/14
louder [2]  40/12 40/12
loudly [2]  8/6 8/17
love [1]  43/21

**M**

ma'am [2]  8/16 41/12
made [7]  33/21 38/12 44/20 45/14
 50/5 57/6 58/14
magistrate [9]  1/13 3/22 3/22 3/23
 6/13 6/12 6/13 24/14 58/1
mail [4]  27/4 42/8 42/15 43/14
maintain [3]  38/22 50/23 53/13
maintenance [2]  19/1 20/6
make [10]  12/10 26/20 36/13 39/12
 43/15 44/3 45/11 45/18 57/1 57/6
making [4]  20/3 50/22 57/23
malpractice [1]  41/5
many [5]  10/18 10/22 55/1
MARCH [1]  1/5
mark [2]  37/19 40/20
marked [2]  40/19 45/12
market [1]  54/11
marks [1]  50/3
massaging [1]  58/13
material [9]  18/25 20/6 31/4 34/1
 37/12 37/12 37/25 51/1 51/4
materials [5]  35/10 35/14 35/18 44/15
 50/17
matter [11]  4/4 11/3 13/15 25/19 33/5
 36/11 41/4 48/7 52/22 53/3 55/8
means [2]  29/24 39/22
meant [2]  9/3 13/17
mechanism [2]  45/8 45/25
media [6]  1/6 6/23 7/2 18/7 18/7 46/15
mediation [1]  27/22
meet [2]  39/11 45/22
meet-and-confer [1]  45/22
members [2]  34/12 46/15
memoranda [6]  5/9 5/10 5/12 10/14
 10/16 10/19
memorandum [7]  10/13 10/22 12/7

**M**

memorandum... [4]  24/9 24/20 27/10 27/13
MENAKER [12]  2/9 3/12 4/19 6/23 10/2 40/10 55/24 56/2 56/3 56/7 56/9 57/13
mention [3]  3/14 52/12 56/17
mentioned [4]  9/1 12/8 13/11 14/18
mentioning [2]  16/2 53/22
menu [1]  17/1
merely [2]  22/24 28/24
meritorious [1]  55/4
mess [1]  48/13
met [2]  32/18 32/18
MIAMI [2]  1/2 1/4
middle [1]  31/5
might [12]  12/15 15/7 16/3 16/6 23/19 24/18 35/14 37/8 39/20 56/8 56/11 57/5
miller [20]  1/3 1/21 2/22 2/25 31/24 31/25 32/3 32/6 32/8 32/12 33/10 33/24 39/22 41/8 44/22 46/20 54/24 56/17 60/5 60/6
Miller's [2]  40/24 41/25
mind [3]  4/2 8/12 24/18
minute [1]  53/7
minutes [1]  5/4
MISHKIN [7]  2/9 3/11 3/15 4/21 4/24 5/5 55/23
Miss [73]
Miss Krueger [4]  7/17 9/13 21/17 26/8
missed [4]  5/5 54/2 54/4 54/4
modification [1]  55/21
modified [2]  13/8 55/18
modifier [1]  55/7
modify [1]  43/5
Monday [1]  27/20
more [15]  3/14 3/24 11/15 11/16 12/10 17/23 22/5 22/19 22/22 29/19 33/13 40/12 41/16 51/22 53/3
most [4]  29/20 30/14 47/25 48/7
mother [4]  32/1 32/5 32/6 51/16
motion [7]  21/9 21/17 21/20 23/14 23/21 24/5 57/12
motions [1]  5/10
mouth [1]  15/24
move [3]  17/17 24/13 24/14
moved [1]  21/18
Mr. [93]
Mr. Menaker [8]  6/23 10/2 40/10 56/2 56/3 56/7 56/9 57/13
Mr. Miller [14]  31/24 31/25 32/3 32/6 32/8 32/12 33/10 33/24 39/22 41/8 44/22 46/20 54/24 56/17
Mr. Miller's [2]  40/24 41/25
Mr. Mishkin [4]  4/21 4/24 5/5 55/23
Mr. Vogt [60]  3/7 6/20 8/19 9/3 9/6 9/24 10/1 10/18 10/23 11/2 11/14 12/8 12/22 13/14 13/22 14/11 15/19 15/21 16/6 16/9 17/4 17/5 18/1 22/13 24/3 24/19 24/25 25/5 25/7 25/18 26/23 27/16 29/9 30/18 31/10 31/12 31/19 32/19 33/25 35/10 35/22 38/2 39/14 40/9 40/23 41/10 41/17 43/7 44/10 46/3 46/4 47/12 47/22 48/24 50/11 52/20 53/24 55/17 58/8 58/24

