UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:18-cv-24227-CMA

JASON MILLER,

    Plaintiff,

      v.

GIZMODO MEDIA GROUP, LLC,
a Delaware Corporation, KATHERINE
KRUEGER, individually, and
WILL MENAKER, individually,

    Defendants.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW ON
SHIELD LAW/REPORTER'S PRIVILEGE**

Plaintiff, Jason Miller ("Miller"), by and through his undersigned counsel and pursuant to the Post-Discovery Hearing Administrative Order [Doc. No. 99], submits his Memorandum of Law on the Shield Law or Reporter's Privilege, and states as follows:

## I. Introduction

Gizmodo Defendants claim they are not liable for defamation because they merely published a court filing the public had a right to obtain and see. However, they refuse to disclose how they obtained that court filing. This makes no sense. Why would anyone who lawfully obtained a publicly-available court filing ask for or expect anonymity when he or she gave the filing to Gizmodo Defendants to publish? They would not. And if they did, something nefarious is afoot which the Shield Law or Reporter's Privilege does not protect.

## II. Overview of Facts

On September 21, 2018, Gizmodo Defendants published an article (the "Article") about and a copy of a false and defamatory, sealed court document (the "Supplement") originally filed by Arlene Delgado in Miller's pending Florida paternity case (the "Family Case"). [Doc. No. 5-3] Delgado filed the Supplement *pro se* on Friday, September 14, 2018. The following Monday, September 17, 2018, at 10:50 a.m., Miller filed[1] a Notice of Confidential Information directed to the Supplement under Florida Rule of Judicial Administration 2.420 (the "Confidentiality Notice") and shortly thereafter filed a Motion to Determine the Confidentiality of the Supplement (the "Confidentiality Motion") [*see* **Exhibit 1**]. The Clerk marked the Supplement

---

[1] Rule 2.420(d)(2)(A) specifically contemplates that someone other than the "filer" of a document can file a notice designating that document as "confidential" even *after* it is initially filed. Florida's Supreme Court never would have approved a rule allowing for confidential documents to be sealed *after* being initially filed without confidentiality protections if the initial filing of a document in the court file immediately and automatically meant the filing was forever "public" and could never be sealed.

"Confidential"[2] and "locked" it as soon as Miller filed his Confidentiality Notice [at **10:50 a.m. on 9/17/2018**].  [*See* **Exhibit 2** (Clerk's 11/8/2018 Response to Miller's Public Records Request)]

On the afternoon of Friday, September 21, 2018, Krueger received a copy of the Supplement "electronically from a confidential source." [*See* **Exhibit 3** (Krueger Ans. Int. No. 20)]  Shortly thereafter, Krueger e-mailed Delgado about the Supplement and its "really stunning allegations about Jason Miller."   [*See* **Exhibit 4** (Gizmodo-000045-48)]   Delgado responded shortly after 4:00 p.m., offered to confirm the "authenticity" of the Supplement, and specifically told Krueger that Miller "is looking to have this document sealed from public view/is asking the Court to seal it." [*Id.*]  Krueger replied by e-mail to Delgado at 4:13 p.m., attaching an electronic copy of the Supplement.  [*Id.*]  The pdf file attached to Krueger's 9/21/2018 email includes metadata showing that it was created on September 17, 2018 at 11:00 a.m. (*ten minutes after Miller filed his Confidentiality Notice sealing the Supplement*).  [*See* **Exhibit 5** (Dec. of David Hayes, Ex. D)]  At 5:03 p.m. Delgado replied to Krueger, confirmed the "authenticity" of the Supplement, and *incorrectly* told Krueger "it isn't sealed." [Ex. 4]  As set forth above, because of Miller's September 17, 2018 Confidentiality Notice and Motion, the Supplement was already temporarily sealed under Rule 2.420.  Gizmodo Defendants rushed to publish it anyway.

---

[2] "Confidential" in this context means "that such information is *exempt from the public right of access* under article I, section 24(a) of the Florida Constitution and may be released only to the persons or organizations designated by law, statute, or court order." Rule 2.420(b)(4) (*emphasis added*).  Miller's Confidentiality Notice and Motion automatically, albeit temporarily, sealed the Supplement. *See In re. Amendments to Florida Rule of Judicial Administration 2.420*, 954 So.2d 16, 21-23 (Fla. 2007) ("The clerk must treat all records subject to such a [sealing] motion as confidential pending resolution of the motion… Because the mere filing of a motion has the effect of making materials confidential, a hearing must be held within thirty days…").

