UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-24227-CIV-ALTONAGA/Goodman

**JASON MILLER**,

      Plaintiff,
v.

**GIZMODO MEDIA GROUP, LLC**; *et al.*,

      Defendants.
_____/

## **ORDER**

**THIS CAUSE** came before the Court on Defendant, William Menaker's Renewed Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim [ECF No. 70]. Plaintiff, Jason Miller, filed a Response [ECF No. 72], to which Defendant filed a Reply [ECF No. 82]. The Court has carefully considered the First Amended Complaint [ECF No. 5], the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted.

### I. BACKGROUND

This case arises over an allegedly defamatory statement published in an article on a news website, *Splinter*, then circulated by other media outlets, and then posted on Twitter. While the First Amended Complaint details the alleged defamation, only the allegations relevant to the issue of personal jurisdiction are outlined below.

#### A. Plaintiff's Allegations

Plaintiff is a communications strategist and political manager who served as Senior Communications Advisor on President Donald Trump's 2016 campaign. (*See* Am. Compl. ¶ 37). In February 2017, Plaintiff joined Teneo Strategy, a company that advises Fortune 500 CEOs on

crisis communications and media relations. (*See id*. ¶ 38). In March 2017, Plaintiff also began working as a political commentator for CNN, often appearing on national television advocating for and defending the Trump Administration. (*See id*.). He resides in Virginia. (*See id*. ¶ 18).

Defendant Katherine Krueger is the Managing Editor of a news website, *Splinter*, and an outspoken critic of the Trump Administration. (*See id*. ¶ 95). She resides in New York. (*See id*. ¶ 30). Defendant Gizmodo Media Group, LLC's sole member is Univision Interactive Media, Inc. ("Fusion"), a Delaware corporation with its principal place of business in New York. (*See id*. ¶ 19). Fusion operates a network of national and local online and mobile websites, including *Splinter*, from offices in New York. (*See id*. ¶¶ 20–24). Defendant William Menaker, a close friend of Krueger's, is a freelance writer, contributor for the *Huffington Post*, and host of a podcast known for its commentary on the 2016 election. (*See id*. ¶¶ 116–117). Menaker also resides in New York. (*See id*. ¶ 31).

The background of this case begins in 2016, when Plaintiff allegedly had an affair with Arlene Delgado, who served with Plaintiff on the 2016 campaign. (*See id*. ¶¶ 37, 40). The alleged affair resulted in Deglado's pregnancy. (*See id*. ¶ 37). Delgado lives in Miami, Florida. (*See id*. ¶ 32).

In July 2017, Plaintiff filed a petition in Miami-Dade Family Circuit Court to ensure he would be part of his and Delgado's son's life. (*See id*. ¶ 41). The proceedings in Family Court turned hostile. (*See id.* ¶¶ 10, 42–50). In March 2018, Delgado filed a motion in Family Court to compel Plaintiff to a psychological evaluation. (*See id*.; Family Court Case Docket [ECF No. 5-9] 13–14). On September 14, 2018, Delgado filed a Supplement to that motion, in which she accused Plaintiff of surreptitiously giving a woman an "abortion pill" — inducing an abortion

without the woman's consent years earlier. (Am. Compl. ¶¶ 2, 52, 88, 97–98, 162). From the time it was filed, the Supplement was sealed. (*See id.* ¶ 91).

On September 21, 2018, Krueger published a news report on *Splinter* exposing the story recounted in the Supplement. (*See id.* ¶¶ 12, 96–98; *see also Splinter* Article [ECF No. 5-3]). The article, titled "Court Docs Allege Ex-Trump Staffer Drugged Woman He Got Pregnant with 'Abortion Pill,'" included a link to the sealed Supplement. (Am. Compl. ¶ 96). After the *Splinter* report was published, widespread coverage of the story by other media outlets began. (*See id.* ¶ 104). The coverage prompted Fox News Sunday to cancel Plaintiff's scheduled appearance for the following Sunday, September 23, 2018 (*see id.*), and by the end of the weekend, Plaintiff had lost his job at CNN (s*ee id.* ¶¶ 109–111).

