# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### CASE NO. 18-24227-CIV-ALTONAGA/GOODMAN

JASON MILLER,

    Plaintiff,

v.

GIZMODO MEDIA GROUP, LLC, et al.,

    Defendants.
_____/

### ORDER ON SHIELD LAW/REPORTER'S PRIVILEGE

This order concerns the reporter's privilege or shield law, a doctrine that, when applicable, generally (and, depending on which rule applies, absolutely) shields from discovery the identity of a news reporter's confidential source.

Defendant Gizmodo Media Group, LLC raised the reporter's privilege as an objection to some discovery requests propounded by Jason Miller, a former Donald Trump campaign staffer who sued Gizmodo and the managing editor of its *Splinter* website, Katherine Krueger, for defamation, among other claims.[1] Defendants had

---

[1] Miller also sued William Menaker, a friend of Krueger's, freelance writer, and contributor to the *Huffington Post*, who called Miller a "baby killer" in a tweet criticizing this lawsuit, but Judge Altonaga dismissed the claim for lack of personal jurisdiction. [ECF No. 109]. Judge Altonaga also dismissed the non-defamation claims by invoking the "single action rule." [ECF No. 110, p. 20].

published a story about a court document filed by Arlene Delgado, who is not a party to this case. Delgado, also an ex-Trump campaign staffer, had an affair and a son with Miller, who then filed a paternity suit in Florida state court. In that proceeding, Delgado publicly filed a document, claiming that Miller had engaged in an affair with an adult dancer, impregnated her, and then tried to slip her an "abortion pill," ending the pregnancy and almost killing her. [ECF No. 1, p. 1].

Miller claims that although Delgado filed the court document publicly, the filing (which Delgado titled a "Supplement" to her motion to have Miller psychologically evaluated) became sealed and confidential by operation of Florida law when he moved to seal the document in the family-law court. Through circumstances not yet disclosed, Krueger and Gizmodo obtained a copy of Delgado's submission, anyway. Miller suspects that Krueger and Gizmodo used improper means to get the document (or that their supposedly confidential source used improper means to obtain it) and posits that those means (perhaps along with other reasons) may expose them to liability. Therefore, he wants to know Krueger's source of the document.

According to the first amended complaint, Krueger posted her story without obtaining the Supplement from the actual court file. Miller also alleges, in the first amended complaint, that the article went beyond the allegations in Delgado's Supplement "by falsely asserting that 'Jane Doe' herself 'claims' that Miller surreptitiously dosed her with an abortion pill. . . ." [ECF No. 5, p. 22, ¶ 98]. Miller

2

contends that this outside-the-actual-court-filed-Supplement allegation is also defamatory because Jane Doe has never "claimed" that Miller did anything. Instead, according to Miller, Jane Doe "denied the accusations, told two reporters that they were not true, and never even spoke to Delgado about them." *Id.*

On March 27, 2019, the Undersigned held a hearing on the parties' discovery disputes, which included requests aimed at identifying the purportedly confidential source. [ECF No. 97]. After the discovery hearing, the Undersigned ordered the parties to submit legal memoranda on topics related to the reporter's privilege: (1) choice of law (whether New York shield law, Florida statutory shield law, or Eleventh Circuit common law shield-type law (or privilege, as it is sometimes called) applies here; (2) whether any Defendants waived any protection provided by the shield law (or privilege) by sharing information with third parties; and (3) whether Miller can establish the requisite factors to overcome the shield law (or privilege). The parties submitted the required memoranda, and Krueger filed a declaration. [ECF Nos. 105–107].

Recently, Judge Altonaga denied Gizmodo and Krueger's motion to dismiss Miller's defamation claim, finding (1) that New York's privilege law applied and (2) that Miller "plausibly alleges" that the article was not a fair and true report of the Supplement because the article suggested that the abortion-pill accusation came from Jane Doe directly, while the Supplement did not make that claim. [ECF No. 110].

As explained below, the Undersigned **sustains** Defendants' assertion of the

privilege, at least for now. Judge Altonaga has already found that New York law applies, and New York's statutory shield law provides an absolute privilege over a reporter's source. Moreover, Miller has not shown that this case provides a scenario for piercing the shield law.

Defendants have not asserted here the source's reliability to establish truth, intent, or the fair-reporting privilege. Instead, they say they published information about a document filed in a public court record. Therefore, unlike defamation lawsuits in which the defendant's reliance on a confidential source triggers an inquiry into the source's reliability and veracity, Defendants say that their source simply provided a copy of a publicly-available court document (albeit one subject to a motion to seal), and there is no issue that the document was fabricated or altered.

