**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**1:18-CV-24227-CMA-Altonaga**

| | |
|---|---|
| JASON MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GIZMODO MEDIA GROUP, LLC, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of this Court's Local Rules, Defendants Gizmodo Media Group, LLC ("Gizmodo") and Katherine Krueger ("Krueger") (collectively, "Defendants") file this statement of material facts as to which there does not exist a genuine issue to be tried in support of their Motion for Summary Judgment.[1]

**Jason Miller's Career**

1. Jason Miller ("Miller") is a public figure. (Ex. 19.)

2. In his career, Miller has worked on the campaigns and in the administrations of numerous pro-life Republican politicians. (Ex. 20 at 37-46.)

3. Early in the 2016 Presidential election, Miller worked as Senior Communications Advisor for the campaign of Senator Ted Cruz. (*Id.* at 37-39, 45-46.)

4. In June 2016, Miller became a Senior Communications Advisor for the Trump campaign and prominent public advocate for President Trump. (*Id.* at 48, 60-62.)

5. Miller has been married to Kelly Miller since 2008. (*Id.* at 19.) Miller testified that in late 2016, they had serious marital problems and were living apart. (*Id.* at 115, 117-118.)

[1] References are to (1) the First Amended Complaint in this action (Dkt. 3) ("Compl."); (2) the accompanying Declaration of Katherine Krueger ("Krueger Decl."), and the exhibits attached thereto; (3) the accompanying Declaration of Aleksander Chan ("Chan Decl."); (4) the accompanying Declaration of Timothy Marchman ("Marchman Decl."), and the exhibits attached thereto; and (5) the exhibits attached to the accompanying Notice of Filing.

6. Mrs. Miller testified that in 2016 she was living in California to take care of her ailing father, not because of marital troubles, and she believed she and Miller were in a committed sound marriage. (Ex. 21 at 24-26, 29-30.)

7. Mrs. Miller became pregnant in April 2016 with the Millers' second daughter, who was born on January 6, 2017. (*Id.* at 30-31.)

**AJ Delgado's Career**

8. Delgado is a graduate of the University of Florida, *summa cum laude*, and of Harvard Law School. (Ex. 22 at 108-110.) She is a member of the New York bar and had previously practiced law at Hughes Hubbard & Reed and O'Melveny & Meyers in New York. (Ex. 23 at 9-15; Ex. 22 at 110-111.)

9. Between 2013 and 2017, Delgado appeared on radio, television, and cable, including Fox News, MSNBC, CNN, CNN en Espanol, Yahoo, al Jazeera, Univision, Telemundo, and NPR, and was published in *The American Conservative*; the *National Review*; the *Miami Herald*; the *Washington Post*; *Breitbart*; *The Daily Caller*; FoxNews.com, and other sites. (Ex. 22 at 116, 117-119.)

10. By late-2015, Delgado was publicly advocating for then-candidate Trump, and gained visibility by mid-2016. (*Id.* at 115; Exs. 20 at 96; 6 at 6-8 Compl. ¶ 40.)

11. In August 2016, Miller hired Delgado to work as a surrogate for the Trump campaign. (Ex. 20 at 97, 98; Ex. 22 at 123)

12. In an article announcing Delgado's hiring, Miller referred to Delgado as a "triple threat." (Ex. 25). Delgado's work as a surrogate was also touted by the *Village Voice*, Chris Hayes (MSNBC), and Sean Hannity (Fox News). (*Id.*; Exs. 6 at GIZMODO-000228-29; 26; 22 at 119-122.)

13. As the head of the Communications department, Miller was Delgado's supervisor, along with Brian Lanza and Boris Epshteyn. (Ex. 20 at 99.)

14. Miller testified that Delgado was a "very effective communicator." (*Id.* at 100.)

**Delgado and Miller's Affair and Its Aftermath**

15. Miller and Delgado had sex for the first time on October 18, 2016 after going to the Sapphire Strip Club in Las Vegas together, and thereafter began an affair. (*Id.* at 105, 106.)

16. Miller testified that he and Delgado had a "dating" relationship. (*Id.* at 106, 108.)

17. Delgado testified that this first sexual encounter was "not entirely voluntary on

my part," after a lot of drinking "I woke up and I wasn't sure what had happened kind of situation." Delgado felt she "had to be in it" because Miller was her boss. (Ex. 22 at 133-137.)

