UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:18-cv-24227-CMA

JASON MILLER,

     Plaintiff,

      v.

GIZMODO MEDIA GROUP, LLC,
a Delaware Corporation, KATHERINE
KRUEGER, individually, and
WILL MENAKER, individually,

     Defendants.

_____/

**PLAINTIFF'S MOTION UNDER RULE 37(C) TO PRECLUDE
EVIDENCE & ARGUMENT OF GOOD FAITH DEFENSE AND FOR
<u>DENIAL OF MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff, Jason Miller, by counsel and pursuant to Rule 37(c), *Fed. R. Civ. P.*, moves for the entry of an order denying, striking or refusing to consider Gizmodo Defendants' summary judgment argument that they published the Article and Supplement in good faith and not with actual malice [Doc. 155, pp. 17-21], prohibiting Gizmodo Defendants from using evidence of their supposed "good faith" in support of their actual malice argument, and/or imposing other sanctions or equitable remedies the Court deems appropriate as a result of Gizmodo Defendants' failure to provide and supplement discovery based on the attorney-client privilege and shield law.  In support, Miller states as follows:

## INTRODUCTION

Gizmodo Defendants assert in their affirmative defenses that Miller's defamation claim "is barred, in whole or in part, because the statements complained of were published without actual malice, negligence or fault… [and]… because Defendants reasonably believed the statements were true or substantially true…"  [Doc. 118, p. 22 at ¶¶ 6, 8]  Gizmodo Defendants have moved for summary judgment on the issue of actual malice based on the contention they had a good faith belief the accusations in the Supplement were "credible."  (*See* Motion, Doc. 155, at pp. 17-21)

Gizmodo Defendants should be barred from claiming, arguing, and offering evidence of their supposed good faith belief in the truth of the accusations they published about Miller because they failed and refused to disclose privileged communications and information in response to Miller's discovery requests and questions posed during their depositions.  Gizmodo Defendants are using the attorney-client privilege and the reporter's privilege as a sword and a shield.  Under Rule 37(c), their argument on actual malice should be rejected, their defenses based on a "good faith" belief in the credibility of the Supplement should be ignored, and their motion for summary judgment on actual malice [Doc. 155] should be denied.

## I.    Overview of the Facts

### A.    Gizmodo Defendants' Argument on Actual Malice

As set forth above, Gizmodo Defendants asserted as affirmative defenses that they did not publish the Article with actual malice and had a good faith belief that their publication of the Article and Supplement was lawful.  [Doc. 118, p. 22 at ¶¶ 6, 8]  On June 27, 2019, Gizmodo Defendants filed their summary judgment motion on actual malice [Doc. 155, pp. 17-25], in which they assert "there is ***no evidence whatsoever*** that Defendants published the Article

knowing the challenged statements were false, or even having serious doubts about the allegations" [Doc. 155, p. 19 (emphasis added)].   Gizmodo Defendants claim the evidence "uniformly establishes" their "belief" in the accuracy of the accusations about Miller.[1]   In support, Gizmodo Defendants contend (contrary to disputed evidence and established law on recognized circumstantial evidence of actual malice) their good faith belief had "a solid foundation." (*Id.*)

In support of their summary judgment motion, Gizmodo Defendants filed their Statement of Undisputed Facts [Doc. 156], which cites in large part to declarations by Krueger, Aleksander Chan, and Tim Marchman (all executed <u>after</u> these individuals were deposed).   Based on these declarations, Gizmodo Defendants assert:

- Krueger and Marchman came to the understanding the Supplement was not sealed.  [Doc. 156, ¶ 62]

- Krueger considered the allegations against Miller in the Supplement to be believable, credibly presented, and newsworthy.  [*Id.*, ¶ 63]

- Marchman and Chan also read the Supplement, and concluded its allegations were plausible, credibly presented, and newsworthy.  [*Id.*, ¶ 79]

- Each member of the Gizmodo Editorial team deposed in this case has testified that, at the time the Article was published, they believed the allegations contained in the Supplement were credible. [*Id.*, ¶ 96]

- No member of the Gizmodo editorial team deposed in this case testified that they believed the allegations contained in the Supplement were false, or that they had any doubts as to their truth, at the time of the Article's publication. [*Id.*, ¶ 97]

---

[1] Gizmodo Defendants try to mince words about their belief in the "accuracy" of "reporting" on the filing of the Supplement.  (Doc. 155, p. 19)  They are trying to conflate the fair reporting privilege with actual malice.  The actual malice standard applies to the truth of the allegations themselves.  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702-03 (11th Cir. 2016) ("we ask whether the defendant, instead of acting in good faith, actually entertained serious doubts as to the veracity of the <u>published account</u>, or was highly aware <u>that account</u> was probably false) (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)) (emphasis added).  The fair reporting privilege was designed to grant immunity to allow defendants to publish official records they know are not true.  *Berry v. West Publ'g Co.*, 763 F2d 66, 68 (2d Cir. 1985).  Actual malice comes into play when the privilege does not apply, where it serves to protect free speech by requiring plaintiffs to establish defendants published allegations they knew were false or with reckless disregard of whether they were false.

**B.      The Decision to Publish Was Based on, Informed by or Influenced by Privileged Communications**

Gizmodo Defendants rely upon their self-serving statements about their supposed good faith belief in the credibility of Delgado and the Supplement, but that supposed belief was based on, informed by, and/or influenced by information and communications they failed and refused to disclose based on privileges.  As set forth below, Gizmodo Defendants made the decision to publish collectively and in reliance upon the advice of counsel, as well as other information related to Krueger's confidential source.

After obtaining the Supplement from Delgado through Krueger's "confidential" source at 2:28 p.m. on September 21, 2018 [Doc. 136], Krueger and Marchman communicated and quickly recognized the Supplement "might be sealed." [Doc. 171, ¶ 61]  Beginning at 4:55 p.m., Krueger, Chan, Marchman, and Mirkinson exchanged numerous e-mails with Gizmodo's in-house counsel, Lynn Oberlander, concerning whether to publish the Article.  [*See* **Exhibit 1** (Gizmodo 00049-50, 52-67]  These e-mails span until 7:59 p.m. on September 21, 2018, just minutes before Gizmodo Defendants published.  [*Id*. (Gizmodo-00063)]

In addition to these e-mails, at approximately 5:07 p.m. on September 21, 2018, Krueger, Chan, Marchman, and Mirkinson had a phone conference with their in-house counsel.  [*Id*. (Gizmodo-00052-53)]  As a general default setting, Gizmodo Defendants confer with counsel when court documents come up.  [**Exhibit 2**, Chan Depo. 125-26]  During the course of the privileged phone call, Gizmodo Defendants discussed the credibility of the allegations in the Supplement, whether the Supplement was sealed, and the impact of Miller's Notice of Confidential Information on the sealing issue.  [Doc. 171, ¶¶ 61, 79]  However, they refused to disclose the content of these communications to Miller.

Gizmodo Defendants reached a collective decision about the credibility of the Supplement.  Gizmodo Editor Mirkinson repeatedly acknowledged "we" made the credibility determination.  [**Exhibit 3** (Mirkinson Depo. pp. 59, 77-78) ("We found the document to be a credible document.")]  Chan testified to the same.  [Doc. 171, ¶ 79 ("We believed it was credible…")]  And Marchman testified he only discussed his thoughts on the credibility of the accusations in the privileged context.  [Doc. 171, ¶ 79]

Krueger maintains her source is reliable, but refuses to disclose his identity.  [**Exhibit 4** (Krueger Depo. pp. 77-78)]  [*See also* Doc. 112]  Prior to publication, the source (who personally

knows Delgado) told Krueger that Delgado was "nuts," and later called her "insane."  [Doc. 171, ¶ 78]

### C.    The Actual Malice Inquiry

As set forth in Miller's Opposition to  Gizmodo Defendants' Motion for Summary Judgment [Doc. 172, p. 20], although actual malice is a subjective inquiry "court[s] typically will infer actual malice from objective facts."  *Celle*, 209 F.3d at 183.  The reason for this is simple: defamation defendants "are prone to assert their good faith belief in the truth of their publications."  *Herbert v. Lando*, 441 U.S. 153, 170 (1979).  Predictably, Gizmodo Defendants premise their actual malice argument on their "good faith belief" on the credibility of the Supplement:

- "Defendants' good faith belief had a solid foundation"  [Motion p. 19]
- "Krueger believed the Supplement was credible."  [Motion p. 6]
- "Defendants found the allegations to be credible"  [Motion p. 20]

However, a defendant cannot "automatically ensure a favorable verdict by testifying he [or she] published with a belief the statements were true."  *Celle*, 209 F.3d at 190 (citing *St. Amant*, 390 U.S. at 732).  Because defendants are prone to claim good faith, "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence."  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Celle*, 209 F.3d at 183; *Michel*, 816 F.3d at 703.

The types of circumstantial evidence of actual malice that overcome self-serving claims of good faith can take many forms.  Importantly, these recognized badges of actual malice as well as the inferences to be drawn from them, must be evaluated ***cumulatively*** or ***in the aggregate***.  *Celle*, 209 F.3d at 183 (citing *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987)); *Stern v. Cosby*, 645 F.Supp.2d 258, 278 (S.D.N.Y. 2009).

Badges of actual malice include, but are not limited to:  (1) evidence of negligence, motive, and intent (*Celle*, 209 F.3d at 183); (2) the defendants' own actions or statements (*Id.*); (3) the dubious nature of sources (*Id.*); (4) the inherent improbability of the story (*Tobinick v. Novella*, 108 F.Supp.3d 1299, 1310 (S.D. Fla. 2015); *St. Amant*, 390 U.S. at 732; *Daubec*, 828 F.2d at 927); (5) bias or ill will (*Connaughton*, 491 U.S. at 668; *Celle*, 209 F.3d at 183; *Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir. 1995); *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 310, n. 10 (5th Cir. 1995)); (6) failure to investigate (*Hunt v. Liberty Lobby*, 720 F.2d 631,

645 (11th Cir. 1983)); (7) refusal to retract and apologize (*Tavoulares v. Diro*, 763 F.2d 1472, 1477 (D.C. Cir. 1985); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987); *Ventura v. Kyle*, 63 F.Supp.3d 1001, 1014 (D. Minn. 2014)); (8) failure to adhere to journalistic policies (*Kerwick v. Orange Cty. Publ'ns Div. of Ottaway Newspapers, Inc.*, 53 N.Y.2d 625, 627 (1981); and (9) grossly inadequate investigation under no time pressure (*Hunt*, 720 F.2d at 645; *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1057-58 (10th Cir. 2013)). [*See* Doc. 172, pp. 23-25]

> **D.   Conflicting Evidence Calls Gizmodo Defendants' Supposed "Good Faith" Belief Into Doubt**

As set forth above, because defendants are prone to claim good-faith, they cannot "automatically ensure a favorable verdict by testifying [they] published with a belief the statements were true." *Celle*, 209 F.3d at 190.  Here, that is precisely what Gizmodo Defendants seek to do.

However, such professions of good faith must be evaluated skeptically.  A defendants' state of mind "does not readily lend itself to a summary disposition." *Hutchinson v. Proxmire*, 443 U.S. 111, n. 9 (1979).  Credibility determinations come into play when self-serving testimony about a person's mental state are involved. *Id*.  On summary judgment, these credibility issues and all inferences still are drawn in favor of the non-movant. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1994) (citing *Anderson*, 477 U.S. at 255)).  In fact, courts must disregard all evidence favorable to the moving party that the jury is not required to believe. *Ice Portal, Inc. v. VFM Leonardo, Inc.*, 2010 WL 2351463, *6 (S.D. Fla. June 11, 2010).  The Court's function is not to weigh the evidence and determine the truth." *Anderson*, 477 U.S. at 255.  Gizmodo Defendants acknowledge these very problems with self-serving testimony at the summary judgment stage in their Opposition to Miller's summary judgment motion.  [Doc. 169, p. 12]

Here, Gizmodo Defendants' self-serving claim of good faith raises significant credibility issues.  Their professed belief in the "credibility" of the Supplement and Delgado is contradicted by their own deposition testimony and statements in real-time messages on September 21, 2018 [Doc. 171, ¶¶ 63, 71, 78].  This problem is compounded by the impact of privileged communications (which Gizmodo Defendants refuse to disclose) on Gizmodo Defendant's decision to publish.

These credibility issues exist throughout the evidence Gizmodo Defendants cite.  For example, Gizmodo Defendants argue they had no reason to doubt Delgado's credibility, but Krueger's confidential source (who personally knew Delgado) told Krueger *before* publication that Delgado was "nuts" [Doc. 156, ¶ 75].  There were published reports about Delgado being subject to a restraining order [Doc. 171, ¶ 33].  And Krueger knew Delgado and Miller were adversaries embroiled in a bitter custody dispute.  [Doc. 155, pp. 20-21]  Such facts cast doubt on the credibility of Krueger's testimony and show obvious reasons to doubt the source of the accusations Gizmodo Defendants published.  *Michel*, 816 F.3d at 703.

Gizmodo Defendants also argue they judged Delgado's credibility prior to publishing the Article based on her professional and media background, supposedly learned from numerous articles they claim Krueger "read."  [Doc. 155, p. 19]  They cite Krueger's declaration in support of these facts.  [*Id.*, citing Doc. 156, ¶¶ 73-74, 77]  However, Krueger testified at her deposition that she did not read anything other than the *Atlantic* article and did not conduct research into Delgado's background.  [Doc. 171, ¶¶ 74, 76, 84]  This also calls Krueger's credibility into doubt.

Gizmodo Defendants argue the Supplement had "all the indicia of a credible story that should be taken seriously" [Doc. 155, p. 19].  However, Krueger's real-time reaction to the Supplement was quite the opposite.  Krueger referred to the Supplement as "INSANE," "wild," and "really stunning."  [Doc. 171, ¶ 71]  This is not surprising, given the content of the Supplement and the fact that it consists of Delgado's biased allegations about what an unidentified man told her about what other unidentified people supposedly said about an "insane" rumor about Miller.  Moreover, Gentleman A acknowledged he could not vouch for the veracity of the rumor.  [Doc. 110, p. 15]  The unidentified sources of the rumor about Miller, who supposedly relayed the story to Delgado's unidentified source, have never been identified. These are additional, obvious reasons to doubt the accuracy of the Supplement.  *Michel*, 816 F.3d at 703.

In sum, the Supplement Krueger characterized as "wild," "INSANE" and "really stunning" consisted of what Delgado (who Krueger's source said was "nuts") claimed an unidentified source told her about a rumor he learned from unidentified people while cautioning Delgado the rumor was unverified and he could not vouch for its accuracy.  [Doc. 110, p.15]  A reasonable jury could conclude reliance upon such sources was reckless.  *Michel*, 816 F.3d at

703 (recklessness may be found where there are obvious reasons to doubt the veracity of the informant or accuracy of the report).

Gizmodo Defendants also try to argue Krueger's knowledge of Yashar Ali led further credence to the accusations. However, before publication Krueger never actually spoke to Ali, nor confirmed his involvement, his investigation or its supposed results. [Doc. 171, ¶ 82] The fact that Ali, who is an aggressive #metoo journalist, did not publish and never confirmed the story to Krueger raises more concern the allegations are not credible.

The only person Krueger actually reached about the Supplement, Delgado, refused to discuss the substance of the accusations. [Doc. 171, ¶ 82] Krueger never discussed the substance of the accusations with Ali, despite knowing his supposed central role. [*Id.*] And Krueger never spoke to Miller, whom she did not even try to reach until hours after everyone else and shortly before publication. [*Id.*] Krueger never got Miller's side of the story before publication, even though reaching Miller was supposed to "balance" Krueger's decision to ignore her source's warnings about Delgado being "nuts" and "insane." [**Exhibit 5**, Krueger Depo. pp. 97-98] This failure to investigate is compounded by Gizmodo Defendants' concession they could have waited to publish. [Doc. 171, ¶ 101]

Gizmodo Defendants also try to bolster their supposed belief in the credibility of the Supplement with published information about Miller. [Doc. 155, p. 20] However, Gizmodo Defendants do not contend they were aware of any published information accusing Miller of conduct similar to the Jane Doe and Clearwater woman accusations. Instead, they claim a supposed "overlap" based on Miller's employment at Jamestown, prior affair with Delgado, one visit to a strip club in Las Vegas (which they fail to mention was with members of the press, Delgado, and others), and the disputed account that Miller asked Delgado to have an abortion. [*Id.*] However, nothing about these news reports suggests the accusations that Miller murdered a baby with a surreptitiously administered abortion pill and beat a woman "ring true."

Ultimately, Gizmodo Defendants' argument that they had a good faith belief in the credibility of the accusations flies in the face of Krueger's admission that she never confirmed any of the facts alleged in the Supplement with anyone. In fact, despite professing a belief in the credibility of the Supplement, Krueger testified she was not even concerned with the "credibility" of the accusations, did not care about the truth of the accusations, and that it was not her "job" to investigate them. [Doc. 171, ¶¶ 72, 99-100]

Gizmodo Defendants even claim to have acted in good faith by suggesting they "took care" to write the Article fairly [Doc. 155, pp. 20-21] based on the inclusion of references to the "acrimony" between Miller and Delgado and "anonymous nature of the role of Journalist A," as well as an update posted about Miller's denial of the charges. [*Id*.]

