**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 17, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 19-13397-JJ
Case Style: Jason Miller v. Gizmodo Media Group, LLC, et al
District Court Docket No: 1:18-cv-24227-CMA

Enclosed is the Bill of Costs.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

UNITED STATES COURT OF APPEALS
For the Eleventh Circuit

_____

No. 19-13397

_____

District Court Docket No.
1:18-cv-24227-CMA

JASON MILLER,

                                      Plaintiff - Appellant,

versus

GIZMODO MEDIA GROUP, LLC,
a Delaware Corporation,
KATHERINE M. KRUEGER,
individually,
WILL MENAKER,
individually,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida
_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: April 16, 2021
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna H. Clark

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13397
_____

D.C. Docket No. 1:18-cv-24227-CMA

JASON MILLER,

        Plaintiff - Appellant,

versus

GIZMODO MEDIA GROUP, LLC, a Delaware Corporation,
KATHERINE M. KRUEGER, individually,
WILL MENAKER, individually,

        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 16, 2021)

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

JORDAN, Circuit Judge:

New York's "fair and true report" privilege, codified as N.Y. Civ. Rights Law § 74, provides in relevant part that a "civil action cannot be maintained . . . for the publication of a fair and true report of any judicial proceeding." The question in this libel case—which comes to us in a summary judgment posture—is whether the privilege applies to the fair and true publication of the contents of a document that was filed and sealed in a Florida paternity/child custody proceeding. Based on our review of New York law, and exercising plenary review, *see Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc), we agree with the district court that it does.

# I

The following facts, for purposes of summary judgment, are undisputed except where noted, and are taken mostly from the district court's summary judgment order. *See Miller v. Gizmodo Media Group, LLC*, 407 F. Supp. 3d 1300, 1303–07 (S.D. Fla. 2019). Where there is a conflict, we take the facts in light most favorable to the plaintiff, Jason Miller.

## A

In the summer of 2016, Mr. Miller served as a senior communications advisor for the Trump presidential campaign. In October of 2016, he began an affair with Arlene Delgado, whom he had hired as a spokesperson for the campaign. As a result of the affair, Ms. Delgado became pregnant, and in July of 2017 she gave birth to a

son. That same month, Mr. Miller initiated a paternity and custody proceeding in Florida circuit court.

On Friday, September 14, 2018, Ms. Delgado filed a supplement to an earlier motion for the court to consider a psychological evaluation of Mr. Miller. Essentially, the supplement stated that Ms. Delgado was informed in the summer of 2018 that Mr. Miller (while married) had an affair in 2012 with a stripper in Florida referred to as Jane Doe; that Mr. Miller had sexual intercourse with Ms. Doe; that Ms. Doe became pregnant; that Mr. Miller visited Ms. Doe and gave her a beverage which, unbeknownst to her, contained an abortion pill; that Ms. Doe wound up in a hospital emergency room, bleeding heavily, and almost went into a coma; that the pill induced an abortion; and that Ms. Doe's unborn child died. The supplement identified Ms. Delgado's initial source for this information and stated that Ms. Doe had later confirmed the story to a journalist. According to the supplement, that journalist said he had all he needed to write an article but had not done so because of his editor's concern that Ms. Doe "would backtrack." *See id.* at 1304.

Ms. Delgado did not file the supplement under seal. But on Monday, September 17, 2018, the next business day after the filing, Mr. Miller submitted an emergency motion under Rule 2.420(e)(1) of the Florida Rules of Judicial Administration to designate the supplement as confidential. Mr. Miller argued in his motion that the supplement should be confidential "to prevent a serious and

imminent threat to the fair, impartial, and orderly administration of justice," to "avoid substantial injury to innocent third parties," to "avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of proceeding sought to be closed," and to "comply with established public policy." *See* Fla. R. Jud. Admin. 2.420(c)(9)(A).

On September 21, 2018, the website *Splinter* (owned by Gizmodo Media Group) published an article by Katherine Krueger on the supplement. The article was entitled "Court Docs Allege Ex-Trump Staffer Drugged Woman He Got Pregnant with 'Abortion Pill.'"