**N**

name [15]  3/14 12/22 13/2 34/11 34/18 50/13 50/14 51/10 51/23 52/14 52/23 53/5 53/18 53/20 54/23
names [1]  56/17
narrowed [1]  16/7
narrows [1]  38/9
nature [3]  5/15 22/12 46/20
necessary [10]  11/15 18/23 18/25 19/3 20/5 44/3 45/24 46/23 50/21 50/25
need [30]  6/1 6/2 8/6 8/7 8/11 12/9 22/19 24/24 26/13 28/1 28/3 30/5 30/13 35/16 36/9 37/5 37/19 38/10 39/15 40/10 40/21 42/21 43/15 45/6 48/11 48/18 50/3 52/1 52/16 54/9
needed [2]  11/14 36/14
needs [4]  11/16 24/4 37/22 53/20
negotiate [1]  50/12
negotiating [1]  35/9
negotiation [1]  56/5
neighbors [1]  52/13
neutral [4]  21/23 22/1 22/4 22/7
neutrally [1]  22/6
never [7]  20/13 25/5 32/18 32/18 47/3 49/16 51/18
New [24]  2/8 2/8 6/3 7/18 7/25 8/2 8/3 8/20 8/21 9/13 9/13 9/14 12/18 15/18 18/3 18/16 18/17 19/25 20/13 20/16 21/4 21/11 22/15 25/11
next [8]  15/16 24/8 44/13 48/11 48/20 53/15 56/20 58/24
nine [1]  47/24
nobody [1]  19/11
none [1]  52/25
nonparties [1]  34/13
nonparty [5]  31/19 31/24 33/11 51/4 52/25
noon [1]  24/16
normally [1]  5/9
North [1]  1/22
not [131]
note [1]  6/9
notes [2]  12/13 12/14
nothing [2]  36/15 39/5
number [1]  5/21
NW [1]  2/11

**O**

O'Sullivan [2]  6/12 6/13
objection [6]  7/10 7/12 7/17 30/24 45/13 45/20
objections [7]  5/21 6/21 7/5 7/6 7/14 8/12 10/1
objective [1]  11/23
obligations [2]  54/14 54/18

Mr. Vogt's [4]  8/25 11/9 30/3 43/3
Mr. Witness [1]  48/11
Mrs. [1]  25/25
Mrs. Delgado [1]  25/25
MS [1]  35/21
much [10]  4/6 11/24 14/19 17/14 35/14 37/3 48/25 52/23 53/5 55/16
must [1]  51/3
myself [2]  34/7 48/6

obstruction [1]  45/10
obtain [1]  6/8
obtained [8]  19/7 20/17 22/10 23/1 23/6 23/6 23/8 35/18
obtains [1]  19/6
obviously [9]  6/16 16/14 35/24 36/7 40/11 46/18 52/23 54/10 54/12
occupation [1]  53/2
odd [1]  47/5
offense [1]  4/4
office [4]  4/20 19/21 20/8 34/7
officers [1]  35/16
official [6]  2/23 16/14 18/14 23/1 23/6 60/6
officially [1]  16/15
officials [1]  22/10
oh [1]  48/10
old [1]  10/15
omitted [1]  58/15
omnibus [1]  7/9
once [2]  51/10 51/12
once we [1]  51/12
one-and-a-half [2]  10/14 10/16
only [51]  16/2 17/19 17/21 23/9 28/17 31/20 32/23 32/24 33/1 33/4 33/7 33/14 34/1 34/4 34/15 35/7 36/21 37/2 37/6 37/16 37/20 37/24 38/6 38/8 38/8 38/11 38/13 38/19 38/19 39/3 39/4 39/5 39/7 39/13 39/17 39/22 40/3 40/4 40/6 40/21 41/1 41/11 41/19 42/3 44/8 44/8 54/9 54/11 54/15 56/13 57/7
opening [1]  26/5
opinion [2]  6/11 16/7
opportunity [2]  25/7 46/23
opposed [1]  30/22
opposing [2]  47/3 49/5
opted [2]  33/9 34/9
option [2]  35/25 37/24
orally [1]  14/22
oranges [3]  17/10 17/14 19/12
order [67]
ordered [1]  58/11
orders [6]  8/11 15/9 24/11 39/10 47/23 57/10
other [20]  4/11 5/7 11/7 11/22 18/23 18/25 28/21 37/4 47/13 48/24 51/11 51/14 51/21 53/9 53/11 53/16 53/17 54/4 54/5 56/2
others [1]  51/8
otherwise [3]  48/13 50/8 57/24
otherwise have [1]  50/8
ourselves [1]  36/10
out [21]  4/5 8/13 16/11 18/7 20/7 25/17 27/22 28/6 28/8 30/3 30/7 35/5 41/1 46/15 46/21 50/19 51/25 52/6 52/24 53/6 58/10
outside [3]  33/7 34/6 35/12
over [10]  6/5 22/21 26/10 26/11 28/2 28/10 42/24 47/24 55/8 55/20
overcome [2]  6/8 20/3
overlapping [1]  6/15
overreach [1]  42/3
overstated [1]  11/23
own [2]  5/2 56/9