**III.    Overview of Objections to Discovery**

Miller served interrogatories and requests for production on Kruger and Gizmodo [*See* **Composite Exhibit 6**] seeking evidence associated with the source of the Supplement and Gizmodo Defendants' fair reporting privilege defense and their state of mind as it relates to the issue of actual malice. Among other things, Miller sought from Gizmodo Defendants:

1. facts and documents concerning how they obtained the Supplement (Gizmodo Int. No. 1; Kruger Int. No.1; Gizmodo Req. No. 1, 6, 12, 16-17; Krueger Req. No. 1, 6, 12, 16-17);

2. the original version of the Supplement they received from their source (Gizmodo Req. No. 3-4; Krueger Req. No. 3-4);

3. their internal and external communications about the Supplement and its publication (Gizmodo Int. No. 2, 7, 16, 18; Kruger Int. No. 2, 8, 16, 18; Gizmodo Req. No. 9, 23-24; Krueger Req. No. 9, 24-25);

4. facts and documents concerning the research and fact-checking they conducted concerning the facts alleged in the Supplement (Gizmodo Int. No. 3-5, 11; Kruger Int. No.3-5, 12; Gizmodo Req. No. 13-14; Krueger Req. No. 13-14);

5. documents evidencing the truth or falsity of the facts alleged in the Supplement (Gizmodo Req. No. 20-21; Kruger Req. No 21-22); and

6. all versions and drafts of and revisions to the Article (Gizmodo Req. No. 36; Krueger Req. No. 30).

In response to this discovery, Gizmodo Defendants objected based on the shield law/reporter's privilege and attorney-client privilege/work product, refused to provide most of the requested information and documents, and redacted information from documents they did produce. Gizmodo Defendants also served a privilege log [*See* **Exhibit 7**], in which they did not identify any communications or agreements with their allegedly "confidential" source.

**IV.    Overview of Shield Law**

Under Florida law, the "Reporter's Privilege" or "Shield Law" has three sources: common law, Florida's statutory Shield Law (§ 90.5015, *Fla. Stat.*), and the First Amendment.

*See Gubarev v. BuzzFeed, Inc.*, 2017 WL 6547898, *2, 46 Media L. Rep. 1034 (S.D. Fla. Dec. 21, 2017) (citing *Carroll v. TheStreet.com, Inc.*, 2014 WL *5474048, *8* (S.D. Fla. Apr. 10, 2014)(stating that "[l]ike Florida's statutory privilege, [the] federal common-law privilege is the progeny of the concurrence in *Branzburg v. Hayes*, 408 U.S. 665 (1972)…"); *Price v. Time, Inc.*, 416 F.3d 1327, 1343 (11th Cir.), *as modified on denial of reh'g,* 425 F.3d 1292 (11th Cir. 2005). Like Florida, New York recognizes a common law, qualified reporter's privilege, and also enacted a statute codifying the privilege. *See Sullivan v. Hurley*, 167 Misc.2d 534, 536-38, 635 N.Y.S.2d 437, 439-40 (1995) (discussing history of common law and statutory privilege under New York law); *O'Neill v. Oakgrove Construction, Inc.*, 71 N.Y.2d 521, 528, N.Y.S.2d 1, 523 N.E.2d 277 (1988); *NY Civil Rights Law* § 79-h.

Under Florida and Federal law, the reporter's privilege is qualified and can be overcome by satisfying slightly different three-part tests.[3]  *See* § 90.5015, *Fla. Stat.* ("[a] professional journalist has a qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news"); *Gubarev*, 2017 WL 6547898 at *2.