On October 15, 2018, Plaintiff filed his initial Complaint [ECF No. 1] against Krueger and *Splinter*'s corporate parent, Gizmodo. (*See generally* Compl.). Plaintiff stated claims for defamation *per se* (Count I), tortious interference with advantageous business relationships (Count II), intentional infliction of emotional distress (Count III), invasion of privacy (Count IV), and civil conspiracy (Count V). (*See id.* ¶¶ 127–173). He sought damages exceeding $100,000,000.00. (*See id.* ¶ 17).

The next day, Menaker posted on Twitter: "Rat-faced baby-killer and Trump PR homunculus, Jason Miller, is suing my girlfriend for $100 million, cool!" (Am. Compl. ¶ 120). Menaker's Twitter post linked to an article in the *New York Post*'s celebrity news and gossip site *Page Six* about this case, titled "Jason Miller files $100M defamation suit against Gizmodo Media Group." (*Id.*).

On October 18, 2018, Plaintiff filed the operative First Amended Complaint, alleging the same claims against Defendants Krueger and Gizmodo as in the original Complaint, and adding a

defamation *per se* claim against Menaker (Count VI) for calling Plaintiff a "baby killer" in his October 16, 2018 Tweet. (*Id.* ¶¶ 207–216). Plaintiff alleges significant damages "to his reputation, humiliation, embarrassment, mental suffering, shame, emotional distress and other harms . . . ." (*Id*. ¶ 213 (alteration added)).

### B. Motion to Dismiss

Following jurisdictional discovery, Menaker filed the present Motion, seeking dismissal of the First Amended Complaint based on lack of personal jurisdiction and for failure to state a claim for relief.[1] (*See generally* Mot.; Joint Status Report Regarding Jurisdictional Discovery [ECF No. 67]). Along with their briefing, the parties supply additional facts uncovered through jurisdictional discovery for the Court's consideration.

Menaker submits his declaration emphasizing his lack of contacts with Florida. (*See* Declaration of William Menaker [ECF No. 70-1] ("Menaker Decl.")). In his Declaration, Menaker states he lives in Brooklyn, New York and has never lived in Florida. (*See id*. ¶¶ 3–4). He does not own any property or have bank accounts in Florida, has never paid taxes or registered to vote in Florida, does not have direct investments in any Florida business, and has never been employed by a Florida business or resident. (*See id*. ¶¶ 5–11). Menaker also attests that to the best of his recollection, he has only visited Florida four times – twice on family vacations to Disney World and twice on family vacations to Key West. (*See id.* ¶ 13). Plaintiff's most recent visit to Florida was over 10 years ago. (*See id*.). In addition, and perhaps most significantly, Menaker states he did not call anyone in Florida or otherwise communicate with any Florida sources in connection with the Twitter post. (*See id*. ¶ 12).

---

[1] As the Court concludes it lacks personal jurisdiction over Menaker, a threshold inquiry, it does not reach whether Plaintiff states a defamation claim in Count VI.

Plaintiff provides his own declaration, in which he states although he resides in Virginia, he previously resided in Florida. (*See* Declaration of Jason Miller [ECF No. 72-1] ¶ 1 ("Miller Decl.")). He states CNN has a wide Florida audience, and as part of his employment with Teneo Strategy, he works with clients who conduct business in Florida. (*See id*. ¶ 3). In addition, the case in family court is still pending in Miami, Florida; and Delgado and their minor son reside in Florida. (*See id*. ¶¶ 5–6). Plaintiff also explains the *Splinter* article at issue was about the Supplement filed in Miami-Dade Family Court; and Menaker's October 16, 2018 Twitter post called Plaintiff a "baby killer," referencing this action. (*Id.* ¶¶ 7–8). Plaintiff contends he has "vested personal and economic interests in this state; most importantly [his] minor son, as well as [his] paternity case, this lawsuit, and [his] personal and professional reputation." (*Id*. ¶ 9 (alterations added)). He claims his "interests in Florida were harmed by Menaker's defamatory Tweet, and [he] suffered effects of Mr. Menaker's tweet in Florida, specifically including damage to [his] personal and professional reputation in Florida." (*Id*. (alterations added)).