To be sure, as Judge Altonaga found, Defendants added gloss to their reporting by attributing certain statements to Jane Doe when the Supplement itself lacked such attributions. Moreover, the status of the document as a "public" document is far from clear -- Miller had filed a motion to seal the Supplement, the state court had not yet ruled on the motion, and the state-court clerk, in response to a public records request, contended that the Supplement should have been (and supposedly still is) "locked." [ECF No. 106-2, p. 2]. Thus, Miller contends, Defendants published information that the public did not have a right to see.

But to complicate matters, Delgado advised Krueger, before the article was

published (and in response to a question from Krueger), that the Supplement was *not* sealed. Moreover, Defendants have been able to obtain copies of the Supplement directly from the clerk of courts, despite its alleged "locked" status. And both parties have filed the Supplement in the public record in this case, undermining the contention that the Supplement is unavailable for public consumption.

These complicated facts, however, do not overcome the absolute protection of New York's statutory shield law. At bottom, Defendants claim that they accurately reported on a court-filed document; the identity and credentials of the person who sent them the document in the first place is irrelevant to prove or disprove that fact. Although Miller contends that the Supplement is false, *Delgado* filed the Supplement, not Defendants, and Miller did not name Delgado as a defendant in this action. And although Miller also alleges that the article is defamatory because it contains allegations not found in the Supplement, the identity of the person who sent the Supplement to Defendants is likewise irrelevant to prove or defend against that claim.

## I. Background

According to the first amended complaint, Miller worked in President Trump's 2016 campaign as a strategist, political manager, and communications director, and then later became a CNN commentator. Delgado is a Harvard-educated lawyer who likewise worked in the Trump campaign and who is also a columnist and television personality. The two had an affair; the affair resulted in a son.

Miller filed a paternity suit in family court in Miami-Dade County. On September 14, 2018, Delgado filed in that court a "Supplement" to a motion she had filed to have Miller psychologically evaluated. [ECF No. 107-1, p. 4]. The Supplement says that Miller had an affair with a stripper, identified only as "Jane Doe," who became pregnant. [ECF No. 107-1, p. 4]. Miller then supposedly visited Jane Doe's apartment with a smoothie that hid an abortion pill; Jane Doe ingested the pill-laced smoothie, inducing an abortion and requiring Jane Doe's hospitalization. [ECF No. 107-1, pp. 4–5].

Miller says that the stripper-and-abortion-pill affair never happened, and he filed, as part of his first amended complaint, a declaration from Jane Doe (her name remains redacted) in which she denies knowing him, let alone having an affair with him. [ECF No. 1-1]. Miller also alleged:

> The Defamatory Article goes beyond the accusations in the Supplement itself by falsely asserting that "Jane Doe" herself "claims" that Miller surreptitiously dosed her with an abortion pill without her knowledge, "leading to the pregnancy's termination and nearly her death." *Jane Doe has never "claimed" that Miller did anything*. To the contrary, she denied the accusations, told two reporters that they were not true, and never even spoke to Delgado about them.

[ECF No. 5, p. 22, ¶ 98 (emphasis in original)].

On September 17, 2018, Miller filed in the state family court a "Notice of Confidential Information within Court Filing" per Florida Rule of Judicial Administration 2.420, alleging that the Supplement contained confidential information. [ECF No. 106-1, p. 2]. Miller also filed, on the same day, an Emergency Motion to

6

Determine Confidentiality of and to Seal Court Records. [ECF No. 106-1, p. 4]. The state court never ruled on that motion.

Gizmodo is a New-York based company that operates *splinternews.com*. Krueger, Gizmodo's managing director, describes *Splinter* as a "politics, news, media, and culture website." [ECF No. 107, p. 1, ¶ 1]. Miller describes the website as "an off-shoot of Gawker, the notorious web company that met its demise in 2016 after years of defamatory publications and violations of privacy rights." [ECF No. 1, p. 18, ¶ 81].

Krueger's declaration says that on September 21, 2018 (i.e., a few days after Miller filed the notice of confidential information and the motion to seal), a "Source" shared the Supplement "in exchange for my promise that I would keep the Source's identity confidential." [ECF No. 107, p. 1, ¶ 2]. The declaration does not say whether the agreement was written or confirmed later in writing, nor does it provide any further detail about her "promise" to her source. Krueger was in New York City, where she lives and works, at that time. [ECF No. 107, p. 1, ¶ 3].

The same day, at 3:40 p.m., Krueger emailed Delgado, asking her for a comment on the Supplement. [ECF Nos. 107, p. 1, ¶ 4; 107-1, pp. 2–3]. Delgado wrote back that if Krueger were to send her the document, then she could confirm its authenticity. [ECF No. 107-1, p. 2]. Krueger emailed a copy of the Supplement to Delgado and asked her, "can you confirm that that's your understanding of how events transpired?" and, "Do you know if this filing has already been sealed?" [ECF Nos. 107, p. 2, ¶ 4; 107-1, p. 2].