18. In a publicly filed court document in the custody dispute between Miller and Delgado (discussed *infra*), Delgado alleged that "on at least one occasion, [Miller] was sexually abusive" and "physically abusive towards" her. (Ex. 24 at 17.)

19. Delgado testified that this allegation of sexual assault referred to the first time Miller and she had sex in Las Vegas and the allegation of physical abuse referred to the morning after she told Miller she was pregnant. (Ex. 22 at 178-179, 145-147.)

20. Throughout the affair Delgado continued to work on the campaign and transition team and even, after she was pregnant, Miller arranged for her to have a job in the White House. (Ex. 20 at 127-128, 155-156.)

21. On October 22, 2016, the *New York Post* published an article reporting on the strip club visit. (Ex. 3.)

22. Jared Kushner reprimanded Miller for going to the strip club. (Ex. 20 at 94-95.)

23. Miller testified that he had gone to strip clubs in Orlando, including Rachel's, and had gone to other strip clubs frequently in the last 10 years. (*Id.* at 180-190.)

24. After the *New York Post* article, Steve Bannon, Jared Kushner, Mrs. Miller, and a different woman Mr. Miller had an affair with earlier in 2016 each asked Miller if he was having an affair with Delgado. Miller "lied" to each of them and denied the affair. (*Id.* at 93-96, 160-161, 169-171.)

25. Just before Thanksgiving 2016, Delgado told Miller that she was pregnant with his child. (*Id.* at 131-132.)

26. Delgado testified that after she told him she was pregnant, Miller informed her for the first time that his wife was also pregnant. (Ex. 22 at 140-141.)

27. Delgado testified that Miller asked her to have an abortion the morning after she told Miller she was pregnant and again a few weeks later. (*Id.* at 145, 193).

28. Miller spent Thanksgiving with his wife and daughter, but was sending Delgado text messages that he wished he was with her. (Exs. 20 at 138-139; 27.)

29. Delgado repeatedly asked Miller to tell his wife about their affair and the pregnancy, but Miller did not. (Ex. 22 at 141-145, 151.)

30. On December 17, 2016, Delgado sent an email to Mrs. Miller asking to speak to

her. (Exs. 20 at 145; 9 at 31, 8 at 8.)

31. That evening, Mr. Miller confessed his affair, and Delgado's pregnancy, to Mrs. Miller. (Ex. 20 at 147-151). Mrs. Miller was nine months pregnant at the time. (*Id.* at 145.)

32. Miller testified that after Delgado emailed his wife, he considered her "unstable." (*Id.* at 128-129, 192-193, 195.)

33. Miller also had a friend feed at least one press story questioning Delgado's mental stability to the *New York Post*. (*Id.* at 68-71.)

34. In 2017, it was reported that, in a media appearance, Miller repeatedly described Senator Kamala Harris's questioning of former Attorney General Jeff Sessions during a Senate hearing as "hysterical." (Exs. 28; 29.)

35. On December 22, 2016 Miller was announced as President Trump's pick for White House Communications Director; two days later, Miller announced that he would not be taking the position. (Ex. 20 at 155-156; Compl. ¶ 37.)

36. *Politico*, The *New York Post*, *The Independent*, *New York Magazine*, the *Daily News*, *The Washington Examiner*, *The Washington Post*, and the *Daily Beast* each reported that the resignation was related to the scandal of his affair with Delgado. (Exs. 4; 30; 31; 32; 33; 34)

37. In February 2017, Miller took a job as a managing director at Teneo. (Ex. 20 at 34; Compl. ¶ 37). As of June 24, 2019, it was reported in *The New York Times* and the *Washington Examiner* that Miller left Teneo days after making vulgar tweets about Congressman Jerrold Nadler, the chairman of the House Judiciary Committee, including calling Nadler "fat and nasty," a "fat f**k," and a "f**king scumbag." (Exs. 35, 36.)

38. Prior to Teneo, Miller worked for a political consulting firm called Jamestown Associates, including while he was working for the Trump campaign. (Ex. 20 at 35-37.)