To suggest the Article depicted a fair or balanced account of the Supplement is incorrect. [Doc. 172, pp. 11-18][2]  First, the Article falsely injected the "woman claims," even though Krueger testified there is no support for that statement in the Supplement. [Doc. 171, ¶ 97] Second, the Article falsely asserts Delgado's "legal team" filed the Supplement – another fact Krueger and Chan knew was untrue. [Doc. 171, ¶¶ 97, 150, 177]  These facts demonstrate **actual knowledge** of falsity.  Third, and contrary to the argument Gizmodo Defendants "took care" to be fair, the Article omits all of the information casting serious doubt on the Supplement's veracity and "credibility," including that:

- it consisted of Delgado's biased allegations about what an unidentified source told her about a rumor from other unidentified sources, which the unidentified source could not verify or vouch for their accuracy [Doc. 171, ¶¶ 74-78; Doc. 110, p. 15];

- Delgado was "nuts" [*Id*.];

- the journalist who refused to run the story was Yashar Ali – a well-renowned, aggressive #metoo investigative journalist [Doc. 156, ¶ 58];

- Krueger reached out to but never confirmed the story with Ali [Doc. 171, ¶ 82]; and

- Delgado filed the Supplement *pro se* [Doc. 171, ¶ 97].

All of the above-referenced, significant conflicts between the evidence and Gizmodo Defendants' professed belief in the "credibility" of Delgado and the Supplement are, independently, more than sufficient to create an issue of fact on actual malice the just must decide. [*See* Doc. 172, pp. 3-5]  This is not a case where the plaintiff failed to adduce a scintilla of evidence (*i.e.*, *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1296 (D.C.C. 1988)), nor where the plaintiff's evidence "pales in contrast to the numerous sources" who verified a report (*i.e.*, *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1241 (11th Cir. 1999)).

---

[2] This is not a situation where a publisher disclosed the audience their source was "not an unimpeachable source of information" and performed an "independent verification" of facts through numerous interviews.  *See Silvester v. ABC, Inc.*, 839 F.2d 1491, 1498 (11th Cir. 1988). In fact, Gizmodo Defendants did the opposite – they ***concealed*** information questioning the veracity of their source and the accusations, and failed to independently verify anything.

Beyond that, having placed their supposed "good faith" mental state at issue, Gizmodo Defendants' refusal to disclose their privileged communications that led to the decision to publish precludes them from seeking summary judgment on actual malice and asserting their "good faith" belief in the lawfulness of their actions (*see* Section II, below).   As this Court recognized in *Pena v. Handy Wash, Inc.*, 114 F.Supp.3d 1239, 1245 (S.D. Fla. 2015), the refusal to disclose privilege communications when good faith is claimed and the advice of counsel is involved raises critical issues associated with the evaluation of intent and adequacy of a defendant's inquiry; including what disclosures were made, whether the legal advice was reasonable, and whether the defendants strictly complied with that advice.  *Id.*

### E.    Gizmodo Defendants Failure and Refusal to Disclose their Privileged Communications

Throughout discovery in this case, Gizmodo Defendants objected and refused to disclose their communications with counsel and the identity of their source to Miller:

- In their Rule 26(a) Initial Disclosures, Gizmodo Defendants did not identify their counsel as a witness nor disclose any privileged communications.  (*See* **Exhibit 6**)

- In response to Miller's Interrogatories seeking the details about Gizmodo Defendants' internal conversations about the Supplement and its content before they were published (Interrog. No. 1), Gizmodo objected based on the attorney-client privilege and shield law.  (*See* **Exhibit 7**)

- In response to Miller's First Requests for Production which sought Gizmodo's internal discussions prior to publishing the Supplement (Req. No. 19), the truth or falsity of the Supplement (No. 20), any documents upon which Gizmodo's affirmative defenses are based (No. 27), Gizmodo Defendants objected based on privilege.  (*See* **Exhibit 8**)

- Gizmodo Defendants only produced redacted versions of e-mails with their counsel prior to publication.  (*See* **Exhibit 9**)

- Gizmodo Defendants served privilege logs asserting the attorney-client privilege over the redacted portions of their September 21, 2018 e-mails.  (*See* **Exhibit 10**)

- At their depositions, Gizmodo Defendants objected and refused to answer questions about their communications with counsel based on privilege. [Doc. 171, ¶¶ 62, 79]

To date, Gizmodo Defendants have not supplemented their prior discovery responses under Rule 26(d).

## II.     Under Rule 37, Gizmodo Defendants Should Be Precluded from Asserting Good Faith

Rule 37(c) provides that where a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.  In addition to or instead of the exclusion of evidence, the Court has "discretion to fashion an equitable remedy, 'consonant with both the text and logic of Rule 37(c)(1).'"  *Rossi v. Darden*, 2017 WL 2129429, at *4 (S.D. Fla. May 17, 2017) (citation omitted).  The rule itself outlines some of those potential equitable remedies, and the commentary to the Rule notes the Court can enter orders "declaring specified facts to be established [and] preventing contradictory evidence…"  *See Fed. R. Civ. P.* 37(c), Advisory Committee Notes.

Here, Gizmodo Defendants have asserted and seek summary judgment based on "good faith" but refuse to disclose their privileged communications with counsel or their source [*see* Doc. 112].  Defendants cannot use privileges as a sword and a shield.  Motions seeking summary judgment on actual malice should be denied where defendants refuse to disclose privileged information while simultaneously professing their supposed "good faith" belief in the appropriateness of publication.  The logic underlying this conclusion is one of fundamental fairness.  *In re. Mongelluzzi*, 568 B.R. 702, 710 (Bankr. M.D. Fla. 2017) ("The 'at issue' doctrine rests on the principle of fairness and stems from the premise that the attorney-client privilege cannot be used as both a sword and a shield.")

In *Pena*, 114 F.Supp.3d at 1243-45, this Court addressed this very issue when faced with a good faith defense in an FLSA case.  Her Honor recognized the attorney-client privilege cannot be used as a sword and a shield where a defendant claims good faith but refuses to disclose their privileged communications with counsel.  *Id*. at 1245.  Her Honor also recognized the "inferential hearsay" problem the refusal to disclose privileged communications presents in this type of situation.  *Id*. at 1243.  As was the case in *Pena*, Gizmodo Defendants raise an argument that is misleading and unfairly prejudicial.

The same rationale was applied in *Greenberg v. CBS, Inc.*, 69 A.D.2d 693, 708-709 (1979), where the appellate court concluded the defendants correctly were denied summary judgment on actual malice because they asserted the Shield Law to prevent discovery into their sources.  Although the defendants were justified in asserting this privilege, it "deprived the plaintiff of access to valuable and material evidence on a critical element of the plaintiff's cause

of action [malice]."  [*Id*. at 708-09]  The solution was "readily apparent":  give no consideration to the defense of good faith based on the material the defendants refused to disclose.  *Id*.  The defendants controlled their defense – if they chose to fully disclose their investigation, no limitation of the defense would occur.  *Id*.  The same logic was applied in *Maar v. Beall's, Inc.*, 237 F.Supp.3d 1336, 1339-40 (S.D. Fla. 2017).

In *Collins v. Troy Publishing Co., Inc.*, 213 A.D.2d 879, 881 (1995), the court also concluded summary judgment was improper because, by attempting to rely on confidential information withheld from the plaintiff to prove they acted without malice, the defendants deprived the plaintiff of access to valuable material evidence.  The trial court's decision to refuse to consider information imparted by and the reliability of the defendant's confidential sources, as well as its denial of summary judgment on actual malice were affirmed.  *Id*. at 880.

In *U.S. v. Bilzerian*, 926 F.2d 1285, 1292-93 (2d Cir. 1991), the Second Circuit explained the reasons why defendants cannot assert their "good faith" belief in the legality of their actions while they refuse to disclose their privileged communications with their counsel.  Where a defendant claims he thought his actions were legal, it puts his knowledge of the law and basis for his understanding of what the law required at issue.  *Id*. at 1292.  The defendant's own testimony as to his "good faith" opens the door to otherwise privileged communications.  *Id*. at 1293.  If the defendant wanted to maintain the privilege, he was still free to deny intent without asserting good faith or argue his good faith defense by means of opening and closing statements and by examining witnesses.  *Id.; see also Stern v. O'Quinn*, 253 F.R.D. 663, 676 (S.D. Fla. 2008) (citing *Bilzerian*); *Maplewood Partners, L.P. v. Indian Harbor Insurance Co.*, 295 F.R.D. 550 (S.D. Fla. 2013).

Numerous other courts have reached the same conclusion.  For example, in *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001), the Ninth Circuit relied on *Bilzerian* in approving the exclusion of evidence on the issue of intent where the attorney-client privilege was asserted:

> The district court was also within its discretion in excluding evidence of Feltner's reliance on advice of counsel. Feltner sought to rely on advice of counsel to demonstrate that his infringement was not willful. But Feltner refused to answer questions regarding his interactions with counsel at his deposition. Accordingly, prior to the bench trial, the district court precluded Feltner from relying on the defense of advice of counsel at trial.

Following remand from the Supreme Court, Columbia filed a motion in limine to reaffirm the district court's prior ruling prohibiting Feltner from relying on the advice of counsel defense. In opposition to the motion in limine, Feltner offered "to make himself available for deposition on this issue." The district court rejected this offer, stating that "[t]he Defendant cannot now, at the eleventh hour, make himself available for a deposition."

Although courts have recognized that reliance on advice of counsel may be probative of non-willfulness, see *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.,* 845 F.2d 773, 779 (8th Cir.1988), the district court was within its discretion in precluding Feltner from relying on advice of counsel in this case. "The privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir.1992) (citing *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991)). Here, Feltner sought to argue that he continued his infringing activities based on the advice of his attorney, while at the same time refusing to answer questions regarding relevant communications with counsel until the "eleventh hour." Under these circumstances, the district court was within its discretion in precluding Feltner from invoking the advice of counsel defense.

A similar result was reached in *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp. 2d 1084, 1092–93 (D. Nev. 2003), where the District Court found:

Fundamental fairness compels the conclusion that a litigant may not use reliance on advice of counsel to support a claim or defense as a sword in litigation, and also deprive the opposing party the opportunity to test the legitimacy of that claim by asserting the attorney-client privilege or work-product doctrine as a shield. This court joins those courts that have held that the defendant, having waived the privilege by asserting the advice of counsel defense, must produce not only attorney- *1093 client communications, but also all documents relied upon or considered by counsel in rendering the opinions relied upon. *Mushroom Assoc. v. Monterey Mushrooms, Inc.,* 24 USPQ2d 1767, 1992 WL 442892 (N.D.Ca.1992); *FMT Corp. v. Nissei ASB Co.,* 24 USPQ2d 1073, 1992 WL 240688 (N.D.Ga.1992); *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926 (N.D.Ca.1976). A contrary result ignores the potential for litigation abuses, and erects too much of an impediment to the truth seeking process. Counsel for the opposing party should not be able to act as the gatekeeper to determine what information their adversary is entitled to have. As the court noted in *Chiron Corp. v. Genentech,* 179 F.Supp.2d 1182, 1186, parties should not be able to selectively disclose privileged communications they consider helpful while claiming privilege on damaging communications relating to the same subject.

In *Arista Records LLC v. Lime Group LLC*, 06 CV 5936 KMW, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011), the Court also relied on *Bilzerian* when it applied the sword and shield

doctrine to exclude evidence of good faith because the advice of counsel "played a substantial and significant role in formulating actions taken by [the defendant]":

> Plaintiffs are correct that a party may not assert that it believed its conduct was lawful, and simultaneously claim privilege to block inquiry into the basis for the party's state of mind or belief. *See United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991) (finding that, by asserting a good faith defense to securities fraud, Defendant had "assert[ed] a claim that in fairness requires examination of the protected communications.") Indeed, a party "cannot be permitted, on the one hand, to argue that it acted in good faith and without an improper motive and then, on the other hand to deny ... access to the advice given by counsel where that advice ... played a substantial and significant role in formulating actions taken by [the defendant]." *Pereira v. United Jersey Bank,* 1997 WL 773716, at *6 (S.D.N.Y. Dec. 11, 1997). Accordingly, "[a] party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; *failure to do so constitutes a waiver of the advice-of-counsel defense." Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F.Supp. 891, 894 (S.D.N.Y.1990) (emphasis added).

### III.   It Would Be Unfair to Grant Summary Judgment on Actual Malice

Gizmodo Defendants' assertion of "good faith" is the bedrock of their actual malice argument.  They highlight the "subjective" nature of the actual malice inquiry in their Motion for Summary Judgment [Doc. 155, p. 18], then repeatedly profess their good faith belief the accusations in the Supplement are "credible."  [*Id*., pp. 19-22]

Regardless of Gizmodo Defendants supposed, self-serving contention Delgado and the Supplement are "credible," summary judgment is improper on actual malice in this case because the material facts are disputed, the evidence conflicts, there are credibility issues and inferences that weigh in Miller's favor, and the facts demonstrate numerous badges of actual malice; all of which cumulatively and in the aggregate raise issues of fact only a jury can properly decide. [*See* Doc. 172, pp. 3-5, 14-18, 20-25]

However, Gizmodo Defendants should not even be permitted to argue actual malice on summary judgment or support their supposed "good faith" belief because that belief based on privileged communications they refuse to disclose. Pena, 114 F.Supp.3d at 1243-45; Greenberg, 69A.D.2d at 708-09; *Collins*, 213 A.D.2d at 881; *Bilzerian*, 926 F.2d at 1292-93; *Stern*, 253 F.R.D. at 676; *Arista Records*, 2011 WL 1642434, at *2.  Their motion should be denied on this basis as well as under Rule 37(c).

## CONCLUSION

For the reasons set forth above, Miller respectfully requests Gizmodo Defendants be precluded from seeking summary judgment on actual malice, that their contention they had a "good faith" belief in the "credibility" of the Supplement be rejected or ignored, that their Motion seeking summary judgment on actual malice be denied, and/or that Miller be granted such other and further equitable relief as the Court deems just and appropriate under Rule 37(c).

## LOCAL RULE 7.1(a)(3) CERTIFICATION

In accordance with S.D. Fla. L.R. 7.1(a)(3), Plaintiff's counsel conferred with Defendants' counsel and Defendants oppose the relief requested in this motion.

Dated: July 18, 2019.                     Respectfully submitted,

                                          */s/ Shane B. Vogt*
                                          Kenneth G. Turkel – FBN 867233
                                          E-mail:  kturkel@bajocuva.com
                                          Shane B. Vogt – FBN 257620
                                          E-mail:  svogt@bajocuva.com
                                          BAJO | CUVA | COHEN | TURKEL
                                          100 North Tampa Street, Suite 1900
                                          Tampa, Florida 33602
                                          Tel:  (813) 443-2199
                                          Fax: (813) 443-2193
                                          *Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 18, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

                                          */s/ Shane B. Vogt*
                                          Attorney

# EXHIBIT 1

to Plaintiff's Motion to Preclude Evidence & Argument of
Good Faith and for Denial of Motion for Summary Judgment on Actual Malice

| | |
|---|---|
| **From:** | Lynn Oberlander on behalf of Lynn Oberlander <lynn.oberlander@gizmodomedia.com> |
| **To:** | Jack Mirkinson |
| **Cc:** | Katherine Krueger; Aleksander Chan; Tim Marchman; susie.banikarim@gizmodomedia.com; carolina.rodriguez@gizmodomedia.com |
| **Subject:** | Re: Jason Miller - ▮▮▮▮ |
| **Date:** | Monday, September 24, 2018 5:11:59 PM |

Privileged and Confidential - Attorney Client Communication



On Sep 24, 2018, at 4:58 PM, Jack Mirkinson
<jack.mirkinson@splinternews.com> wrote:

Privileged and Confidential - Attorney Client Communication



On Mon, Sep 24, 2018 at 4:55 PM Lynn Oberlander
<lynn.oberlander@gizmodomedia.com> wrote:
Privileged and Confidential - Attorney Client Communication



Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000049

114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com

--
Jack Mirkinson
News Editor

Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC
114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com



**From:** Katherine Krueger <<katherine.krueger@splinternews.com>>
**Subject: Re: Florida docs**
**Date:** September 21, 2018 at 6:53:15 PM EDT
**To:** Lynn Oberlander <<lynn.oberlander@gizmodomedia.com>>
**Cc:** Kavi Reddy <<kavi.reddy@gizmodomedia.com>>,
<legal@gizmodomedia.com>, Tim Marchman
<<marchman@gizmodomedia.com>>, Aleksander Chan
<<aleksander.chan@splinternews.com>>, Jack Mirkinson
<<jack.mirkinson@splinternews.com>>

Privileged and confidential
Attorney client communication

On Fri, Sep 21, 2018 at 5:07 PM Katherine Krueger
<<katherine.krueger@splinternews.com>> wrote:
  i'm on the line now, marchman can you jump on?

  On Fri, Sep 21, 2018 at 5:03 PM Lynn Oberlander
  <<lynn.oberlander@gizmodomedia.com>> wrote:
    I'm not in office unfortunately

    Sent from my iPhone

    On Sep 21, 2018, at 5:03 PM, Katherine Krueger
    <<katherine.krueger@splinternews.com>> wrote:


      Lynn, are you in the office? If so I can just pop down and we can
      get Marchman on the line.