The Florida circuit court held a hearing on Mr. Miller's motion for confidential designation of the supplement several days later, but as far as we can tell it has not issued a ruling on that motion. The supplement has therefore remained under seal. *See* Fla. R. Jud. Admin. 2.420(e)(1) ("Information that is subject to such a motion must be treated as confidential by the clerk pending the court's ruling on the motion.").[1]

**B**

---

[1] The parties dispute whether the supplement has been sealed since its filing. That dispute, however, is not material to our resolution of this appeal. Like the district court, we assume that the supplement has been functionally sealed from the time of its filing.

4

In response to the *Splinter* article, and as relevant here, Mr. Miller sued Gizmodo and Ms. Krueger for defamation. Mr. Miller and Ms. Doe each testified under oath that the factual statements set out in Ms. Delgado's supplement were and are false. For example, they denied that they had an affair or engaged in sexual intercourse, that Ms. Doe became pregnant by Mr. Miller, that Mr. Miller ever visited Ms. Doe's apartment, that Mr. Miller gave Ms. Doe a smoothie beverage, and that Ms. Doe lost a pregnancy in 2012 or at any time before or after as a result of any drink given to her by Mr. Miller.

Gizmodo and Ms. Krueger moved for summary judgment. They argued that New York's fair and true report privilege, codified as N.Y. Civil Rights Law § 74, applied to the *Splinter* article on the supplement, and consequently protected them from civil liability even if the factual statements in the supplement were themselves false. *See generally Martin v. Daily News L.P.*, 990 N.Y.S.2d 473, 481 (App. Div. 1st Dep't 2014) ("Even news articles containing false factual statements capable of defamatory interpretation will be protected by the absolute privilege afforded by Civil Rights Law § 74 if the gist of the articles constitutes a 'fair and true report.'"). In response, Mr. Miller asserted that § 74 did not apply because the supplement had been filed in a paternity/child custody proceeding and was sealed. He relied in large part on *Shiles v. News Syndicate Co.*, 261 N.E.2d 251, 256 (N.Y. 1970) (holding that § 74 does not apply to reports of filings in matrimonial proceedings that are sealed

5

pursuant to New York Domestic Relations Law § 235), and the policy rationale underlying that decision.

The district court concluded that § 74 applied, and that the *Splinter* article was a fair and true report of the supplement because it was "substantially accurate" (the standard used by New York courts applying the fair and true report privilege). As a result, Gizmodo and Ms. Krueger could not be held civilly liable. *See Miller*, 407 F. Supp. 3d at 1308–17. Mr. Miller does not challenge the district court's finding that the *Splinter* article was a fair and true report, but he maintains that the § 74 privilege does not apply because the supplement was filed in a paternity/child custody proceeding and sealed.

## II

New York grants an absolute privilege to reports of judicial proceedings that are fair and true. *See* N.Y. Civ. Rights Law § 74 ("A civil action cannot be maintained . . . for the publication of a fair and true report of any judicial proceeding."). The predecessor to § 74 (N.Y. Civil Practice Act § 337) required that the proceeding in question be "public," but in 1956 the New York Legislature created the new § 74 and deleted that word from the text of the fair and true report privilege. *See Keogh v. New York Herald Tribune, Inc.*, 274 N.Y.S.2d 302, 305 (N.Y. Sup. Ct. 1966), *aff'd*, 285 N.Y.S.2d 262 (App. Div. 1st Dep't 1967).

Mr. Miller does not dispute that § 74 governs if it applies, so we turn to the parties' dueling interpretations of that provision. As this case requires us to consider whether the *Shiles* decision precludes the application of § 74 to the *Splinter* article, we begin with a detailed examination of that case.

In *Shiles*, the New York Court of Appeals considered whether the § 74 privilege applied to a series of articles reporting on allegations made in an affidavit filed in a New York marital separation action. *See Shiles*, 261 N.E.2d at 252 & n.1. In response to the articles, the husband in the separation proceeding sued the publisher for libel and invasion of privacy, alleging that the affidavit contained false and defamatory statements, and that the use of the affidavit violated the confidentiality provisions of New York Domestic Relations Law § 235 (which we sometimes refer to as DRL § 235). The publisher invoked the § 74 privilege as an affirmative defense. *See id.* at 252–53.