**P**

page [12]  11/7 11/9 11/9 11/12 11/20
  11/22 12/7 24/20 31/5 31/7 44/6
  44/14
pager [1]  11/6
pages [11]  1/7 10/19 10/22 11/4 11/5
  11/6 11/14 11/17 11/25 12/5 16/3
paid [1]  20/25
Palm [3]  2/5 2/24 60/8
papers [2]  53/16 53/17
paragraph [16]  31/3 31/5 38/22 43/8
  44/14 49/21 49/25 50/20 51/2 51/6
  52/22 53/9 53/22 53/22 56/20 56/20
paragraphs [2]  45/25 58/10
parents [1]  53/2
Parkway [1]  2/4
part [13]  5/14 7/6 15/15 18/20 19/10
  19/10 20/4 21/11 26/15 29/20 31/4
  36/5 52/4
particular [8]  4/10 15/20 26/21 29/16
  41/24 44/5 45/6 48/21
particularly [4]  4/13 5/23 6/3 50/22
parties [26]  5/11 6/6 11/12 14/16 15/3
  15/25 25/20 28/20 28/21 28/25 29/2
  30/7 33/1 35/15 38/22 39/11 42/7
  44/19 45/13 46/21 48/5 51/3 53/13
  54/6 56/2 57/10
party [7]  26/5 31/19 37/11 37/14 45/10
  46/10 53/20
pasting [1]  42/22
path [1]  41/24
pause [1]  57/3
pays [1]  19/20
pending [4]  6/10 21/17 23/15 40/18
people [11]  34/7 34/17 34/19 35/1
  35/15 46/14 50/7 51/14 51/21 55/4
  55/12
Pepsi [1]  37/17
percent [3]  32/15 48/4 49/14
perfect [1]  12/14
perfectly [1]  11/5
perhaps [5]  12/20 51/22 51/23 52/5
  57/11
period [2]  25/13 53/21
permit [1]  10/14
permits [1]  33/6
permitted [1]  5/11
person [1]  51/25
personal [2]  38/15 38/23
personally [2]  34/12 37/21
personnel [3]  33/8 34/8 35/17
perspective [2]  9/20 55/15
persuaded [1]  17/4
philosophy [1]  4/6
phone [1]  43/18
phoned [1]  3/21
phones [1]  5/1
phonetic [1]  25/24
phoning [3]  3/6 3/17 59/2
phrase [2]  31/6 31/8
phrased [2]  13/13 44/10
phrases [1]  55/1
pick [1]  5/4
pierce [1]  13/16
pill [1]  32/9
pinpoint [1]  12/12 12/15

place [5]  13/2 34/23 48/9 50/18 55/9
places [1]  55/3
plaintiff [23]  1/4 1/21 5/19 6/7 13/14
  13/15 17/11 20/3 20/23 21/1 21/9
  31/24 32/3 32/12 32/18 34/14 41/3
  52/12 52/19 54/20 56/13 56/25 58/8
plaintiff's [3]  33/18 35/3 54/12
plan [3]  51/12 51/13 52/18
plate [2]  24/14 24/17
play [2]  16/5 16/11
pleadings [2]  53/16 53/17
please [5]  15/23 25/18 40/12 40/13
  53/7
PLLC [1]  2/3
plural [2]  42/17 43/22
point [10]  19/9 28/24 30/5 42/13 43/5
  47/21 48/1 54/20 54/25 56/4
pointed [2]  30/7 41/1
pointer [1]  4/2
points [4]  12/8 50/19 52/19 52/21
polish [1]  28/1
portions [1]  45/8
position [7]  6/17 13/22 14/7 22/23
  23/3 23/4 45/15
possible [5]  9/23 15/7 28/2 52/23 53/5
post [1]  12/11
post-hearing [1]  12/11
potential [4]  4/12 16/4 45/9
potentially [1]  48/23
practical [3]  34/10 36/23 52/19
practice [2]  4/1 37/15
precise [2]  5/15 12/15
precluding [1]  33/20
pregnant [1]  32/8
prejudice [1]  37/19
prejudicial [1]  39/24
premise [3]  32/14 33/18 35/3
preparations [1]  52/5
presiding [1]  3/4
pretty [2]  4/6 37/3
prevent [2]  34/23 46/18
prevents [1]  38/5
Price [2]  13/3 22/16
primarily [1]  52/22
principle [1]  15/10
prior [4]  25/6 25/22 27/22 52/7
privacy [1]  33/2
private [6]  29/6 29/10 29/23 30/4
  30/22 52/12
privately [1]  28/20
privilege [37]  6/5 7/23 8/1 8/2 8/3 8/20
  8/22 9/1 10/4 12/20 16/2 17/12 17/13
  18/17 20/9 20/9 21/8 21/10 21/10
  21/11 21/13 21/18 21/22 21/23 22/1
  22/2 22/8 23/4 23/7 23/8 23/9 23/11
  23/13 23/20 24/6 26/10 26/11
privileges [2]  21/25 22/3
probably [4]  3/24 6/2 9/16 12/5
probe [1]  52/15
problem [6]  38/20 39/7 41/13 45/2
  45/5 45/17
problems [1]  30/21
procedure [2]  47/5 55/2
procedures [1]  5/10
proceed [1]  51/3
proceedings [3]  56/19 59/5 60/3