Like Florida, New York's common law recognizes a qualified privilege that "exist[s] simultaneously under the First Amendment of the Federal Constitution and Article I, § 8 of the New York Constitution." *Sullivan*, 635 N.Y.S.2d at 439-40.  However, New York's statutory

---

[3] Under Section 90.5015(2), *Florida Statutes*, the privilege can be overcome by a clear and specific showing: (1) the information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought; (2) the information cannot be obtained from alternative sources; and (3) a compelling interest exists for requiring disclosure of the information.  The qualified reporter's privilege under the First Amendment can be overcome through a showing of substantial evidence that: (1) the challenged statement was published and is both factually untrue and defamatory; (2) reasonable efforts to discover the information from alternative sources have been made and no other reasonable source is available; and (3) knowledge of the identity of the informant is necessary to proper preparation and presentation of the case.  *Price*, 416 F.3d at 1343.

shield law provides for an "absolute" privilege to protect the sources of *confidential* news, as well as a "qualified" privilege for *nonconfidential* news.  NY Civil Rights Law § 74h(b)-(c).  New York's absolute privilege only applies to "news obtained or received ***in confidence*** or the identity of the source ***of any such news*** coming into such person's possession in the course of gathering or obtaining news for publication or to be published…"  NY Civil Rights Law §79-h(b) (emphasis added).  Where "news" is <u>not</u> received "in confidence,"[4] the journalist has only a qualified privilege to "refus[e] or fail[] to disclose ***any unpublished news*** … or the source of ***any such news*** … unless the party seeking such news has made a clear and specific showing that the news:  (i) is highly material and relevant;  (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto;  and (iii) is not obtainable from any alternative source.  NY Civil Rights Law §79-h(c) (emphasis added).

### V.   Gizmodo Defendants Are Not Entitled to or Waived New York's Absolute Statutory Privilege

Gizmodo Defendants have not met and cannot meet their burden to establish an absolute privilege under New York's statutory shield law.  "To invoke the privilege the journalist carries the burden of proffering at least preponderant of evidence of the mutuality of the understanding, or agreement, of confidentiality."  *Andrews v. Andreoli*, 92 Misc.2d 410, 418, 400 N.Y.S.2d 442, 447 (1977).[5]

---

[4]  A plain reading of § 79-h shows that New York's absolute privilege does not apply unless the news published by the journalist is received "in confidence."  Otherwise, the privilege is merely qualified and only applies to ***unpublished*** news and the source of that ***unpublished*** news ("any such news" refers back to "unpublished news").

[5] This can be done by presenting proof of an express understanding or agreement or proof of circumstances from which a mutual agreement of confidentiality may reasonably be implied.  *Andrews*, 400 N.Y.S.2d at 447.  When the journalist attempts to prove an agreement through circumstantial evidence, the evidence must be sufficient for the Court to conclude "the principals mutually intended that *the identity of the source <u>and</u> the substance of the news would remain confidential.*"  *Id.* at 448 (emphasis added).  "Obviously, *no implication of confidentiality will*

Gizmodo Defendants carry a heavy burden because evidentiary privileges are disfavored. *Herbert v. Lando*, 441 U.S. 153, 175 (1979). Establishing the requisite "cloak of confidentiality" to support the absolute privilege requires more than a request by the source to keep his or her identity confidential. *PPM America, Inc. v. Marriott Corp.*, 152 F.R.D. 32, 36 (S.D.N.Y. 1993). There must be sufficient evidence of an agreement to maintain confidentiality at the time the "news" is supplied to the journalist. *Torah Soft, Ltd. v. Drosnin*, 2001 WL 1425381, *4 (S.D.N.Y. Nov. 14, 2001).

Here, Gizmodo Defendants wholesale objections to Miller's discovery requests offer no proof of an agreement to maintain the Supplement or its source confidential, and their privilege log does not contain any mention of an agreement with their "source." [Ex. 6-7] They failed to meet their burden.

Even if Gizmodo Defendants belatedly offer some evidence to support the existence of an alleged agreement to maintain the confidentiality of their "source," there is no reasonable basis to conclude the Supplement was actually obtained or received "in confidence." *Blum v. Schlegel*, 150 F.R.D. 42, 45 (W.D.N.Y. 1993) (journalist must "convincingly" demonstrate information is entitled to absolute protection); *PPM America*, 152 F.R.D. at 36; *Application of Dack*, 101 Misc.2d 490, 502, 421 N.Y.S.2d 775, 783 (1979). The Article never mentions a

---

*exist where the facts and circumstances are inconsistent with its existence*, or are inconsistent with the declarations of the informant or source, or are inconsistent with or opposed to the intention or understanding of either or both of the principals, or, generally, where an express or specific agreement of confidentiality of <u>both identity of the source <u>and</u> substance of the news clearly exists</u>." *Id.* (emphasis added).