In the Response, Plaintiff also relies on a declaration filed as an exhibit to his Motion for Leave to Amend the First Amended Complaint [ECF No. 57]. (*See* Resp. 4–5, 7). In that declaration, Erik Zimmerman, a Project Manager at Trial Consulting Services, LLC, details his review of Menaker's Twitter account. (*See* Declaration of Erik Zimmerman [ECF No. 57-7] ¶¶ 2–3 ("Zimmerman Decl.")). At the time of the review, Menaker had approximately 82,000 Twitter followers and about 200 of Menaker's followers listed their location as Florida. (*See id*. ¶¶ 4, 6–7). At least three of Menaker's Florida Twitter followers "liked, commented on, or retweeted" Menaker's October 16, 2018 Tweet. (*Id.* ¶¶ 9–11).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. "There are two types of personal jurisdiction: specific and general." *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990). "General personal jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose," whereas "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [a state]." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (alterations added; citations omitted).

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff must establish a prima facie case of jurisdiction over a non-resident defendant." *Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014) (per curiam) (citations omitted). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara*, 916 F.2d at 1514 (citation omitted). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Id*. (citation omitted).

If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a prima facie showing that the court lacks specific personal jurisdiction. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam) (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)). "The defendant then must raise, through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (per curiam) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th

Cir. 1996)) (alteration and internal quotation marks omitted). "To the extent not contradicted by the defendant's affidavits, the court should accept the facts alleged in the complaint as true." *Sutherland v. SATO Glob. Sols., Inc.*, No. 17-cv-61596-WPD, 2018 WL 3109627, at *3 (S.D. Fla. Apr. 10, 2018) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999)). "In the event of a conflict, all reasonable inferences should be made in favor of the plaintiff." *Id.* (citation omitted).

### III. DISCUSSION

Menaker moves to dismiss the First Amended Complaint's defamation claim in Count VI, arguing the Court lacks personal jurisdiction over him. (*See generally* Mot.). The limited question before the Court is whether the Court may exercise *specific* personal jurisdiction, as Plaintiff does not allege *general* personal jurisdiction over Menaker. (*See* Am. Compl. ¶ 35; *see also* Resp.). A court may exercise specific personal jurisdiction over a non-resident defendant if: (1) the relevant state long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Posner*, 178 F.3d at 1214 (citation omitted). The Court addresses Florida's long-arm statute and the Due Process Clause in turn.

#### A. Florida's Long-Arm Statute

Under Florida's long-arm statute, a court may exercise specific personal jurisdiction over a non-resident defendant who engaged in one of the enumerated acts listed under Florida Statute section 48.193(1)(a). *See Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 790 (11th Cir. 2017) (per curiam) (quoting *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015)). The scope of Florida's long-arm statute is a question of Florida law. *See Madara*, 916 F.2d at 1514.

The relevant portion of the long-arm statute states a defendant may be subject to the jurisdiction of a court in Florida "for any cause of action arising from . . . . [c]omitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2) (alterations added). In Florida, a nonresident defendant "commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when the nonresident makes allegedly defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and accessed in Florida." *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010); *see also Internet Sols. Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) (adopting standard set forth by the Florida Supreme Court).

Plaintiff, a Virginia resident, claims Menaker, a New York resident, defamed him in a Twitter post accessible to Menaker's 82,000 Twitter followers.[2] (*See* Am Compl. ¶¶ 18, 31; *see also* Zimmerman Decl. ¶ 4). Menaker argues Plaintiff fails to establish a prima facie case under Florida's long-arm statute because: (1) Plaintiff does not allege Menaker's statement was accessed by a third party in Florida, and (2) Plaintiff is not a Florida resident. (*See* Mot. 7–8; Reply 3–4). Plaintiff disagrees, drawing the Court's attention to Zimmerman's Declaration, which shows third parties accessed the Tweet in Florida. (*See* Resp. 4–5). Plaintiff also contends he need not be a Florida resident to benefit from the long-arm statute. (*See id*. 4–5).