7

Delgado wrote back, "I shouldn't give any comment past that but can confirm this does appear to be a legitimate copy of what I filed." [ECF No. 106-4, p. 3]. Delgado then said that the document "isn't sealed." [ECF No. 106-4, p. 3].

Krueger says that she did not share the source's identity with Delgado and has not shared the identity with any third party. [ECF No. 107, p. 2, ¶¶ 5–6].

On September 21, 2018, at 8:14 p.m., *Splinter* published Krueger's article: *Court Docs Allege Ex-Trump Staffer Drugged Woman He Got Pregnant With 'Abortion Pill'*. Splinter (Sept. 21, 2018, 8:14 PM), https://splinternews.com/court-docs-allege-ex-trump-staffer-drugged-woman-he-got-1829233105. The article describes "an explosive new court filing," in which Delgado alleges that Miller "carried out an affair with a woman he met at an Orlando strip club." *Id.* The article then says: "[T]he court documents claim[] when the woman found out she was pregnant, Miller surreptitiously dosed her with an abortion pill without her knowledge, leading, **the woman claims**, to the pregnancy's termination and nearly her death." *Id.* (emphasis added).

In October 2018, Miller sent a public-records request concerning the Supplement to the family-law-court clerk of courts. [ECF No. 106-2, p. 3]. In November 2018, the clerk of courts wrote in an email that the Supplement "is locked as a confidential pleading and **has been locked since September 17, 2018**." [ECF No. 106-2, p. 2 (emphasis added)].

Notwithstanding the clerk's response that the Supplement is confidential and locked, Gizmodo arranged for a runner to visit the Clerk's Office on September 24 and

8

October 16, 2018, to see if a copy of the Supplement could be obtained. [ECF No. 44, p. 7]. The runner got copies on both dates. *Id.*

In addition to the runner's successful efforts to obtain from the Clerk a purportedly sealed, confidential, and locked document, the parties have themselves filed the Supplement in the public record in the instant case. [ECF Nos. 106-5; 107-1, p. 4].

Defendants filed a motion to dismiss, alleging that the article is protected by an absolute constitutional privilege and the fair-reporting privilege. [ECF No. 44]. The Court denied the motion. [ECF No. 110]. The Court first conducted a choice-of-law analysis and found that "New York's, rather than Florida's, law of privilege governs the dispute." [ECF No. 110, p. 8].

The Court then found that neither the New York statutory privilege nor the constitutional privilege barred Miller's claims as a matter of law, because Miller "plausibly alleges the Article was not a fair and true report of the Supplement." [ECF No. 110, p. 13]. Specifically, the Court continued, "the Supplement, unlike the Article, does not state Jane Doe 'claims' Plaintiff gave her an abortion pill without her knowledge, deceptively terminating her pregnancy and causing her injury." [ECF No. 110, p. 15]. As such, the article "tenably bolsters the credibility of the allegations in the Supplement," which may "produce a different effect on a reader than would a report on the Supplement." [ECF No. 110, p. 15].

9

**II. Analysis**

Three sources of law could apply here: (1) the New York shield law, (2) the Florida shield law and common law, and (3) Eleventh Circuit common law grounded in the First Amendment.

The New York Shield Law provides in relevant part:

> Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist . . . presently . . . employed or otherwise associated with any newspaper, magazine, [etc.] . . . shall be adjudged in contempt by any court . . . for refusing or failing to disclose any news obtained or received in confidence or the identity of the source of such news coming into such person's possession in the course of gathering or obtaining news for publication or to be published in a newspaper, magazine, [etc.] . . . .

N.Y. Civil Rights Law § 79-h(b).

As New York's highest court has held, "the statute grants an absolute privilege precluding reporters from being compelled to reveal the identity of confidential sources." *Holmes v. Winter*, 22 N.Y.3d 300, 308 (N.Y. 2013); *see also Sharon v. Time, Inc.*, 599 F. Supp. 538, 583 (S.D.N.Y. 1984) (explaining that shield law gives defendant the "right to withhold identifying details" about confidential sources in response to discovery). That marks the distinction between New York law, on the one hand, and Florida law and constitutional law, on the other hand: "Florida law and the First Amendment provide for a qualified reporter's privilege. New York law has an absolute privilege." *Gubarev v. BuzzFeed, Inc.*, No. 1:17-CV-60426, 2017 WL 6547898, at *1 (S.D. Fla. Dec. 21, 2017).

In this case, Judge Altonaga already determined that New York privilege law

applies. [ECF No. 110, p. 8]. The Undersigned agrees. Therefore, the Undersigned will analyze only whether Miller may pierce New York's shield law.