39. In March 2017, Miller was hired by CNN to be a commentator on its network as a supporter of President Trump. (*Id.* at 57, 337; Compl. ¶ 38.)

40. During one appearance, on or around April 12, 2018, CNN host Don Lemon told Miller on air "Don't come on CNN and lie or deflect about what's going on. Come here and be honest with the American people." (*Available at* https://www.youtube.com/watch?v=sOcS5iAwzgo at 10:50).

41. In July 2017, Miller and Delgado's son William was born. (Ex. 5.)

42. In July 2017, Miller instituted a custody proceeding in Miami-Dade County,

Florida Family Court (the "Family Court Proceeding"). (Compl. ¶ 41.)

43. In addition to the press reports referenced in Paragraph 36, the affair, Delgado's pregnancy and the birth of their son, and the subsequent custody dispute received significant media attention, including articles published in the *Atlantic*, *Talking Points Memo*, the *New York Post*, the *Daily Mail* and *Vanity Fair*. (Exs. 5, 6, 7, 8, 37)

**The Supplement**

44. On September 14, 2018, Delgado filed a document entitled "Mother's Supplement to Mother's March 2018 Motion for Court to Consider Psychological Evaluation of the Father" (the "Supplement") in the Family Court Proceeding. (Compl. ¶ 88; Krueger Decl. ¶ 4, Ex. 9.)

45. Delgado testified that she filed the Supplement in compliance with her ethical obligations as an attorney, that she did not seal it, that it has never been sealed, and that in response to Miller's contention otherwise, she obtained a copy herself on October 17, 2018, without showing ID. (Ex. 22 at 199-200.)

46. The Supplement was filed publicly, and remained publicly available for at least three days prior Miller's attempts to seal it on September 17, 2018. (Compl. ¶ 89; Ex. 20 at 314.)

47. The Supplement's allegations were discussed in open court in the course of the Family Court Proceeding. (Ex. 38 at 5, 14, 16.)

48. On September 17, 2018, Miller filed a Notice of Confidential Information Within Court Filing – which was subsequently rejected – and an Emergency Motion to Determine Confidentiality and to Seal Court Records. (Ex. 18.)

49. Miller's Emergency Motion to Determine Confidentiality and to Seal Court Records has not been ruled upon, and a sealing order has not been entered with respect to the Supplement. (*Id.*)

50. On October 16, 2016, Defendants obtained a certified copy of the Supplement from the Miami-Dade Court Clerk. (Ex. 39.)

***Splinter* Obtains and Reports the Supplement**

51. *Splinter* is a publication that focuses on news, particularly political news, and commentary, and has a generally progressive political viewpoint. (Ex. 40 at 13.)

52. Tim Marchman (former Special Projects Editor for Gizmodo), Aleksander Chan (Editor-in-Chief of *Splinter*), and Katherine Krueger (Managing Editor of *Splinter*) testified that

an outlet's or reporter's political viewpoint has no bearing on their commitment to the truth and accuracy of the reporting. (Krueger Decl. ¶¶ 99-104; Marchman Decl. ¶¶ 2, 21; Chan Decl. 13.)

53. Miller testified that an outlet can have certain political views and also accurately report a story. (Ex. 20 at 49-50.)

54. Krueger testified that she is critical of President Trump's policies and rhetoric, but that her politics do not interfere with her commitment to accuracy in her reporting. (Krueger Decl. ¶ 100-102.)

55. On September 21, 2018, Krueger received a message from a source informing her that the Supplement had been filed by Delgado in the Family Court Proceeding, and sharing a copy of the Supplement with her. (*Id.* ¶ 11; Ex. 2.)

56. The Supplement Krueger received from her source was an authentic copy of the Supplement filed in the Family Court Proceeding between Delgado and Miller on September 14, 2018. (Krueger Decl. ¶ 49, 53.)

57. In the ensuing messages, Krueger's source informed her that the journalist referred to as "Journalist A" in the Supplement was Yashar Ali. (Krueger Decl. ¶ 12; Ex. 2 at GIZMODO-000589.)