      On Fri, Sep 21, 2018 at 5:01 PM Lynn Oberlander
      <<lynn.oberlander@gizmodomedia.com>> wrote:
        Privileged and confidential attorney Client Communication

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000052

Can we get on the phone about this now?
I have a call at 5:30 so if we can talk in five minutes that would
be great.
Use my conference number: ██████████████

Sent from my iPhone

On Sep 21, 2018, at 4:55 PM, Katherine Krueger
<katherine.krueger@splinternews.com> wrote:

██████████████████████████
██████████████████████████
██████████████

On Fri, Sep 21, 2018 at 4:53 PM Tim Marchman
<marchman@gizmodomedia.com> wrote:
██████████████████████████
████████████████

On Fri, Sep 21, 2018 at 4:51 PM, Kavi Reddy
<kavi.reddy@gizmodomedia.com> wrote:
██████████████████████████
██████████████

████████████

On Sep 21, 2018, at 4:45 PM, Tim Marchman
<marchman@gizmodomedia.com> wrote:

████████████████████
████████████████████
████████████████████
████████████████████

████████████████████
████████████████

On Fri, Sep 21, 2018 at 4:40 PM,
Kavi Reddy
<kavi.reddy@gizmodomedia.com

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000053

> wrote:



On Sep 21, 2018, at 4:05 PM,
Tim Marchman
<marchman@gizmodomedia.co
m> wrote:

Privileged and
confidential
Attorney client
communication

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC
114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION



**From:** Lynn Oberlander <lynn.oberlander@gizmodomedia.com>
**Subject: Fwd:** ███████████
**Date:** September 21, 2018 at 6:13:43 PM EDT
**To:** katherine.krueger@splinternews.com,
marchman@gizmodomedia.com, Kavi Reddy
<kavi.reddy@gizmodomedia.com>

Privileged and confidential attorney Client Communication



Begin forwarded message:

> **From:** Deanna Shullman <dshullman@shullmanfugate.com>
> **Date:** September 21, 2018 at 5:35:50 PM EDT
> **To:** Lynn Oberlander <lynn.oberlander@gizmodomedia.com>
> **Subject: Re:** ███████████
>
> On Sep 21, 2018, at 5:27 PM, Lynn Oberlander
> <lynn.oberlander@gizmodomedia.com> wrote:



Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000056

114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com



**From:** Aleksander Chan <aleksander.chan@splinternews.com>
**Subject: Re: Florida docs**
**Date:** September 21, 2018 at 7:02:09 PM EDT
**To:** Kavi Reddy <kavi.reddy@gizmodomedia.com>
**Cc:** Katherine Krueger <katherine.krueger@splinternews.com>, Lynn Oberlander <lynn.oberlander@gizmodomedia.com>, legal@gizmodomedia.com, Tim Marchman <marchman@gizmodomedia.com>, Jack Mirkinson <jack.mirkinson@splinternews.com>

Privileged and confidential
Attorney client communication



REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000058



REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000059



On Fri, Sep 21, 2018 at 6:59 PM Kavi Reddy <kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 6:53 PM, Katherine Krueger <katherine.krueger@splinternews.com> wrote:

Privileged and confidential
Attorney client communication

On Fri, Sep 21, 2018 at 5:07 PM Katherine Krueger <katherine.krueger@splinternews.com> wrote:
i'm on the line now, marchman can you jump on?

On Fri, Sep 21, 2018 at 5:03 PM Lynn Oberlander <lynn.oberlander@gizmodomedia.com> wrote:
I'm not in office unfortunately

Sent from my iPhone

On Sep 21, 2018, at 5:03 PM, Katherine Krueger <katherine.krueger@splinternews.com> wrote:

Lynn, are you in the office? If so I can just pop down and we can get Marchman on the line.

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000060

On Fri, Sep 21, 2018 at 5:01 PM Lynn Oberlander
<lynn.oberlander@gizmodomedia.com> wrote:
Privileged and confidential attorney Client Communication

Can we get on the phone about this now?
I have a call at 5:30 so if we can talk in five minutes that would be great.
Use my conference number: ███████████

Sent from my iPhone

On Sep 21, 2018, at 4:55 PM, Katherine Krueger
<katherine.krueger@splinternews.com> wrote:



On Fri, Sep 21, 2018 at 4:53 PM Tim Marchman
<marchman@gizmodomedia.com> wrote:

On Fri, Sep 21, 2018 at 4:51 PM, Kavi Reddy
<kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 4:45 PM, Tim Marchman
<marchman@gizmodomedia.com> wrote:

On Fri, Sep 21, 2018 at 4:40 PM, Kavi Reddy
<kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 4:05 PM, Tim Marchman
<marchman@gizmodomedia.com> wrote:

Privileged and confidential
Attorney client communication



--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
Katherine Krueger
Managing Editor, Splinter
katherine.krueger@splinternews.com

--
Katherine Krueger
Managing Editor, Splinter
katherine.krueger@splinternews.com

--
Katherine Krueger
Managing Editor, Splinter
katherine.krueger@splinternews.com

--
**Aleksander Chan**
**Editor-in-Chief, Splinter**
**aleksander.chan@splinternews.com**

Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC
114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION



**From:** Katherine Krueger <katherine.krueger@splinternews.com>
**Subject: Re: Florida docs**
**Date:** September 21, 2018 at 7:59:59 PM EDT
**To:** Lynn Oberlander <lynn.oberlander@gizmodomedia.com>
**Cc:** Aleksander Chan <aleksander.chan@splinternews.com>, Kavi Reddy <kavi.reddy@gizmodomedia.com>, legal@gizmodomedia.com, Tim Marchman <marchman@gizmodomedia.com>, Jack Mirkinson <jack.mirkinson@splinternews.com>

On Fri, Sep 21, 2018 at 7:28 PM Lynn Oberlander <lynn.oberlander@gizmodomedia.com> wrote:
Privileged and confidential attorney Client Communication

On Sep 21, 2018, at 7:02 PM, Aleksander Chan <aleksander.chan@splinternews.com> wrote:

Privileged and confidential
Attorney client communication



REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION



On Fri, Sep 21, 2018 at 6:59 PM Kavi Reddy <kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 6:53 PM, Katherine Krueger <katherine.krueger@splinternews.com> wrote:

Privileged and confidential
Attorney client communication

On Fri, Sep 21, 2018 at 5:07 PM Katherine Krueger <katherine.krueger@splinternews.com> wrote:

i'm on the line now, marchman can you jump on?

On Fri, Sep 21, 2018 at 5:03 PM Lynn Oberlander <lynn.oberlander@gizmodomedia.com> wrote:

I'm not in office unfortunately

Sent from my iPhone

On Sep 21, 2018, at 5:03 PM, Katherine Krueger <katherine.krueger@splinternews.com> wrote:

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000065

Lynn, are you in the office? If so I can just pop down and we can get Marchman on the line.

On Fri, Sep 21, 2018 at 5:01 PM Lynn Oberlander <lynn.oberlander@gizmodomedia.com> wrote:

Privileged and confidential attorney Client Communication

Can we get on the phone about this now?
I have a call at 5:30 so if we can talk in five minutes that would be great.
Use my conference number: ███████████████

Sent from my iPhone

On Sep 21, 2018, at 4:55 PM, Katherine Krueger <katherine.krueger@splinternews.com> wrote:



On Fri, Sep 21, 2018 at 4:53 PM Tim Marchman <marchman@gizmodomedia.com> wrote:

On Fri, Sep 21, 2018 at 4:51 PM, Kavi Reddy <kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 4:45 PM, Tim Marchman <marchman@gizmodomedia.com> wrote:

On Fri, Sep 21, 2018 at 4:40 PM, Kavi Reddy <kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 4:05 PM, Tim Marchman <marchman@gizmodomedia.com> wrote:



--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Aleksander Chan**
**Editor-in-Chief, Splinter**
**aleksander.chan@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC
114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000067

# EXHIBIT 2

to Plaintiff's Motion to Preclude Evidence & Argument of
Good Faith and for Denial of Motion for Summary Judgment on Actual Malice

Aleksander Chan
May 15, 2019

1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
2                         MIAMI DIVISION

3                    Case No. 1:18-cv-24227-CMA

4    - - - - - - - - - - - - - - - - -x
     JASON MILLER,
5
                     Plaintiff,
6
     v.
7
     GIZMODO MEDIA GROUP, LLC,
8    a Delaware Corporation, KATHERINE
     KRUEGER, individually, and
9    WILL MENAKER, individually,

10                        Defendants.

11   - - - - - - - - - - - - - - - - -x

12

13          Videotaped deposition of ALEKSANDER CHAN,

14   taken pursuant to Notice, was held at the Law

15   Offices of DAVIS WRIGHT & TREMAINE, LLP, 1251 Sixth

16   Avenue, New York, New York, commencing May 15, 2019,

17   at 10:22 a.m., on the above date, before Amanda

18   McCredo, a Court Reporter and Notary Public in the

19   State of New York.

20

21

22

23

24

25

Aleksander Chan
May 15, 2019                                          2

```
 1   A P P E A R A N C E S:

 2   BAJO CUVA COHEN TURKEL
     100 North Tampa Street
 3   Suite 1900
     Tampa, Florida 33602
 4   BY: KENNETH G. TURKEL, ESQ.
         SHANE B. VOGT, ESQ.
 5   kturkel@bajocuva.com
     svogt@bajocuva.com
 6   (813)443-2199
     Attorneys for Plaintiff
 7

 8

 9   SHULLMAN FUGATE PLLC
     2101 Vista Parkway
10   Suite 4006
     West Palm Beach, Florida 33411
11   BY: DEANNA SHULLMAN, ESQ.
     dshullman@shullmanfugate.com
12   (813)935-5098
     Attorneys for Defendants Gizmodo Media Group, LLC
13   and Katherine Krueger

14

15

16

17
     ALSO PRESENT:
18
     Darrak Lighty - videographer
19

20

21

22

23

24

25
```

Aleksander Chan
May 15, 2019                                          125

```
 1        A     At the time or now?

 2        Q     Well, why don't you tell me at the time

 3   first.  Then if it's changed, we can talk about

 4   that.

 5        A     At the time, I can't recall.  I wouldn't

 6   have known necessarily.

 7        Q     Who gave the directive to Tim Marchman to

 8   try and run down whether the document was actually

 9   sealed or not?

10        A     I can't recall.

11        Q     Did you tell Mr. Marchman to do that?

12        A     I don't recall.

13        Q     Did someone tell you they were engaging

14   special projects to help find out whether the

15   document was sealed?

16        A     Katherine did.

17        Q     Would she be allowed to engage special

18   projects without your approval?

19        A     She would.

20        Q     Did it matter if the document was sealed?

21        A     Matter to what?

22        Q     To you as an editor-in-chief approving its

23   publication.

24        A     Whether the document was sealed?

25        Q     Yes, sir.
```

Aleksander Chan
May 15, 2019                                    126

```
 1        A    Yes, that would be a factor in considering
 2   whether to publish the story.
 3        Q    And why would that be a factor in deciding
 4   whether to publish the story?
 5        A    Say it one more time.
 6        Q    Why would that be a factor in deciding
 7   whether to publish the story?
 8        A    Because we would need to refer to counsel's
 9   expertise.
10        Q    And how do you know to refer to counsel's
11   expertise when the issue of a sealed document comes
12   up?
13        A    I, I just know to refer to counsel when
14   court documents come up.
15        Q    So, as a default setting, when court
16   documents come up, counsel is brought into the loop?
17             MS. SHULLMAN:  Object to the form.
18        A    I can't speak to every single time.
19        Q    But as a general default setting, you're
20   saying that's what you do?
21        A    In stories -- with stories involving court
22   documents, we attempt to confer with counsel.
23        Q    Your publication's online, right?
24        A    Yes.
25        Q    It's not a newspaper like The New York
```

# EXHIBIT 3

to Plaintiff's Motion to Preclude Evidence & Argument of
Good Faith and for Denial of Motion for Summary Judgment on Actual Malice

Jack Mirkinson
May 16, 2019

1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI DIVISION

3                    Case No. 1:18-cv-24227-CMA

4      - - - - - - - - - - - - - - - - - -x
       JASON MILLER,
5
                          Plaintiff,
6
       v.
7
       GIZMODO MEDIA GROUP, LLC,
8      a Delaware Corporation, KATHERINE
       KRUEGER, individually, and
9      WILL MENAKER, individually,

10                        Defendants.

11     - - - - - - - - - - - - - - - - - -x

12

13          Videotaped deposition of JACK MIRKINSON,

14     taken pursuant to Notice, was held at the Law

15     Offices of DAVIS WRIGHT & TREMAINE, LLP, 1251 Sixth

16     Avenue, New York, New York, commencing May 16, 2019,

17     at 10:40 a.m., on the above date, before Amanda

18     McCredo, a Court Reporter and Notary Public in the

19     State of New York.

20

21

22

23

24

25

Jack Mirkinson
May 16, 2019                                    2

```
 1   A P P E A R A N C E S:

 2   BAJO CUVA COHEN TURKEL
     100 North Tampa Street
 3   Suite 1900
     Tampa, Florida 33602
 4   BY: KENNETH G. TURKEL, ESQ.
          SHANE B. VOGT, ESQ.
 5   svogt@bajocuva.com
     kturkel@bajocuva.com
 6   (813)443-2199
     Attorneys for Plaintiff
 7

 8

 9   DAVIS WRIGHT & TREMAINE, LLP
     1251 Avenue of the Americas
10   21st Floor
     New York, New York 10020
11   BY: KATHERINE A. BOLGER, ESQ.
     katebolger@dwt.com
12   (212)402-4068
     Attorneys for Defendants
13

14

15

16   ALSO PRESENT:

17   Darrak Lighty - videographer

18   Lynn Oberlander, Esq. - Gizmodo Media Group

19

20

21

22

23

24

25
```

Jack Mirkinson
May 16, 2019                                    59

```
1      Q    Do you recall, at any point in time, prior

2   to the Jason Miller article being posted, doing any

3   investigation into whether Ms. Delgado had any

4   ulterior motives in providing any information to

5   Splinter?

6           MS. BOLGER:  Object to the form.

7      A    By information provided, you mean

8   confirming the authenticity of the document?

9      Q    Yes.

10     A    We were looking to confirm the authenticity

11  of the document, and that was the capacity in, in,

12  in which we reached out to her.  And she did confirm

13  the authenticity of the document, and, you know, and

14  that's what we were looking for, because the story

15  we were reporting was about the court document.

16     Q    Do you know whether Ms. Delgado also

17  confirmed to Ms. Krueger that the supplement was not

18  sealed?

19     A    I don't want to speculate about what their

20  conversations entailed.  I know that she confirmed

21  the authenticity of the document to us.

22     Q    Did you ever see any emails between

23  Ms. Krueger and A.J. Delgado prior to the

24  publication of the story?

25     A    I don't remember.
```

Jack Mirkinson
May 16, 2019                                    77

```
 1        Q    And after Susie's initial message at 6:58,
 2   you respond at 7:07.
 3             Do you see that?
 4        A    Yes.
 5        Q    You say, "We're waiting on legal, but the
 6   plan was to publish ASAP"?
 7        A    Yes.
 8        Q    Whose plan was it to publish ASAP?
 9        A    I think it was a plan that everybody had
10   reached collectively.
11        Q    Was there any particular reason?
12             MS. BOLGER:  Obviously, do not reveal
13         confidences or thoughts about attorneys in
14          answering that question.
15        A    Well, I think that the -- we felt that the
16   story was ready to publish, you know, pending -- but
17   this -- at this point, anyway, pending legal, you
18   know, that we had a -- you know, that we, that we
19   had a story about a public legal filing about
20   newsworthy public figures who were, in Mr. Miller's
21   case, allegedly behaving in ways that ran counter to
22   the publicly stated positions of the Donald Trump
23   campaign.
24             We found the document to be a credible
25   document.  It contained an assertion from Jane Doe
```

Jack Mirkinson
May 16, 2019                                                    78

```
 1   saying, "Yes, that happened to me."  And, you know,
 2   so we thought we had an accurate, credible fair
 3   story in the public interest about newsworthy
 4   figures.
 5             You know, at this point, we had reached out
 6   for comment to people on both sides of the dispute.
 7   We had confirmed the authenticity of the document.
 8   And so, when you have a story that has all of those
 9   things and that you feel is ready to be published,
10   you publish the story.
11        Q    You said you had heard back -- you had
12   reached out to both sides for comment.
13             Had you heard back from Mr. Miller?
14        A    I don't remember the timeline on that
15   specifically.
16        Q    And continuing in this Exhibit Number 4 --
17   Susie responds at 7:07 and asks for a draft post to
18   send to PR.
19             Do you see that?
20        A    Yes.
21        Q    And then, after that, you sent the draft in
22   the message at 7:15.
23             Do you see that?
24        A    Yes.
25        Q    And then, on the second page, Susie
```

# EXHIBIT 4

to Plaintiff's Motion to Preclude Evidence & Argument of
Good Faith and for Denial of Motion for Summary Judgment on Actual Malice