In 1970, when *Shiles* was decided, DRL § 235 provided in pertinent part as follows:

> An officer of the court with whom the proceedings in an action to annul a marriage or for divorce or separation are filed, or before whom the testimony is taken, or his clerk, either before or after the termination of the suit, shall not permit a copy of any of the pleadings or testimony, or any examination or perusal thereof, to be taken by any other person than a party, or the attorney or counsel of a party, or the attorney or counsel of a party who had appeared in the cause, except by order of the court.

7

*See id.* at 252 n.2.[2]

Based on an analysis of the policy interests underlying both statutes, the Court of Appeals held that the § 74 privilege was not intended to defeat the object of DRL § 235, which manifests "a clear legislative design that [matrimonial proceedings] be kept secret and confidential." *Id*. at 253. The policy rationale for the § 74 privilege is "the public interest in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice." *Id.* (internal quotation marks omitted). For most actions, the Court of Appeals noted, that rationale tips the scales in favor of publicity, rather than the privacy interests of an individual. *See id.* The Court of Appeals concluded, however, that when the underlying action is matrimonial, the scales tip in favor of the privacy interests of the individual. *See id.* This is so because, through DRL § 235 and its predecessor provisions, the New York Legislature had "made it plain . . . in the case of papers filed in [matrimonial] actions [that] the public interest is served not by publicizing them but by sealing them and prohibiting their examination by the public." *Id.* Consequently, New York courts had held that New York's fair and true report

---

[2] In the current version of DRL § 235—which now also applies to proceedings for custody, visitation, or maintenance—the automatic sealing provision is located in subsection (1). *See* N.Y. Dom. Rel. Law § 235(1).

privilege was unavailable to reports of matrimonial action records due to several factors: their inherently personal nature; the interest in not having them be used to gratify spite or promote public scandal; and the interest in preventing a spouse from forcing the other into agreeing to a settlement on threat of disclosing allegations. *See id.*

For those reasons, the Court of Appeals ruled that the § 74 privilege "does not afford a party a license to destroy by indirection the salutary protection afforded by [DRL § 235]." *Id.* at 255–56. As a result, "the policy considerations underlying and embodied in [DRL § 235] render [§] 74 unavailable in any suit based upon a report of a matrimonial action in which the disclosure of information is forbidden except by court order." *Id*. at 256.

### III

The parties debate the breadth of *Shiles*. The defendants—Gizmodo and Ms. Krueger—assert that *Shiles* precludes the application of the § 74 privilege only to reports of matrimonial records that are automatically sealed by operation of DRL § 235. Conversely, Mr. Miller contends that *Shiles* applies more generally to sealed filings in all family-related actions.

### A

The district court agreed with the defendants, ruling that *Shiles* is limited to records of matrimonial actions that are sealed due to DRL § 235. *See Miller*, 407 F.

Supp. 3d at 1309. Based on our independent review of New York law, we agree with the district court and hold that *Shiles* precludes the application of the § 74 privilege only when the publication concerns court records that have been automatically sealed by operation of DRL § 235.

First, as we read *Shiles*, the existence and applicability of the automatic sealing provision in DRL § 235 was the factor that tipped the scales in favor of excluding the application of the § 74 privilege in that case. *See Shiles*, 261 N.E.2d at 255 ("[S]ection 74 of the Civil Rights Law does not afford a party a license to destroy by indirection the salutary protection afforded by section 235 of the Domestic Relations Law."). Though Mr. Miller argues that the policy considerations underlying DRL § 235 apply equally to the sealed supplement filed in a Florida circuit court, those considerations in abstract were not the lynchpin of *Shiles*' holding. Instead, it was the statutory protection provided by DRL § 235, based on those underlying policy considerations, through which the New York Legislature had "manifest[ed] [a] clear legislative design" to maintain the confidentiality of the designated records. *See id.* at 253.