process [3]  45/16 45/22 47/14
produce [2]  30/13 40/2
produced [1]  27/5
produces [1]  50/2
production [6]  5/22 6/22 7/2 7/15 7/16
  32/22
proffers [1]  45/24
proper [2]  45/13 47/16
proposed [7]  38/21 42/7 42/19 43/3
  43/13 56/1 58/3
propounded [2]  6/22 10/2
prosecute [3]  39/25 47/13 54/13
prosecuting [2]  53/11 54/6
protect [9]  7/24 33/1 33/10 35/11 39/5
  42/4 46/2 53/5 57/7
protected [2]  36/9 51/5
protection [7]  13/12 25/19 36/15 38/6
  47/1 48/25 50/4
protective [18]  28/22 28/23 29/8 30/14
  30/21 31/1 33/11 36/20 42/20 47/23
  48/3 48/5 49/10 56/9 57/10 57/13
  57/22 58/4
protects [1]  18/6 22/8
provide [5]  8/22 18/18 20/18 33/15
  57/20
provided [6]  22/11 44/17 44/21 45/25
  49/11 49/19
provides [1]  46/6
providing [1]  7/19
provision [7]  32/20 38/17 38/21 39/2
  39/8 46/6 47/25
public [2]  22/9 35/24
publication [1]  19/6 25/23
publicly [2]  53/16 53/17
publish [3]  36/4 36/6 36/16
published [1]  5/24
publishers [1]  7/24
publishing [2]  19/8 50/13
purely [2]  29/5 30/22
purported [2]  32/16 56/1
purportedly [2]  33/21 51/17
purports [1]  36/20
purpose [1]  46/17
purposes [2]  56/23 38/10
puts [1]  23/11

**Q**

qualified [4]  8/1 8/2 8/20 9/2
qualifier [1]  54/3
question [17]  9/16 9/17 9/21 10/11
  14/4 15/16 15/25 18/1 19/14 28/13
  48/19 48/20 48/20 49/8 54/10 54/15
  58/1
questions [3]  48/10 49/6 49/6
quibble [1]  55/7
quite [1]  48/24

**R**

raise [3]  5/25 9/25 47/22
raised [4]  5/22 7/5 25/5 56/3
raising [1]  18/11
rational [1]  36/3
reach [1]  30/12
read [2]  16/4 43/23
reads [1]  44/16
real [2]  34/11 52/14

**R**

realizing [1] 52/23
really [9] 10/15 22/19 23/9 36/3 38/25 39/4 40/1 41/13 47/5
reason [4] 14/18 26/8 27/8 30/11
recent [1] 16/11
recess [1] 59/3
reciprocity [1] 11/18
recognize [1] 8/8
recognized [3] 19/10 22/1 22/2
recognizes [1] 7/23
recommend [1] 47/6
record [6] 26/18 32/13 32/15 33/22 52/7 57/22
records [4] 22/9 22/11 41/18 41/18
redacted [3] 32/16 38/13 51/11
redaction [1] 38/13
reference [1] 4/4
refine [1] 28/1
refused [1] 34/14
regardless [1] 26/17
rejected [1] 27/11
related [3] 5/23 33/4 50/2
relates [1] 38/17
relatively [1] 26/22
relevance [3] 23/20 45/12 45/19
relevant [18] 16/1 16/13 17/11 17/11 17/12 20/6 22/24 23/12 23/19 44/18 45/11 47/13 49/2 49/8 49/10 49/12 54/21 54/21
relied [1] 7/6
relief [1] 18/7
reluctance [1] 30/19
remainder [1] 19/16
remains [2] 53/13 53/22
remove [4] 17/1 36/18 49/18 56/7
repeat [1] 12/8
reply [1] 10/21
report [9] 17/12 21/8 21/18 22/1 22/2 22/5 22/8 23/9 37/11
reportage [2] 22/4 22/7
reported [4] 2/22 18/8 31/22 33/22
reporter [11] 2/23 8/10 19/20 19/21 20/10 20/14 20/16 20/25 21/22 33/8 60/6
reporter's [2] 16/2 17/13
reporters [1] 34/9
reporting [9] 9/14 21/13 21/23 22/9 23/4 23/13 23/20 24/6 32/13
represented [1] 48/16
representing [1] 48/17
request [9] 5/11 11/5 11/23 17/4 25/6 25/12 27/12 32/22 36/19
requests [6] 5/22 6/21 7/2 7/14 7/16 40/17
require [1] 17/23
required [2] 20/3 21/4 45/11
requisite [3] 6/7 13/14 13/16
research [1] 17/25
researched [1] 17/24
resolve [3] 30/16 30/17 45/23
resolved [1] 30/21
resolving [1] 29/21
respect [2] 38/16 57/16
respond [1] 47/17
responding [1] 57/25

responds [2] 25/13 25/14
response [7] 7/4 7/9 7/11 7/16 10/20 25/14 32/22
responses [2] 32/20 32/21
rest [2] 53/12 53/21
restrictions [1] 46/18
result [5] 37/10 37/13 38/1 38/9 44/9
resulted [1] 32/1
results [1] 46/12
reveal [1] 35/19
revenue [1] 40/6
rife [1] 47/15
rights [2] 8/21 33/2
righty [1] 58/7
ripen [1] 24/16
RMR [2] 2/22 60/6
road [1] 56/8
Room [1] 60/7
rule [2] 55/13 55/14
ruled [1] 21/19
rules [5] 10/13 55/2 55/3 55/11 55/12
ruling [2] 44/10 44/11
rulings [1] 58/15