"confidential source" and nothing suggests the source asked for or was given an assurance of confidentiality.[6]

More importantly, the circumstances here do not support a reasonable conclusion the Supplement was transmitted to Gizmodo Defendants "in confidence."  In fact, there is no rational basis to conclude the source of what Gizmodo Defendants maintain was a public court filing, supposedly open to inspect and copy, would have requested their identity be maintained "confidential."  Also, Gizmodo Defendants' assert the fair reporting privilege as a defense in this case.  Their only justification for the fair reporting privilege is under the "agency" [7] rationale because their sole purpose was to "report on a court filing by Delgado."  [Doc. 44 at p. 1 and 5 ("…it simply reports on the filing")]

Under these circumstances, Gizmodo Defendants contention their source is "confidential" is antithetical to the fair reporting privilege.  Why would someone who came into a possession of what they honestly believed was a public court filing ask for or be given confidentiality?  If the source truly believed he or she was sending something to Krueger that was publicly-available and lawfully obtained, what rational, reasonable basis would there be to shroud that transmission in darkness?  This is not a situation where an anonymous source obtained confidential information about governmental action and sought anonymity from the press so it could publish

---

[6] In the Article, Krueger states, "According to court documents—which were filed in Miami-Dade Circuit Court on Sept. 14 **and obtained** [not received] **by Splinter**…."  The Article further states "Delgado confirmed the document's authenticity to Splinter…" [Doc. No 5-3, pp. 3, 5]

[7] *Medico v. Time, Inc.* labeled the fair reporting privilege's justifications "agency" ("one who reports what happens in a public, official proceeding acts as an agent for persons who had the right to attend, and informs them of what they might have seen for themselves.") and "public supervision" ("the security which publicity gives for the proper administration of justice").  643 F.2d 134, 141 (3rd Cir. 1981); *see also Hogan v. Herald Co.*, 446 N.Y.S.2d 836, 841-42 (1982) ("The theory behind the rule of fair report is that the publisher acts as agent of the public, reporting only that which others could hear for themselves were they to attend the proceedings. It has also been justified on policy grounds because the public has supervisory or oversight responsibilities over public bodies and officers.")

news to inform the public about the inner-workings of government. *New York Times Co. v. United States*, 403 U.S. 713 (1971). This is a situation where someone sent Krueger a copy of a court filing Gizmodo Defendants claim anyone could have walked into the courthouse and obtained themselves. If that is the case, there is no plausible basis to conclude the source sent Gizmodo Defendants the Supplement in confidence; and certainly no evidence to support that conclusion.

## VI. Choice of Law

If the Court concludes there was no agreement between Gizmodo Defendants and their source to treat the Supplement and its source's identity confidential, there is no reason for a choice of law analysis. As set forth above, the tests to overcome the qualified reporter's privilege in Florida and New York are virtually identical. *See* § 90.5015(2), *Fla. Stat.*; New York Civil Rights Law § 79-h(c). However, if the Court believes Gizmodo Defendants can meet their burden to establish New York's statutory absolute privilege could apply, a choice of law analysis would be required.

In that event, the approach of Section 139 of the Restatement (Second) of Conflict of Laws ("Restatement") controls. *Anas v. Blecker*, 141 F.R.D. 530, 532 (M.D. Fla. 1992). Comment (e) to the Restatement explains that the "state with the most significant relationship will *usually* be the state where the communication took place, which as used in the rule of this Section, is the state where an oral interchange between persons occurred, where a written statement was received, or where an inspection was made of a person or thing." (emphasis added) Although it appears Krueger received the electronic transmission of the Supplement in New York, the "most significant relationship" test also considers several other factors which are important and weigh in favor of applying Florida law: (1) the number and nature of the contacts

that the state of the forum has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded; (3) the kind of privilege involved; and (4) fairness to the parties.