The Court agrees with Menaker. In Florida, the tort of defamation "is committed in the place where the defamatory material is published." *Catalyst Pharms., Inc. v. Fullerton*, No. 16-25365, 2017 WL 6558397, at *6 (S.D. Fla. Aug. 8, 2017), *aff'd* 748 F. App'x 944, 947 (11th Cir. 2018) (internal quotation marks and citations omitted). Where the alleged defamatory statement

---

[2] Depending on Menaker's Twitter settings, his Twitter posts are either publicly available to anyone, regardless of whether they have a Twitter account, or limited to his Twitter followers.

is published on a website to readers worldwide, the pivotal issue is whether the information was "accessed, and thereby published, in Florida." *Id*. (dismissing amended complaint for lack of personal jurisdiction because complaint did not allege facts showing the statements were accessed in Florida); *see also Internet Sols. Corp.*, 39 So. 3d at 1215.

Plaintiff does not allege Menaker's Twitter post was accessed by a third party in Florida. (*See generally* Am. Compl.). Although Plaintiff need not reside in Florida to benefit from the long-arm statute, Plaintiff *does* have to allege harm in Florida, which he does not do. Plaintiff thus fails to show the Court has long-arm jurisdiction over Menaker.[3]

The question whether Florida's long-arm statute confers jurisdiction over Menaker would be nuanced if the Court were to consider the proposed, new allegations that Menaker's Tweet was accessed by third parties in Florida. The Florida Supreme Court has not addressed whether the long-arm statute confers jurisdiction over a non-resident defendant who made defamatory statements about a *non-Florida* plaintiff on a website that was accessed by third parties in Florida. *Cf. Internet Sols.*, 39 So. 3d at 1207–16 (emphasizing the allegedly defamatory material was about a Florida resident). While some courts have interpreted *Internet Solutions* to require the defamatory statement target a Florida plaintiff, *see Vorbe v. Morisseau*, No. 1:14-cv-20751, 2014 WL 12637924, at *4 (S.D. Fla. Aug. 27, 2014); others have not, *see Hongjin Sui v. Wu*, No. 8:11-cv-37-T-23TBM, 2011 WL 1396994, at *4 (M.D. Fla. Apr. 13, 2011).

The Court does not resolve this unsettled question of Florida law. Even if the Court considered Plaintiff's new allegations, and ultimately determined Florida's long-arm statute

---

[3] The Court previously denied Plaintiff's Motion for Leave to Amend the First Amended Complaint to add allegations, based on Zimmerman's Declaration, that the Tweet was accessed by third parties in Florida. (*See* Order [ECF No. 62]).

reached Menaker's conduct here, Plaintiff cannot satisfy his burden under the "more restrictive" Due Process Clause. *See Internet Sols.*, 39 So. 3d at 1216. The Court explains.

### B. Due Process

In specific personal jurisdiction cases, the Eleventh Circuit applies a three-part due process test examining whether: (1) the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefit of the forum state's laws; and (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *See Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355 (citations and footnote call number omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citation omitted). The Court addresses the three elements in turn.

#### 1. Relatedness

For specific personal jurisdiction, a plaintiff's claim must "arise out of or relate to at least one of the defendant's contacts with the forum." *Id.* (internal quotation marks and citations omitted). Plaintiff's defamation claim arises out of Menaker's October 16, 2018 Twitter post, which was accessible to and accessed by Menaker's Florida Twitter followers. (*See* Am. Compl. ¶ 208; Zimmerman Decl. ¶¶ 6, 11). The first prong is therefore satisfied. *See Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1157–58 (S.D. Fla. 2017).

#### 2. Purposeful Availment

In intentional tort cases, courts may assess the purposeful availment prong using two independent inquiries: the effects test, *see Calder v. Jones*, 465 U.S. 783, 789 (1984), and the

traditional minimum contacts test, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–80 (1984). *See Louis Vuitton Malletier*, *S.A.*, 736 F.3d at 1356–57.

Plaintiff asserts Menaker purposefully availed himself of the privilege of conducting activities in Florida under both tests, because Menaker intentionally published the Tweet to his followers in Florida and the subject matter of the Tweet – an accusation from his Florida paternity case and this lawsuit – involves Florida. (*See* Resp. 6). Menaker disagrees, pointing out less than one percent of his Twitter followers are from Florida, showing the statement was not intended to target Florida residents. (*See* Reply 3–4). Menaker also notes Plaintiff has not alleged any injuries in Florida stemming from his Tweet. (*See id.*).

i. Effects Test

Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment when the tort was: (1) "intentional; (2) [] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Vuitton Malletier*, *S.A.*, 736 F.3d at 1356 (internal quotation marks and citation omitted; alteration added).