Under the New York statutory protection, the source's identity is absolutely privileged. Thus, once the decision is made to apply the New York statute, the analysis is straightforward. If the information was received "in confidence," then the absolute privilege applies.

The Undersigned acknowledges Miller's theory that the Supplement was not received in "confidence" because he argues that Defendants failed to adequately establish this threshold factor. Although Miller's argument is hardly frivolous, Defendants have demonstrated (but barely) that the information was in fact received in confidence. Krueger's declaration states, albeit in summary fashion, that she promised the source confidentiality. [ECF No. 107, p. 1, ¶ 2].

For now, that declaration is sufficient. Miller will be able to probe this statement at Krueger's deposition. Although he will not be able to obtain the source's identity, he will be entitled to learn other information about the promise. Depending on Krueger's deposition responses (and also depending on what other efforts are made to learn the source's identity from other witnesses), Miller might be able to revisit the issue even under New York's shield law.

If Miller can demonstrate that Krueger did not in fact obtain the Supplement in confidence, then Defendants would not be able to successfully invoke the absolute

11

privilege provision of the New York statute. *Cf. Torah Soft, Ltd. v. Drosnin*, No. 00 CIV. 0676, 2001 WL 1425381, at *4-5 (S.D.N.Y. Nov. 14, 2001) (finding New York shield law inapplicable because it applies only to professional journalists but noting that a "privilege of confidentiality" requires evidence of the mutuality of the understanding); *see also Blum v. Schlegel*, 150 F.R.D. 42, 45 (W.D.N.Y. 1993) (stating journalist must "convincingly" demonstrate information is entitled to absolute protection under federal common law); *PPM America, Inc. v. Marriott Corp.*, 152 F.R.D. 32, 36 (S.D.N.Y. 1993) (finding that New York shield statute creates absolute protection "only for news obtained or received in confidence in the course of gathering news for publication" and explaining that information not given in confidence must be disclosed if the party seeking disclosure makes a showing that the material is highly material and relevant, that the information is necessary to the maintenance of the party's claim, defense, or proof; and that the information is not obtainable from any alternative source).

So far, Miller has not shown that the source's identity is highly material, relevant, or necessary in this case, or that he cannot obtain the information from other sources. The source's identity seems of marginal importance given the claims in this case: the allegedly unfair and false reporting of a supposedly false court-filed document that, although seemingly confidential and sealed, has nonetheless been readily available from the state court clerk's office and publicly filed in this Court. Miller has also not sought alternative sources of information; indeed, he is actively avoiding that route, arguing that he should

12

not be forced to "engage in the fruitless exercise of deposing Delgado, her counsel, and the Clerk" to confirm facts surrounding the source. [ECF No. 106, p. 14].

In short, the Undersigned finds that New York's shield law protects, for now, the source of the Supplement.

### III.  Application of the Ruling on the Discovery Requests at Issue

The parties disagree on what discovery requests and responses are at issue.

Miller submits that the following requests are at issue:

- interrogatories to Gizmodo numbers 1–5, 7, 11, 16, and 18;

- interrogatories to Krueger numbers 1–5, 8, 16, and 18;

- requests for production to Gizmodo numbers 1, 3–4, 6, 9, 12–14, 16–17, 20–21, 23–24, and 36; and

- requests for production to Krueger numbers 1, 3–4, 6, 9, 12–14, 16–17, 21–22, 24–25, 30.

But Defendants submit that the following responses are at issue.

- Gizmodo's supplemental responses to interrogatories numbers 1–5, 7, 8, 11, 16, and 18;

- Krueger's supplemental responses to interrogatories numbers 1–5, 8, 9, 12, and 18;

- Gizmodo's supplemental responses to requests for production numbers 1–7, 9, 12, 13, 20, 21, 23, 24, and 36; and

- Krueger's supplemental responses to requests for production numbers 1–7, 9, 12, 13, 19, 21, 22, 24, 25, and 30.

The Undersigned need not resolve the disagreement to apply this order's rulings. At bottom, the Undersigned upholds, at least for now, Defendants' objections based on the reporter's privilege. In other words, when responding to interrogatories and requests for production, Defendants are not for now required to reveal the identity of the source of the Supplement or to produce documents which would reveal the source's identity.

As a practical matter, this ruling may shield some information that may have been otherwise discoverable but that would identify the source. But Defendants may not take advantage of this ruling to safeguard information and documents under the pretext of protecting the source. To the extent Defendants can produce redacted documents -- shielding the source's identity but revealing relevant, non-privileged information -- they should do so.

If Miller suspects that Defendants are adopting an overly broad view of this discovery ruling, then he may contact chambers and the Undersigned will either hold a hearing or require briefing.

Finally, Miller may again pursue discovery about the source's identity once he establishes cause to do so, as explained above.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on April 25, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Cecilia M. Altonaga
All counsel of record