58. Krueger was familiar with Yashar Ali, and had high esteem for his work as a journalist. (Krueger Decl. ¶ 40.)

59. After receiving a copy of the Supplement, Krueger reviewed it in full. (Krueger Decl. ¶ 34.)

60. Krueger contacted Marchman for help trying to find a copy of the Supplement on an electronic case docket, to confirm the authenticity of the document and to try to determine if it was under seal. (*Id.* ¶¶ 47-48; Marchman Decl. ¶¶ 5, 12; Ex. 10)

61. Marchman was able to find the Family Court Proceeding docket, but could not immediately determine whether or not the Supplement was sealed. (Marchman Decl. ¶¶ 9-12 Ex. 10 at GIZMODO-000004–05.)

62. Krueger and Marchman ultimately came to the understanding that the Supplement was not sealed as of September 21, 2018. (Krueger Decl. ¶ 50; Marchman Decl. ¶ 14.)

63. Krueger considered the allegations against Miller in the Supplement to be believable, credibly presented, and newsworthy. (Krueger Decl. ¶¶ 34-44, 105.)

64. At the time she received the Supplement, Krueger was familiar with Miller. In

particular, Krueger was aware that Miller was a Republican strategist who had served as the head of communications for the Trump presidential campaign, that he had been announced as White House Communications Director, and that he had since continued to appear on CNN as a regular commentator, often in support of President Trump. (*Id.* ¶¶ 15-16.)

65. Krueger was aware that Miller had an extramarital affair with Delgado while Delgado was working under Miller on the Trump campaign in 2016, resulting in Delgado becoming pregnant and giving birth to a child. (*Id.* ¶¶ 15, 21.)

66. Krueger understood that Miller had not taken the White House Communications Director position due to the scandal of his affair with Delgado. (*Id.* ¶ 15.)

67. Krueger was aware of a report in the *New York Post* that Miller had taken Trump campaign staffers and members of the press to a strip club in Las Vegas the night of the third presidential debate. (*Id.* ¶ 18; Ex. 3.)

68. Krueger was also familiar with an article published in the *Atlantic* on August 15, 2017, in which Delgado claimed that Miller had lied to her at the time of their affair by saying he was separated from his wife, that after Delgado became pregnant Miller told her for the first time his wife was also pregnant, and that Miller then asked her "on two separate occasions" to get an abortion. (Krueger Decl. ¶¶ 23-25; Ex. 6 at 11-12.)

69. Krueger was also familiar with articles published in *Talking Points Memo* on April 7, 2018, and the *Daily Mail* on April 24, 2018, which each again reported Delgado's claim that Miller had wanted her to get an abortion. (Krueger Decl. ¶¶ 29-31; Ex. 8 at 2; Ex. 7 at 2.)

70. After reviewing the Supplement, Krueger was also able to quickly confirm that Miller previously worked for Jamestown Associates, as alleged in the Supplement. (Krueger Decl. ¶ 35; Ex. 9 at 1.)

71. The fact that what Krueger already knew about Miller – that he attended strip clubs, had an extramarital affair, and had reportedly urged his mistress to have an abortion – lined up with many aspects of the Supplement's allegations, supported Krueger's belief in the Supplement's plausibility and caused its allegations to "ring true" to her. (Krueger Decl. ¶¶ 35-36; Ex. 9 at 1-2.)

72. The Supplement's detailed description of how Delgado had learned of the allegations against Miller and the steps she had taken to confirm them, as well as its inclusion of a number of documentary exhibits supporting this narrative, also contributed to Krueger's

conclusion that the Supplement's allegations were credible. (Krueger Decl. ¶¶ 5, 37.)

73. Krueger was previously familiar with Delgado through her role as a surrogate for the Trump campaign during the 2016 presidential election, as well as through the August 2017 *Atlantic* article. (*Id.* ¶¶ 17-18, 23; Ex. 6.)

74. Based on the *Atlantic* article and her other prior knowledge, Krueger had an impression of Delgado as an intelligent and impressive person; a woman who had worked her way up from a blue collar background to graduate from Harvard Law School, spent time at prestigious law firms, and become a political commentator and media representative who garnered respect and praise from prominent figures. (Krueger Decl. ¶¶ 23-33, 6.)