Katherine Krueger
May 13, 2019

```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI DIVISION

3                     Case No. 1:18-cv-24227-CMA

4    - - - - - - - - - - - - - - - - - -x
     JASON MILLER,
5
                          Plaintiff,
6
     v.
7
     GIZMODO MEDIA GROUP, LLC,
8    a Delaware Corporation, KATHERINE
     KRUEGER, individually, and
9    WILL MENAKER, individually,

10                        Defendants.

11   - - - - - - - - - - - - - - - - - -x

12

13           Videotaped deposition of KATHERINE

14   KRUEGER, taken pursuant to Notice, was held at the

15   Law Offices of DAVIS WRIGHT & TREMAINE, LLP, 1251

16   Sixth Avenue, New York, New York, commencing May 13,

17   2019, at 10:39 a.m., on the above date, before

18   Amanda McCredo, a Court Reporter and Notary Public

19   in the State of New York.

20

21

22

23

24

25
```

Katherine Krueger
May 13, 2019                                        2

```
 1    A P P E A R A N C E S:

 2    BAJO CUVA COHEN TURKEL
      100 North Tampa Street
 3    Suite 1900
      Tampa, Florida 33602
 4    BY: KENNETH G. TURKEL, ESQ.
           SHANE B. VOGT, ESQ.
 5    svogt@bajocuva.com
      kturkel@bajocuva.com
 6    (813)443-2199
      Attorneys for Plaintiff
 7

 8

 9    DAVIS WRIGHT & TREMAINE, LLP
      1251 Avenue of the Americas
10    21st Floor
      New York, New York 10020
11    BY: ELIZABETH A. McNAMARA, ESQ.
           ABIGAIL EVERDELL, ESQ.
12    lizmcnamara@dwt.com
      abigaileverdell@dwt.com
13    (212)402-4068
      Attorneys for Defendants
14

15

16

17    ALSO PRESENT:

18    Darrak Lighty - videographer

19    Lynn Oberlander, Esq.

20    Jason Miller

21

22

23

24

25
```

Katherine Krueger
May 13, 2019                                          77

```
 1    correct?

 2         A    Correct.

 3         Q    All right.  Now, because we are in an

 4    argument with your lawyers over the identity of the

 5    source, I don't want you to disclose that, and I'm

 6    sure they've told you not to.

 7              But, in general, is the source someone you

 8    have known for a long time?

 9         A    Yes, we have a longstanding relationship.

10         Q    How longstanding?

11         A    Longer than a year.

12         Q    This isn't a high school or college friend,

13    is it?

14              MS. McNAMARA:  Objection.

15              I instruct you not to answer.  You do not

16         need to identify any information regarding the

17         source that might lead to the identification of

18         the source.

19         Q    I just want to know how long you've known

20    your source.

21              MS. McNAMARA:  She's answered that

22         question.

23         Q    More than a year?

24         A    I believe so.

25         Q    And in that respect, was this a source you
```

Katherine Krueger
May 13, 2019                                    78

1    found to be reliable?

2        A    Yes.

3        Q    Why?

4            MS. McNAMARA:  And again, if you can answer

5        that without information that is

6        identity-revealing in any way, feel free to

7        answer it.  If you feel that that involves

8        identity-revealing, then I instruct you not to

9        answer.

10       A    I guess I'm not sure how to answer it

11   without information --

12           MR. TURKEL:  We can stipulate that the

13       source isn't reliable if you don't want to give

14       me enough information to let me know why you

15       would rely on it.

16           I don't think the parameters of that

17       objection go as far as you're making it.  I

18       mean, at the end of the day, in a case that's

19       going to involve truth or falsity, I have a

20       right to know why the source was deemed to be

21       reliable by your client.  I mean --

22           MS. McNAMARA:  If you can answer the

23       question to, to support the notion that you

24       concluded that this source was a reliable

25       source, you can answer that question, but I

# EXHIBIT 5

to Plaintiff's Motion to Preclude Evidence & Argument of
Good Faith and for Denial of Motion for Summary Judgment on Actual Malice

Katherine Krueger
May 13, 2019

1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI DIVISION

3                    Case No. 1:18-cv-24227-CMA

4     - - - - - - - - - - - - - - - - - -x
      JASON MILLER,
5
                          Plaintiff,
6
      v.
7
      GIZMODO MEDIA GROUP, LLC,
8     a Delaware Corporation, KATHERINE
      KRUEGER, individually, and
9     WILL MENAKER, individually,

10                        Defendants.

11    - - - - - - - - - - - - - - - - - -x

12

13            Videotaped deposition of KATHERINE

14    KRUEGER, taken pursuant to Notice, was held at the

15    Law Offices of DAVIS WRIGHT & TREMAINE, LLP, 1251

16    Sixth Avenue, New York, New York, commencing May 13,

17    2019, at 10:39 a.m., on the above date, before

18    Amanda McCredo, a Court Reporter and Notary Public

19    in the State of New York.

20

21

22

23

24

25

Katherine Krueger
May 13, 2019                                    2

```
 1   A P P E A R A N C E S:

 2   BAJO CUVA COHEN TURKEL
     100 North Tampa Street
 3   Suite 1900
     Tampa, Florida 33602
 4   BY: KENNETH G. TURKEL, ESQ.
         SHANE B. VOGT, ESQ.
 5   svogt@bajocuva.com
     kturkel@bajocuva.com
 6   (813)443-2199
     Attorneys for Plaintiff
 7

 8

 9   DAVIS WRIGHT & TREMAINE, LLP
     1251 Avenue of the Americas
10   21st Floor
     New York, New York 10020
11   BY: ELIZABETH A. McNAMARA, ESQ.
         ABIGAIL EVERDELL, ESQ.
12   lizmcnamara@dwt.com
     abigaileverdell@dwt.com
13   (212)402-4068
     Attorneys for Defendants
14

15

16

17   ALSO PRESENT:

18   Darrak Lighty - videographer

19   Lynn Oberlander, Esq.

20   Jason Miller

21

22

23

24

25
```

Katherine Krueger
May 13, 2019                                    97

```
 1  between, you know, what you're being told and what
 2  you know.
 3      Q    Did you dismiss the statement made by your
 4  source that A.J. was "kind of nuts"?
 5      A    I don't think I dismissed it, but I didn't
 6  see it as material to reporting on this public
 7  document.
 8      Q    Did you tell your readers that A.J. Delgado
 9  may be "kind of nuts" or like words?
10      A    No.
11      Q    Did you put anything in your article
12  referring in any way, shape, or form to the fact
13  that Ms. Delgado may have actually been "kind of
14  nuts" or "insane" or "crazy" or anything like that?
15          MS. McNAMARA:  Objection; compound,
16       mischaracterization.
17      A    Can you rephrase the question?
18      Q    Sure.
19          Did you put anything in the article that
20  you ultimately published balancing the republication
21  of the Delgado supplement with any information about
22  her questionable mental health?
23          MS. McNAMARA:  Objection; lack of
24       foundation.
25      A    The way I balanced this was I reached out
```

Katherine Krueger
May 13, 2019                                                    98

1    to Miller personally and his legal team before

2    publication, giving him the opportunity to respond.

3    He chose not to.

4        Q     All right.  So, the fact that your source

5    told you that A.J. may be "kind of nuts" wasn't

6    enough for you to include it in your story?

7              MS. McNAMARA:  Objection;

8         mischaracterization.

9        A     This was part of a confidential exchange

10   with my source.

11       Q     Whether it's confidential or not, your

12   source, who you told me was reliable, was telling

13   you A.J. Delgado was "nuts," right?

14       A     Those aren't exactly the words that he

15   used.

16       Q     Okay.  Your source, who you've told me

17   under oath was reliable, was telling you, "A.J. is

18   kind of nuts," correct?

19       A     Yes.

20       Q     Did you agree with your source that the

21   case had been undercovered?

22       A     I guess broadly speaking, but it had been

23   covered some.

24       Q     Didn't you do online research, as part of

25   your due diligence before you published the article,

**EXHIBIT 6**

to Plaintiff's Motion to Preclude Evidence & Argument of
Good Faith and for Denial of Motion for Summary Judgment on Actual Malice

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**1:18-CV-24227-CMA-Altonaga**

| | |
|---|---|
| JASON MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GIZMODO MEDIA GROUP, LLC, | ) |
| a Delaware Corporation, KATHERINE | ) |
| KRUEGER, individually, and WILL | ) |
| MENAKER, individually, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS GIZMODO MEDIA GROUP, LLC'S AND KATHERINE KRUEGER'S RULE 26 DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendants Gizmodo Media Group, LLC and Katherine Krueger (collectively, "Gizmodo") hereby provide the following Initial Disclosures. Gizmodo makes these disclosures based on the information reasonably available to it at this time and reserves the right to supplement these disclosures. Gizmodo reserves all objections and privileges regarding discovery, admissibility, or use of any information in this action.

### A. **Witnesses**

The following individuals are likely to have discoverable information pertaining to the liability and damages issues in this case. Gizmodo reserves the right to supplement this disclosure and identify additional persons as such individuals become known through investigation and discovery.

1. Jason Miller, Plaintiff
   c/o Bajo Cuva Cohen Turkel
   *Has knowledge concerning Plaintiff's claims and alleged damages.*

2. Katherine Krueger, Defendant
   c/o Shullman Fugate PLLC

*Has knowledge concerning the publication at issue and Defendants' defenses.*

3. Aleksander Chan, Editor in Chief, Splinter
   c/o Shullman Fugate PLLC
   *Has knowledge concerning the publication at issue and Defendants' defenses.*

4. Jack Mirkinson, Deputy Editor, Splinter
   c/o Shullman Fugate PLLC
   *Has knowledge concerning the publication at issue and Defendants' defenses.*

5. Tim Marchman, Editor, Special Projects Desk, Gizmodo Media Group, LLC
   c/o Shullman Fugate PLLC
   *Has knowledge concerning the publication at issue and Defendants' defenses.*

6. Caitlin Schneider, Social Media Editor, Splinter
   c/o Shullman Fugate PLLC
   *Has knowledge concerning the publication at issue and Defendants' defenses.*

7. Susie Banikarim, Editorial Director, Gizmodo Media Group, LLC
   c/o Shullman Fugate PLLC
   *Has knowledge concerning the publication at issue and Defendants' defenses.*

8. Will Menaker, Defendant
   c/o Ballard Spahr LLP
   *Has knowledge concerning the tweets he is alleged to have published.*

9. Arlene "A.J." Delgado
   Address yet to be identified
   *Has knowledge concerning the factual circumstances reported in the publication at issue and the court records relied upon.*

10. Jane Doe
    Gizmodo requests Plaintiff reveal her identity and contact information to defense counsel
    *Likely to have knowledge concerning the factual circumstances reported in the publication at issue.*

11. Yashar Ali
    Address yet to be identified
    *Likely to have knowledge concerning the factual circumstances reported in the publication at issue.*

12. Jordan Bloom a/k/a Cockburn
    Address yet to be identified
    *Likely to have knowledge concerning the factual circumstances reported in the publication at issue.*

2

13. Mike Ernst
    ATA Process LLC
    1207 North Franklin St., Suite 104
    Tampa, FL 33602
    *Has knowledge concerning the public availability of the court record relied upon in the publication at issue.*

14. Andrew Corman
    ATA Process LLC
    1207 North Franklin St., Suite 104
    Tampa, FL 33602
    *Has knowledge concerning the public availability of the court record relied upon in the publication at issue.*

15. Harvey Ruvin, Clerk of Court, Miami-Dade County, Florida (and yet to be identified persons in the Clerk's office with most knowledge)
    175 NW First Avenue
    Miami, FL 33128
    *Has knowledge concerning the public availability of the court record relied upon in the publication at issue*

16. Other witnesses disclosed by Plaintiff.

17. Other witnesses disclosed by co-Defendants.

**B.  <u>Documents</u>**

Gizmodo will not produce documents that are subject to the attorney-client privilege and/or work product doctrine, or that are otherwise protected or privileged from disclosure under the Federal Rules of Civil Procedure, Federal Rules of Evidence, or applicable federal, state or Constitutional law, including but not limited to Section 90.5015, Florida Statutes.  Gizmodo makes these initial disclosures in order to expedite the discovery process and without waiving any of its objections to the admissibility of any information disclosed under the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and/or the Local Rules of this Court.  Gizmodo reserves the right to identify additional documents obtained through discovery in supplemental disclosures as provided under Rule 26(e).

Subject to all applicable privileges, including but not limited to the reporter's privilege under governing state, federal and Constitutional law, the following is a description of the relevant categories of documents currently within Gizmodo's possession, custody or control that

have been located to date and that Gizmodo may use to support its defenses to Plaintiff's claim, excluding those to be used solely for impeachment:

1.    The publication at issue in the lawsuit.

2.    Exhibits to Plaintiff's Complaint.

3.    The documents attached to Defendants' motion to dismiss.

4.    The court record relied upon in the publication at issue.

5.    Other court records in the family court proceeding between Plaintiff and A.J. Delgado

6.    Declarations executed by couriers concerning the status of the court record relied upon in the publication.

**C.  Computation of Damages**

Gizmodo has not asserted any claims and is not seeking any damages in this proceeding at this time.  Gizmodo does not waive any rights to do so in the future.

**D.  Insurance Agreements**

Pursuant to Rule 26(a)(1)(D), and subject to the reservation of all rights and privileges described above, Gizmodo states that given the strength and dispositive nature of Gizmodo's Motion to Dismiss, at the present time Gizmodo is not aware of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."

Respectfully submitted,

*s/Deanna K. Shullman*
Deanna K. Shullman
dshullman@shullmanfugate.com
Florida Bar No. 514462
Rachel Fugate
rfugate@shullmanfugate.com
Florida Bar. No. 144029
Giselle M. Girones
ggirones@shullmanfugate.com
Florida Bar No. 124373
Shullman Fugate PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
 Phone: 561-429-3619

<u>/s/ *Elizabeth A. McNamara*</u>
Elizabeth A. McNamara (*pro hac vice* forthcoming)
Katherine M. Bolger (*pro hac vice* forthcoming)
Claire K. Leonard (*pro hac vice* forthcoming)
DAVIS WRIGHT TREMAINE
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
lizmcnamara@dwt.com
katebolger@dwt.com
claireleonard@dwt.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2018, I served, but did not file, the following on the

individuals identified in the attached service list.

/s/Deanna K. Shullman
Deanna K. Shullman
Florida Bar No. 514462

## SERVICE LIST

Kenneth G. Turkel, Esq.
Shane B. Vogt, Esq.
Bajo Cuva Cohen Turkel
100 N. Tampa Street, Ste. 1900
Tampa, FL 33602
Phone: 813-443-2193
kturkel@bajocuva.com
shane.vogt@bajocuva.com
*Attorneys for Plaintiff*

Charles D. Tobin, Esq.
Chad R. Bowman, Esq.
Ballard Spahr LLP
1909 K Street, NW 12th Floor
Washington, D.C. 20006
Tel: (202) 661-2218
tobinc@ballardspahr.com
bowmanchad@ballardspahr.com
*Attorneys for Defendant Menaker*

# EXHIBIT 7

to Plaintiff's Motion to Preclude Evidence & Argument of
Good Faith and for Denial of Motion for Summary Judgment on Actual Malice

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**1:18-CV-24227-CMA-Altonaga**

| | |
|---|---|
| JASON MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GIZMODO MEDIA GROUP, LLC, | ) |
| a Delaware Corporation, KATHERINE | ) |
| KRUEGER, individually, and WILL | ) |
| MENAKER, individually, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT GIZMODO MEDIA GROUP, LLC'S RESPONSE TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, Defendant Gizmodo Media

Group, LLC ("Gizmodo") hereby responds to Plaintiff's First Set of Interrogatories as

follows:

**RESPONSES AND OBJECTIONS TO INTERROGATORIES**

**INTERROGATORY NO. 1:** Describe in detail how Gizmodo and/or Katherine Krueger
("Krueger") "obtained" the Mother's Supplement to Mother's March 2018 Motion for Court
to Consider Psychological Evaluation ("Supplement") before the September 21, 2018 article
"Court Docs allege Ex-Trump Staffer Drugged Woman He Got Pregnant With 'Abortion
Pill'" (the "Article") was first published, including without limitation, stating when (date and
time) and how (*i.e.*, in-person, e-mail, electronic message, application, etc.) Gizmodo and/or
Krueger received the Supplement, who gave Gizmodo and/or Krueger the Supplement, and
whether Gizmodo and/or Krueger (including anyone acting on their behalf) obtained the
Supplement from the Miami-Dade Clerk of Court's office.

**ANSWER:** Gizmodo objects to this interrogatory to the extent it seeks the

disclosure of information protected by the attorney-client or work product privileges.

Gizmodo further objects to this interrogatory insofar as it seeks information concerning

confidential sources and information obtained while actively gathering news protected

from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege

pursuant to the First and Fourteenth Amendments of the Federal Constitution, common

law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state

shield statute. Without waiving the foregoing, Gizmodo obtained the Supplement from a

confidential source.

**INTERROGATORY NO. 2:** Describe in detail every conversation or communication
(verbal and/or written) Gizmodo had internally or externally about the Supplement and/or
the content of the Article before they were first published on September 21, 2018,
including without limitation, stating the date(s), time(s), method(s) (*i.e.,* verbal, online,
social media, direct message, etc…), substance, and the parties to each conversation or
communication.

**ANSWER:** Gizmodo objects to this interrogatory as overly broad because it is not

limited in time or scope, not relevant to the parties' claims or defenses, and to the extent

it seeks the disclosure of information protected by the attorney-client or work product

privileges. Gizmodo further objects to this interrogatory insofar as it seeks information

concerning confidential sources and information obtained while actively gathering news

protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's

privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution,

common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable

state shield statute.