Second, a number of commentators agree with this reading of *Shiles*. Their views are not, of course, conclusive, but they do support our interpretation. *See* 18A Paul M. Coltoff et al., Carmody-Wait 2d New York Practice with Forms § 114:5 (Nov. 2020 update) (explaining that DRL § 235 "manifests a clear legislative intent

that matrimonial proceedings be kept secret and confidential, for the right of the individual litigants not to have the records of such proceedings used to create public scandal outweighs the general public interest in knowing about the administration of the courts"); Annotation, *Libel and Slander: Privilege of Reporting Judicial Proceedings as Extending to Proceedings Held in Secret or as to which Record is Sealed by Court*, 43 A.L.R. 3d 634, § 3[a] (1972 & 2020 supp.) (*Shiles* "reasoned that the statute which prohibited the copying or inspecting of records of matrimonial proceedings . . . manifested a clear legislative design that those proceedings be kept secret"); 4 N.Y. Practice, Commercial Litigation in New York State Courts § 28:7 n.2 (5th ed. Oct. 2020 update) (reading *Shiles* as "holding that DRL § 235 is controlling as to the issue of disclosure in a matrimonial action involving libel and invasion of privacy"); George Carpinello, *Public Access to Court Records in New York: The Experience under Uniform Rule 216.1 and the Rule's Future in a World of Electronic Filing*, 66 Albany L. Rev. 1089, 1101 n.69 (2003) (concluding that *Shiles* is based on DRL § 235); Diane Johnsen, *When Truth and Accuracy Diverge: The Fair Report of a Dated Proceeding*, 34 Stanford L. Rev. 1041, 1049 n.30 (1982) (*Shiles* held that a "statute [DRL § 235] requiring divorce proceedings be kept sealed negates [the fair and true report] privilege").

Third, in this case, DRL § 235 does not apply. Whether the supplement filed by Ms. Delgado in a Florida court is a public document or a sealed filing is governed

by Florida's Rules of Judicial Administration, and not by DRL § 235. *See* Fla. Fam. L. R. P. 12.400(a) ("Closure of court proceedings or sealing of records may be ordered by the court only as provided by Florida Rule of Judicial Administration 2.420."). *Cf.* N.Y. Cons. Laws § 149 ("The laws of one state can have no force and effect in the territorial limits of another jurisdiction, in the absence of the consent of the latter."); *Glob. Reinsurance Corp. U.S. Branch v. Equitas Ltd.*, 969 N.E.2d 187, 195 (N.Y. 2012) ("The established presumption is, of course, against the extraterritorial operation of New York law[.]").[3]

Fourth, though the case law is admittedly sparse, New York courts both before and after *Shiles* have applied the § 74 privilege to articles or reports of non-public/confidential records of proceedings that are outside the scope of DRL § 235. *See Keogh,* 274 N.Y.S.2d at 305 (holding, before *Shiles*, that that the § 74 privilege

---

[3] When Mr. Miller filed his emergency motion, he did not assert that the supplement had been automatically made confidential pursuant to Florida law. *See* Fla. R. Jud. Admin. 2.420(c)(7), (8). Instead, Mr. Miller's motion relied on Rule 2.420(c)(9)(A) of the Florida Rules of Judicial Administration, which provides for the confidentiality of court records if the court determines that confidentiality is required to, among other things, protect the right to the fair administration of justice, "avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right," and "comply with [Florida] public policy." Fla. R. Jud. Admin. 2.420(c)(9)(A). To grant Mr. Miller's motion, the state circuit court would need to determine (i) that the degree, duration, and manner of confidentially is no broader than necessary, and (ii) that treating the supplement as confidential is the least restrictive means available, to protect those interests. *See* Fla. R. Jud. Admin. 2.420(c)(9)(B), (C). In short, sealing the supplement would require discretionary determinations by a Florida court. Hence, even if we were to find that *Shiles* applies to more than just records encompassed by DRL § 235, the legislative design that served as the lynchpin of *Shiles* differs from Florida law.

applies to reports of minutes and testimony transcripts of confidential grand jury proceedings); *Gardner v. Poughkeepsie Newspapers Inc.*, 326 N.Y.S.2d 913, 914 (N.Y. Sup. Ct. 1971) (holding, after *Shiles*, that the § 74 privilege applies to reports of sealed records of youthful offender proceedings); *Grab v. Poughkeepsie Newspapers, Inc.*, 399 N.Y.S.2d 97, 98 (N.Y. Sup. Ct. 1977) (holding, after *Shiles*, that the § 74 privilege applies to reports of confidential youthful offender proceedings, and distinguishing *Shiles* on the ground that DRL § 235 requires the sealing of records in matrimonial proceedings). It seems to us, therefore, that the confidential nature of a filing, though possibly necessary for *Shiles* to control, is not in itself sufficient to preclude the application of § 74. *Cf. Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. City of New York*, 475 N.Y.S.2d 383, 388 (App. Div. 1st Dep't 1984) ("[T]he activities of the agency need not be public for the statutory [§ 74] privilege to apply.").