**S**

said [11] 11/3 19/6 22/6 22/6 32/5 32/20 35/4 35/22 40/21 48/18 54/4
sake [2] 19/18 33/23
same [10] 4/6 4/20 7/17 18/21 24/25 25/2 31/7 34/18 50/18 54/22
save [1] 16/3
say [25] 3/20 4/9 4/9 6/20 8/16 11/4 11/24 13/17 14/11 14/13 19/18 20/9 20/14 29/18 30/12 33/18 33/23 35/10 46/24 47/6 47/25 48/10 48/19 56/19 56/21
saying [7] 42/11 42/16 49/13 51/18 52/25 57/14 57/15
says [8] 11/2 14/22 15/4 21/9 32/17 32/22 48/1 48/12
scenario [2] 28/20 28/21
scenarios [1] 28/19
scheduling [1] 24/11
scope [5] 35/12 50/15 51/9 51/21 56/21
scratch [1] 42/12
seal [24] 13/21 14/3 14/4 14/8 14/12 14/14 14/15 14/17 14/23 14/25 15/5 15/6 15/9 15/13 15/14 16/1 16/22 16/22 16/23 18/9 19/19 21/7 22/18 53/21
sealed [7] 18/5 19/22 20/18 23/19 23/19 25/23 26/1
sealing [1] 14/9
second [7] 4/11 13/11 15/15 18/21 27/12 31/5 57/3
Secondly [1] 8/7
secret [2] 37/17 50/23
section [2] 31/3 45/25
seek [1] 47/1
seems [6] 17/15 17/15 47/14 54/9 54/14 54/16
seen [3] 40/17 49/16 49/17
sees [1] 47/7
send [1] 43/18
sense [2] 50/2 57/1

sensitive [5] 37/8 37/10 37/12 37/12 38/8
sent [4] 25/24 25/25 26/17 43/14
sentence [4] 53/13 53/15 53/19 54/3
separate [4] 7/11 7/11 7/13 21/20
September [1] 25/22
served [1] 3/25
session [1] 3/3
settle [3] 41/6 41/7 41/23
settled [1] 20/9
settling [1] 36/13
seven [1] 50/20
several [2] 34/3 46/14
shall [4] 29/18 53/17 53/21 56/19
SHANE [3] 1/21 5/19 15/23
share [1] 33/19 41/21 41/25
sharing [1] 34/24
shield [35] 4/12 5/8 5/15 5/23 6/4 6/8 7/6 7/19 7/21 9/1 10/3 10/4 12/18 12/18 12/20 13/2 13/12 13/17 14/5 15/8 15/8 16/5 18/3 18/6 18/11 19/22 19/25 20/2 21/14 21/21 22/15 22/24 23/12 25/19 26/5
shortchange [1] 11/17
shorter [1] 24/7
shouldn't [3] 4/9 41/7 55/8
show [5] 26/18 40/4 45/11 45/21 47/4
showing [3] 20/4 45/11 46/19
showings [1] 45/18
shown [4] 46/11 46/16 46/22 46/24
shows [1] 48/15
SHULLMAN [32] 2/3 2/3 3/7 3/20 8/14 9/11 10/25 11/19 14/1 21/15 21/24 24/24 25/4 27/11 29/12 30/2 31/14 31/17 35/6 35/23 36/25 40/8 40/15 42/14 43/2 45/1 45/3 49/24 54/1 54/19 55/22 58/18
side [5] 17/4 30/10 45/10 54/12 58/8
sides [5] 10/21 22/6 25/2 28/13 30/12 45/18 53/9
sign [7] 47/8 47/18 48/1 48/7 48/11 48/15 48/18
signed [1] 29/6
significant [1] 16/17
significantly [2] 33/15 38/9
signing [1] 48/20
similar [2] 7/25 55/1
simple [1] 9/21
simply [13] 8/20 11/24 17/7 20/14 27/3 30/7 33/3 42/2 47/8 49/17 56/18 57/20 57/25
simultaneously [5] 10/19 25/16 27/10 27/13 28/4
since [5] 18/1 22/4 22/13 27/11 56/10
situation [2] 10/20 49/4
slightly [1] 22/3
slip [1] 48/13
slipped [1] 32/9
slowly [2] 40/12 53/10
Smoothie [1] 32/9
snafu [2] 15/4 15/10
so-called [3] 10/4 12/20 13/2
solution [1] 34/10
some [17] 5/25 6/15 6/16 7/6 10/11 11/7 15/4 16/18 18/7 19/17 26/12 26/23 29/4 40/6 42/13 45/6 58/13