Under the first factor, the Restatement provides "if the contacts with the state of the forum are numerous and important, the forum will be more reluctant to give effect to the foreign privilege and to exclude the evidence than it would be in a case where the contacts are few and insignificant." *See* Comment on Subsection (2). This case involves the publication of a sealed Florida paternity case court filing containing false accusations Delgado used to coerce Miller to accede to unreasonable demands in the Florida family law case involving his parental rights and minor child residing in Florida. [Doc. 5 ¶¶ 32, 41, 81] *See Mazzella v. Philadelphia Newspapers, Inc.*, 479 F.Supp. 523, 527 (E.D.N.Y. 1979) (defamation case applying the reporter's privilege of the state where "the events that led to the article" in question took place). Also, Gizmodo is registered to do business in Florida. [*See* **Exhibit 8**] Florida has a vested interest in ensuring litigants in its courts are afforded the confidentiality protections available under its common and statutory laws and that businesses registered to do business here are held accountable under those laws.[8]

As for the second factor, the relative materiality in the particular case of the evidence that is sought to be excluded, the Restatement provides: "The forum will be more inclined to give effect to the foreign privilege and to exclude the evidence if the facts that would be established by this evidence would be unlikely to affect the result of the case or could be proved in some other way." *See* Comment on Subsection (2). Here, Gizmodo Defendants' source is highly

---

[8] Florida Rule of Judicial Administration 2.420(i) grants Florida's courts the power to sanction parties, non-parties, and their attorneys for improperly seeking access to confidential court files and making or attempting to make confidential court filings public.

material because, as set forth above, the fair reporting privilege and actual malice are at issue. Under the fair reporting privilege, the source of material published by the defendant is relevant (*see* Section VIII.B, *infra*). Miller cannot prove the source of the Supplement through anyone other than Gizmodo Defendants (*see* Section VII.C, *infra*). And the source is highly-relevant to the actual malice inquiry (*see* Section VII.D, *infra*).

The third factor is the kind of privilege involved. Here, this factor is not significant because Florida and federal law already recognize a reporter's privilege sufficient to protect Gizmodo Defendants. The only difference between the statutory privileges is the potential availability of an absolute privilege under New York law, but even New York courts have questioned the appropriateness of an absolute protection because it exceeds the bounds of the qualified privilege necessary to protect journalists: "Although the newsgathering privilege is a fundamentally protected right, it should not be considered absolute or for that matter the unwritten 'Eleventh Commandment.'" *Sullivan*, 635 N.Y.S.2d at 440-41; *see also Herbert*, 441 U.S. at 175 ("Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances.").

As for the fourth factor, fairness to the parties, the Restatement provides: " The forum will be more inclined to give effect to a privilege if it was probably relied upon by the parties." *See* Comment on Subsection (2). Here, nothing indicates Gizmodo Defendants or their source relied on the absolute privilege. In fact, as set forth above, the nature of the Article, publication of the Supplement, transmission of the Supplement to Delgado, and agency rationale for the fair reporting privilege suggest no one relied on New York's absolute privilege. Moreover, fairness dictates Gizmodo Defendants should be precluded from reliance on the absolute privilege because they asserted attorney-client privilege objections in response to Miller's discovery

requests seeking their communications about publishing the Supplement, thus failing to disclose what, if anything, they relied upon before publishing the Supplement. [*See* Gizmodo Int. No. 2, 7, 16, 18; Kruger Int. No. 2, 8, 16, 18; Gizmodo Req. No. 9, 23-24; Krueger Req. No. 9, 24-25]

## VII. Miller Can Overcome The Shield

Under the shield law tests employed under Florida, New York, and Federal law, Miller is entitled to all the discovery he seeks. "Courts should not apply the [tests] as if strapped by a wooden set of rules. Rather, the test should be flexibly employed, taking into account various factors which diminish the strength of the qualified immunity privilege." *Lipinski v. Skinner*, 781 F.Supp. 131, 136 (N.D.N.Y. 1991).

### A. The Article & Supplement Are Factually Untrue and Defamatory

Under the Federal reporter's privilege, one factor Miller must establish is that the statements at issue are factually untrue and defamatory. *Price*, 416 F.3d at 1343. Here, there is no dispute. The accusations that Miller had a relationship with, impregnated and slipped an abortion pill to a stripper in a smoothie, killing her unborn child and almost killing her, and then tried to silence her with a non-disclosure agreement, and that he physically abused another woman in Clearwater, are completely false and defamatory *per se*. [*See* Doc. No. 5-1 (Jane Doe Declaration); **Exhibit 9** (Jason Miller Declaration)] Delgado even confirmed through recent discovery she has no proof of any of these accusations. [*See* Doc. No.88, Resp. to Nos. 2, 5-6]]