In *Calder*, the Supreme Court explained that a California court could exercise jurisdiction over the National Enquirer, a Florida corporation, and two Florida journalists, for publishing an allegedly libelous article about a California resident where the plaintiff lived and worked in California, *see Calder* 465 U.S. at 788; the "article was drawn from California sources," *id.*; the National Enquirer's largest circulation was in California, *see id.* at 790; and "the brunt of the harm, in terms of both [plaintiff's] emotional distress and the injury to her professional reputation," was in California, *id.* at 789 (alteration added). The Supreme Court explained the defendants' actions were "expressly aimed at California" because they knew the "brunt of [the] injury" would be felt in that state. *See id*. at 789–90 (alteration added).

11

While the subject matter of the Tweet here is a Florida lawsuit (*see* Am. Compl. ¶ 120), the allegations and jurisdictional discovery reveal only two-tenths of one percent of Menaker's Twitter followers are in Florida (*see* Reply 3–4); Plaintiff does not live or work in Florida (*see* Am. Compl. ¶ 18); and Menaker did not contact Florida sources about the Twitter post (Menaker Decl. ¶ 12). While Plaintiff alleges his appearance on Fox News Sunday was canceled, he lost his job at CNN, and his job at Teneo remains in serious jeopardy (*see* Am. Compl. ¶¶ 104, 109, 111), he does not allege any of these harms was suffered *in Florida* (*see generally id.*).

In short, unlike the defendants in *Calder*, Menaker had no reason to believe the "brunt" of Plaintiff's injury would be felt in Florida. *See Calder*, 465 U.S. at 789; *see also Bioheart, Inc. v. Peschong*, No. 13-60304-CIV, 2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013) (finding defendant who posted allegedly defamatory statements about Bioheart on website message board did not purposefully direct his tortious acts toward Florida because there was "no reason for [defendant] to have thought that Bioheart's investors would be located in Florida, as opposed to any other state" (alteration added)); *Vision Media TV Grp., LLC v. Forte*, 724 F. Supp. 2d 1260, 1266 (S.D. Fla. 2010) (dismissing libel suit for lack of personal jurisdiction where there was no evidence "showing that the website at issue targeted Florida or that Defendants acted to aim their conduct at a Florida audience"); *Sovereign Offshore Servs., LLC v. Shames*, No. 17-cv-80172, 2017 WL 7798664, at *3 n.4 (S.D. Fla. Aug. 3, 2017) ("Defendant's awareness that consumers across the nation may access his blog posts is not enough to support the exercise of personal jurisdiction." (citation omitted)). Plaintiff thus cannot establish Menaker purposefully directed his Twitter post to Florida under the *Calder* effects test.[4]

---

[4] The case cited by Plaintiff involving Twitter, *Boddy v. Pourciau*, No. C18-1046JLR, 2018 WL 4637380 (W.D. Wash. Sept. 27, 2018), also explained posting an allegedly defamatory statement on Twitter does not satisfy the "effects test" merely because some members of the Tweet's audience are connected to the forum state. *See id.* at *5 ("To hold that Defendants are subject to this court's jurisdiction simply because

ii. <u>Traditional Minimum Contacts Test</u>

Nor does Plaintiff establish purposeful availment under the traditional minimum contacts test. Again, under the traditional minimum contacts test for purposeful availment, courts assess the nonresident defendant's contacts with the forum state and ask whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1357 (citation omitted).

In *Keeton*, the Supreme Court applied the traditional minimum contacts test, holding New Hampshire had jurisdiction over *Hustler* magazine in a libel suit where *Hustler* sold "some 10 to 15,000 copies of *Hustler* magazine in that State each month." *Keeton*, 465 U.S. at 772. The Supreme Court reasoned that sales of the copies of the magazine indicated the defendant had "continuously and deliberately exploited the New Hampshire market," and it was therefore reasonable for the defendant to "anticipate being haled into court there in a libel action based on the contents of its magazine." *Id.* at 781 (citation omitted).