75. In their initial communications, Krueger's source referred to Delgado as "kind of nuts" and characterized the allegation in the Supplement as "INSANE." (*Id.* ¶¶ 11, 94; Ex. 2 at GIZMODO-000588–89.)

76. Krueger understood "INSANE" to mean her source found the allegations shocking, not that they were false. Krueger did not understand from her Source's statements that Delgado was unstable, mentally ill, or an unreliable source. To the contrary, Krueger had an impression of Delgado as a cogent, and forthcoming woman who had been unfairly painted as scorned and "crazy." (Krueger Decl. ¶¶ 11, 94-95.)

77. Krueger was also aware that numerous media outlets, including the highly respected *Atlantic* magazine, had relied on Delgado as a source. (*Id.* ¶ 33; Ex. 6.)

78. As a whole, Krueger's prior familiarity with Delgado led her to consider Delgado a credible person, again supporting Krueger's belief that the Supplement's allegations were believable. (Krueger Decl. ¶¶ 32-33, 94.)

79. Marchman and Chan also read the Supplement, and concluded its allegations were plausible, credibly presented, and newsworthy. (Marchman Decl. ¶¶ 15-16; Chan Decl. ¶¶ 4, 7.)

80. Krueger drafted a report on the Supplement (the "Article") during the afternoon and evening of September 21, 2018. (Krueger Decl. ¶ 57; Ex. 1.)

81. Krueger's intention in drafting the Article was to report straightforwardly on the existence and content of a court document, providing readers with context on the background of the ongoing dispute between Delgado and Miller. (Krueger Decl. ¶¶ 57-58, 64.)

82. Krueger reached out to five individuals in the course of reporting the Article. Kruger attempted to discuss the Supplement with the Miami-Dade Family Court clerk, who did

not answer; Yashar Ali, who responded to Krueger's initial message but did not respond again until September 22; Delgado, who responded by confirming the authenticity of the Supplement and the fact that it was not under seal, but declined to comment further; Miller, who did not respond; and Miller's attorneys of record in the Family Court Proceeding, who Krueger could not reach. (*Id.* ¶¶ 48, 51-56, Exs. 10 at GIZMODO-000003–04, 12, 13, 14.)

83. Krueger relied on the *Atlantic* and *Talking Points Memo* articles in her reporting, and included hyperlinks to those articles in the Article. (Krueger Decl. ¶ 64; Ex. 1 at 1-2.)

84. Krueger also reviewed and relied on a host of other prior reports concerning Miller and Delgado, including an October 22, 2016 *New York Post* article, a December 25, 2016 *New York Post* article, a December 25, 2016 *Politico* article, a December 25, 2016 *Daily Beast* article, a December 26, 2016 *New York Post* Article, an August 9, 2017 *New York Post* article, and the April 24, 2018 *Daily Mail* article. (Krueger Decl. ¶¶ 18, 19, 21, 31; Exs. 3, 4, 5, 8.)

85. After Krueger drafted an initial draft of a report on the Supplement, Mirkinson, and then Chan, provided edits. (Krueger Decl. ¶ 59.)

86. Chan edited the Article with the express intention of keeping it a straightforward, fair, and accurate report on the Supplement and its allegations. (Chan Decl. ¶ 8.)

87. As part of his editing process, Chan modified a confusing attribution in the lede paragraph of Krueger's draft, changing the phrase "she claims" to read "the woman claims." As revised, the full sentence reads: "Additionally, the court documents claim, when the woman found out she was pregnant, Miller surreptitiously dosed her with an abortion pill without her knowledge, leading, the woman claims, to the pregnancy's termination and nearly her death." (Krueger Decl. ¶¶ 63, 82; Chan Decl. ¶ 10; Ex. 1 at 1.)

88. Chan testified that he made this change to clarify that that the Supplement alleged that the victim referred to in the Supplement had herself confirmed, via the "Journalist A" referred to therein, that the allegation that Miller dosed her with an abortion pill without her knowledge, leading to her hospitalization and the termination of her pregnancy, was true. (Chan Decl. ¶¶ 10, 11; Ex. 9 at 8.)

89. Krueger and Marchman also testified that they understood the subordinate clause "the woman claims," read in the context of the sentence as a whole, to refer to allegations in the Supplement regarding what the alleged victim had claimed. (Krueger Decl. ¶¶ 82-83; Marchman Decl. ¶¶ 19-20.)