Without waiving the foregoing, pursuant to Rule 33(d), the answer to this

Interrogatory (to the extent not objected to) may be determined by reviewing the

documents produced in response to Plaintiff's First Request for Production of Documents

to Gizmodo.  Krueger also called Ana Martin Lavielle, Miller's family court lawyer, at

the phone number listed on her law firm's website prior to publication on September 21,

2018 but did not reach her.

**INTERROGATORY NO. 3:** Describe in detail any investigation, research, interviews, fact-checking and/or similar inquiries Gizmodo conducted concerning any of the facts alleged in the Supplement before the Supplement and Article were first published on September 21, 2018.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 4:** Describe in detail any and all investigation, research, interviews, inquiries, and/or reporting by Gizmodo concerning the legal proceedings between Plaintiff and Arlene Delgado in which the Supplement was filed [*In re. J.M. v. A.J.D.,* Eleventh Judicial Circuit, Miami-Dade County Case NO. 17-016674 FC 17 (the "Family Case")] before the Article was first published on September 21, 2018, including without limitation, the substance and content of any research, interviews, inquiries and/or investigations, the titles, dates, authors and locations of any articles, reports and/or social media posts published, a description of any court filings obtained, and/or the dates, subjects and substance of any interviews conducted before publication.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 5:** State whether Gizmodo reviewed a version of the docket for the Family Case in which the Supplement was filed before the Article was first published on September 21, 2018, and, if so, state how (*i.e.,* online, in person), when (date and time), and by whom the Family Case docket was reviewed.

**ANSWER:** Gizmodo objects to this interrogatory to the extent it seeks the disclosure of

information protected by the attorney-client or work product privileges. Gizmodo objects

to this interrogatory insofar as it seeks information obtained while actively gathering

news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a

reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal

Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any

other applicable state shield statute.

Without waiving the foregoing, Tim Marchman, Editor, Special Projects Desk

and Krueger reviewed the Miami Dade court docket online on the afternoon of

September 21, 2018 prior to publication.

**INTERROGATORY NO. 6:** Identify any articles, stories, posts, comments or opinions
published by Gizmodo during the past three years, whether verbal or written, that expressed
any negative view(s) or opinion(s) about Trump supporters, Trump staffers, members of the
Trump Administration, and/or Jason Miller.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or
before January 30, 2019.

**INTERROGATORY NO. 7:** Describe in detail all verbal and/or written conversations or
communications between Gizmodo and Will Menaker, Yashar Ali, Jordan Bloom, Arlene
Delgado and/or any attorney or representative for Arlene Delgado, that relate to Jason Miller,
the Article, the Supplement, and/or this lawsuit, including without limitation, stating the
date(s), time(s), method(s) (*i.e.,* verbal, online, social media, direct message, etc…),
substance, and participants to each conversation or communication.

**ANSWER:** Gizmodo objects to this interrogatory as overbroad in that is not limited to

the Article, Supplement and/or this lawsuit, is not relevant to any parties' claims or

defenses, and to the extent it seeks the disclosure of information protected by the

attorney-client or work product privileges. Gizmodo further objects to this interrogatory

to the extent it seeks disclosure of information protected by the joint defense or common

interest privileges. Gizmodo further objects to this interrogatory insofar as it seeks

information concerning confidential sources and information obtained while actively

4

gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015,

a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal

Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any

other applicable state shield statute.

Without waiving the foregoing and limited to the Supplement and publication at

issue, pursuant to Rule 33(d), the answer to this Interrogatory (to the extent not objected

to) may be determined by reviewing the documents produced in response to Plaintiff's

First Request for Production to Gizmodo.

**INTERROGATORY NO. 8:** Are you aware of any statement(s) made by any party or potential witness in this case concerning this case or any of its underlying issues, claims, defenses, facts, and/or allegations? If so, identify each statement, state when and how each statement was made, and identify the person(s) who made it.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 9:** State your knowledge of where and how Jason Miller was employed at the time the Article was first published on September 21, 2018.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 10:** Describe in detail whether and how Gizmodo promoted the Article online and/or on social media.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 11:** Describe in detail any actions Gizmodo took to determine whether the Supplement was part of the public record and/or available to members of the public before the Article and Supplement were first published on September 21, 2018.

**ANSWER:** Gizmodo objects to this interrogatory as duplicative, and to the extent it seeks the disclosure of information protected by the attorney-client or work product privileges. Gizmodo further objects to this interrogatory insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing, see previous responses to Interrogatories 2 and 5 above.

**INTERROGATORY NO. 12:** State in detail the factual basis for Gizmodo's contention that the publication of the Article and/or Supplement is protected by the fair reporting privilege.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 13:** State the number of page views of the Article (including any updates) since its publication on September 21, 2018, including the method of calculation of said page views and a description of any documents or data used to calculate the same.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 14:** State the advertising revenue generated from or related to the Article since its publication on September 21, 2018, including the method of calculation of said revenue and a description of any documents or data used to calculate the same.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 15:** Identify and describe in detail any Gizmodo policies, procedures, guidelines, rules, or similar directives in effect at the time of publication of the Article that related to the fair reporting privilege, actual malice, fact-checking, and/or publishing sealed or confidential court filings.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 16:** Describe in detail any verbal and/or written communications or conversations between Gizmodo and Arlene Delgado (including Ms. Delgado's legal counsel or anyone purporting to act on her behalf) during the past two years, including stating the date(s), time(s), method(s) (*i.e.,* verbal, online, e-mail messaging, social media, app, etc.), substance, and participants to each communication or conversation.

**ANSWER:** Gizmodo objects to this request as overbroad because it is not limited to the Article, Supplement and/or this lawsuit. Gizmodo further objects to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client or work product privileges. Gizmodo further objects to this interrogatory insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute.

Without waiving the foregoing and subject to the foregoing limitation, pursuant to Rule 33(d), the answer to this Interrogatory may be determined by reviewing the documents produced in response to Plaintiff's First Request for Production to Gizmodo.

**INTERROGATORY NO. 17:** State with specificity each and every reason why, upon receiving the e-mails from Miller's counsel referenced in paragraphs 100 and 102 of and

attached as Exhibits 4 and 5 to Miller's First Amended Complaint, Gizmodo did not retract the Article and/or Supplement or pull them offline.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 18:** State whether Gizmodo discussed, consulted or coordinated publishing the Supplement or Article internally, or externally with any other person, before they were first published on September 21, 2018 and, if so, state the date(s), time(s), methods, substance, and participants to the discussions, consultations, and/or coordination.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 19:** State any and all facts of which Gizmodo is aware that demonstrate, establish, refute, prove or disprove the truth of any of the alleged facts contained in the Supplement and/or the Article.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**INTERROGATORY NO. 20:** Identify any posts, tweets, and/or social media accounts on or through which Gizmodo promoted, featured, posted and/or notified people about the Article.

**ANSWER:** Per the Parties' agreement, Defendant will respond to this Interrogatory on or before January 30, 2019.

**VERIFICATION**

LYNN OBERLANDER on behalf of
GIZMODO MEDIA GROUP, LLC

STATE OF NEW YORK

COUNTY OF NEW YORK

BEFORE ME, the undersigned authority, personally appeared Lynn Oberlander, who being duly sworn, deposes and says that she/he has read and signed the foregoing interrogatory answers and that the answers are true and correct to the best of her/his knowledge, information and belief.  She (___) is personally known to me or (✓) produced __NYS Driver license__ as identification.

SWORN TO and subscribed before me this __20__ day of December, 2018.

Notary Public, State of New York
My Commission Expires:

SEAN JAMES WYNNE
Notary Public – State of New York
NO. 01WY6354528
Qualified in New York County
My Commission Expires Feb 13, 2021

**EXHIBIT 8**

to Plaintiff's Motion to Preclude Evidence & Argument of
Good Faith and for Denial of Motion for Summary Judgment on Actual Malice

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**1:18-CV-24227-CMA-Altonaga**

| | |
|---|---|
| JASON MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GIZMODO MEDIA GROUP, LLC, | ) |
| a Delaware Corporation, KATHERINE | ) |
| KRUEGER, individually, and WILL | ) |
| MENAKER, individually, | ) |
| | ) |
| Defendants. | ) |

---

## DEFENDANT GIZMODO MEDIA GROUP, LLC'S SUPPLEMENTAL[1] RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 26 and 34, Defendant Gizmodo Media Group, LLC ("Gizmodo") hereby serves its Supplemental Response to Plaintiff's First Request for Production as follows:

**REQUEST NO. 1:** Any materials, documents, and/or information Gizmodo reviewed, obtained, read, consulted, and/or or accessed before publishing the Article on September 21, 2018 related to: (a) Jason Miller; (b) Arlene Delgado; (c) the Family Case; and/or (d) the Supplement or any allegations made therein.

**RESPONSE:** Gizmodo objects to this request as overbroad in that Gizmodo is a large media company that owns several publications and accordingly, this request should be limited to Splinter, the publication that first published the Article at issue. Gizmodo further objects to this request as overbroad because it is not limited to the Article, Supplement and/or this lawsuit and not limited to individuals involved in the preparation or publication of the Article. Gizmodo further objects to the extent it seeks the disclosure of information protected by the attorney work

---

[1] Gizmodo previously responded to Requests 3, 4, 6, 10, 12, 14, 16, 17, 22 and 23 on December 31, 2018. This Supplement includes responses to the remaining Requests not previously answered.

product privilege. Gizmodo also objects to this request insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing and limiting this request to the individuals involved in the preparation or publication of the Article and to the Article, Supplement and/or this lawsuit, please see documents previously produced and the attached documents. Please also see the attached privilege log detailing correspondence protected by the attorney-client privilege.

**REQUEST NO. 2:** All documents (*i.e.,* articles, editorials, news stories, videos, blogs, posts, social media messages or postings—whether in print, online or electronically stored) that were in Gizmodo's possession, custody or control on or before September 21, 2018, that reference or relate to Jason Miller, Arlene Delgado, the Family Case, and/or the Supplement.

**RESPONSE:** Gizmodo objects to this request as overbroad because it is not limited to the Article and not limited to Splinter or the individuals involved in the preparation or publication of the Article. Gizmodo also objects to this request insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing and limiting this response to Splinter documents that reference Jason Miller, please see documents previously produced and the attached documents.

**REQUEST NO. 3:** The original version of the Supplement Gizmodo obtained from any source, whether in hard copy or electronic form, before the Article was first published on September 21, 2018.

**RESPONSE:** Gizmodo objects to this request as vague in that "original version," is an undefined term. Gizmodo further objects to this request insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing, a copy of the Supplement is/was publicly available via the Miami-Dade Clerk of Court and is online via https://splinternews.com/court-docs-allege-ex-trump-staffer-drugged-woman-he-got-1829233105.

**REQUEST NO. 4:** The original version of any e-mail, transmission, message or other medium through which Gizmodo first obtained the Supplement.

**RESPONSE:**  Gizmodo objects to this request as vague in that "original version," is an undefined term. Gizmodo further objects to this request insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute.

**REQUEST NO. 5:** Any article, podcast, blog, post, story, website, show, broadcast, and/or similar source of information about Jason Miller, Arlene Delgado, the Family Case, and/or the Supplement Gizmodo read or reviewed prior to publication of the Article.

**RESPONSE:**  Gizmodo objects to this request as duplicative of Request number 1, as burdensome in that it asks Gizmodo to poll all employees to determine what information each individual may have reviewed at any time prior to the publication of the Article and is not limited in time or scope as to subject matter that may relate to any parties claims or defenses. Gizmodo further objects in that this request is similarly not limited to Splinter or to specific

3

individuals involved in the preparation or publication of the Article or to those individuals' activities in connection with preparation or publication of the Article. Gizmodo also objects to this request insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing and limited to those individuals involved in the preparation or publication of the Article, please see documents previously produced and attached documents.

**REQUEST NO. 6:** Any documents demonstrating, revealing, and/or evidencing the source(s) from which Gizmodo obtained the Supplement before the Article was first published on September 21, 2018.

**RESPONSE:**   Gizmodo objects to this request insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute.

**REQUEST NO. 7:** Any written, electronic or recorded statement(s) made by any person or party to this lawsuit concerning any of its underlying facts, issues, allegations, claims or defenses.

**RESPONSE:**   Gizmodo objects to this request as overbroad because "any person" is not sufficiently limited to individuals involved in the preparation or publication of the Article. Gizmodo further objects to this request to the extent it seeks the disclosure of information protected by the attorney client or attorney work product privilege. To that end, Gizmodo interprets this response to mean that Plaintiff is not seeking privileged documents created after commencement of this lawsuit and is withholding such privileged documents. Gizmodo further

4

objects to this request insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing, please see documents previously produced and attached documents. Please also see the attached privilege log detailing correspondence protected by the attorney-client privilege.

**REQUEST NO. 8:** Any documents or electronically stored information or data evidencing any post, comment, tweet, re-tweet, like or similar social media activity by Gizmodo containing any negative opinions or commentary about Jason Miller.

**<u>RESPONSE:</u>**  Gizmodo objects to this request as overbroad in that Gizmodo is a large media company that owns several publications and accordingly, this request should be limited to Splinter, the publication that first published the Article at issue. Further, Gizmodo objects to the characterization of "negative opinion or commentary" as vague and because Gizmodo does not have knowledge on what Plaintiff construes or considers to be "negative" related to any post.

Without taking a position on whether any posts are negative, all posts or comments made by any person in response to the Article generally are publicly available at https://splinternews.com/court-docs-allege-ex-trump-staffer-drugged-woman-he-got-1829233105. Any comments, tweets, re-tweets or other social media activity generally is available publicly online.  Specifically, the article was posted at:

https://www.facebook.com/Jezebel/posts/10155445662657434

https://www.facebook.com/gizmodo/posts/10156753244933967

https://www.facebook.com/deadspin/posts/10160862294885072

https://www.facebook.com/splinternews/posts/2229429457342497

https://twitter.com/splinter_news/status/1043334272759865344

https://twitter.com/splinter_news/status/1043293179091607552

https://twitter.com/splinter_news/status/1043670052967452673

https://twitter.com/splinter_news/status/1043588384793464838

https://twitter.com/Jezebel/status/1043294236202946560

https://twitter.com/splinter_news/status/1043293664850726912

https://twitter.com/splinter_news/status/1043294169761042433

Subject to the foregoing, Gizmodo has no documents responsive to this request.

**REQUEST NO. 9:** Any written or electronic correspondence or communications during the past two years between Gizmodo and any other person or entity (other than Gizmodo's legal counsel) related to Jason Miller, Arlene Delgado, the Family Case and/or the Supplement.

**<u>RESPONSE:</u>**  Gizmodo objects to this request as overbroad because it is not limited to the Article or Splinter or those individuals involved in the preparation or publication of the Article. Gizmodo further objects to this request insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing, and limiting this response to the Article, please see documents previously produced and the attached documents. Please also see the attached privilege log detailing correspondence protected by the attorney-client privilege.

**REQUEST NO. 10:** Any written or electronic correspondence or communications between Gizmodo and Will Menaker related to Jason Miller, the Article, the Supplement, and/or this lawsuit.

**RESPONSE:**  Gizmodo objects to this request as overbroad because it is not limited to the Article, Supplement and/or this lawsuit, and to the extent it seeks the disclosure of information protected by the attorney work product privilege. Gizmodo further objects to this request to the extent it seeks disclosure of information protected by the joint defense or common interest privileges. Without waiving the foregoing and subject to the foregoing limitation, Gizmodo has no unprivileged documents responsive to this request.

**REQUEST NO. 11:** Any articles, stories, blogs, posts or similar writings Gizmodo published during the past two years about Jason Miller, Arlene Delgado or the Family Case.

**RESPONSE:**  Gizmodo objects to this request as overbroad in that Gizmodo is a large media company that owns several publications and accordingly, this request should be limited to Splinter as the publication that first published the Article at issue, and also limited to Jason Miller. Limiting this response to publications by Splinter that mention Jason Miller, see attached documents.

**REQUEST NO. 12:** Any documents demonstrating or evidencing how Krueger or Gizmodo obtained the Supplement before the Article was first published on September 21, 2018.

**RESPONSE:** Gizmodo objects to this request as duplicative of earlier requests and insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute.

**REQUEST NO. 13:** Any documents demonstrating or evidencing any investigation, research, interviews(s), fact-checking, and/or similar inquiries Gizmodo conducted concerning any of the facts alleged in the Supplement before first publishing the Article and Supplement on September 21, 2018.

**RESPONSE:**  Gizmodo objects to this request as overbroad in that it is not limited to Splinter and is not sufficiently limited to individuals involved in the preparation or publication of the Article.  Gizmodo further objects to this request insofar as it seeks information protected by the attorney-client and work product privileges. Gizmodo also objects to the extent it seeks disclosure concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing please see documents previously produced and the attached documents. Please also see the attached privilege log detailing correspondence protected by the attorney-client privilege.

**REQUEST NO. 14:** Any documents demonstrating or evidencing any actions Gizmodo took to determine whether the Supplement was part of the public record and/or available to members of the public before the Article and Supplement were first published on September 21, 2018.