Fifth, we note that *Shiles* has not been extended to reports of *public* matrimonial proceedings, even though, like sealed records, they are inherently personal in nature, and the allegations made and voiced in such proceedings can be used to promote public scandal, damage reputations, or coerce a settlement. In *Zappin v. NYP Holdings Inc.*, 769 F. App'x 5, 8 (2d Cir. 2019), the Second Circuit recently held that § 74 applies to articles "based on a reporter's observations of open court proceedings in matrimonial cases"—proceedings in which an ex-husband was

falsely accused of abusing his ex-wife—and that *Shiles* "[did] not bar the defendants from asserting" the fair and true report privilege. *Zappin*, though unpublished, also cuts against Mr. Miller's policy-based reading of *Shiles*.

## B

Mr. Miller asserts that the cases applying § 74 to non-public documents or proceedings can be explained by reference to a supervisory rationale for the fair and true report privilege. According to Mr. Miller, one of the policy interests underlying the § 74 privilege is allowing the press to provide the public with information needed in order to supervise the operations of government. Because there is no government involvement here, says Mr. Miller, the supervisory rationale does not justify the application of the § 74 privilege.

We are not convinced. There are indeed some cases which reference the supervisory rationale advanced by Mr. Miller. *See e.g., Gubarev v. BuzzFeed, Inc.,* 340 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018) ("The press also provides the public with information it needs to exercise oversight of the government and with information concerning the public welfare. The fair report privilege exists to protect the press as it carries out these functions."). But there are also others which apply the § 74 privilege to non-public records or proceedings without reference to the supervisory rationale. *See Keogh,* 274 N.Y.S.2d at 305; *Gardner*, 326 N.Y.S.2d at 914; *Grab*, 399 N.Y.S.2d at 98.

Moreover, none of the cases cited by Mr. Miller holds that the § 74 privilege protects reports of non-public records of judicial proceedings *only* if the supervisory rationale applies. Mr. Miller admits as much: Though he asserts that the supervisory rationale "justifies reporting about matters that are secret or confidential," he "does not contend the privilege only applies to reporting about conduct of a government agency or official." Appellant's Reply Br. at 12 & n.20. In other words, though the supervisory rationale may be one of the animating principles of the § 74 privilege, it is not a limiting principle, at least not outside of the scope of records automatically sealed by operation of DRL § 235.

The same is true of the agency rationale invoked by Mr. Miller. According to this rationale, the § 74 privilege protects reports of public government or court records published by the press in its role as an agent of the public. The fact that courts have applied the § 74 privilege to reports of records of non-public judicial proceedings demonstrates that the agency rationale is also not a limiting principle outside of the context of records automatically sealed by DRL § 235.

## IV

We hold that § 74's fair and true report privilege applies to the *Splinter* article written by Ms. Krueger about the supplement filed by Ms. Delgado, and that the 1970 decision of the New York Court of Appeals in *Shiles* does not preclude the

application of § 74.  We therefore affirm the district court's grant of summary judgment to the defendants.

**AFFIRMED.**

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**
**Bill of Costs**

Court of Appeals Docket No. **19-13397**

Jason Miller vs. Gizmodo Media Group, LLC, et al.

A Bill of Costs should only be filed when the Clerk's Office has advised a party that the party is entitled to costs. FRAP 39 and 11th Cir. R. 39-1 govern costs taxable in this court and the time for filing the Bill of Costs. A motion for leave to file out of time is required for a Bill of Costs not timely received.