**S**

somebody [2]  19/7 48/18
Someone [1]  4/15
something [7]  19/7 26/14 29/17 39/21
 44/21 53/9 55/5
sometime [3]  21/23 29/2 34/12
sometimes [3]  12/20 28/16 28/17
soon [1]  58/4
sophisticated [1]  4/13
sorry [8]  4/16 9/15 12/2 15/17 17/7
 20/20 40/14 41/15
sort [7]  6/17 7/6 28/5 37/23 45/23
 48/25 52/9
sorts [1]  42/23
sought [1]  51/5
source [19]  5/23 16/1 16/12 18/4
 18/12 19/2 19/2 19/3 20/4 20/5 20/7
 20/14 21/4 23/11 26/9 26/11 26/13
 26/19 27/2
sources [4]  7/24 8/23 18/24 18/25
southern [4]  1/1 3/3 6/10 43/21
spaced [1]  12/7
spacing [4]  10/14 10/16 10/17 10/18
Spahr [1]  2/10
speak [7]  5/18 8/5 8/6 8/7 25/11 56/11
 57/4
speaker [1]  5/1
speaking [6]  5/17 8/8 8/12 8/17 14/20
 53/10
specific [3]  12/12 32/14 46/6
specifically [5]  5/11 5/15 32/21 44/15
 57/22
specificity [1]  12/9
spent [1]  29/2
staff [1]  50/8
standard [2]  21/2 28/18
standing [1]  33/10
start [5]  38/3 41/16 42/22 42/22 48/10
started [1]  30/3
starting [2]  31/5 49/19
starts [2]  49/5 53/15
state [1]  22/15
statement [1]  57/11
statements [3]  32/4 33/17 33/21
STATES [1]  1/1 1/13 3/2 60/7
status [1]  23/18
statute [3]  3/24 8/21 55/13
statutes [1]  55/11
statutory [3]  7/25 10/3 12/18
stays [1]  36/9
still [8]  10/6 11/6 12/1 19/8 19/22
 19/25 34/2 49/11
stipulated [7]  28/22 28/22 28/23 47/23
 48/3 48/5 48/12
stipulation [1]  48/19
streamline [1]  17/3
Street [4]  1/22 2/11 2/23 60/7
stuck [1]  30/15
stuff [1]  53/1
styled [1]  56/1
subject [5]  30/13 50/19 56/8 56/23
 56/25
submission [1]  5/9
submit [13]  5/12 7/11 10/14 24/20
 28/21 42/15 42/16 42/18 42/25 43/2
 43/12 43/12 58/10

submitted [7]  7/13 10/16 29/1 42/8
 52/9 52/25 53/21
submitting [1]  10/21
subparagraph [1]  44/16
subpoena [5]  20/8 20/24 33/12 48/9
 51/12
substance [4]  9/21 17/20 34/19 48/1
substantial [3]  31/6 33/1 33/15
substantive [1]  58/2
succinct [1]  26/22
such [5]  6/13 8/1 18/5 25/10 37/19
sued [1]  32/12
sufficient [1]  42/4
sufficiently [3]  5/8 50/16 51/4
suggest [6]  11/6 16/6 26/23 27/1
 27/16 41/5
suggested [1]  55/21
suggesting [4]  10/19 10/23 27/13 57/9
suggestion [7]  11/3 17/1 24/19 25/3
 48/22 48/24 56/15
suggestions [2]  10/12 57/19
suing [1]  32/4
Suite [2]  1/22 2/4
summary [4]  16/14 22/25 26/1 27/2
superfluous [2]  50/1 51/5
supplement [8]  5/24 26/10 31/21
 31/23 32/5 34/20 51/16 52/3
supply [2]  32/23 34/15
support [5]  33/8 34/8 34/12 35/17
 50/8
supposed [6]  14/16 15/5 15/13 15/14
 17/21 19/19
Supreme [2]  16/12 19/5
sure [11]  8/18 8/19 22/16 25/11 30/8
 33/10 37/5 39/10 41/16 58/12 58/15
surprises [1]  26/25
swayed [1]  57/6

**T**

take [4]  35/5 41/24 51/13 59/2
taken [1]  45/7
taking [3]  12/13 22/6 23/3
talk [8]  34/24 34/25 35/1 36/12 38/21
 46/15 46/21 51/14
talked [3]  34/17 34/19 40/5
talking [11]  6/24 8/7 16/15 17/21 18/5
 22/25 26/2 31/22 38/4 38/17 39/2
Tampa [3]  1/22 1/23 27/21
tantamount [1]  33/20
team [4]  34/12 34/17 50/7 51/8
tell [11]  5/15 13/20 25/18 31/15 41/6
 41/22 45/1 47/4 48/21 51/22 52/13
telling [2]  19/22 47/12
ten [4]  7/15 11/4 11/5 11/25
tenacity [1]  25/16
tend [1]  28/18
tending [1]  29/5
Tennessee [1]  16/12
term [1]  3/25
terminated [1]  52/8
terms [7]  16/13 18/13 23/9 23/10
 30/19 39/19 55/1
test [7]  18/17 18/20 19/10 21/11 35/1
 35/20 51/19
testify [1]  20/25