### B. The Information is Relevant and Material to Unresolved Issues in this Case

Gizmodo Defendants' source is a central issue in this case for several reasons. First, as set forth in Section VII.D, *infra*, actual malice is an element of Miller's claims and puts the source squarely at issue. *Herbert*, 441 U.S. at 170-175. Second, Gizmodo Defendants assert the fair reporting privilege which, as Miller explains in his Opposition to their Motion to Dismiss

[Doc. No. 53, pp. 5-16], does not protect defendants who publish sealed, false court filings from family law cases when those defendants obtain the sealed filings from private litigants rather than public officials.[9] Third, Miller asserts a claim that Gizmodo Defendants conspired with Delgado to publish the Supplement. [Doc. No. 5, p. 39] Clearly, the source of the Supplement is critical to that claim. In fact, there is authority suggesting such a conspiracy casts doubt on the independence of the journalist, which results in no reporter's privilege at all or, at minimum, one that is weaker and more easily overcome. *Chevron Corp. v. Berlinger*, 629 F.3d 297, 309 (2d Cir. 2011).

### C. The Information Cannot Be Obtained From Alternative Sources

There is a very limited universe of "sources" of the Supplement. At a hearing in the Family Case on September 24, 2018, the Judge and Clerk confirmed these sources: the parties, their counsel of record, the clerk, and the court. [Doc No. 5-10, p. 5]

Putting aside the absurdity of suggesting the Family Case court was the source, Judge Sarduy confirmed on September 24, 2018 (after the 9/21/18 publication) he had not even seen the Supplement. [Doc. No. 32, Ex. H, pp. 5:22-7:11; 12:20-13:6] As for the Clerk, Miller issued a public records request through which the Clerk confirmed they have no records of providing the Supplement to anyone. [Ex. 2] Moreover, the Clerk could not have been Gizmodo Defendants' source because Krueger states in the Article she had to confirm the "authenticity" of

---

[9] As Miller explained, media defendants can publish sealed court filings under the protections of the fair reporting privilege when they obtain those filings **from government officials** (such as clerks and prosecutors) [Doc. 53, pp. 5, 7-9]. However, where media defendants obtain sealed court filings from private litigants, even though they are not restrained from publishing them, they are subject to liability if the contents of the sealed court filings they publish are *false*. Miller already provided the Court with a chart of the fair reporting privilege cases briefed by the parties, which identifies the nature of the material published, its source, and the justification for the privilege. (See Doc. No. 68-1) On this chart, the cases in which the fair reporting privilege did not apply are shaded and involved situations where the press published false, sealed court filings they obtained from private litigants.

the Supplement through Delgado—which would not have been necessary if it was obtained through the clerk.[10]

As for Miller, he and his counsel of record have submitted Declarations herewith attesting they are not the source and did not send the Supplement to Krueger. [*See* Ex. 9 (Miller), **Exhibit 10** (Martin-Lavielle) and **Exhibit 11** (Vogt)] As for Delgado's counsel of record, Richard Schurr, Esq., he responded to Miller's subpoena seeking the production of any documents through which he transmitted the supplement to anyone on or before September 21, 2019, by confirming he had none. [*See* **Exhibit 12**, Req. No. 2] And Delgado responded to the same request in her subpoena by stating that the only person to whom she provided the Supplement on or before September 21, 2019 was Mr. Schurr. [*See* Doc. No. 88, Req. No. 3]

It is not necessary for Miller to engage in the fruitless exercise of deposing Delgado, her counsel, and the Clerk to confirm these facts. *Capuano v. Outlet Co.,* 579 A.2d 469, 475-76 (R.I. 1990) (plaintiff not required to engage in "preliminary futile depositions" to establish no alternative source). According to Krueger, documents exist through which the Supplement was electronically transmitted. [*See* Ex. 3] In fact, Gizmodo produced a series of messages in which the image of the transmission communication is redacted. [*See* **Exhibit 13;** Gizmodo-000001-04] The fact that Delgado and Mr. Schurr deny having any transmittal documents already shows Miller cannot obtain the identity of the source from anyone other than Gizmodo Defendants. *Lipinski*, 781 F. Supp. at 137 (plaintiff exhausted alternative sources by establishing they denied releasing his HIV test results); *Sullivan*, 167 Misc.2d at 541 (alternative sources excluded because they offered conflicting testimony and were in adversarial position to plaintiff)

---

[10] If Gizmodo Defendants *unlawfully* obtained the Supplement from the clerk (i.e. bribery), no privilege would apply. *See, U.S. v. Sanusi*, 813 F.Supp. 149, 155 (E.D.N.Y. 1993) (journalists have "no special privilege to invade the rights and liberties of others" and are not immune from torts or crimes committed during the course of newsgathering).