Menaker's contacts with Florida do not rise to the level of *Hustler*'s contacts with the forum in *Keeton* because less than one percent of Menaker's audience was in Florida, and Menaker did not profit from posting the Tweet. *See id.*; *see also Madara*, 916 F.2d at 1519 (holding Florida court did not have personal jurisdiction over non-resident defendant who made an allegedly libelous statement during a magazine interview because defendant's "awareness . . . that a small

---

the tweets were viewable in Washington would open Defendants to being haled into every court in the country.").

13

number of copies of the magazine might find their way to Florida is not enough to justify the exercise of personal jurisdiction" (alteration added)).

As Menaker notes, this case is more like *Bristol-Myers Squibb Company v. Superior Court of California*, 137 S. Ct. 1773 (2017), in which the Supreme Court recently held a California court lacked specific personal jurisdiction over a nonresident defendant because the relevant plaintiffs were "not California residents and d[id] not claim to have suffered harm in that State," and "all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id*. at 1782 (alteration added).

Here, too, Plaintiff is not a Florida resident, does not claim to have suffered harm in Florida more than anywhere else, and the conduct giving rise to Plaintiff's claim occurred elsewhere. (*See generally* Am. Compl). Menaker does not have any other relevant contacts with the forum to satisfy minimum contacts. (*See generally* Menaker Decl.). Plaintiff thus cannot establish purposeful availment under the minimum contacts test.

In so holding, the Court joins other federal district courts tasked with evaluating the impact of a tweet on personal jurisdiction. For example, a federal court in Michigan recently found insufficient minimum contacts where the tweet in question "was not tailored to a Michigan audience," and there was no "evidence that [defendant] marketed or circulated the article to people in Michigan specifically as opposed to [defendant's] readers generally." *Vangheluwe v. Got News, LLC*, No. 18-cv-10542, 2019 WL 468890, at *8 (E.D. Mich. Feb. 6, 2019) (alterations added). The court rejected the plaintiff's attempt at establishing personal jurisdiction through guesswork, concluding the defendant's tweet lacked a Michigan focus. *See id.* at *9 (quoting *Walden v. Fiore*, 571 U.S. 277, 288 (2014)).

Indeed, courts have uniformly rejected the argument that a tweet, not specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due

Process Clause. *See Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, No. CV GLR-16-2974, 2017 WL 2778825, at *7 n.8 (D. Md. June 26, 2017) ("[E]ven assuming that the Twitter users reside in Maryland, [the defendant's] tweets are insufficient minimum contacts between [d]efendants and Maryland." (alterations added)); *see also Edwards v. Schwartz*, No. 7:18-cv-378, 2019 WL 1295055, at *14 (W.D. Va. Mar. 20, 2019) (holding that a defendant did not purposefully avail himself of Virginia's laws, even where defendant's reputation may have been "damaged in Virginia," because the defendant never took "affirmative steps to direct these communications into Virginia" and never "had any intent to target or focus on Virginia readers."). In line with this authority, the Court concludes Menaker's Tweet lacks a Florida focus, rendering the exercise of personal jurisdiction over Menaker impermissible under the Due Process Clause.

### 3. Fair Play and Substantial Justice

Because Plaintiff fails to meet his burden of establishing purposeful availment, the burden does not shift to Menaker to show the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *See Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355. Nevertheless, the Court notes this prong also weighs in favor of dismissal.

The Court looks to five factors in evaluating whether exercising jurisdiction comports with fair play and substantial justice: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several states in advancing fundamental substantive social policies. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985) (citations omitted).

While the burden on Menaker of defending this suit in Florida "would be more than minimal," the Court "recognize[s] that modern means of transportation and communication reduce

this burden greatly." *Madara*, 916 F.2d at 1519 (alteration added). Given due consideration to all the relevant factors, the Court concludes "Florida has little interest in adjudicating th[e] action [against Menaker] because no party resides in this state, and very few" of Menaker's Twitter followers are in Florida. *Id*. (alterations added); *see also Bioheart, Inc.*, 2013 WL 1729278, at *5. Accordingly, the Court's exercise of personal jurisdiction over Menaker in this case would offend fair play and substantial justice.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant William Menaker's Renewed Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim **[ECF No. 70]** is **GRANTED**. Count VI of the First Amended Complaint, directed to William Menaker, is **DISMISSED** without prejudice.

**DONE AND ORDERED** in Miami, Florida, this 17th day of April, 2019.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record