**The Article Is Published and Updated**

90. On September 21, 2018, at approximately 8:14 pm, *Splinter* published the article "Court Docs Allege Ex-Trump Staffer Drugged Woman He Got Pregnant With 'Abortion Pill'" (the "Article") at the URL https://splinternews.com/court-docs-allege-ex-trump-staffer-drugged-woman-he-got-1829233105. (Compl. ¶ 96; Ex. 1.)

91. The Article reported on the Supplement, and embedded a full copy of the Supplement which readers could review in full without leaving the webpage, inviting readers to "[r]ead the full court filing below." (Ex. 1 at 5-6; Krueger Decl. ¶¶ 4, 58, 66; Compl. ¶ 96.)

92. After publication, Miller's counsel contacted Gizmodo about the Article and the allegedly "false accusations" contained in Delgado's filing, and within an hour Gizmodo updated the Article to include Miller's denial. (Krueger Decl. ¶¶ 67-68; Ex. 15 at GIZMODO-000359–60; Ex. 1 at 2, 4.).

93. The next day, September 22, Miller posted a series of tweets on his public Twitter page, stating in part that there is "no validity to the false accusations made" in the Supplement and asserting that the "defamatory accusations" in the Supplement and Article "have already been disproven by at least one reporter whom Ms. Delgado attempted to involve in her continuous attempts to smear me." (Krueger Decl. ¶ 70; Ex. 16.).

94. Shortly thereafter, Ali tweeted on his public Twitter page, in response to Miller's tweet about the "reporter," "I have not disproven such claims and to say so is inaccurate" and "It is indeed accurate that I spoke to two women in Florida who made claims similar to the ones listed in Ms. Delgado's filing." (Compl. ¶ 108, Krueger Decl. ¶ 71, Ex. 17.).

95. Gizmodo updated its article to include Miller's tweeted denial of the allegations in the Supplement, as well as Ali's tweets in response, within an hour of Miller's initial tweets. (Krueger Decl. ¶ 74, Ex. 1 at 4.).

96. Each member of the Gizmodo editorial team deposed in this case has testified that at the time the Article was published, they believed the allegations contained in the Supplement were credible. (Krueger Decl. ¶¶ 7, 34-44, 76; Marchman Decl. ¶¶ 15-16, 18; Chan Decl. ¶ 7; Ex. 41 at 71, 93-95; Ex. 42 at 48, 77-78, 79-81.)

97. No member of the Gizmodo editorial team deposed in this case testified that they believed the allegations contained in the Supplement were false, or that they had any doubts as to their truth, at the time of the Article's publication.

Respectfully submitted,

June 27, 2019

**Elizabeth A. McNamara**
Elizabeth A. McNamara (*pro hac vice*)
Katherine M. Bolger (*pro hac vice*)
Claire K. Leonard (*pro hac vice*)
Abigail B. Everdell (*pro hac vice*)
DAVIS WRIGHT TREMAINE
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
lizmcnamara@dwt.com
katebolger@dwt.com
claireleonard@dwt.com
abigaileverdell@dwt.com

*Attorneys for Defendants Gizmodo Media Group, LLC and Katherine Krueger*

**Deanna K. Shullman**
Deanna K. Shullman (Florida Bar No. 514462)
Rachel Fugate (Florida Bar. No. 144029)
Giselle M. Girones (Florida Bar. No. 124373)
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
rfugate@shullmanfugate.com
ggirones@shullmanfugate.com

*Attorneys for Defendants Gizmodo Media Group, LLC and Katherine Krueger*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2019, a true and correct copy of the foregoing has been served by CM/ECF on all counsel or parties of record on the service list.

**Deanna K. Shullman**

Deanna K. Shullman
Florida Bar No. 514462

## SERVICE LIST

Kenneth G. Turkel, Esq.
Shane B. Vogt, Esq.
Bajo Cuva Cohen Turkel
100 N. Tampa Street, Ste. 1900
Tampa, FL 33602
Phone: 813-443-2193
kturkel@bajocuva.com
shane.vogt@bajocuva.com
*Attorneys for Plaintiff*