**RESPONSE:**  Gizmodo objects to this request to the extent it seeks the disclosure of information protected by the attorney-client or work product privileges. Without waiving the foregoing, see documents previously produced.

**REQUEST NO. 15:** Any documents that support, refute or relate to your contention that the publication of the Article and/or Supplement are protected by the fair reporting privilege.

**RESPONSE:**  Please see the documents previously produced by Gizmodo in this Action. Please also see Gizmodo's pleadings filed in this matter, specifically Gizmodo and Krueger's Motion to Dismiss and Incorporated Memorandum of Law and exhibits in support thereof [DE 31, 32]; Gizmodo and Krueger's corrected Motion to Dismiss and Incorporated Memorandum of Law and Reply in support thereof [DE 44, 54], Opposition to Plaintiff's Motion to Amend the

Complaint [DE 55] and Supplemental briefing related to the Motion to Dismiss as ordered by the

Court [DE 65, 71] and all supporting exhibits as well as the Supplement itself.

**REQUEST NO. 16:** Any documents demonstrating, evidencing or relating to any efforts Gizmodo or anyone acting on its behalf made to obtain a copy or copies of the Supplement from the Miami-Dade Clerk's office after the Article was published on September 21, 2018.

**RESPONSE:** Gizmodo objects to this request to the extent it seeks the disclosure of

information protected by the attorney-client or work product privileges. Without waiving the

foregoing, see documents previously produced.

**REQUEST NO. 17:** Any documents demonstrating, evidencing or related to any efforts Gizmodo or anyone acting on its behalf made to obtain a copy or copies of the Supplement from the Miami-Dade Clerk's office before the Article was published on September 21, 2018.

**RESPONSE:** Gizmodo objects to this request to the extent it seeks the disclosure of

information protected by the attorney-client or work product privileges. Without waiving the

foregoing, see documents previously produced.

**REQUEST NO. 18:** Any of Gizmodo's written materials, policies, guidelines, online resources, procedures, directives, manuals or similar documents that were in effect as of September 21, 2018 that related to the fair reporting privilege, actual malice, fact-checking, and/or publishing sealed or confidential court filings.

**RESPONSE:** Gizmodo objects to this request because it is not limited to Splinter, the

publication that first published the Article, to the extent it seeks the disclosure of information not

relevant to any parties' claim or defense and protected by the attorney-client or work product

privileges. Gizmodo further objects on the grounds that such documents reveal Gizmodo's

confidential and proprietary business information. Without waiving the foregoing, Gizmodo has

no documents responsive to this request.

**REQUEST NO. 19:** Any documents demonstrating or evidencing whether Gizmodo internally or externally discussed, consulted or coordinated publishing the Supplement and/or Article before they were published on September 21, 2018.

**RESPONSE:**  Gizmodo objects to the extent it seeks the disclosure of information protected by the attorney-client and work product privileges. Gizmodo further objects to the term "coordinated" as vague. To the extent the request seeks documents that discussed, consulted or coordinated publishing the Supplement or Article with anyone outside of Gizmodo or Splinter, there are no documents responsive to this Request. Without waiving the foregoing, please see the documents previously produced by Gizmodo. Please also see the attached privilege log detailing correspondence protected by the attorney-client privilege.

**REQUEST NO. 20:** Any documents demonstrating, evidencing or related to the truth or falsity of any of the facts contained in the Supplement.

**RESPONSE:**  Gizmodo objects to this request insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing, see documents previously produced, Yashar Ali tweets as contained in the First Amended Complaint [DE 5] and attached documents.

**REQUEST NO. 21:** Any documents demonstrating, evidencing or related to the truth or falsity of any of the facts contained in the Article.

**RESPONSE:**  Gizmodo objects to this request as phrased because while Plaintiff has challenged the facts contained in the Supplement, Plaintiff has not challenged the facts as reported and contained in the Article. Gizmodo further objects to this request insofar as it seeks information concerning confidential sources and information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the

New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing, Gizmodo has no additional documents responsive to this request.

**REQUEST NO. 22:** Any documents memorializing any payment(s) made to the Miami-Dade Clerk's office for any copy or copies of the Supplement.

**RESPONSE:**  Gizmodo objects to this request to the extent it seeks the disclosure of information not relevant to any parties' claim or defense and protected by the attorney-client or work product privileges. Without waiving the foregoing, see documents previously produced.

**REQUEST NO. 23:** Any documents memorializing any conversations or communications between Gizmodo and Arlene Delgado (including her legal counsel or anyone acting on her behalf) related to Jason Miller, the Supplement, the allegations in the Supplement, the Family Case and/or the Article, including, without limitation, e-mails, text messages, social media posts, call logs, notes, memos, and similar materials.

**RESPONSE:**  Gizmodo objects to this request as overbroad because it is not limited to the Article, Supplement and/or this lawsuit. Gizmodo further objects to this request insofar as it seeks information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing and subject to the foregoing limitation, see documents previously produced.

**REQUEST NO. 24:** Any documents memorializing any conversations or communications between Gizmodo and Yashar Ali related to Jason Miller, the Supplement, the allegations in the Supplement, the Family Case and/or the Article, including, without limitation, e-mails, text messages, social media posts, call logs, notes, memos, and similar materials.

**RESPONSE:**  Gizmodo objects to this request as overbroad because it is not limited to the Article, Supplement and/or this lawsuit and because Gizmodo is a large media company that owns a large number of publications. Accordingly, Gizmodo limits its response to Splinter, the publication under which the Article was published and to the Article at issue. Gizmodo further

11

objects to this request insofar as it seeks information obtained while actively gathering news protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing and subject to the foregoing limitation, see documents previously produced.

**REQUEST NO. 25:** Any documents memorializing any conversations or communications between Gizmodo and Jordan Bloom related to Jason Miller, the Supplement, the allegations in the Supplement, the Family Case and/or the Article, including, without limitation, e-mails, text messages, social media posts, call logs, notes, memos, and similar materials.

**RESPONSE:**  Gizmodo has no documents responsive to this request.

**REQUEST NO. 26:** Any documents memorializing any conversations or communications between Gizmodo and Talking Points Memo related to Jason Miller, the Supplement, the allegations in the Supplement, the Family Case and/or the Article, including, without limitation, e-mails, text messages, social media posts, call logs, notes, memos, and similar materials.

**RESPONSE:**  Gizmodo has no documents responsive to this request.

**REQUEST NO. 27:** Any documents upon which your affirmative defenses in this action are based.

**RESPONSE:**  Gizmodo has no documents responsive to this request because as of the date of this response it has not asserted any affirmative defenses. As to fair report privilege, see the Supplement, Gizmodo's and Krueger's Corrected Motion to Dismiss, Reply thereto, Supplemental briefing related to Motion to Dismiss as ordered by the Court and all supporting exhibits.

**REQUEST NO. 28:** Any policies of insurance that may provide coverage for the claims asserted by Plaintiff in this lawsuit.

**RESPONSE:**   Gizmodo objects to this Request because it seeks confidential and proprietary business information. Gizmodo will produce the requested document subject to the entry of a mutually agreeable confidentiality agreement governing the disclosure of such information.

**REQUEST NO. 29:** All documents evidencing, demonstrating or related to the total number of page views of the Article.

**RESPONSE:** Gizmodo objects to this request as vague in that "page views" are not described in detail as to what website Plaintiff is referring. Limiting this response to the Splinter Article located at page https://splinternews.com/court-docs-allege-ex-trump-staffer-drugged-woman-he-got-1829233105, Gizmodo will produce responsive documents subject to the entry of a mutually agreeable confidentiality agreement governing such information.

**REQUEST NO. 30:** All documents evidencing, demonstrating or related to the total number of views of the Supplement embedded in the Article.

**RESPONSE:**   Gizmodo has no documents responsive to this Request.

**REQUEST NO. 31:** All documents evidencing, demonstrating or related to *Splinter*'s or Gizmodo's promotion of the Article online or on social media.

**RESPONSE:**   Please see documents previously produced. Gizmodo will produce additional responsive documents subject to the entry of a mutually agreeable confidentiality agreement governing such information.

**REQUEST NO. 32:** All documents demonstrating or evidencing the advertising revenue generated by or from the Article.

**RESPONSE:** Gizmodo objects to this Request because it seeks confidential and proprietary business information. Without waiving the foregoing, Gizmodo has no documents responsive to this Request.

13

**REQUEST NO. 33:** All documents evidencing, demonstrating or related to each instance in which any other publishers or media companies linked or cited to the Article.

**RESPONSE:** Please see attached documents.

**REQUEST NO. 34:** All reader comments posted and/or attempted to be posted about the Article, whether online and/or on social media.

**RESPONSE:**   Gizmodo objects to this request as vague in that Gizmodo does not have knowledge whether comments were made by "readers" of the article, and because this Request does not specify what website it is referring to. Gizmodo further objects to this Request to the extent the information sought in this request is publicly available online. Specifically, this Request is not limited to websites or accounts in Gizmodo's possession or control, and therefore it would be burdensome for Gizmodo to generally and broadly search the internet for any such responsive information. Without waiving the foregoing, Gizmodo has no documents related to comments "attempted to be posted" on the Splinter Article. Limiting this response to the Splinter Article located at page https://splinternews.com/court-docs-allege-ex-trump-staffer-drugged-woman-he-got-1829233105, all comments may be publicly viewed at the end of the Article and Gizmodo has no documents responsive to this Request.

**REQUEST NO. 35:** All documents demonstrating or evidencing any reader reaction, commentary or opinion about the Article, whether online or on social media, including without limitation any and all likes, tweets, re-tweets or similar actions.

**RESPONSE:** See response to Request No. 34 above.

**REQUEST NO. 36:** All versions of, edits to, drafts of, and revisions to the Article.

**RESPONSE:**   Gizmodo objects to this request to the extent it seeks the disclosure of information protected by the attorney-client and work product privileges.  Gizmodo further objects to this request insofar as it seeks information obtained while actively gathering news

14

protected from discovery by the Florida Shield Law, Fla. Stat. § 90.5015, a reporter's privilege pursuant to the First and Fourteenth Amendments of the Federal Constitution, common law, the New York Shield Law, Civ. Rights Law 79-h, or any other applicable state shield statute. Without waiving the foregoing, please see documents previously produced by Gizmodo. Please also see the attached privilege log detailing correspondence protected by the attorney-client privilege.

Dated: February 13, 2019.

Respectfully submitted,

/s/ *Elizabeth A. McNamara*
Elizabeth A. McNamara
Admitted *pro hac vice*
Katherine M. Bolger
Admitted *pro hac vice*
Claire K. Leonard
Admitted *pro hac vice*
DAVIS WRIGHT TREMAINE
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
lizmcnamara@dwt.com
katebolger@dwt.com
claireleonard@dwt.com

/s/ *Deanna K. Shullman*
Deanna K. Shullman (Florida Bar No. 514462)
Rachel Fugate (Florida Bar. No. 144029)
Giselle M. Girones (Florida Bar. No. 124373)
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
rfugate@shullmanfugate.com
ggirones@shullmanfugate.com

*Attorneys for Defendants Gizmodo Media Group, LLC and Katherine Krueger*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2019, I electronically served the foregoing document on all counsel or parties of record on the service list.

*/s/Deanna K. Shullman*
Deanna K. Shullman
Florida Bar No. 514462

## SERVICE LIST

*Attorneys for Plaintiff*:

Kenneth G. Turkel, Esq.
kturkel@bajocuva.com
Shane B. Vogt, Esq.
shane.vogt@bajocuva.com
BAJO CUVA COHEN TURKEL
100 N. Tampa Street, Ste. 1900
Tampa, FL 33602
Telephone: (813) 443-2193

*Attorneys for Defendant Will Menaker:*

Charles D. Tobin, Esq.
tobinc@ballardspahr.com
Chad R. Bowman, Esq. (*pro hac vice* pending)
bowmanchad@ballardspahr.com
Maxwell S. Mishkin, Esq.
(*pro hac vice* pending)
mishkinm@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Telephone: (202) 661-2218

# EXHIBIT 9

to Plaintiff's Motion to Preclude Evidence & Argument of
Good Faith and for Denial of Motion for Summary Judgment on Actual Malice

| From: | Lynn Oberlander on behalf of Lynn Oberlander <lynn.oberlander@gizmodomedia.com> |
|---|---|
| To: | Jack Mirkinson |
| Cc: | Katherine Krueger; Aleksander Chan; Tim Marchman; susie.banikarim@gizmodomedia.com; carolina.rodriguez@gizmodomedia.com |
| Subject: | Re: Jason Miller - ███████ |
| Date: | Monday, September 24, 2018 5:11:59 PM |

Privileged and Confidential - Attorney Client Communication



On Sep 24, 2018, at 4:58 PM, Jack Mirkinson
<jack.mirkinson@splinternews.com> wrote:

Privileged and Confidential - Attorney Client Communication



On Mon, Sep 24, 2018 at 4:55 PM Lynn Oberlander
<lynn.oberlander@gizmodomedia.com> wrote:

Privileged and Confidential - Attorney Client Communication



Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com

--
Jack Mirkinson
News Editor

Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC
114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com

GIZMODO-000050

| | |
|---|---|
| **From:** | Katherine Krueger on behalf of Katherine Krueger <katherine.krueger@splinternews.com> |
| **To:** | jason2034@yahoo.com |
| **Subject:** | Request for comment: allegations contained in Sept. 14 family court filing |
| **Date:** | Friday, September 21, 2018 5:45:14 PM |

Hi Jason –

I'm a reporter with the website Splinter in New York. I'm working on a story about a Sept. 14 filing in Miami-Dade family court by AJ Delgado's lawyers, which make some pretty stunning allegations about your relations with other women.

I'd like to give you the opportunity to respond to the allegations contained in that filing: that you forced a woman to have an abortion against her will and were physically abusive with another woman.

Please let me know if you have any comment as soon as you can — I'm also happy to jump on the phone whenever you're available if you'd prefer.

Best,

Katherine

--
Katherine Krueger
Managing Editor, Splinter
katherine.krueger@splinternews.com



**From:** Katherine Krueger <<katherine.krueger@splinternews.com>>
**Subject: Re: Florida docs**
**Date:** September 21, 2018 at 6:53:15 PM EDT
**To:** Lynn Oberlander <<lynn.oberlander@gizmodomedia.com>>
**Cc:** Kavi Reddy <<kavi.reddy@gizmodomedia.com>>,
<legal@gizmodomedia.com>, Tim Marchman
<<marchman@gizmodomedia.com>>, Aleksander Chan
<<aleksander.chan@splinternews.com>>, Jack Mirkinson
<<jack.mirkinson@splinternews.com>>

Privileged and confidential
Attorney client communication

On Fri, Sep 21, 2018 at 5:07 PM Katherine Krueger
<<katherine.krueger@splinternews.com>> wrote:
  i'm on the line now, marchman can you jump on?

  On Fri, Sep 21, 2018 at 5:03 PM Lynn Oberlander
  <<lynn.oberlander@gizmodomedia.com>> wrote:
   I'm not in office unfortunately

   Sent from my iPhone

   On Sep 21, 2018, at 5:03 PM, Katherine Krueger
   <<katherine.krueger@splinternews.com>> wrote:

     Lynn, are you in the office? If so I can just pop down and we can
     get Marchman on the line.

     On Fri, Sep 21, 2018 at 5:01 PM Lynn Oberlander
     <<lynn.oberlander@gizmodomedia.com>> wrote:
      Privileged and confidential attorney Client Communication

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000052

Can we get on the phone about this now?
I have a call at 5:30 so if we can talk in five minutes that would
be great.
Use my conference number: ███████████████

Sent from my iPhone

On Sep 21, 2018, at 4:55 PM, Katherine Krueger
<katherine.krueger@splinternews.com> wrote:

████████████████████████████████████
████████████████████████████████████
█████████████████████████

On Fri, Sep 21, 2018 at 4:53 PM Tim Marchman
<marchman@gizmodomedia.com> wrote:
████████████████████████████████
████████████████████████

On Fri, Sep 21, 2018 at 4:51 PM, Kavi Reddy
<kavi.reddy@gizmodomedia.com> wrote:
████████████████████████████████
█████████████████████████

██████████████████

On Sep 21, 2018, at 4:45 PM, Tim Marchman
<marchman@gizmodomedia.com> wrote:

████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████

████████████████████████
████████████████████████
████████████████████

On Fri, Sep 21, 2018 at 4:40 PM,
Kavi Reddy
<kavi.reddy@gizmodomedia.com

<p style="text-align:center;color:red;">REDACTED<br>ATTORNEY/CLIENT PRIVILEGED COMMUNICATION</p>

> wrote:



On Sep 21, 2018, at 4:05 PM,
Tim Marchman
<marchman@gizmodomedia.com> wrote:

Privileged and
confidential
Attorney client
communication

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000054

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC
114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION



**From:** Lynn Oberlander <lynn.oberlander@gizmodomedia.com>
**Subject: Fwd:** ████████████
**Date:** September 21, 2018 at 6:13:43 PM EDT
**To:** katherine.krueger@splinternews.com,
marchman@gizmodomedia.com, Kavi Reddy
<kavi.reddy@gizmodomedia.com>

Privileged and confidential attorney Client Communication



Begin forwarded message:

> **From:** Deanna Shullman <dshullman@shullmanfugate.com>
> **Date:** September 21, 2018 at 5:35:50 PM EDT
> **To:** Lynn Oberlander <lynn.oberlander@gizmodomedia.com>
> **Subject: Re:** ████████████



> On Sep 21, 2018, at 5:27 PM, Lynn Oberlander
> <lynn.oberlander@gizmodomedia.com> wrote:

Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com



**From:** Aleksander Chan <aleksander.chan@splinternews.com>
**Subject: Re: Florida docs**
**Date:** September 21, 2018 at 7:02:09 PM EDT
**To:** Kavi Reddy <kavi.reddy@gizmodomedia.com>
**Cc:** Katherine Krueger <katherine.krueger@splinternews.com>, Lynn Oberlander <lynn.oberlander@gizmodomedia.com>, legal@gizmodomedia.com, Tim Marchman <marchman@gizmodomedia.com>, Jack Mirkinson <jack.mirkinson@splinternews.com>

Privileged and confidential
Attorney client communication



REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000058



REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION



On Fri, Sep 21, 2018 at 6:59 PM Kavi Reddy <<u>kavi.reddy@gizmodomedia.com</u>> wrote:

On Sep 21, 2018, at 6:53 PM, Katherine Krueger <<u>katherine.krueger@splinternews.com</u>> wrote:

Privileged and confidential
Attorney client communication

On Fri, Sep 21, 2018 at 5:07 PM Katherine Krueger <<u>katherine.krueger@splinternews.com</u>> wrote:
i'm on the line now, marchman can you jump on?