**INSTRUCTIONS**

The appellate docketing fee is set in the fee schedule issued pursuant to 28 U.S.C. § 1913. However, the $5 fee for filing a notice of appeal is recoverable as a cost in the district court. In the grid below, multiply the number of original pages of each document by the total number of documents reproduced to calculate the total number of copies reproduced. Multiply this number by the cost per copy ($.15 per copy for "In-House", up to $.25 per copy for commercial reproduction, supported by receipts) showing the product as costs requested.

|  | Repro. Method (Mark One) | | No. of Original Pages | Total No. Documents Reproduced | Total No. of Copies | COSTS REQUESTED | CT. USE ONLY COSTS ALLOWED |
|---|---|---|---|---|---|---|---|
|  | In-House | Comm* |  |  |  |  |  |
| Appellate Docketing Fee | — | — | — | — | — |  |  |
| Appellant's Brief |  |  |  |  |  |  |  |
| Appendix |  | X | 1100 | 4 | 4400 | 1,100.00 | $1,100.00 |
| Appellee's Brief |  | X | 53 | 10 | 530 | 132.50 | $ 132.50 |
| Reply Brief |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| *Note: If reproduction was done commercially, receipt(s) must be attached. | | | | | TOTAL | $1,232.50 REQUESTED | $ $1,232.50 ALLOWED |

I hereby swear or affirm that the costs claimed were actually and necessarily incurred in this appeal and that I have served this Bill of Costs on counsel/parties of record.

Signature: _____  Date Signed: April 29, 2021
Attorney Name: Elizabeth A. McNamara  Attorney for: Gizmodo Media Group
(Type or print your name)  (Type or print name of client)
E-mail: lizmcnamara@dwt.com  Phone: 212-489-8230
Street Address/City/State/Zip: Davis Wright Tremaine LLP, 1251 Avenue of the Americas, 21st. Fl., New York, New York 10020

**FOR COURT USE ONLY**

Costs are hereby taxed in the amount of $ **$1,232.50** against **Appellant**
and are payable directly to **Appellee**

David J. Smith, Clerk of Court

Issued on: _____ By: /S/ Tresa A. Porter   DATE: 5/3/2021
Deputy Clerk

ISSUED AS MANDATE 05/17/2021

**RECORD PRESS, INC.**
229 West 36th Street
8th Floor
New York, NY 10018
dmisser@recordpress.com


Appellate Management Document Solutions

**BILL TO**

Megan Duffy
Davis Wright Tremaine, LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104

**INVOICE #** 104066
**DATE** 12/27/2019
**DUE DATE** 01/11/2020
**TERMS** Net 15

| CAPTION | JOB # | REP |
|---|---|---|
| Jason Miller v Gizmodo | 80987/80988 | VM |

| DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|
| 11TH CIRCUIT COURT OF APPEALS | | | |
| Appellee's Brief & Appellee's Appendix | | | |
| | | | |
| Brief - 10 Copies / 53 Pages | | | |
| (Printing, Covers & Binding) | 1 | 429.00 | 429.00 |
| | | | |
| Appendix - 4 Copies / 1100 Pages | | | |
| 4 Copies x 1100 Pages | 4,400 | 0.25 | 1,100.00 |
| 1-Sided Typeset Cover | 1 | 135.00 | 135.00 |
| Velo-Binding - 4 Copies x 5 Volumes | 20 | 7.00 | 140.00 |
| Table of Contents | 7 | 85.00 | 595.00 |
| OCR - Pages Text Searchable | 1,100 | 0.15 | 165.00 |
| Insert 57 Tabs x 4 Copies | 228 | 1.50 | 342.00 |
| | | Subtotal: | 2,906.00 |
| | | | |
| Paralegal Time | 12 | 95.00 | 1,140.00 |
| Electronic Service and Filing | 2 | 65.00 | 130.00 |
| Hard Copy Filing | 1 | 60.00 | 60.00 |
| FedEx Shipment(s) | 1 | 182.30 | 182.30 |
| Pre-Paid Postage | 1 | 3.98 | 3.98 |
| Messenger | 1 | 20.00 | 20.00 |

For your convenience, credit card payments
can be processed through the link below:

https://www.recordpress.com/pay-your-invoice.php

(American Express, Visa, MasterCard & Discover)

**SUBTOTAL** 4,442.28
**TAX (8.875%)** 393.90
**TOTAL** 4,836.18
**BALANCE DUE** **$4,836.18**

ISSUED AS MANDATE 05/17/2021

RECORD PRESS, INC.
TAX ID # 13-5654060