testifying [7]  33/7 34/7 44/17 46/7
 46/8 49/2 49/18
testimony [7]  44/18 45/8 46/1 47/15
 49/3 49/9 49/12
testing [1]  33/20
text [1]  16/3
than [14]  3/24 11/15 11/15 11/16
 17/23 21/20 37/4 47/12 53/4 53/10
 53/11 54/4 54/5 57/16
Thanks [1]  3/6
that [342]
their [5]  18/12 37/4 38/24 40/6 54/17
themselves [1]  36/12
theory [1]  55/10
there [51]  5/21 6/11 7/22 10/1 11/11
 13/19 13/20 14/9 14/21 15/4 16/4
 16/11 18/7 18/10 18/16 18/17 18/20
 18/24 19/4 19/9 20/1 20/13 25/9
 25/10 25/12 26/7 26/7 26/12 26/18
 26/25 28/13 31/12 31/16 38/5 39/1
 39/5 39/8 39/9 44/16 47/11 48/8 48/8
 48/9 51/25 51/25 54/11 55/1 55/7
 55/8 58/2 58/13
they [34]  19/7 21/2 21/2 21/3 26/11
 28/18 30/13 31/25 32/2 34/21 36/1
 36/7 36/7 36/13 36/16 38/24 39/7
 39/8 39/11 40/2 40/2 40/5 40/19
 46/10 46/16 46/25 47/9 47/19 48/8
 48/9 50/20 54/17 55/14 56/25
thing [9]  6/9 25/10 35/22 36/8 37/9
 38/13 40/4 47/17 52/9
things [11]  22/12 29/20 29/21 32/5
 38/18 39/4 39/5 40/7 40/20 42/23
 46/20
think [46]  5/13 5/24 6/16 6/17 9/10
 11/15 11/22 11/24 12/2 12/4 13/13
 14/5 15/19 15/25 16/4 16/10 16/18
 16/20 17/3 24/19 26/13 27/16 30/3
 30/11 37/21 37/22 38/4 39/3 39/15
 40/1 40/5 40/21 41/10 41/10 42/2
 43/7 43/14 45/17 46/24 50/1 50/12
 50/21 50/25 51/1 54/21 56/12
thinks [2]  54/21 54/24
third [7]  6/6 13/13 25/20 26/5 33/1
 38/20 41/14
though [4]  24/2 26/9 48/22 55/16
thought [5]  9/5 9/16 14/3 16/6 24/18
three [8]  6/23 6/24 6/24 18/20 19/10
 20/4 21/11 49/20
three-part [4]  18/20 19/10 20/4 21/11
Thursday [1]  27/22
thus [1]  40/17
tie [1]  16/18
ties [1]  23/9
time [20]  3/14 8/9 13/3 17/16 22/4
 22/16 22/19 22/21 22/21 22/22 25/13
 28/5 29/22 41/16 45/11 48/4 48/7
 48/22 55/7 56/7
today [6]  12/10 17/21 38/21 39/5
 56/12 57/4
told [6]  12/23 26/8 26/12 26/24 27/1
 51/17
tomorrow [1]  12/11
too [1]  11/23
took [1]  28/5
top [1]  28/10

**T**

topic [2]  26/22 49/10
topics [3]  19/17 24/1 57/21
town [1]  27/22
transcribes [1]  8/10
transcript [2]  1/11 8/11
transcription [1]  60/3
transform [1]  42/20
treat [1]  14/17
Tremaine [1]  2/6
trial [1]  24/11
tried [1]  35/9
trouble [1]  48/14
try [3]  9/18 41/16 53/4
trying [13]  4/5 34/18 34/20 34/24
 34/24 34/25 34/25 42/2 47/15 50/9
 50/11 51/3 53/3
Turkel [1]  1/21
turned [1]  30/4
tweaking [1]  58/13
Twenty [2]  10/24 11/1
two [14]  4/8 6/24 9/23 21/25 22/2
 22/14 28/13 28/19 31/3 36/22 45/16
 51/14 51/15 57/9
type [2]  39/15 53/11
types [2]  28/13 46/22
typically [3]  28/14 37/9 37/15

**U**

ultimately [1]  31/1
under [39]  3/23 5/9 7/23 10/2 11/11
 13/21 13/24 14/3 14/4 14/8 14/12
 14/13 14/15 14/17 14/23 14/25 15/5
 15/6 15/9 15/13 15/14 16/1 16/21
 16/22 16/22 18/3 18/9 19/19 21/7
 22/18 31/3 34/4 39/16 44/14 48/8
 49/10 50/18 53/21 56/21
under-seal [1]  14/17
underlying [1]  13/21
understand [13]  3/7 12/14 15/21 17/8
 17/9 23/14 29/4 41/12 44/15 44/20
 52/21 53/8 54/25
understanding [1]  22/17
understood [2]  4/25 43/15
underway [1]  5/4
unduly [1]  39/24
unfair [1]  39/3
unfettered [1]  47/11
unintelligible [2]  38/4 56/3
UNITED [4]  1/1 1/13 3/2 60/7
universe [1]  38/9
unknown [1]  53/2
unlawfully [1]  19/7
unless [1]  26/11
unnecessarily [1]  45/15
unnecessary [1]  11/23
unredacted [1]  32/23
unrelated [1]  46/19
unsuccessfully [1]  35/9
until [2]  24/22 56/10
unworkable [1]  48/23
up [10]  5/4 6/21 40/10 41/13 43/18
 45/25 48/13 48/13 48/16 56/10
us [17]  4/6 11/24 12/4 16/3 25/6 25/18
 26/24 27/5 31/13 32/23 33/20 35/17
 36/12 38/5 41/20 42/8 52/25