{BC00193849:1}  13

### D.      A Compelling Interest Exists for Requiring Disclosure

Gizmodo Defendants are parties to this proceeding, not non-parties responding to a subpoena, in which the fair reporting privilege and actual malice are at issue. [Doc. No. 5, pp. 27-32; Doc. No. 44] In a defamation case filed by a public figure in which a journalist is a party, the refusal to disclose the source of libelous statements "deprive[s] the plaintiff of access to valuable and material evidence on a critical element of the plaintiff's cause of action [actual malice]." *Greenberg v. CBS Inc.*, 69 A.D.2d 693, 708, 419 N.Y.S.2d 988, 996 (1979); *Herbert*, 441 U.S. at 170 ("To erect an impenetrable barrier to the plaintiff's use of such evidence on his side of the case is a matter of some substance, particularly when defendants themselves are prone to assert their good faith belief in the truth of their publications, and libel plaintiffs are required to prove knowing or reckless falsehood with 'convincing clarity.'"). Gizmodo Defendants cannot challenge actual malice without "put[ting] in issue the very privilege upon which they rely…[and are]…using the 'Shield Law' affirmatively as a sword to prevent challenge by the plaintiff." *Id.* at 709, 997. "Such exploitation of the [shield law] statute vitiates the limited right to recovery that the plaintiff has as a private individual, and should not be permitted. This purpose was not intended by the Legislature nor is such a use mandated by the First Amendment." *Id.* (citations omitted).

A compelling need also is established where the only source for the defamatory comments at issue is the source the defendants are trying to conceal. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726 (1980) (compelling need may be established where the "only source for the allegedly libelous comments is the [confidential] informant."); *Price*, 416 F.3d at 1345 ("[W]here the only source for the allegedly libelous comments is the informant, a

compelling need may be established."). Here, it is undisputed Krueger only received the Supplement from her "confidential" source before it was published. [Ex. 3]

Miller's need for the discovery at issue here is so compelling that Florida and New York courts have denied summary judgment and precluded media defendants from contesting actual malice when they refuse to provide the plaintiff discovery associated with their source and the efforts they made to investigate the truth of allegedly defamatory statements. *Greenberg*, 619 A.D.2d at 709; *Capuano v. Outlet Co.*, 579 A.2d 469, 477 (1990) ("When the plaintiff is required to show by clear and convincing evidence that the defendant acted with malice, we find it impossible to uphold a discovery ruling that denies the plaintiffs the opportunity to examine the confidential sources on which the defendant relies…where a defendant pleads a defense of good faith and further testifies that the [defamatory] article was based on a reliable [confidential] source, the statutory privilege will be deemed to have been waived."); *Collins v. Troy Pub. Co., Inc.*, 213 A.D.2d 879, 880-881, 623 N.Y.S.2d 663, 665 (1995) (same); *Cape Publications, Inc. v. Bridges*, 387 So.2d 436, 439 (Fla. 5th DCA 1980) (affirming trial court order requiring disclosure of reporter's research, investigatory materials, notes, and similar materials in defamation case). *Bridges* cited to *Herbert v. Lando*, 441 U.S. 152 (1979) and *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967), both of which recognize the appropriateness of discovery inquiring into "the editorial process and state of mind of those responsible for the [defamatory] publication" at issue. 387 So.2d at 439.

## **CONCLUSION**

Miller has overcome the Shield Law. Gizmodo Defendants should not be permitted to shroud their source of the Supplement in secrecy. If they do, they should suffer the consequences of that decision.

Dated:  April 8, 2019.	Respectfully submitted,

/s/ Shane B. Vogt
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Shane B. Vogt – FBN 257620
E-mail:  svogt@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 443-2199
Fax: (813) 443-2193
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 8, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

/s/ Shane B. Vogt
Attorney