On Fri, Sep 21, 2018 at 5:03 PM Lynn Oberlander <<u>lynn.oberlander@gizmodomedia.com</u>> wrote:
I'm not in office unfortunately

Sent from my iPhone

On Sep 21, 2018, at 5:03 PM, Katherine Krueger <<u>katherine.krueger@splinternews.com</u>> wrote:

Lynn, are you in the office? If so I can just pop down and we can get Marchman on the line.

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000060

On Fri, Sep 21, 2018 at 5:01 PM Lynn Oberlander
<lynn.oberlander@gizmodomedia.com> wrote:
Privileged and confidential attorney Client Communication

Can we get on the phone about this now?
I have a call at 5:30 so if we can talk in five minutes that would be great.
Use my conference number: ███████████

Sent from my iPhone

On Sep 21, 2018, at 4:55 PM, Katherine Krueger
<katherine.krueger@splinternews.com> wrote:



On Fri, Sep 21, 2018 at 4:53 PM Tim Marchman
<marchman@gizmodomedia.com> wrote:

On Fri, Sep 21, 2018 at 4:51 PM, Kavi Reddy
<kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 4:45 PM, Tim Marchman
<marchman@gizmodomedia.com> wrote:

On Fri, Sep 21, 2018, at 4:40 PM, Kavi Reddy
<kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 4:05 PM, Tim Marchman
<marchman@gizmodomedia.com> wrote:

Privileged and confidential
Attorney client communication



--
**Katherine Krueger**
**Managing Editor, Splinter**
katherine.krueger@splinternews.com

--
**Katherine Krueger**
**Managing Editor, Splinter**
katherine.krueger@splinternews.com

--
**Katherine Krueger**
**Managing Editor, Splinter**
katherine.krueger@splinternews.com

--
**Katherine Krueger**
**Managing Editor, Splinter**
katherine.krueger@splinternews.com

--
**Aleksander Chan**
**Editor-in-Chief, Splinter**
aleksander.chan@splinternews.com

Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC
114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000062



**From:** Katherine Krueger <katherine.krueger@splinternews.com>
**Subject: Re: Florida docs**
**Date:** September 21, 2018 at 7:59:59 PM EDT
**To:** Lynn Oberlander <lynn.oberlander@gizmodomedia.com>
**Cc:** Aleksander Chan <aleksander.chan@splinternews.com>, Kavi Reddy <kavi.reddy@gizmodomedia.com>,
legal@gizmodomedia.com, Tim Marchman <marchman@gizmodomedia.com>, Jack Mirkinson
<jack.mirkinson@splinternews.com>

On Fri, Sep 21, 2018 at 7:28 PM Lynn Oberlander <lynn.oberlander@gizmodomedia.com> wrote:
Privileged and confidential attorney Client Communication

On Sep 21, 2018, at 7:02 PM, Aleksander Chan <aleksander.chan@splinternews.com> wrote:

Privileged and confidential
Attorney client communication

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000063



REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000064



On Fri, Sep 21, 2018 at 6:59 PM Kavi Reddy <kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 6:53 PM, Katherine Krueger <katherine.krueger@splinternews.com> wrote:

Privileged and confidential
Attorney client communication

On Fri, Sep 21, 2018 at 5:07 PM Katherine Krueger <katherine.krueger@splinternews.com> wrote:

i'm on the line now, marchman can you jump on?

On Fri, Sep 21, 2018 at 5:03 PM Lynn Oberlander <lynn.oberlander@gizmodomedia.com> wrote:

I'm not in office unfortunately

Sent from my iPhone

On Sep 21, 2018, at 5:03 PM, Katherine Krueger <katherine.krueger@splinternews.com> wrote:

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

GIZMODO-000065

Lynn, are you in the office? If so I can just pop down and we can get Marchman on the line.

On Fri, Sep 21, 2018 at 5:01 PM Lynn Oberlander <lynn.oberlander@gizmodomedia.com> wrote:
Privileged and confidential attorney Client Communication

Can we get on the phone about this now?
I have a call at 5:30 so if we can talk in five minutes that would be great.
Use my conference number: ████████████

Sent from my iPhone

On Sep 21, 2018, at 4:55 PM, Katherine Krueger <katherine.krueger@splinternews.com> wrote:



On Fri, Sep 21, 2018 at 4:53 PM Tim Marchman <marchman@gizmodomedia.com> wrote:

On Fri, Sep 21, 2018 at 4:51 PM, Kavi Reddy <kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 4:45 PM, Tim Marchman <marchman@gizmodomedia.com> wrote:

On Fri, Sep 21, 2018 at 4:40 PM, Kavi Reddy <kavi.reddy@gizmodomedia.com> wrote:

On Sep 21, 2018, at 4:05 PM, Tim Marchman <marchman@gizmodomedia.com> wrote:

REDACTED

ATTORNEY/CLIENT PRIVILEGED COMMUNICATION



--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Aleksander Chan**
**Editor-in-Chief, Splinter**
**aleksander.chan@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC
114 Fifth Avenue, 2nd Floor
New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com

REDACTED
ATTORNEY/CLIENT PRIVILEGED COMMUNICATION



**From:** Aleksander Chan <aleksander.chan@splinternews.com>
**Subject: Re: Jason Miller/AJ Delgado; Urgent**
**Date:** September 21, 2018 at 9:30:15 PM EDT
**To:** Lynn Oberlander <lynn.oberlander@gizmodomedia.com>
**Cc:** Katherine Krueger <katherine.krueger@splinternews.com>, Jack Mirkinson <jack.mirkinson@splinternews.com>, Susie Banikarim <susie.banikarim@gizmodomedia.com>

thanks, talk then
On Fri, Sep 21, 2018 at 9:28 PM Lynn Oberlander <lynn.oberlander@gizmodomedia.com> wrote:
> 646-████████
> pin ████

On Sep 21, 2018, at 9:25 PM, Aleksander Chan <aleksander.chan@splinternews.com> wrote:

> I'm in—Lynn, can we use your conference line?
> On Fri, Sep 21, 2018 at 9:24 PM Katherine Krueger <katherine.krueger@splinternews.com> wrote:
>> ████████, can we all conference?
>>
>> On Fri, Sep 21, 2018 at 9:23 PM Lynn Oberlander <lynn.oberlander@gizmodomedia.com> wrote:
>>> Privileged and Confidential Attorney Client Communication
>>>
>>> ████████████████████████ Would you like to talk at 9:45?
>>>
>>> Sent from my iPhone
>>>
>>> On Sep 21, 2018, at 9:14 PM, Katherine Krueger <katherine.krueger@splinternews.com> wrote:



---------- Forwarded message ---------
From: **Shane Vogt** <shane.vogt@bajocuva.com>
Date: Fri, Sep 21, 2018 at 9:13 PM
Subject: Jason Miller/AJ Delgado; Urgent
To: katherine.krueger@splinternews.com
<katherine.krueger@splinternews.com>
CC: Ken Turkel <kturkel@bajocuva.com>,
ana@pamllaw.com <ana@pamllaw.com>, Christy
MacRobert-Ruiz (christy@pamllaw.com)
<christy@pamllaw.com>

Ms. Krueger:

    We represent Jason Miller.  I understand
that you just published a story about a September
14, 2018 filing "in Miami-Dade court by AJ
Delgado's lawyers."

    The filing upon which your story is based
sealed.  Advise us immediately how you obtained
a copy.  If you did not obtain the filing from the
actual public record, you are not protected by the
fair reporting privilege.  The fact that your story
indicates that you had to "confirm the [filing's]
authenticity" with Ms. Delgado indicates that you
did not obtain it from the public record, and that
you worked hand-in-hand with Ms. Delgado to
publish false and defamatory material that you
knew was not public and that you did not make
any effort to verify.

    To be clear, there is no validity to the
false accusations made in Ms. Delgado's filing.
We know the identity of the journalist Ms.
Delgado spoke to, and that journalist rightly
refused to publish a story about these false
accusations and confirmed to Mr. Miller that these
defamatory accusations could not be verified.  We
also know the identity of the "Jane Doe"
referenced in the filing, have located her, and Mr.
Miller is absolutely certain that he does not know
her, never had a relationship with her, and never
engaged in the actions Ms. Delgado—and now you

REDACTED                                    ATTORNEY-CLIENT PRIVILEGED

—falsely accuse him of committing.

You just rushed to publish a false and defamatory story without the protections of the First Amendment, and the consequences of that rush to judgment will be severe.  Demand is hereby made that you retract the story immediately, issue a public apology, confirm how you obtained the filing, and preserve all information and electronically stored information related to this matter; including without limitation all of your communications with Ms. Delgado, the electronic data associated with your access of any court websites on which you may have obtained access to the filing, any transmissions of the filing to you in any form, and all other materials, data or information that relate in any way to how you obtained the filing. Also preserve all of your records and electronically stored data associated with any investigation you conducted into this matter, which currently appears to be very little. All rights are reserved.

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
**Katherine Krueger**
**Managing Editor, Splinter**
**katherine.krueger@splinternews.com**

--
Aleksander Chan
Editor-in-Chief, Splinter
aleksander.chan@splinternews.com

--
Aleksander Chan
Editor-in-Chief, Splinter
aleksander.chan@splinternews.com

Lynn Oberlander
EVP and General Counsel
Gizmodo Media Group, LLC
114 Fifth Avenue, 2nd Floor

REDACTED                    ATTORNEY-CLIENT PRIVILEGED
                                                        GIZMODO-000357

New York, NY 10011
(646) 214-7898
(646) 877-4553 (cell)
lynn.oberlander@gizmodomedia.com

**EXHIBIT 10**

to Plaintiff's Motion to Preclude Evidence & Argument of
Good Faith and for Denial of Motion for Summary Judgment on Actual Malice

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### 1:18-CV-24227-CMA-Altonaga

JASON MILLER,

Plaintiff,

vs.

GIZMODO MEDIA GROUP, LLC, a
Delaware Corporation, KATHERINE
KRUEGE, individually, and WILL
MENAKER, individually,

Defendants.

---

## DEFENDANT GIZMODO MEDIA GROUP, LLC'S PRIVILEGE LOG TO RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

### Index of individuals identified on the privilege log

| NAME | TITLE |
|------|-------|
| Alyssa Beene ("A.B.") | Litigation Manager, Shullman Fugate PLLC |
| Aleksander Chan ("A.C.") | Editor in Chief, Splinter |
| Carolina Rodriguez ("C.R.") | Legal Administrator, Gizmodo Media Group, LLC ("GMG") |

| NAME | TITLE |
|---|---|
| Deanna Shullman, Esq. ("D.S.") | Outside counsel to GMG and Katherine Krueger |
| Giselle Girones, Esq. ("G.G.") | Associate, Shullman Fugate PLLC |
| Jack Mirkinson ("J.M.") | Deputy Editor, Splinter |
| Joyce Tang ("J.T.") | Deputy Managing Editor, GMG |
| Katherine Krueger ("K.K.") | Co-Defendant and Managing Editor, Splinter |
| Kavi Reddy, Esq. ("K.R.") | Vice President and General Counsel, GMG |
| Lan Nguyen, Esq. ("L.N.") | Head of Litigation, Univision Communications Inc. (parent company of GMG) |
| Lynn Oberlander, Esq. ("L.O.") | Executive Vice President and General Counsel, GMG |
| Susie Banikarim ("S.B.") | Editorial Director, Gizmodo Media Group, LLC ("GMG") |
| Tim Marchman ("T.M.") | Editor, Special Projects Desk, GMG |

**Privilege log**

| # | TYPE | DATE/ TIME | SUBJECT | DESCRIPTION | PRIVILEGE |
|---|---|---|---|---|---|
| 1. | EMAIL CHAIN (16 emails) | September 21, 2018 at 4:05 PM - September 21, 2018 at 10:19 PM | Re: Florida docs | Email from T.M. to K.R., K.K., L.O. regarding Supplement, Article, and updates to Article (unprivileged portions of email chain produced as GIZMODO-000052 – 000055) | Attorney-Client Privilege |

| # | TYPE | DATE/TIME | SUBJECT | DESCRIPTION | PRIVILEGE |
|---|------|-----------|---------|-------------|-----------|
| 2. | EMAIL CHAIN (3 emails) | September 21, 2018, at 5:27 PM - September 21, 2018 at 6:13 PM | Fwd: Quick question | Email discussion between L.O. and D.S. regarding Florida courts and L.O. discussion of D.S. legal advice with K.K., T.M., K.R. (redacted email chain produced as GIZMODO000056) | Attorney-Client Privilege |
| 3. | EMAIL CHAIN (2 emails) | September 21, 2018, 9:14 PM – September 21, 2018, 9:21 PM | Fwd: Jason Miller/AJ Delgado; Urgent | Email from K.K. to L.O. regarding demand for retraction and email from L.O. to D.S., L.N. regarding demand for retraction | Attorney-Client Privilege Work Product Privilege |
| 4. | EMAIL CHAIN (5 emails) | September 21, 2018 at 9:14 PM - September 21, 2018 at 9:30 PM | Fwd: Jason Miller/AJ Delgado; Urgent | Email from L.O. to K.K., A.C., J.M., S.B. regarding demand for retraction and responses thereto (unprivileged portions of email chain will be produced to Plaintiff) | Attorney-Client Privilege Work Product Privilege |
| 5. | NOTES | September 21, 2018 9:53 PM | N/A | Typed notes taken by K.K. during telephone conference with D.S. and L.O. containing legal advice of counsel regarding Article | Attorney-Client Privilege Work Product Privilege |
| 6. | EMAIL CHAIN (6 emails) | September 21, 2018 10:27 PM - September 21, 2018 at 10:55 PM | Re: Jason Miller/AJ Delgado; Urgent | Email from L.O. to K.K., A.C., J.M., S.B., D.S. regarding demand for retraction and responses to L.O., et al. from A.C., J.M., and K.K. and L.O. response to same | Attorney-Client Privilege Work Product Privilege |

| # | TYPE | DATE/TIME | SUBJECT | DESCRIPTION | PRIVILEGE |
|---|------|-----------|---------|-------------|-----------|
| 7. | EMAIL CHAIN (4 emails) | September 21, 2018 10:28 PM - September 21, 2018 at 10:48 PM | Re: Jason Miller/AJ Delgado; Urgent | Email from L.O. to K.K., A.C., J.M., S.B., D.S. regarding demand for retraction (also logged at # 6 above) and responses to L.O., et al. from D.S. and S.B. | Attorney-Client Privilege |
| 8. | EMAIL CHAIN (2 emails) | September 21, 2018 10:06 PM – September 21, 2018 10:25 PM | Fwd: Jason Miller/AJ Delgado; Urgent | Email from K.K. to L.O., A.C., J.M., S.B. regarding demand for retraction and discussion between L.O. and D.S. regarding same | Attorney-Client Privilege Work Product Privilege |
| 9. | EMAIL CHAIN (6 emails) | September 21, 2018 10:31 PM - September 21, 2018 at 10:55 PM | Re: Miller - more background | Email discussion between L.O. and D.S. regarding demand for retraction | Attorney-Client Privilege Work Product Privilege |
| 10 | EMAIL CHAIN (5 emails) | September 21, 2018 11:43 PM – September 22, 2018 11:33 AM | Re: Jason Miller/Splinter | Email discussion between L.O. and D.S. regarding Supplement | Attorney-Client Privilege Work Product Privilege |
| 11 | EMAIL CHAIN (5 emails) | September 21, 2018 11:43 PM – September 23, 2018 5:49 PM | Re: Jason Miller/Splinter | Email discussion between L.O. and D.S. regarding Supplement (same as # 10, with the exception of most recent emails on each chain) | Attorney-Client Privilege Work Product Privilege |