USCourts.gov [2]  42/18 43/22
use [12]  3/25 5/1 27/25 28/3 35/12
 35/18 53/11 53/17 54/5 54/22 54/23
 54/24
using [2]  36/10 42/15

**V**

various [2]  28/15 34/13
veracity [4]  33/20 35/1 35/20 51/19
version [13]  29/16 42/6 42/18 42/25
 43/3 43/3 43/8 43/13 44/3 49/10
 51/15 55/25 58/10
versions [1]  51/15
versus [5]  6/10 13/3 19/6 22/16 38/19
very [9]  7/24 10/15 17/13 24/10 32/2
 33/18 47/21 55/16 58/7
via [1]  33/11
views [1]  56/11
violated [3]  21/2 36/7 50/6
virtually [1]  39/9
Vista [1]  2/4
VOGT [62]
Vogt's [4]  8/25 11/9 30/3 43/3
voices [1]  8/8
voluntarily [1]  48/8
Vopper [1]  19/6

**W**

wait [1]  27/9
waive [1]  26/14
waived [2]  6/5 13/12
waiver [7]  25/5 25/9 25/10 25/19 26/5
 26/13 26/16
waiving [1]  57/23
want [25]  6/9 11/6 11/17 11/17 12/15
 14/23 14/23 29/17 35/13 35/23 36/1
 38/7 39/8 41/5 43/2 43/23 46/18 47/1
 48/5 48/9 49/21 52/5 54/12 57/12
 57/20
wanted [3]  11/4 37/24 46/21
wanting [1]  32/25
wants [7]  24/11 24/12 31/11 33/24
 39/6 44/22 45/11
warrant [1]  5/9
was [69]
Washington [2]  2/12 3/17
wasn't [3]  8/19 15/6 19/14
waste [2]  17/16 22/20
way [23]  3/20 13/13 15/2 16/14 17/19
 18/24 20/1 28/1 28/6 28/8 30/11
 30/14 30/17 34/5 37/6 47/12 47/15
 47/18 48/10 49/1 53/10 55/18 57/24
we [119]
week [1]  27/22
weekend [1]  28/2
weighed [1]  57/8
well-intentioned [1]  17/2
West [3]  2/5 2/24 60/8
What's [2]  4/14 15/9
whatever [4]  11/19 46/2 46/16 52/14
whereas [1]  8/2
whereby [1]  47/19
whether [47]  4/12 5/7 6/3 6/4 6/6 8/19
 12/17 12/19 13/11 13/13 13/14 13/15
 13/20 14/3 14/15 14/16 14/16 15/8
 16/1 16/13 16/16 16/21 17/22 18/4

18/13 18/22 18/23 18/25 19/1 19/2
 21/7 22/17 23/5 23/10 26/17 28/6
 39/12 48/13 52/7 52/8 52/8 55/5 55/6
 56/23 56/25 57/5 57/5
while [3]  17/2 18/2 24/16
wholly [1]  20/12
why [11]  5/14 21/5 22/17 23/2 31/15
 39/24 40/21 45/2 48/6 48/14 57/19
withholding [2]  37/4 40/18
within [4]  42/13 42/24 43/11 44/2
without [2]  22/6 34/15
witnesses [4]  33/7 34/8 35/17 46/23
woman [2]  32/7 53/5
woman's [1]  52/23
wondered [1]  48/14
wop [1]  33/5
word [19]  41/14 42/6 42/15 42/18
 42/21 42/25 43/15 44/3 44/21 53/16
 54/2 54/4 54/10 54/14 54/22 55/8
 55/15 56/6 58/10
words [3]  15/23 48/1 55/11
wordsmithing [3]  4/10 29/2 58/2
work [2]  53/24 54/1
working [1]  37/23
worth [1]  49/19
worthy [3]  9/7 9/10 9/22
wouldn't [5]  33/13 34/2 36/7 36/12
 47/15
Wright [1]  2/6
write [3]  16/4 17/10 17/15
writing [1]  12/12
written [7]  6/22 7/1 7/5 10/2 32/21
 37/7 37/24
wrong [2]  9/21 49/24
wrongly [1]  21/1

**Y**

year [2]  10/15 13/7
years [2]  3/24 47/24
yes [38]  3/9 3/10 3/16 5/20 7/8 9/4 9/8
 9/17 9/23 9/24 13/6 13/18 13/23
 13/24 13/25 19/24 19/25 20/12 20/19
 22/23 30/1 31/9 31/10 31/13 43/9
 43/16 44/25 46/5 49/14 51/9 52/1
 52/10 52/16 55/4 55/4 55/6 55/19
 59/1
yesterday [1]  43/14
yet [3]  10/7 21/19 42/8
York [20]  2/8 2/8 6/3 7/18 7/25 8/2 8/3
 8/20 8/21 9/13 9/13 9/14 12/18 15/18
 18/3 18/11 18/17 19/25 20/13 20/17
 21/4 21/11 22/15 25/11
you [232]
yourselves [2]  29/5 41/22