| # | TYPE | DATE/ TIME | SUBJECT | DESCRIPTION | PRIVILEGE |
|---|------|-----------|---------|-------------|-----------|
| 12 | EMAIL | September 21, 2018 at 11:46 PM | Fwd: Jason Miller/Splinter | Email from L.O. to K.K., S.B., A.C., J.M., T.M., C.R., L.N., K.R. regarding demand for retraction and document preservation | Attorney-Client Privilege Work Product Privilege |
| 13 | EMAIL CHAIN (6 emails) | September 21, 2018 11:46 PM -September 23, 2018 at 2:08 PM | Fwd: Jason Miller/Splinter | Email from K.R. to L.O. regarding Article (remainder of chain logged at # 4) | Attorney-Client Privilege Work Product Privilege |
| 14 | EMAIL CHAIN (11 emails) | September 21, 2018 11:46 PM - September 23, 2018 8:54 PM | Fwd: Jason Miller/Splinter | Email discussion following 9/21/18 11:46PM email from L.O. (logged at # 12) among D.S., K.K., S.B., A.C., L.O., J.M., C.R., L.N., K.R., regarding demand for retraction, document preservation, and family court case | Attorney-Client Privilege Work Product Privilege |
| 15 | EMAIL CHAIN (2 emails) | September 24, 2018 11:03AM – September 24, 2018 11:09AM | Fwd: Miller - Delgado | Email from C.R. to L.O. regarding Supplement; email from L.O. to D.S. regarding Supplement | Attorney-Client Privilege Work Product Privilege |
| 16 | EMAIL CHAIN (2 emails) | September 24, 2018 1:42 PM – September 24, 2018 1:44 PM | Re: Jason Miller and [[redacted to preserve privilege]] | Email exchange between L.O., D.S., and G.G. regarding preservation of documents | Attorney-Client Privilege Work Product Privilege |

| | | | |
|---|---|---|---|
| 17 | EMAIL CHAIN (2 emails) | September 24, 2018 at 2:28 PM - September 24, 2018 2:31 PM | Re: Note from the Legal Department | Email chain communications between T.M., L.O., S.B. regarding demand for retraction (as well as second, unrelated legal matter) | Attorney-Client Privilege |
| 18 | EMAIL CHAIN (3 emails) | September 24, 2018 at 2:28 PM-September 24, 2018 2:36 PM | Fwd: Note from the Legal Department | Internal forwarding to GMG editors at direction of counsel and in anticipation of litigation of legal advice contained in L.O. email sent 09/24/18 at 2:28PM (logged at # 17 above) | Attorney-Client Privilege Work Product Privilege |
| 19 | EMAIL CHAIN (11 emails) | September 24, 2018 4:55 PM - September 25, 2018 at 12:38 PM | Re: Jason Miller – [[redacted to preserve privilege]] | Email discussion among L.O., J.M., K.K., A.C., T.M., S.M., C.R., A.B. regarding Supplement and family court case | Attorney-Client Privilege Work Product Privilege |
| 20 | EMAIL CHAIN (2 emails) | September 24, 2018 5:39 PM – September 24, 2018 5:46 PM | Re: Miller/Delgado: [[redacted to preserve privilege]] | Email exchange between D.S. and L.O. regarding family court case | Attorney-Client Privilege Work Product Privilege |
| 21 | EMAIL CHAIN (2 emails) | September 24, 2018 6:11 PM – September 24, 2018 6:12 PM | Re: Miller/Delgado: [[redacted to protect privilege]] | Email exchange between L.O. and D.S. regarding Supplement | Attorney-Client Privilege Work Product Privilege |
| 22 | EMAIL CHAIN (6 emails) | October 2, 2018 5:15 PM – October 5, 2018 4:17 PM | RE: Jason Miller | Email exchange between D.S. and A.B. regarding Supplement; email exchange between D.S. and L.O. regarding same | Work Product Privilege Attorney-Client Communication |

Dated: February 13, 2019.

Respectfully submitted,

/s/ *Elizabeth A. McNamara*
Elizabeth A. McNamara
Admitted *pro hac vice*
Katherine M. Bolger
Admitted *pro hac vice*
Claire K. Leonard
Admitted *pro hac vice*
DAVIS WRIGHT TREMAINE
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
lizmcnamara@dwt.com
katebolger@dwt.com
claireleonard@dwt.com

/s/ *Deanna K. Shullman*
Deanna K. Shullman (Florida Bar No. 514462)
Rachel Fugate (Florida Bar. No. 144029)
Giselle M. Girones (Florida Bar. No. 124373)
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
rfugate@shullmanfugate.com
ggirones@shullmanfugate.com

*Attorneys for Defendants Gizmodo Media*
*Group, LLC and Katherine Krueger*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2019, I electronically served the foregoing document

on all counsel or parties of record on the service list.

*/s/Deanna K. Shullman*
Deanna K. Shullman
Florida Bar No. 514462

## SERVICE LIST

*Attorneys for Plaintiff*:
Kenneth G. Turkel, Esq.
kturkel@bajocuva.com
Shane B. Vogt, Esq.
shane.vogt@bajocuva.com
BAJO CUVA COHEN TURKEL
100 N. Tampa Street, Ste. 1900
Tampa, FL 33602
Telephone: (813) 443-2193

*Attorneys for Defendant Will Menaker:*
Charles D. Tobin, Esq.
tobinc@ballardspahr.com
Chad R. Bowman, Esq. (*pro hac vice* pending)
bowmanchad@ballardspahr.com
Maxwell S. Mishkin, Esq. (*pro hac vice* pending)
mishkinm@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Telephone: (202) 661-2218

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**1:18-CV-24227-CMA-Altonaga**

JASON MILLER,

        Plaintiff,

vs.

GIZMODO MEDIA GROUP, LLC, a
Delaware Corporation, KATHERINE
KRUEGE, individually, and WILL
MENAKER, individually,

        Defendants.

_____/

## DEFENDANT GIZMODO MEDIA GROUP, LLC'S AMENDED PRIVILEGE LOG
*(Amended to include item # 23)*

**Index of individuals identified on the privilege log**

| NAME | TITLE |
|---|---|
| Alyssa Beene ("A.B.") | Litigation Manager, Shullman Fugate PLLC (outside counsel to Katherine Krueger and Gizmodo Media Group, LLC ("GMG")) |
| Aleksander Chan ("A.C") | Editor in Chief, Splinter |
| Carolina Rodriguez ("C.R.") | Legal Administrator, GMG |
| Deanna Shullman, Esq. ("D.S.") | Partner, Shullman Fugate PLLC |

| NAME | TITLE |
|---|---|
| Giselle Girones, Esq. ("G.G.") | Associate, Shullman Fugate PLLC |
| Jack Mirkinson ("J.M.") | Deputy Editor, Splinter |
| Joyce Tang ("J.T.") | Deputy Managing Editor, GMG |
| Katherine Krueger ("K.K.") | Co-Defendant and Managing Editor, Splinter |
| Kavi Reddy, Esq. ("K.R.") | Vice President and General Counsel, GMG |
| Lan Nguyen, Esq. ("L.N.") | Head of Litigation, Univision Communications Inc. (parent company of GMG) |
| Lynn Oberlander, Esq. ("L.O.") | Executive Vice President and General Counsel, GMG |
| Susie Banikarim ("S.B.") | Editorial Director, GMG |
| Tim Marchman ("T.M.") | Editor, Special Projects Desk, GMG |

**Privilege log**

| # | TYPE | DATE/TIME | SUBJECT | DESCRIPTION | PRIVILEGE |
|---|---|---|---|---|---|
| 1. | EMAIL CHAIN (16 emails) | September 21, 2018 at 4:05 PM - September 21, 2018 at 10:19 PM | Re: Florida docs | Email from T.M. to K.R., K.K., L.O. regarding Supplement, Article, and updates to Article (unprivileged portions of email chain produced as GIZMODO-000052 – 000055) | Attorney-Client Privilege |

| # | TYPE | DATE/ TIME | SUBJECT | DESCRIPTION | PRIVILEGE |
|---|------|-----------|---------|-------------|-----------|
| 2. | EMAIL CHAIN (3 emails) | September 21, 2018, at 5:27 PM - September 21, 2018 at 6:13 PM | Fwd: Quick question | Email discussion between L.O. and D.S. regarding Florida courts and L.O. discussion of D.S. legal advice with K.K., T.M., K.R. (redacted email chain produced as GIZMODO000056) | Attorney-Client Privilege |
| 3. | EMAIL CHAIN (2 emails) | September 21, 2018 9:14 PM – September 21, 2018 9:21 PM | Fwd: Jason Miller/AJ Delgado; Urgent | Email from K.K. to L.O. regarding demand for retraction and email from L.O. to D.S., L.N. regarding demand for retraction | Attorney-Client Privilege Work Product Privilege |
| 4. | EMAIL CHAIN (5 emails) | September 21, 2018 at 9:14 PM - September 21, 2018 at 9:30 PM | Fwd: Jason Miller/AJ Delgado; Urgent | Email from L.O. to K.K., A.C., S.B. regarding demand for retraction and responses thereto (unprivileged portions of email chain will be produced to Plaintiff) | Attorney-Client Privilege Work Product Privilege |
| 5. | NOTES | September 21, 2018 9:53 PM | N/A | Typed notes taken by K.K. during telephone conference with D.S. and L.O. containing legal advice of counsel regarding Article | Attorney-Client Privilege Work Product Privilege |
| 6. | EMAIL CHAIN (6 emails) | September 21, 2018 10:27 PM - September 21, 2018 at 10:55 PM | Re: Jason Miller/AJ Delgado; Urgent | Email from L.O. to K.K., A.C., J.M., S.B., D.S. regarding demand for retraction and responses to L.O., et al. from A.C., J.M., and K.K. and L.O. response to same | Attorney-Client Privilege Work Product Privilege |

| # | TYPE | DATE/ TIME | SUBJECT | DESCRIPTION | PRIVILEGE |
|---|------|-----------|---------|-------------|-----------|
| 7. | EMAIL CHAIN (4 emails) | September 21, 2018 10:28 PM - September 21, 2018 at 10:48 PM | Re: Jason Miller/AJ Delgado; Urgent | Email from L.O. to K.K., A.C., J.M., S.B., D.S. regarding demand for retraction (also logged at # 6 above) and responses to L.O., et al. from D.S. and S.B. | Work Product Privilege |
| 8. | EMAIL CHAIN (2 emails) | September 21, 2018 10:06 PM – September 21, 2018 10:25 PM | Fwd: Jason Miller/AJ Delgado; Urgent | Email from K.K. to L.O, A.C., J.M., S.B. regarding demand for retraction and discussion between L.O. and D.S. regarding same | Attorney-Client Privilege |
| 9. | EMAIL CHAIN (6 emails) | September 21, 2018 10:31 PM - September 21, 2018 at 10:55 PM | Re: Miller - more background | Email discussion between L.O. and D.S. regarding demand for retraction | Work Product Privilege |
| 10 | EMAIL CHAIN (5 emails) | September 21, 2018 11:43 PM – September 22, 2018 11:33 AM | Re: Jason Miller/Splinter | Email discussion between L.O. and D.S. regarding Supplement | Attorney-Client Privilege Work Product Privilege |
| 11 | EMAIL CHAIN (5 emails) | September 21, 2018 11:43 PM – September 23, 2018 5:49 PM | Re: Jason Miller/Splinter | Email discussion between L.O. and D.S. regarding Supplement (same as # 10, with the exception of most recent emails on each chain) | Attorney-Client Privilege Work Product Privilege |

| # | TYPE | DATE/ TIME | SUBJECT | DESCRIPTION | PRIVILEGE |
|---|------|-----------|---------|-------------|-----------|
| 12 | EMAIL | September 21, 2018 at 11:46 PM | Fwd: Jason Miller/Splinter | Email from L.O. to K.K., S.B., A.C., J.M., T.M., C.R., L.N., K.R. regarding demand for retraction and document preservation | Attorney-Client Privilege Work Product Privilege |
| 13 | EMAIL CHAIN (6 emails) | September 21, 2018 11:46 PM - September 23, 2018 at 2:08 PM | Fwd: Jason Miller/Splinter | Email from K.R. to L.O. regarding Article (remainder of chain logged at # 4) | Attorney-Client Privilege Work Product Privilege |
| 14 | EMAIL CHAIN (11 emails) | September 21, 2018 11:46 PM - September 23, 2018 8:54 PM | Fwd: Jason Miller/Splinter | Email discussion following 9/21/18 11:46PM email from L.O. (logged at # 12) among D.S., K.K., S.B., A.C., L.O., J.M., C.R., L.N., K.R. regarding demand for retraction, document preservation, and family court case | Attorney-Client Privilege Work Product Privilege |
| 15 | EMAIL CHAIN (2 emails) | September 24, 2018 11:03AM – September 24, 2018 11:09AM | Fwd: Miller - Delgado | Email from C.R. to L.O. regarding Supplement; email from L.O. to D.S. regarding Supplement | Attorney-Client Privilege Work Product Privilege |
| 16 | EMAIL CHAIN (2 emails) | September 24, 2018 1:42 PM – September 24, 2018 1:44 PM | Re: Jason Miller and [[redacted to preserve privilege]] | Email exchange between L.O., D.S., and G.G. regarding preservation of documents | Attorney-Client Privilege Work Product Privilege |

| # | TYPE | DATE/TIME | SUBJECT | DESCRIPTION | PRIVILEGE |
|---|------|-----------|---------|-------------|-----------|
| 17 | EMAIL CHAIN (2 emails) | September 24, 2018 at 2:28 PM - September 24, 2018 2:31 PM | Re: Note from the Legal Department | Email chain communications between T.M., L.O., S.B. regarding demand for retraction (as well as second, unrelated legal matter) | Attorney-Client Privilege Work Product Privilege |
| 18 | EMAIL CHAIN (3 emails) | September 24, 2018 at 2:28 PM- September 24, 2018 2:36 PM | Fwd: Note from the Legal Department | Internal forwarding to GMG editors at direction of counsel and in anticipation of litigation of legal advice contained in L.O. email sent 09/24/18 at 2:28PM (logged at # 17 above) | Attorney-Client Privilege Work Product Privilege |
| 19 | EMAIL CHAIN (11 emails) | September 24, 2018 4:55 PM - September 25, 2018 at 12:38 PM | Re: Jason Miller – [[redacted to preserve privilege]] | Email discussion among L.O., J.M., K.K., A.C., T.M., S.M., C.R., A.B. regarding Supplement and family court case | Attorney-Client Privilege Work Product Privilege |
| 20 | EMAIL CHAIN (2 emails) | September 24, 2018 5:39 PM – September 24, 2018 5:46 PM | Re: Miller/Delgado: [[redacted to preserve privilege]] | Email exchange between D.S. and L.O. regarding family court case | Attorney-Client Privilege Work Product Privilege |
| 21 | EMAIL CHAIN (2 emails) | September 24, 2018 6:11 PM – September 24, 2018 6:12 PM | Re: Miller/Delgado: [[redacted to protect privilege]] | Email exchange between L.O. and D.S. regarding Supplement | Attorney-Client Privilege Work Product Privilege |

| # | TYPE | DATE/TIME | SUBJECT | DESCRIPTION | PRIVILEGE |
|---|------|-----------|---------|-------------|-----------|
| 22 | EMAIL CHAIN (6 emails) | October 2, 2018 5:15 PM – October 5, 2018 4:17 PM | RE: Jason Miller | Email exchange between D.S. and A.B. regarding Supplement; email exchange between D.S. and L.O. regarding same | Attorney-Client Privilege<br><br>Work Product Privilege |
| 23 | Slack Conversation (5 messages) | October 1, 2018 at 20:14 | N/A | Internal discussion among GMG editors at direction of counsel and in anticipation of litigation of legal advice contained in L.O. email | Attorney-Client Privilege<br><br>Work Product Privilege |

Dated: April 1, 2019.

Respectfully submitted,

/s/ *Elizabeth A. McNamara*
Elizabeth A. McNamara
Admitted *pro hac vice*
Katherine M. Bolger
Admitted *pro hac vice*
Claire K. Leonard
Admitted *pro hac vice*
DAVIS WRIGHT TREMAINE
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
lizmcnamara@dwt.com
katebolger@dwt.com
claireleonard@dwt.com

/s/ *Deanna K. Shullman*
Deanna K. Shullman (Florida Bar No. 514462)
Rachel Fugate (Florida Bar. No. 144029)
Giselle M. Girones (Florida Bar No. 124373)
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
rfugate@shullmanfugate.com
ggirones@shullmanfugate.com

*Attorneys for Defendants Gizmodo Media Group, LLC and Katherine Krueger*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2019, I electronically served the foregoing document on

all counsel or parties of record on the service list.

*/s/Deanna K. Shullman*
Deanna K. Shullman
Florida Bar No. 514462

## SERVICE LIST

*Attorneys for Plaintiff:*
Kenneth G. Turkel, Esq.
kturkel@bajocuva.com
Shane B. Vogt, Esq.
shane.vogt@bajocuva.com
BAJO CUVA COHEN TURKEL
100 N. Tampa Street, Ste. 1900
Tampa, FL 33602
Telephone: (813) 443-2193

*Attorneys for Defendant Will Menaker:*
Charles D. Tobin, Esq.
tobinc@ballardspahr.com
Chad R. Bowman, Esq. (*pro hac vice* pending)
bowmanchad@ballardspahr.com
Maxwell S. Mishkin, Esq. (*pro hac vice* pending)
mishkinm@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Telephone: (202) 661-2218